PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Adv. Proc. No. 21-03082-sgj |
| HIGHLAND CAPITAL MANAEMENT FUND ADVISORS, L.P., | § § § | |
| | § | Case No. 3:21-cv-881-X |
| Defendant. | § § § | |

---

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................3

    A.  BACKGROUND ................................................................................. 3

        1.  The Bankruptcy Case ............................................................... 3

        2.  Procedural History ................................................................. 4

            i.   Plaintiff Commences the First HCMFA Notes Action as Part of the Main Notes Litigation in January 2021 ......................................... 4

            ii.  Plaintiff Commences the Second HCMFA Note Action in November 2021 ..................................................................... 5

    B.  HIGHLAND EXTENDS LOANS TO HCMFA IN EXCHANGE FOR THE PRE-2019 NOTES AND HCMFA DEFAULTS ........................................... 6

    C.  THE EVIDENCE OF THE EXISTENCE, VALIDITY AND ENFORCEABILITY OF THE PRE-2019 NOTES IS OVERWHELMING ........ 9

        1.  Highland Disclosed the Pre-2019 Notes in Its Audited Financial Statements and Carried Them as Assets on Its Balance Sheet ................. 10

        2.  In October 2020, HCMFA Informed the Retail Board of Its Obligations under the Pre-2019 Notes ....................................................... 14

        3.  Without Exception, the Pre-2019 Notes were Disclosed in Highland's Books and Records and Were Consistently Carried as Assets without Discount ................................................................. 17

        4.  Recovery on the Pre-2019 Notes Was A Significant Component of the Plan Yet HCMFA Remained Silent on the Point Despite Lodging Objections ................................................................. 19

        5.  HCMFA Paid Millions of Dollars in Principal and Interest Due under the Pre-2019 Notes ......................................................... 20

    D.  HCMFA'S AFFIRMATIVE DEFENSES ......................................... 22

        1.  The Alleged Agreement Defense ................................................. 22

            i.   After More Than a Year of Litigation, HCMFA and Mr. Dondero Still Cannot Recite a Credible Defense Based on the Alleged Agreement ........................................................................ 23

            ii.  No Reasonable Trier of Fact Can Find that the Alleged Agreements Existed ............................................................... 24

2.  Other Defenses: Waiver, Estoppel, Failure of Consideration, Prepayment ........................................................................... 31

III.  ARGUMENT .................................................................................................. 31

A.  Legal Standard ........................................................................... 31

1.  Summary Judgment Standard .................................................. 31

2.  Summary Judgment Standard for Promissory Notes ............................... 33

B.  Highland Is Entitled to Summary Judgment for HCMFA's Breach of the Pre-2019 Notes ............................................................................. 34

1.  Highland Has Made a Prima Facie Case for Summary Judgment ............ 34

2.  HCMFA Fails to Rebut Highland's Prima Facie Case ............................ 35

CONCLUSION .......................................................................................................... 38

DOCS_NY:45802.9 36027/003

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alton v. Texas A&M University*,
    168 F.3d 196 (5th Cir. 1999) ........................................................ 32, 33

*Armstrong v. City of Dallas*,
    997 F.2d 62 (5th Cir.1993) ............................................................ 33

*FDIC v. Cardinal Oil Well Servicing Co.*,
    837 F.2d 1369 (5th Cir.1988) ...................................................... 33

*Hall v. Branch Banking*,
    No. H-13-328, 2014 WL 12539728 (S.D.Tex. Apr. 30, 2014)............... 32

*In re Heritage Org., L.L.C.*,
    354 B.R. 407 (Bankr. N.D. Tex. 2006).......................................... 36

*In re Magna Cum Latte, Inc.*,
    07-31814, 2007 WL 3231633 (Bankr. S.D. Tex. Oct. 30, 2007) ................ 32, 33, 36

*Latimer v. Smithkline & French Laboratories*,
    919 F.2d 301 (5th Cir.1990) ........................................................ 32

*Looney v. Irvine Sensors Corp.*,
    CIV.A.309-CV-0840-G, 2010 WL 532431 (N.D. Tex. Feb. 15, 2010) ............. 33, 34

*Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*,
    40 F.3d 698 (5th Cir. 1994) ........................................................ 32

*Resolution Tr. Corp. v. Starkey*,
    41 F.3d 1018 (5th Cir. 1995) ...................................................... 33, 34

*Scott v. Wollney*,
    No. 3:20-CV-2825-M-BH, 2021 WL 4202169 (N.D. Tex Aug. 28, 2021)............ 37

*Turner v. Baylor Richardson Med. Ctr.*,
    476 F.3d 337 (5th Cir. 2007) ...................................................... 32

*Warfield v. Byron*,
    436 F.3d 551 (5th Cir. 2006) ...................................................... 31

**RULES**

FED. R. CIV. P. 56(c)............................................................................ 31, 32

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Highland Capital Management, L.P., the reorganized debtor and the plaintiff in the above-captioned adversary proceeding ("Highland" or "Plaintiff"), hereby files this memorandum of law in support of its *Motion for Summary Judgment* (the "Motion").[1]  In support of its Motion, Highland states as follows:

## I.    PRELIMINARY STATEMENT[2]

1.    In accordance with its Plan and the clear and unambiguous terms of the Pre-2019 Notes, Plaintiff seeks to collect over $3 million of promissory notes that were issued by HCMFA in favor of Highland.  The Pre-2019 Notes were tendered in exchange for hard dollars at a time when Mr. Dondero controlled both the borrower and the lender.  Now, HCMFA refuses to make good on Mr. Dondero's promises to repay the money he caused HCMFA to borrow.

2.    This collection action is based largely on the same factual record as the Main Notes Litigation; namely, HCMFA asserts as its primary affirmative defense that Alleged Agreements exist pursuant to which Plaintiff agreed not to collect on the Pre-2019 Notes upon the fulfillment of certain "conditions subsequent."   The only substantive differences regarding HCMFA's Alleged Agreement Defense are that (a) Mr. Dondero and his sister were forced to contradict HCMFA's Answer with respect to the identity of the person who entered into the 2014 Alleged Agreement,[3] (b) despite the purported existence of the Alleged Agreements, HCMFA

---

[1] Concurrently herewith, Highland is filing the *Appendix of Exhibits in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment* (the "Appendix"). Citations to the Appendix are notated as follows: Ex. #, Appx. #.

[2] Capitalized terms in this Preliminary Statement shall have the meanings ascribed to them below.

[3] As discussed further below, HCMFA apparently copied and pasted the allegations pertaining to the "Alleged Agreement" defense from the pleadings of Mr. Dondero and certain of his affiliates in the Main Notes Litigation.  But as Ms. Dondero admitted during her recent deposition, those allegations could not have applied to the 2014 Alleged Agreement because she had not yet been appointed to serve as Dugaboy's trustee at the time the 2014 Alleged

1

actually paid Highland almost $4 million in principal and interest due under the Pre-2019 Notes, including payments pre-Petition and post-Petition; (c) HCMFA actually paid off all principal and interest due under three other notes without any explanation as to why those notes were not subject to Alleged Agreement Defense; and (d) HCMFA's expert, Alan Johnson, admitted that he has never advised a company to forgive a loan that had been extended to a corporate affiliate for the purpose of compensating an executive, nor is he aware of any company that has ever done so.

3.      Plaintiff makes out its *prima facie* case for summary judgment for HCMFA's breach of the Pre-2019 Notes. The uncontroverted documentary evidence proves that (a) the Pre-2019 Notes are valid, (b) the Pre-2019 Notes were executed by HCMFA and in favor of Highland, and (c) there is a balance due and owing under the Pre-2019 Notes. HCMFA cannot rebut Plaintiff's *prima facie* case because HCMFA cannot to create a genuine issue of material fact regarding its breaches. Moreover, there is a complete absence of evidence to support HCMFA's conjured affirmative defenses.

4.      Nevertheless, as it did in the Main Notes Litigation, HCMFA will likely contest every fact and contrive countless strawmen regardless of the record to color its own fabricated stories. But in the end, there will be no evidence to corroborate HCMFA's contentions other than its own self-serving, conclusory, and unsubstantiated assertions. There will be no documents or written communications that credibly support HCMFA's story. By contrast, Plaintiff's claims are both simple and buttressed by a mountain of undisputed evidence, including contemporaneous written communications, audited financial statements, statements to third parties, books and records, and the plain words of HCMFA and its officers.

---

Agreement was entered into. Consequently, Mr. Dondero was forced to contradict HCMFA's Answer and now asserts that he personally entered the 2014 Alleged Agreement on behalf of **both** Dugaboy and Highland.

5. Plaintiff's evidence is so overwhelming, and HCMFA's assertions are so weak, that the Court should grant the Motion.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. BACKGROUND[4]

#### 1. The Bankruptcy Case

6. On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

7. On December 4, 2019, the Delaware Court entered an order transferring venue of Highland's bankruptcy case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") [Bankr. Docket No. 186].[5]

8. On January 22, 2021, Highland filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Docket No. 1808] (the "Plan").

9. On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order") which confirmed Highland's Plan.[6]

10. On August 11, 2021, the Plan became Effective (as defined in the Plan), and Highland became the Reorganized Debtor (as defined in the Plan). *See Notice of Occurrence of*

---

[4] Attached hereto as **Exhibit A** is a list of *Parties, Witnesses, and Definitions*.

[5] "Bankr. Docket No. __" refers to the docket maintained by the Bankruptcy Court in case no. 19-34054-sjg11.

[6] The confirmed Plan included certain amendments filed on February 1, 2021. *See Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Ex. B [Bankr. Docket No. 1875].

3

*Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Bankr. Docket No. 2700].

        **2.**      **Procedural History**

        11.    This is a companion case to the Main Notes Litigation (defined below). Plaintiff did not sue to recover on the Pre-2019 Notes as part of the First HCMFA Notes Action (defined below) because, prior to the Petition Date, Highland agreed not to demand payment under the Pre-2019 Notes before May 31, 2021 (the "Acknowledgment Letter"). Ex. 217, Appx. 4989-4990; *see also* Ex. 215 at 55:15-22, Appx. 4955. The Acknowledgment Letter is discussed further *infra*.

        **i.**      **Plaintiff Commences the First HCMFA Notes Action as Part of the Main Notes Litigation in January 2021**

        12.    On January 22, 2021, Plaintiff commenced an adversary proceeding against Highland Capital Management Fund Advisors, L.P. ("HCMFA") to recover on two different promissory notes that were (a) executed on behalf of HCMFA in May 2019, (b) not subject to the Acknowledgment Letter because they did not exist at the time that Letter was signed, and (c) breached by HCMFA when it failed to honor Highland's demand for payment. *See Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* filed in Adv. Proc. No. 21-03004-sgj at Docket No. 1 (the "First HCMFA Notes Action").

        13.    The First HCMFA Notes Action was one of five adversary proceedings commenced at that time against James Dondero ("Mr. Dondero") and certain entities owned and/or controlled by him (the "Corporate Obligors," and together with Mr. Dondero, the "Main Note Defendants") for breach of their respective obligations under certain notes. *See* Adv. Proc. Nos. 21-03003-sgj (the "Dondero Note Action"), 21-03005-sgj (the "NexPoint Note Action"), 21-

03006-sgj (the "HCMS Note Action"), 21-03007-sgj (the "HCRE Note Action") (each, a "Note Action," and collectively, the "Main Notes Litigation").

14.     Each of the Note Actions in the Main Notes Litigation was subsequently referred to the Bankruptcy Court for pre-trial purposes, including for the consideration (but not determination) of any dispositive motions, and will be withdrawn to the District Court, under lead case No. 3:21-cv-00881-X (the "Lead District Court Note Action"), when they are trial-ready.

15.     Each Note Action was also subsequently consolidated for discovery and pre-trial purposes in the Bankruptcy Court. *See Stipulation and Agreed Order Governing Discovery and Other Pre-Trial Issues* dated August 17, 2021, approved by the Bankruptcy Court on September 6, 2021, and entered in each respective Note Action.

16.     On December 17, 2021, Plaintiff moved for summary judgment against HCMFA in the First HCMFA Notes Action, and for partial summary judgment against the remaining Main Note Defendants in the Main Notes Litigation. *See* Adv. Proc. No. 21-03004-sgj at Docket No. 83 (the "First Motion for Summary Judgment"). Oral argument was held on April 20, 2022 on the First Motion for Summary Judgment, and it is currently under advisement.

**ii.     Plaintiff Commences the Second HCMFA Note Action in November 2021**

17.     On November 9, 2021, Plaintiff commenced the Adversary Proceeding by filing the *Complaint for (I) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* [Docket No. 1][7] (the "Complaint"). In its Complaint, Plaintiff asserts claims against HCMFA for (a) breach of contract for HCMFA's breach of its obligations under the Pre-2019 Notes and (b) turnover by HCMFA for all accrued and unpaid principal and interest due under the Pre-2019

---

[7] Refers to the docket maintained in the Adversary Proceeding.

Notes until the date of payment, plus Plaintiff's cost of collection and reasonable attorneys' fees (as expressly provided for under each of the notes) (the "Second HCMFA Notes Action").

18.     On January 18, 2022, Plaintiff and HCMFA (together, the "Parties") entered into the *Agreed Motion for the Issuance of a Report and Recommendation Withdrawing the Reference*, requesting that the Bankruptcy Court issue a report and recommendation that the District Court refer the Second HCMFA Notes Action to the Bankruptcy Court for all pre-trial matters and withdraw the reference to the District Court when the case is trial-ready. *See* Adv. Proc. No. 21-03082-sgj, Docket No. 12 (the "Agreed Motion").

19.     On April 7, 2022, the Bankruptcy Court effectively granted the Agreed Motion by issuing its *Report and Recommendation*, Docket No. 27 (the "R&R"), recommending that the District Court refer all pre-trial matters to the Bankruptcy Court, including the consideration (but not determination) of any dispositive motions, and withdraw the case to the District Court when the case is trial-ready. The District Court adopted the R&R, and the Second HCMFA Notes Action was assigned to the District Court. *See* Case No. 3:22-cv-00789-K, Docket No. 2.

20.     On April 20, 2022, the District Court, *sua sponte*, issued an Order consolidating the Second HCMFA Notes Action under the Lead District Court Note Action. *See* Case No. 3:21-cv-00881-X, at Docket No. 49.

**B.     HIGHLAND EXTENDS LOANS TO HCMFA IN EXCHANGE FOR THE PRE-2019 NOTES AND HCMFA DEFAULTS**

21.     As relevant here, HCMFA is the maker under two promissory notes tendered to Highland in exchange for contemporaneous loans and other consideration. The notes at issue were executed in 2014 and 2016, respectively, and are described below:

- A demand note dated February 26, 2014, executed by Mr. Dondero on behalf of HCMFA, as the maker, in the original principal amount of $4,000,000 in favor of Highland (the "2014 Note"). (Second Klos Dec.[8] ¶ 4, Exhibit A); *see also* Ex. 226, Appx. 5029-5031; Ex. 219, Appx. 5005-5007; Ex. 235, Appx. 5117-5120; Ex. 215 at 15:20-17:11, 17:18-22, Appx. 4915-4917, 39:7-14, Appx. 4939; Ex. 234 ¶¶ 14-15; Ex. 220 (Responses to RFAs 1-2), Appx. 5017.

- A demand note dated February 26, 2016, executed by Mr. Dondero on behalf of HCMFA, as the maker, in the original principal amount of $2,300,000 in favor of Highland (the "2016 Note" and together with the 2014 Note, the "Pre-2019 Notes"). (Second Klos Dec. ¶ 5, Exhibit B); *see also* Ex. 227, Appx. 5032-5034; Ex. 219, Appx. 5005-5007; Ex. 236, Appx. 5121-5127; Ex. 234 ¶¶ 16-17; Ex. 220 (Responses to RFAs 3-4), Appx. 5017; Ex. 215 at 21:6-22:8, 22:9-23:11, Appx. 4921-4923.

22.    Except for the date and the amount, the maker, and the interest rate, each of

the Pre-2019 Notes is identical and includes the following provisions, among others:

2.    Payment of Principal and Interest.  The accrued interest and principal of this Note shall be ***due and payable on demand of the Payee***.

5.    Acceleration Upon Default.  ***Failure to pay this Note or any installment hereunder as it becomes due shall***, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate notice of acceleration, or any other notice of any kind which are hereby waived, ***mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.***  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

6.    Waiver.  Maker hereby ***waives*** grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

7.    Attorneys' Fees.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an

---

[8] Citations to "Second Klos Dec." refer to the *Declaration of David Klos in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment*, being filed concurrently herewith and are intended to distinguish it from the *Declaration of David Klos in Support of Highland Capital Management, L.P.'s Motion for Partial Summary Judgment in Notes Actions* submitted in the Main Notes Litigation.  *See, e.g.*, Dondero Note Action, Docket No. 133.

attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, *the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection*, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

Ex. 226, Appx. 5029-5031; Ex. 227, Appx. 5032-5034 (emphases added).

23.     On April 15, 2019, Mr. Dondero signed the Acknowledgment Letter on behalf of Highland in which he agreed that Highland would not demand payment on amounts owed by HCMFA prior to May 31, 2021.  Ex. 217, Appx. 4989-4990;[9] *see also* Second Klos Dec. ¶ 16; Ex. 215 at 49:8-50:7, Appx. 4949-4950, 55:15-22, Appx. 4955.  In the Acknowledgment Letter and during his recent deposition, Mr. Dondero also admitted that (i) HCMFA received value for the Pre-2019 Notes, (ii) the debt evidenced by the Pre-2019 Notes was outstanding and owed (without reference to the Alleged Agreements), and (iii) Highland received no consideration in exchange for agreeing not to demand payment from HCMFA until May 31, 2021. Ex. 215 at 50:8-22, Appx. 4950.

24.     There is no dispute that Highland complied with the Acknowledgment Letter.  *See* Second Klos Dec. ¶ 17; Ex. 215 at 53:22-54:12, Appx. 4953-4954. Specifically, Plaintiff did not demand payment of the outstanding obligations due under the Pre-2109 Notes until June 2, 2021.  Ex. 218, Appx. 4991-5004 (the "Demand Letter").

25.     In December 2021, HCMFA made an interest payment against each of the Pre-2019 Notes, but otherwise failed to satisfy its obligations or respond to the Demand Letter. *See* Ex. 215 at 58:4-6, Appx. 4958.

---

[9] In May 2019, HCMFA issued two other Notes to Highland in exchange for loans that are the subject of one of the adversary proceedings in the Main Notes Litigation.  *See* Adv. Pro. No. 21-03004.  Because those Notes were issued in May 2019, they were not subject to the Acknowledgment Letter.

26.     Consequently, HCMFA breached Section 2 of each Pre-2019 Note, and is in default.

27.     As of May 27, 2022, after giving effect to the payments made in December 2021 as well as other payments made against the Pre-2019 Notes prior to the Petition Date, the unpaid principal and accrued interest due under the February 2014 Note is $2,151,130.84, and the unpaid principal and accrued interest due under the February 2016 Note is $1,001,238.06. Second Klos Dec. ¶ 18.

C.     **THE EVIDENCE OF THE EXISTENCE, VALIDITY AND ENFORCEABILITY OF THE PRE-2019 NOTES IS OVERWHELMING**

28.     As described in more detail below, the existence, validity, and enforceability of the Pre-2019 Notes is corroborated by the following undisputed facts:

- Plaintiff's audited financial statements (prepared based on management representation letters signed by Mr. Dondero and Mr. Waterhouse) showed that each of the Pre-2019 Notes was (a) carried as an asset on Plaintiff's balance sheet, (b) had a value equal to the unpaid principal and interest then due, and (c) was disclosed without reference to the Alleged Agreements;

- HCMFA's audited financial statements showed that each of the Pre-2019 Notes was (a) carried as a liability on HCMFA's balance sheet, (b) had a value equal to the unpaid principal and interest then due, and (c) was disclosed without reference to the Alleged Agreements;

- HCMFA reported to the Retail Board in October 2020 that HCMFA was obligated to pay Highland the amounts due under the Pre-2019 Notes, without any setoff or reservation;

- Without exception, Plaintiff's contemporaneous books and records recorded the Pre-2019 Notes as debts due and owing by HCMFA to Plaintiff;

- Without exception, throughout Plaintiff's bankruptcy (including during the period from the Petition Date through January 9, 2020, when Mr. Dondero solely controlled Plaintiff and HCMFA), Plaintiff's bankruptcy filings (most of which were prepared or signed by Mr.

9

Waterhouse) reported the Pre-2019 Notes as being assets of the Debtor's estate, without any setoff or reservation;

- The Pre-2019 Notes were identified as assets and sources of recovery under Plaintiff's proposed Plan, yet HCMFA did not inform the Court, Plaintiff, or any creditors of its purported Alleged Agreement defense, even though HCMFA filed a Plan Objection; and

- Between 2016 and 2021, HCMFA paid nearly $4 million in principal and interest due under the Pre-2019 Notes.

- In the Acknowledgment Letter, HCMFA admits that value was received for the Pre-2019 Notes and that the debt evidenced by the Pre-2019 Notes was outstanding and owed as of April 15, 2019, all without reference to any Alleged Agreement.

### 1. Highland Disclosed the Pre-2019 Notes in Its Audited Financial Statements and Carried Them as Assets on Its Balance Sheet

29.     The undisputed evidence cited below establishes, among other things, that (a) the Pre-2019 Notes were provided to PwC, Highland's long-time outside auditors, and were described in Highland's audited financial statements; (b) the Pre-2019 Notes were carried as assets on Highland's balance sheet and were valued in amounts equal to the accrued and unpaid principal and interest without any offset or reservation; and (c) neither Highland nor Mr. Dondero disclosed HCMFA's Alleged Agreement defense, or any other defense, to PwC despite having an affirmative obligation to do so under generally accepted accounting principles ("GAAP").

30.     Copies of the Pre-2019 Notes were and are maintained in Highland's books and records in the ordinary course of business and were provided to PwC in connection with its annual audits. (*See* Second Klos Dec. ¶¶ 3-5); Ex. 215 at 25:22-26:13, Appx. 4925-4926.

31.     PwC's audit process was extensive and took months to complete. Ex. 94 at 9:24-12:14, Appx. 1554-1555. As part of the process, Highland was responsible for drafting the financial statements and accompanying notes and "management" provided the information that PwC needed to conduct its audits. *Id*. at 14:8-15:14, Appx. 1556; *see also id*. at 49:11-50:22,

Appx. 1564-1565. All of Highland's employees who worked on the audit reported to Mr. Waterhouse, and Mr. Waterhouse was ultimately responsible for making sure the audit was accurate before it was finalized. Ex. 105 at 87:25-89:10, Appx. 2071.

32.     Before signing off on its audit, PwC required Highland to deliver "management representation letters" that included specific representations that PwC relied upon. Ex. 94 at 16:18-17:20, Appx. 1556, 23:4-9, Appx. 1558; *see also* Ex. 105 at 96:24-98:6, Appx. 2073-2074 (according to Mr. Waterhouse, management representation letters are "required in an audit to help verify completeness.")

33.     For at least the fiscal years 2014, 2016, 2017 and 2018, Mr. Dondero and Mr. Waterhouse signed Highland's management representation letters; their representations were applicable through the date of the audit's completion so that all "material" subsequent events could be included and disclosed. *See* Ex. 33, Appx. 729-740, Ex. 86, Appx. 1420-1431; Ex. 231, Appx. 5049-5062; Ex. 232, Appx. 5063-5073; Ex. 94 at 17:21-25, Appx. 1556, 19:2-22:6, Appx. 1557-1558; Ex. 105 at 92:4-8, Appx. 2072, 94:20-95:12, Appx. 2073.

34.     On May 19, 2017, in connection with PwC's audit of Highland's financial statements for the period ending December 31, 2016, Mr. Dondero and Mr. Waterhouse made the following representations to PwC:

- The Affiliated Party Notes represented bona fide claims against the makers, and all Affiliated Party Notes were current as of May 19, 2017 (Ex. 232 ¶ 16, Appx. 5067);[10]

- There were no "material" transactions or agreements that were not recorded in the financial statements (Ex. 232 ¶ 5, Appx. 5065)];

---

[10] "Affiliated Party Notes" is the term used by PwC to refer to notes tendered to Highland by officers, employees, or affiliates of Highland. *See generally* Ex. 33, Appx. 729-740; Ex. 94, Appx. 1551-1585.

- All relationships and transactions with, and amounts receivable or payable to or from, related parties were properly reported and disclosed in the consolidated financial statements (Ex. 232 ¶ 13(b), Appx. 5066);

- All related party relationships and transactions known to Mr. Dondero and Mr. Waterhouse were disclosed (Ex. 232 ¶ 12, Appx. 5066); and

- All subsequent events were disclosed (Ex. 232 (signature page), Appx. 5071).[11]

35.     Under GAAP, Highland was required to disclose to PwC (a) all "material" related party transactions and (b) any circumstances that would call into question the collectability of any notes. *See, e.g.*, Ex. 94 at 34:17-35:2, Appx. 1561, 51:17-52:5, Appx. 1565, 70:20-71:3, Appx. 1570.[12]

36.     Neither Mr. Dondero nor Highland ever disclosed to PwC (a) the existence or terms of the Alleged Agreements; (b) the existence of any oral or written amendment to any of the Affiliate Notes listed in PwC's 2018 work papers; or (c) that any of the Pre-2019 Notes might be forgiven. Ex. 220 (Responses to RFAs 7-8), Appx. 5018; *see also* Ex. 94 at 67:16-70:19, Appx. 1569-1570, 71:4-74-8, Appx. 1570-1571, 92:19-93:12, Appx. 1575; Ex. 105 at 102:2-5, Appx. 2075.[13]

37.     If PwC had learned before May 19, 2017, that the Pre-2019 Notes (a) might not be collectible, or (b) might be forgiven, or (c) were amended, or (d) would be extinguished

---

[11] *See also* Ex. 231, Appx. 5049-5062; Ex. 33, Appx. 729-740; Ex. 94 at 24:6-25:5, Appx. 1558; Ex. 94 at 25:6-26:13, Appx. 1558-1559; Ex. 94 at 26:14-27:11, Appx. 1559; Ex. 94 at 27:12-28:11, Appx. 1559; Ex. 94 at 28:12-29:5, Appx. 1559; Ex. 94 at 29:6-30:2, Appx. 1559-1560.

[12] For purposes of the 2016 audit, the "materiality" threshold was $2 million. Ex. 232 at 1, Appx. 5064. For purposes of the 2018 audit, the "materiality" threshold was $1.7 million or more. Ex. 33 at 1, Appx. 730; Ex. 94 at 22:11-23:3, Appx. 1558. *See also* Ex. 105 at 91:14-93:6, Appx. 2072.

[13] Testimony from Exhibits 94 and 105 refers to the Alleged Agreement from the Main Notes Litigation.

based on the fulfillment of certain conditions subsequent, it would have required that fact to be disclosed. *See, e.g.*, Ex. 94 at 74:19-76:12, Appx. 1571.[14]

38.     For purposes of PwC's audit, "affiliate notes" were considered receivables of Highland and were carried as assets on Highland's balance sheet under "Notes and other amounts due from affiliates."  Ex. 34 at 2, Appx. 745; Ex. 72 at 2, Appx. 1291; Ex. 94 at 23:10-22, Appx. 1558, 31:11-33:20, Appx. 1560; Ex. 105 at 106:20-109:12, Appx. 2076.

39.     For the 2016 fiscal year, Highland valued "Notes and other amounts due from affiliates" in the aggregate amount of approximately $172.6 million, which then constituted more than 12% of Highland's total assets. Ex. 71 at 2, Appx. 1240.  For the 2017 fiscal year, Highland valued "Notes and other amounts due from affiliates" in the aggregate amount of approximately $163.4 million, which then constituted more than 10% of Highland's total assets; for the 2018 fiscal year, Highland valued "Notes and other amounts due from affiliates" in the aggregate amount of approximately $173.4 million, which then constituted more than 15% of Highland's total assets.  Ex. 72 at 2, Appx. 1291; Ex. 34 at 2, Appx. 745; Ex. 94 at 33:21-34:2, Appx. 1560-1561, 51:2-16, Appx. 1565.

40.     The notes to the financial statements described the "Affiliate Notes" that were carried on Highland's balance sheet; management calculated the amounts due and owing to Highland from each affiliate.  Ex. 72 at 30-31, Appx. 1319-1320; Ex. 34 at 28-29, Appx. 771-772; Ex. 94 at 34:17-36:25, Appx. 1561; 51:17-53:12, Appx. 1565; Ex. 105 at 110:22-112:21, Appx. 2077.

---

[14] Testimony refers to the June 3, 2019 management representation letter.

41. The "fair value" of the Affiliate Notes was "equal to the principal and interest due under the notes." Ex. 72 at 30-31, Appx. 1319-1320; Ex. 34 at 28-29, Appx. 771-772; Ex. 94 at 37:11-39:12, Appx. 1561-1562; 53:19-25, Appx. 1565.

42. At the time PwC completed its 2017 and 2018 audits, PwC had no reason to discount the value of any of the Affiliate Notes. Ex. 94 at 39:17-21, Appx. 1562, 54:2-8, Appx. 1566.

43. Moreover, as reflected in PwC's work papers, and based on the information provided by Highland and PwC's own independent analysis, PwC concluded that the obligors under each of the Affiliate Notes had the ability to pay all amounts outstanding. Ex. 92, Appx. 1514-1530; Ex. 93, Appx. 1531-1550; Ex. 94 at 41:2-45:6, Appx. 1562-1563, 55:17-60:22, Appx. 1566-1567, 68:20-25, Appx. 1569.

44. Note 17 to Highland's 2015 audited financial statements disclosed the issuance of the 2016 Note as a "subsequent event" (*i.e.*, an event occurring after the December 31, 2015 end of Highland's fiscal year):

> On February 26, 2016, HCMFA issued a promissory note [HCMLP]
> in the amount of $2.3 million. The note accrues interest at a rate of
> 2.62%.

Ex. 70 at 46, Appx. 1229; *see also* Ex. 94 at 54:9-55:7, Appx. 1566.[15]

## 2. In October 2020, HCMFA Informed the Retail Board of Its Obligations under the Pre-2019 Notes

45. HCMFA has contracts to manage certain funds (the "Fund Agreements"). The Fund Agreements are among the most important contracts HCMFA has; HCMFA's Rule

---

[15] Testimony from Ex. 94 refers to the June 3, 2019 management representation letter.

30(b)(6) witness acknowledged that its contracts with the Funds are largely the reason for HCMFA's existence. Ex. 192 at 66:3-67:6, Appx. 3031.

46.     The Funds are purportedly managed by a board (the "Retail Board"). In the fall of each year, the Retail Board must determine whether to renew the Fund Agreements with the Advisors, a process referred to as a "15(c) Review." As part of the 15(c) Review process, the Retail Board requests information from the Advisors. Ex. 99 at 129:17-130:3, Appx. 1844-1845, Ex. 105 at 32:17-33:6, Appx. 2057, 168:9-12, Appx. 2091, 169:9-170:16, Appx. 2091-2092.

47.     Mr. Waterhouse, HCMFA's Treasurer, and Mr. Norris, HCMFA's Executive Vice President, participated in the annual 15(c) Review process with the Retail Board. Ex. 192 at 67:7-68:19, Appx. 3031; Ex. 105 at 168:13-169:8, Appx. 2091.

48.     In October 2020, as part of its 15(c) Review, the Retail Board asked HCMFA to provide certain information including the following:

> Are there any outstanding amounts currently payable or due in the future (e.g., notes) to HCMLP by HCMFA or … any other affiliate that provides services to the Funds?

Ex. 36 at 3, Appx. 793.

49.     Lauren Thedford, then the Secretary of HCMFA and an employee of Highland, followed up on this particular question, and Mr. Waterhouse directed her to "the balance sheet that was provided to the [Retail Board] as part of the" 15(c) Review. *Id.* at 2, Appx. 792.

50.     As directed by Mr. Waterhouse, Ms. Thedford (a) obtained the relevant information from HCMFA's June 30, 2020 financial statements and (b) drafted a response that she shared with, among others, Mr. Waterhouse, Dustin Norris (HCMFA's Executive Vice President), and Jason Post (HCMFA's Chief Compliance Officer). Ex. 35, Appx. 788-789; Ex. 37, Appx. 795-796.

15

51. The Pre-2019 Notes were recorded as liabilities in HCMFA's audited financial statements from the fiscal years 2014-2018. Ex. 221 at 2;[16] Ex. 224 at 2; Ex. 222 at 2; Ex. 225 at 2; Ex. 45 at 2; *see also* Ex. 215 at 26:14-17, Appx. 4926.

52. Note 6 to HCMFA's 2014 audited financial statement addressed "Related Party Transactions" and disclosed the issuance of the 2014 Note. Ex. 221 at 11-12.

53. HCMFA does not contend that its audited financial statements for the fiscal years 2014-18 were inaccurate in any way with respect to the Pre-2019 Notes. *See* Ex. 215 at 28:5-9, Appx. 4928.

54. Based on HCMFA's June 30, 2020 financial statements, Ms. Thedford sent her draft response to Mr. Waterhouse, Mr. Norris, Mr. Post, and others and reported that "$12,286,000 remains outstanding to HCMLP from HCMFA." Ex. 36 at 1, Appx. 791.

55. This amount necessarily included the amounts due under the Pre-2019 Notes because (a) as HCMFA has admitted, HCMFA carried the Pre-2019 Notes as liabilities on its audited financial statements, Ex. 215 at 26:14-17, Appx. 4926, (b) HCMFA's balance sheet reflecting the Pre-2019 Notes as liabilities was never amended, *id.* at 27:3-28:4, Appx. 4927-4928, and (c) HCMFA's balance sheet was Ms. Thedford's source of information. Ex. 192 at 54:6-9, 54:22-55:8, 55:23-56:3, 56:20-59:3, Appx. 3028-3029; Ex. 194 at 117:16-122:15, Appx. 3156-3157; Ex. 195 at 120:23-122:13, Appx. 3211-3212.

56. On October 23, 2020, HCMFA provided its final, formal responses to the questions posed by the Retail Board. As to the issue of outstanding amounts currently payable or due to Highland or its affiliates, HCMFA reported as follows:

---

[16] The HCMFA audited financial statements are not included in the Appendix because they are being filed under seal, and therefore, do not contain "Appx." numbers.

> As of June 30, 2020 . . . $12,286,000 remains outstanding to HCMLP from HCMFA . . . The earliest the Note between HCMLP and HCMFA could come due is in May 2021. All amounts owed by [ ] HCMFA pursuant to the shared services arrangement with HCMLP have been paid as of the date of this letter. The Advisor notes that both entities have the full faith and support of James Dondero.

Ex. 59 at 2, Appx. 885. The reference to May 2021 is a reference to the April 15, 2019 Acknowledgment Letter pursuant to which HCMLP agreed to defer demand on the Pre-2019 Notes.

57.     Based on the foregoing, there is no dispute that HCMFA—with the full knowledge of its officers and based on HCMFA's own balance sheet—informed the Retail Board in October 2020 of its unmitigated obligations under the Pre-2019 Notes.

**3.      Without Exception, the Pre-2019 Notes were Disclosed in Highland's Books and Records and Were Consistently Carried as Assets without Discount**

58.     In addition to its audited financial statements, and without exception, Highland's contemporaneous books and records – before the Petition Date and after -- recorded the Pre-2019 Notes as valid debts due and owing by HCMFA to Plaintiff.

59.     After the Petition Date, but while Mr. Dondero was still in control of Highland, the Debtor filed its *Schedules of Assets and Liabilities* [Bankr. Docket No. 247] (the "Debtor's Schedules"). The Debtor's Schedules included the Pre-2019 Notes among the Debtor's assets. Ex. 40, Appx. 812-815 (excerpts of the Debtor's Schedules showing that Highland (a) disclosed as assets of the estate "Notes Receivable" in the approximate amount of $150 million (Item 71), and (b) provided a description of the Pre-2019 Notes (Exhibit D)).

60.     In every one of the Debtor's *Monthly Operating Reports* (the "MORs") filed with the Court (while Mr. Dondero was in control of Highland and after), the Debtor included as

assets of the estate amounts "Due from affiliates" that included the Pre-2019 Notes.  *See, e.g.*, Ex. 41, Appx. 816-825; Ex. 42, Appx. 826-835; Ex. 88, Appx. 1475-1486; Ex. 89, Appx. 1487-1496.[17]

61.    Highland's "back-up" to the amounts "Due from affiliates" set forth in the MORs identified HCMFA as an obligor under the Pre-2019 Notes and included all unpaid principal and accrued interest.  *See, e.g.*, Exs. 196-198, Appx. 3239-3244 (the back-up to the "Due from Affiliates" amounts set forth in the MORs for December, September 2020, and January 2021).

62.    Relatedly, Highland's accounting group has a regular practice of creating, maintaining and updating on a monthly basis "loan summaries" in the ordinary course of business (the "<u>Loan Summaries</u>").  Second Klos Dec. ¶ 6.  The Loan Summaries identify amounts owed to Highland under affiliate notes and are created by updating underlying schedules for activity and reconciling with Highland's general ledger.  *See id.*  Exhibit 199, Appx. 3245-3246 is an example of a Loan Summary.  The Loan Summaries identify each obligor under certain notes by reference to the "GL" number used in the general ledger.  *See* Ex. 199 (HCMS ("GL 14530"), HCMFA ("GL 14531"), NexPoint ("GL 14532"), HCRE ("GL 14533"), and Mr. Dondero ("GL 14565")).  *See* Second Klos Dec. ¶ 6.

63.    The Loan Summaries were used in connection with PwC's audits and to support accounting entries and year-end balances in the ordinary course of Highland's business.

---

[17] *See also* Bankr. Docket No. 405 (October 2019); Bankr. Docket No. 289 (November 2019); Bankr. Docket No. 418 (December 2019); Bankr. Docket No. 497 (January 2020); Bankr. Docket No. 558 (February 2020); Bankr. Docket No. 634 (March 2020); Bankr. Docket No. 686 (April 2020); Bankr. Docket No. 800 (May 2020), as amended in Bankr. Docket No. 905; Bankr. Docket No. 913 (June 2020); Bankr. Docket No. 1014 (July 2020); Bankr. Docket No. 1115 (August 2020); Bankr. Docket No. 1329 (September 2020); Bankr. Docket No. 1493 (October 2020); Bankr. Docket No. 1710 (November 2020); Bankr. Docket No. 1949 (December 2020); and Bankr. Docket No. 2030 (January 2021).

For example, Exhibit 199, Appx. 3246 ties exactly into Exhibit 198, Appx. 3243-3244, the "back up" to the "Due from affiliates" entry in the January 2021 MOR. Bankr. Docket No. 2020. Second Klos Dec. ¶ 7.[18]

64. The 2014 Note is shown on the Loan Summary marked as Exhibit 199 as "HCMFA #2" and the 2016 Note is shown on the Loan Summary as "HCMFA #5." Ex. 199, Appx. at 3246. Second Klos Dec. ¶ 8.

### 4. **Recovery on the Pre-2019 Notes Was A Significant Component of the Plan Yet HCMFA Remained Silent on the Point Despite Lodging Objections**

65. On November 24, 2020, Highland filed its *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Bankr. Docket No. 1473]. Included therein were the Debtor's Liquidation Analysis/Financial Projections (the "Projections"). Ex. 90, Appx. 1497-1505. Among the assumptions supporting the Projections was that "[a]ll demand notes are collected in the year 2021." *Id.* at 173 of 178, Appx. 1500 (Assumption C).

66. Thus, even though Highland had not yet demanded payment under the Pre-2019 Notes, HCMFA was notified on November 24, 2020, that the Debtor's Projections assumed that all demand notes, including the Pre-2019 Notes, would be collected the following year. While HCMFA objected to Highland's proposed Plan, HCMFA did not disclose the existence Alleged Agreements or suggest that the Debtor's Projections were unreasonable in any way. *See* Bankr. Docket No. 1670.

---

[18] Colloquially, the Loan Summaries are the "back up" to the "back up." To illustrate, and working backwards, the January 2021 MOR reported that $152,538,000 was "Due from affiliates." Bankr. Docket No. 2030 (balance sheet). Ex. 198, Appx. 3243-3244 is the "back up" to the January 2021 MOR and it shows that $152,537,622 was the "Total Due from Affiliates" (the January 2021 MOR rounded up to the nearest thousand). Ex. 199, Appx. 3245-3246, the Loan Summary, is the "back up" to the "back up," and is reconciled with Highland's general ledger. As can be seen, the Loan Summary specifies the outstanding principal amounts due under each Note. Interest on these notes is accrued in a single account (general ledger account 14010). Second Klos Dec. ¶ 7 n. 2.

67.     At the confirmation hearing, James P. Seery, Jr., Highland's Chief Executive Officer, testified as to (a) why the Debtor believed this assumption was reasonable, and (b) how the commencement of the Main Notes Litigations impacted the Projections. Mr. Dondero's counsel asked limited questions on cross-examination about the assumptions concerning demand notes.  Ex. 206 at 123:23-124:23, Appx. 4305-4306, 128:23-129:21, Appx. 4310-4311, 185:8-15, Appx. 4367.

68.     In his closing argument, Mr. Dondero's counsel (a) vaguely suggested that there may be "arguments" against the Debtor's assertion that certain demand notes are due and payable and (b) observed that the demand notes were not discounted for "collectability issues," but made no mention of HCMFA's Alleged Agreement Defense, or any other defense:

> First, there's the notes; and second, there's the assets.  The notes are either long-term or demand notes.  Those long-term notes, Mr. Seery will tell you some have been validly accelerated and therefore are now due and payable.  I think there's arguments to the contrary.  But those long-term notes probably have some both time value of money and collection costs.  And then, of course, you have to discount them by collectability issues, too.
>
> I don't believe any analysis went into it, or at least the Court was not provided any data or analysis as to what discounts were applied to those notes.  And, therefore, I don't think that this Court can make any determination that the best interests of the creditors have been met.

Ex. 207 at 223:22-224:14, Appx. 4701-4702.

### 5.     HCMFA Paid Millions of Dollars in Principal and Interest Due under the Pre-2019 Notes

69.     In the years prior to Bankruptcy, Mr. Dondero caused HCMFA to pay millions of dollars in principal and interest against the Pre-2019 Notes.

70.     By their plain and unambiguous terms, the Pre-2019 Notes were payable on demand.  However, HCMFA was permitted to make "prepayments" under each of the Pre-2019

Notes.  Section 3 sets forth HCMFA's agreement concerning the treatment of "prepayments" and

provides:

> 3.  <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  **Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.**

(Second Klos Dec. ¶ 10, Exhibit A ¶ 3; Exhibit B ¶ 3) (emphasis added).

71.     Subsequent to the issuance of the Pre-2019 Notes, certain payments were

made against the obligations due under the Pre-2019 Notes (collectively, the "<u>Payments</u>").  Second

Klos. Dec. ¶ 11.

72.     For instance, between May 2019 and December 2021, HCMFA made five

separate Payments against the February 2014 Note, in the aggregate amount of approximately $2.4

million. (*See* Second Klos. Dec. Exhibits D through H).  Between September 2016 and December

2021, HCMFA made three separate Payments against the February 2016 Note in the aggregate

amount approximately $1.5 million.  *See* Second Klos Dec., Exhibits H though J.

73.     In accordance with section 3 of the Pre-2019 Notes, Highland's accounting

group applied the Payments first to unpaid accrued interest thereon, and then to unpaid principal.[19]

Second Klos Dec. ¶¶ 13-14, Exhibit C.

---

[19] There were three *de minimus* exceptions to this treatment.  In June 2019 and October 2019, two Payments were applied entirely to principal on the 2014 Note.  In each instance, the Payment occurred shortly after a separate Payment had been made and applied first to all accrued and outstanding interest and second to principal.  As a result, in these two instances, *de minimus* accrued interest remained outstanding when the June and October 2019 Payments were made and applied entirely to principal.  A separate payment on the 2016 Note in April 2017 was applied to interest first, then principal at the time of the Payment.  However, following the application of the Payment, it was identified that the accrued interest should have been capitalized on the anniversary of the 2016 Note, so the loan schedule was updated to reflect the capitalization of the interest.  The application of the Payment was unchanged, leaving interest in a "pre-paid" position until further interest accrued and exhausted the Payment.  The combined effect of these exceptions is *de minimus* (cumulatively less than $650.00) with respect to total current outstanding principal and interest.  Moreover, regardless of the application of the Payments, Highland always had the unquestionable and unfettered right to demand payment for all remaining amounts due and owing under the Pre-2019 Notes, subject only to the Acknowledgement Letter.

74. HCMFA does not dispute the propriety of the application of the Payments to the obligations under each of the Pre-2019 Notes, as shown on **Exhibit C**. Exhibit 238, Appx. 5134-5147.

### D. HCMFA'S AFFIRMATIVE DEFENSES

75. HCMFA has asserted various defenses to Plaintiff's breach of contract claim, and those are addressed below.

### 1. The Alleged Agreement Defense

76. HCMFA's Alleged Agreement defense is premised largely on the same spurious story asserted by the Main Note Defendants in the Main Notes Litigation (with the exception of HCMFA in the First HCMFA Note Action), namely, that there were alleged oral agreements pursuant to which the Pre-2019 Notes would be forgiven upon the occurrence of certain "conditions subsequent." *See* Ex. 234 ¶ 41 ("HCMFA's Answer"). Specifically, HCMFA asserted in its Answer:

> Plaintiff's claims are barred … because prior to the demands for payment, Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent. Specifically, sometime between December of the year in which each note was made and February of the following year, Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of James Dondero's control. The purpose of this agreement was to provide compensation to Mr. Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP and in the industry. This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant believes there may be testimony or email correspondence that discusses the existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

Ex. 234 ¶ 41 (the "Alleged Agreement Defense").

22

77. As the Court may recall from the Main Notes Litigation, the Alleged Agreement Defense changed materially over time before the Main Note Defendants settled on one story. *See* First Motion for Summary Judgment ¶¶ 80-89 (citing evidence).

78. Incredibly, after a year-and-a-half of litigation concerning the Alleged Agreement Defense, HCMFA (a) was forced in discovery to change the nature of this defense, as applied to the 2014 Note, and (b) failed to produce any credible evidence in support the Alleged Agreement Defense. Indeed, the overwhelming testimonial and documentary evidence directly contradicts HCMFA's Alleged Agreement Defense.

### i. After More Than a Year of Litigation, HCMFA and Mr. Dondero Still Cannot Recite a Credible Defense Based on the Alleged Agreement

79. In its Answer, HCMFA alleged that Nancy Dondero entered into the Alleged Agreement with respect to the Pre-2019 Notes "as representative for a majority of the Class A shareholders of Plaintiff." Ex. 234 ¶ 41. Under questioning, however, Mr. Dondero and his sister were forced to change their story yet again. Because Ms. Dondero did not become the Trustee of Dugaboy until October 2015, Mr. Dondero was forced to contend that *he* entered into the Alleged Agreement with respect to the 2014 Note on behalf of HCMFA *and* Highland (*i.e.*, he made the Alleged Agreement with respect to the 2014 Note with himself).

80. Mr. Dondero reviewed HCMFA's Answer before authorizing HCMFA's attorneys to file it. *See* Ex. 215 at 30:7-31:2, Appx. 4930-4931. Nevertheless, the Answer is false.

81. As Ms. Dondero admitted, she could not have entered into the Alleged Agreement with respect to the 2014 Note (the "2014 Alleged Agreement") between December of 2014 and February of 2015 (*see* HCMFA's Answer ¶ 41) because she did not become the trustee of Dugaboy until October of 2015. *See* Ex. 210 at 16:6-18:24, Appx. 4852-4854; *see also* Ex. 237, Appx. 5128-5133. Ms. Dondero allegedly caused Dugaboy to enter into the Alleged Agreement

23

only with respect to the 2016 Note (the "2016 Alleged Agreement," and together with the 2014 Alleged Agreement, the "Alleged Agreements"). *See* Ex. 210 at 17:23-18:24, Appx. 4853-4854; Ex. 215 at 32:19-22, Appx. 4932.

82. Faced with this uncontroverted fact, Mr. Dondero was subsequently forced to contend that he—not Ms. Dondero—caused Dugaboy to enter into the 2014 Alleged Agreement in his capacity as ***both*** the president of Highland and as the trustee of his own Dugaboy trust.[20] *See* Ex. 215 at 31:3-25, 32:19-36:6, Appx. 4931-4936.

83. Accordingly, the Answer is facially and materially inaccurate because it falsely states that Ms. Dondero caused Dugaboy to enter into the Alleged Agreement with respect to the 2014 Note.[21]

ii. **No Reasonable Trier of Fact Can Find that the Alleged Agreements Existed**

84. Regardless of who allegedly entered into the Alleged Agreements on behalf of Highland, for the reasons set forth below, no reasonable trier of fact can find that the Alleged Agreements ever existed.

85. Mr. Dondero personally caused MGM stock to be sold in November 2019 and failed to declare the Notes forgiven. According to Mr. Dondero and Ms. Dondero, the Pre-2019 Notes would be forgiven if Mr. Dondero sold one of three portfolio companies—Trussway, Cornerstone, or MGM—above cost. *See* Ex. 234 ¶ 41; Ex. 210 at 21:25-22:7, Appx. 4857-4858.[22]

---

[20] The terms of the 2014 Alleged Agreement are allegedly the same as those of the Alleged Agreement covering the 2016 Note. *See* Ex. 210 at 31:24-33:15, Appx. 4867-4869; Ex. 215 at 36:19-37:8, Appx. 4936-4937.

[21] Even though Mr. Dondero and Ms. Dondero have admitted that HCMFA's Answer is inaccurate as it relates to the 2014 Agreement, HCMFA has not moved for leave to amend its Answer.

[22] The terms of the Alleged Agreements covering the Pre-2019 Notes are allegedly the same as the terms of the Alleged Agreement covering the notes in the Main Notes Litigation. *See* Ex. 210 at 20:5-21:23, Appx. 4856-4857.

86. In November 2019, Mr. Dondero caused the sale of a substantial interest in MGM for $123.25 million, a portion of which was for the Debtor's interest in a fund, but failed to declare the Pre-2019 Notes forgiven or even disclose the existence of the Alleged Agreements. *See* Ex. 201 ¶ 29-30, Appx. 3270-3271; Ex. 202 ¶ 14, Appx. 4135; Ex. 203 ¶ 1, Appx. 4143; Ex. 204 at 5 n. 5, Appx. 4156.

87. <u>Ms. Dondero was not competent to enter into the 2016 Alleged Agreement</u>. Under the circumstances, Ms. Dondero was not competent to enter into the 2016 Alleged Agreement, and she made no effort to educate herself before purportedly binding Highland. Ms. Dondero:

- Had no meaningful knowledge, experience, or understanding of (a) Highland or its business, (b) the financial industry, (c) executive compensation matters, or (d) Mr. Dondero's compensation or whether he was "underpaid compared to reasonable compensation levels in the industry" (Ex. 100 at 42:22-43:8,[23] Appx. 1885, 48:7-61:9, Appx. 1886-1889; 211:8-216:21, Appx. 1927-1928);[24]

- Never reviewed Highland's financial statements (including balance sheets, bank statements, profit and loss statements and statements of operations), never asked to see them, and knew nothing about Highland's financial condition prior to the Petition Date (*id*. at 61:25-63:13, Appx. 1889-1890);

- Did not know of Highland's "portfolio companies" except for those her brother identified, and as to those, Ms. Dondero did not know the nature of Highland's interests in the portfolio companies, the price Highland paid to acquire those interests, or the value of the portfolio companies

---

[23] Pursuant to a stipulation entered into between the Parties, the deposition transcripts for any witness that was deposed in the Main Notes Litigation can be used in this Adversary Proceeding. *See* Ex. 210 at 6:22-7:10, Appx. 4842-4843.

[24] The only information Ms. Dondero had concerning Mr. Dondero's compensation from Highland was that he "was not highly paid" and that in recent years, "his salary has been roughly less than a million, 500, 700,000 somewhere in that ballpark." Ex. 100 at 51:11-22, Appx. 1887. This information was false. Ex. 68, Appx. 1129-1130 (2016 base salary of $1,062,500 with total earnings and awards of $2,287,175); Ex. 50, Appx. 860-861 (2017 base salary of $2,500,024 with total earnings and awards of $4,075,324); Ex. 51, Appx. 862-863 (2018 base salary of $2,500,000 with total earnings and awards of $4,194,925); and Ex. 52, Appx. 864-865 (2019 base salary of $2,500,000 with total earnings and awards of $8,134,500).

(*id*. at 63:18-80-22, Appx. 1890-1894; 208:24-210:13, Appx. 1926-1927);

- Never saw a promissory note signed by Mr. Dondero, any other officer or employee of Highland, or any "affiliate" of Highland (*id*. at 83:14-84:8, Appx. 1895; 95:3-16, Appx. 1898; 99:20-100:10, Appx. 1899; 115:11-116:4, Appx. 1903; 127:13-128:4, Appx. 1906; 140:15-141:22, Appx. 1909, 180:18-23, Appx. 1919);

- Learned (falsely, as shown below) from her brother that Highland allegedly had a "common practice" of forgiving loans, but had no actual knowledge or information concerning any loan that Highland made to an officer, employee, or affiliate that was actually forgiven and made no effort to verify her brother's statement (*id*. 84:9-92:3, Appx. 1895-1897, 100:11-103:8, Appx. 1899-1900);

- Had no knowledge of NexPoint, HCMS, or HCRE (the Corporate Obligors whose notes are purportedly subject to the Alleged Agreement in the Main Notes Litigation), including (a) the nature of their businesses, (b) their relationships with Highland, including whether they provided any services to Highland, (c) their financial condition, or (d) the purpose of the loans made to them by Highland, and their use of the proceeds (*id*. at 103:19-115:10, Appx. 1900-1903, 119:5-127:7, Appx. 1904-1906, 129:5-140:14, Appx. 1906-1909).

88.     Mr. Dondero retained Alan Johnson as an executive compensation expert. Mr. Johnson has experience advising boards, compensation committees, and other parties on issues concerning loan forgiveness transactions. Based on his expertise, Mr. Johnson would very likely concur that Ms. Dondero was not competent to enter into the Alleged Agreements on behalf of Highland. Ex. 101 at 12:3-73:17, Appx. 1961-1976.

89.     The Alleged Agreements were not authorized under the LP Agreement. Dugaboy, the Limited Partner of HCMLP, was not authorized to negotiate and enter into binding agreements on behalf of HCMLP under the *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (the "LP Agreement"). Ex. 2 (Exhibit 4), Appx. 57-93.     Specifically, pursuant to the LP Agreement, the Limited Partners only have authority to approve agreements for compensation, not to execute them. *See id.* at Art. 3.10(a).

Moreover, (a) all notices to Limited Partners have to be in writing, *see id.* at Art. 6.2, and (b) any agreement between HCMLP and the General Partner or its Affiliates to render services for HCMLP must be fair, *see id.* at Art. 4.1(e)(ii). The execution of the Alleged Agreements violates the LP Agreement in several ways because (a) Dugaboy was not authorized to enter into it on behalf of HCMLP, (b) the Alleged Agreements were not in writing, and (c) the Alleged Agreements were not fair by any objective standard. *See infra* ¶¶ 91-94.

90. <u>The Alleged Agreements were kept secret and were never disclosed</u>. The Alleged Agreements were never disclosed:

- Other than Mr. and Ms. Dondero, no one participated in the discussions that led to the 2016 Alleged Agreement. Ex. 210 at 27:19-21 Appx. 4863;

- Ms. Dondero and Dugaboy have admitted that prior to January 1, 2021, neither ever disclosed the existence or terms of the 2016 Alleged Agreement to *anyone* other than Mr. Dondero, including PwC, Mr. Waterhouse, or Mark Okada. Ex. 210 at 25:6-22, Appx. 4861, 27:22-28:4, Appx. 4863-4864, and

- HCMFA has admitted that prior to February 1, 2021, it never disclosed the existence or terms of the Alleged Agreements to PwC, Mr. Okada, the Bankruptcy Court, or any creditor of Highland, including in connection with any objection to the Plan or Disclosure Statement. Ex. 220 (Responses to RFA Nos. 7-12, 15-21), Appx. 5018).

91. <u>No Document Exists that Reflects the Existence or Terms of the Alleged</u> <u>Agreements</u>. No document was created prior to the Adversary Proceeding that memorializes or reflects the existence or terms of the Alleged Agreements:

- Neither Dugaboy nor Ms. Dondero is aware of anything in writing that identifies the existence or terms of the Alleged Agreements. Ex. 210 at 25:23-27:18, Appx. 4861-4863.

- HCMFA has admitted that the terms or existence of the Alleged Agreements were never reduced to writing. Ex 220 (Responses to RFA Nos. 13-14), Appx. 5019.

27

92.     <u>Even if the Alleged Agreements existed, they are unenforceable for lack of consideration</u>. Mr. Dondero is the founder of Highland and Highland was the platform he used to support his other businesses, including the HCMFA and the Corporate Obligors from the Main Notes Litigation. No reasonable trier of fact could conclude that Highland (a) needed to enter into the Alleged Agreements to retain or motivate Mr. Dondero or (b) that Highland received anything of value in exchange for agreeing to forgive over $6.3 million in valid promissory notes if either (i) Mr. Dondero sold one of the three portfolio companies at a dollar above cost or (ii) the portfolio companies were sold by a third party. Yet, according to Ms. Dondero, "motivating" Mr. Dondero is all Highland received. *See, e.g.*, Ex. 100 at 221:2-225:7, Appx. 1929-1930.

93.     Indeed, Ms. Dondero admitted that she did not know, and had no reason to expect, that Highland would benefit from the sale of the portfolio companies by a third party. She also acknowledged that (a) Highland would not benefit from the Alleged Agreements if a third party sold the portfolio companies at less than cost and (b) the Notes would all be forgiven even if a third party sold the portfolio companies at a price "substantially below cost." Ex. 100 at 201:24-203:11, Appx. 1924-1925, 227:17-229:14, Appx. 1931.

94.     <u>Mr. Dondero fixed the terms of the Alleged Agreements without negotiation</u>. No aspect of the Alleged Agreements was the subject of negotiation. Indeed, the undisputed facts show that Ms. Dondero never (i) made a counterproposal; (ii) negotiated any aspect of the 2016 Alleged Agreement; (iii) asked Mr. Dondero how he selected the portfolio companies; (iv) inquired as to whether Mr. Dondero already had a duty to maximize value; (v) rejected any aspect of Mr. Dondero's alleged proposal; or (vi) rejected or pushed back on Mr. Dondero's proposal that the Pre-2019 Notes would be forgiven if any of the portfolio companies

were sold by a third party.  *See* Ex. 210 at 24:8-18, Appx. 4860; Ex. 100 at 194:16-19, Appx. 1923, 195:14-199:15, Appx. 1923-1924.

95.     <u>Highland did not have a "practice" of forgiving loans</u>.  HCMFA contends that the use of "forgivable loans" was a "practice that was standard at HCMLP and in the industry." Ex. 234 ¶ 41. This is demonstrably false.

96.     Mr. Dondero has admitted that Highland disclosed to its auditors all loans of a material amount that Highland ever forgave.  Ex. 98 at 426:8-427:15, Appx. 1777.  During his deposition, Mr. Johnson, Mr. Dondero's executive compensation expert, reviewed Highland's audited financial statements for each year from 2008 through 2018 (Ex. 101 at 119:14-189:21, Appx. 1988-2005) and concluded that (a) Highland has not forgiven a loan to anyone in the world since 2009, (b) the largest loan Highland has forgiven since 2008 was $500,000, (c) Highland has not forgiven any loan to Mr. Dondero since at least 2008, and (d) since at least 2008, Highland has never forgiven in whole or in part any loan that it extended to any affiliate.  *Id.* at 189:24-192:10, Appx. 2005-2006. *See also* Ex. 98 at 422:18-428:14, Appx. 1776-1778.

97.     <u>Mr. Dondero's contention that he entered into the 2014 Alleged Agreement contradicts HCMFA's Answer and was contrived at the last second</u>.  Despite (a) having litigated the circumstances concerning the Alleged Agreement Defense for over a year in the Main Notes Litigation, and (b) reviewing and authorizing HCMFA's Answer before it was filed, it was only under questioning that Mr. Dondero and his sister realized that Ms. Dondero had not yet been appointed the Dugaboy trustee at the time the 2014 Alleged Agreement was allegedly entered into so Mr. Dondero was forced to change his tale again and contend that he entered into that 2014 Alleged Agreement with himself.

98.     <u>HCMFA paid almost $4 million dollars against the obligations due under the Pre-2019 Notes</u>.  Between May 2019 and December 2021, HCMFA made five (5) separate payments in the aggregate amount of $2,410,477.45 that were applied first against accrued but unpaid interest, and then against principal, due under the 2014 Note.[25]  Between September 2016 and December 2021, HCMFA made three (3) separate payments in the aggregate amount of $1,487,336.87 that were applied first against accrued but unpaid interest, and then against principal, due under the 2016 Note.  Ex. 219, Appx. 5005-5007.  Making interest and principal payments of almost $4 million against notes with an aggregate principal amount of $6.3 million is inconsistent with the entry of Alleged Agreements allegedly entered into for the purpose of compensating and incentivizing Mr. Dondero.

99.     <u>HCMFA paid off other notes in full but never explains why it did so or why those notes were not subject to an Alleged Agreement</u>.  In addition to the Pre-2019 Notes, and the Notes at issue in the First HCMFA Action, HCMFA issued at least three other notes to Highland in exchange for loans (collectively, the "<u>Paid Off Notes</u>").  Prior to the Petition Date, HCMFA paid all principal and interest due under the Paid Off Notes.  Second Klos Dec. ¶ 9.  HCMFA offers no explanation for why the Paid Off Notes were not subject to an Alleged Agreement or, if they were, why HCMFA voluntarily paid them off in full.

100.    <u>HCMFA's expert has never advised a company to forgive an affiliate loan for the purpose of compensating an executive</u>.  Mr. Johnson, HCMFA's compensation expert, admitted that (i) he has never advised a company to forgive an affiliate loan for the purpose of compensating an executive, (ii) nor is he aware of any company that has ever done so.  *See* Ex. 240, at 20:6-18, Appx. 5236.

---

[25] There were three *de minimus* exceptions to this treatment. *See supra*, n. 16.

### 2. **Other Defenses: Waiver, Estoppel, Failure of Consideration, Prepayment**

101. HCMFA also pleads the defenses of (a) waiver, (b) estoppel, (c) lack of consideration, (d) prepayment, and (e) ambiguity. *See* Ex. 234 ¶¶ 42-43.

102. Mr. Dondero, HCMFA's 30(b)(6) witness, could not identify any relevant facts to support HCMFA's affirmative defenses of waiver (*see* Ex. 215 at 44:18-45:14, Appx. 4944-4945), estoppel (*id.* at 45:20-46:10, Appx. 4945-4946), lack of consideration (*id.* at 47:7-25, Appx. 4947), or prepayment (*id.* at 48:2-10, Appx. 4948). Mr. Dondero also could not identify a material provision of either of the Pre-2019 Notes that he believed was ambiguous. *Id.* at 20:9-23, Appx. 4920, 24:19-25:11, Appx. 4924-4925.[26] Indeed, there is undisputed evidence contradicting these purported defenses. *See, e.g.*, Ex. 217, Appx. 4989-4990 (Acknowledgement Letter where HCMFA admits that loans from Highland were outstanding and payable on demand); Ex. 220, Appx. 5017 (responses to RFAs 1 through 4 in which HCMFA admits to tendering the Pre-2019 Notes in exchange for loans from Highland equal to the principal amount of the Pre-2019 Notes).

## III. **ARGUMENT**

### A. **Legal Standard**

### 1. **Summary Judgment Standard**

103. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. 56(c); *see also Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006) ("[S]ummary judgment is proper when the pleadings, depositions, answers to

---

[26] Even if the Court determined that a material provision of the Pre-2019 Notes was ambiguous, HCMFA should be estopped from evading liability for the loans it received from Plaintiff on that basis because Mr. Dondero has admitted that (a) Highland's accounting group prepared the Pre-2019 Notes; (b) he controlled Highland at all relevant times, and (c) he did not read the Pre-2019 Notes before signing them so he could not have relied on any such ambiguity at the time he executed the Notes. Ex. 215 at 19:24-20:2, Appx. 4919-4920.

31

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (quoting Fed. R. Civ. P. 56(c)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999). The moving party meets its initial burden of showing there is no genuine issue for trial by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990); *see also In re Magna Cum Latte, Inc.*, 07-31814, 2007 WL 3231633, at *3 (Bankr. S.D. Tex. Oct. 30, 2007) ("A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact.").

104.    "If the moving party carries [their] initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of genuine issue of material fact." *Latimer*, 919 F.3d at 303; *see also Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994) ("To withstand a properly supported motion for summary judgment, the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial."). "This showing requires more than some metaphysical doubt as to the material facts." *Latimer*, 919 F.3d at 303 (internal quotations omitted); *see also Hall v. Branch Banking*, No. H-13-328, 2014 WL 12539728, at *1 (S.D.Tex. Apr. 30, 2014) ("[T]he nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment."); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (The nonmovant's burden cannot be

32

satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.") (internal quotations omitted).

105. Thus, "[w]here critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton*, 168 F.3d at 199; *see also Armstrong v. City of Dallas*, 997 F.2d 62, 66 n 12 (5th Cir.1993) ("We no longer ask whether literally little evidence, *i.e.,* a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury.").

**2.** <u>**Summary Judgment Standard for Promissory Notes**</u>

106. "Ordinarily, suits on promissory notes provide 'fit grist for the summary judgment mill.'" *Resol. Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (quoting *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988)); *see also Looney v. Irvine Sensors Corp.*, CIV.A.309-CV-0840-G, 2010 WL 532431, at *2 (N.D. Tex. Feb. 15, 2010) ("Suits on promissory notes are typically well-suited for resolution via summary judgment.") To prevail on summary judgment for breach of a promissory note under Texas law, the movant need not prove all essential elements of a breach of contract, but only must establish (a) the note in question, (b) that the non-movant signed the note, (c) that the movant was the legal owner and holder thereof, and (d) that a certain balance was due and owing on the note. *See Resol. Tr. Corp.*, 41 F.3d at 1023; *Looney*, 2010 WL 532431, at *2-3; *Magna Cum Latte*, 2007 WL 3231633, at *15.

33

**B.** **Highland Is Entitled to Summary Judgment for HCMFA's Breach of the Pre-2019 Notes**

      **1.** **Highland Has Made a *Prima Facie* Case for Summary Judgment**

      107.    Highland has made its *prima facie* case that it is entitled to summary judgment on HCMFA's breach of the Notes.

      108.    The Pre-2019 Notes are: (a) valid, (b) signed by HCMFA and in Highland's favor, (Second Klos Dec. ¶¶ 4-5, Exhibit A, Exhibit B), and (c) as of May 27, 2022, after giving effect to the Payments, the unpaid principal and accrued interest due under the 2014 Note is $2,151,130.84, and the unpaid principal and accrued interest due under the 2016 Note is $1,001,238.06, *id.* ¶ 18.

      109.    HCMFA breached its obligations under the Pre-2019 Notes by failing to pay Highland all amounts due and owing upon Highland's demand.

      110.    Highland has been damaged by HCMFA's breach in amounts that are set forth above but which (a) continue to increase daily, and (b) which do not include a calculation of collection costs and attorneys' fees.[27]

      111.    Accordingly, Highland has made out its *prima facie* case for summary judgment that HCMFA has breached the Pre-2019 Notes. *See Resol. Tr. Corp.*, 41 F.3d at 1023 (holding that where affidavit "describes the date of execution, maker, payee, principal amount, balance due, amount of accrued interest owed, and the date of default for each of the two promissory notes," movant "presented a prima facie case of default on the notes."); *Looney*, 2010 WL 532431, at *2-3 (where movant "has attached a copy of the note … to a sworn affidavit in which he states that the photocopy is a true and correct copy of the note, that he is the owner and

---

[27] Plaintiff seeks to add to its damages accrued and unpaid interest, and Plaintiff's costs of collection, including reasonable attorneys' fees. Plaintiff respectfully requests an opportunity to conduct a final damage calculation if the Court fully grants the Motion.

holder of the note, and that there is a balance due on the note … [movant] has made a prima facie case that he is entitled to summary judgment on the note.")

### 2. HCMFA Fails to Rebut Highland's *Prima Facie* Case

112. HCMFA cannot rebut Highland's *prima facie* case for breach of the Pre-2019 Notes because there is no credible evidence to support any of its affirmative defenses.

113. HCMFA fails to show there is any genuine issue of material fact to support its Alleged Agreement Defense because there is a complete absence of evidence in support of this defense.

114. First, the testimony of Mr. Dondero and his sister contradicts HCMFA's contentions in its Answer concerning who entered into the 2014 Alleged Agreement on behalf of Highland. (*See supra* ¶¶ 79-83).

115. Second, without exception, the admissible and overwhelming evidence proves that HCMFA and Mr. Dondero voluntarily acted in ways that contradict the existence of the Alleged Agreements: (a) Mr. Dondero sold MGM stock in November 2019—an alleged "condition subsequent" under the Alleged Agreements—but failed to declare either of the Pre-2019 Notes forgiven, and otherwise remained silent about the Alleged Agreements, (*see supra* ¶¶ 85-86); (b) Ms. Dondero, the alleged counter-party to the 2016 Alleged Agreement, never saw a note signed by Mr. Dondero or any affiliate of Highland and was not competent to enter into the 2016 Alleged Agreement (*see supra* ¶¶ 87-88); (c) the existence or terms of the Alleged Agreements were never disclosed by HCMFA, Dugaboy, or Ms. Dondero to anyone, including PwC, Mr. Waterhouse, Mr. Okada or the Bankruptcy Court, (*see supra* ¶ 90); (d) no document exists memorializing or otherwise reflecting the existence or the terms of the Alleged Agreements, (*see supra* ¶ 91); (e) HCMFA told the Retail Board of the obligations due under the Pre-2019 Notes (*see supra* ¶¶ 45-57); (f) the Pre-2019 Notes were carried as liabilities on HCMFA's balance

35

sheet and as assets on Plaintiff's balance sheet, without discount or disclosure of the Alleged Agreements (*see supra* ¶¶ 29-44, 51, 55, 58-64); (g) there is no history of loans being forgiven at Highland, (*see supra* ¶ 95-96, 100); (h) HCMFA needed two attempts before finally deciding on the person who entered into the 2014 Alleged Agreement on behalf of Plaintiff (*see supra* ¶¶ 79-83); (i) HCMFA paid almost $4 million to Plaintiff that was applied to accrued but unpaid principal and interest due under the Pre-2019 Notes (*see supra* ¶ 98); (j) HCMFA offers no explanation for why the Paid Off Notes were not subject to an Alleged Agreement or, if they were, why HCMFA paid off all interest and principal in full (*see supra* ¶ 99); and (k) Dugaboy was not authorized to enter into the Alleged Agreements under the LP Agreement, and the Alleged Agreements otherwise violated the LP Agreement because they were not in writing and were not objectively fair or reasonable (*see* supra ¶ 89).

116.    Accordingly, there is a complete absence of ***any*** credible evidence supporting the existence of the Alleged Agreements, and a mountain of evidence to show the existence, validity, and enforceability of the Pre-2019 Notes.[28] Summary judgment is, therefore, warranted with respect to HCMFA's breach of the Pre-2019 Notes. *See Magna*, 2007 WL 3231633, at *16 (granting summary judgment with respect to breach of promissory note where the plaintiff submitted an affidavit setting forth the principal, past due interest, and other charges due under the notes, and rejecting defendants' assertion that they are discharged from debt obligations after certain terms were altered, finding "[t]here is no evidence that any agreement was altered."); *In re Heritage Org., L.L.C.*, 354 B.R. 407, 431–32 (Bankr. N.D. Tex. 2006) (finding subsequent

---

[28] Indeed, Mr. Johnson, HCMFA's compensation expert, testified that he has never advised a company to forgive a loan made to a corporate affiliate for purposes of compensating an executive, nor is he aware of any company that has ever done so. *See supra* ¶ 100.

oral agreement defense fails where "the summary judgment record does not support the existence of a subsequent agreement" to reduce amounts owed under a promissory note).

117. Even if the Alleged Agreements existed (which they do not), they would be unenforceable for lack of consideration. "A contract must also be based on valid consideration." *Scott v. Wollney*, No. 3:20-CV-2825-M-BH, 2021 WL 4202169, at * 7 (N.D. Tex Aug. 28, 2021). "Consideration is a bargained for exchange of promises that consists of benefits and detriments to the contracting parties." *Id.* "A contract that lacks consideration lacks mutuality of obligation and is unenforceable." *Id.* Highland received no benefit in exchange for agreeing to forgive over $6.3 million in valid promissory notes if either (a) Mr. Dondero sold one of the three portfolio companies at a dollar above cost or (b) the portfolio companies were sold by a third party.[29] *See supra* ¶¶ 92-94. Accordingly, no reasonable trier of fact could find that the Alleged Agreements were exchanged for consideration, and the Alleged Agreements would, therefore, be unenforceable. *See Wollney*, 2021 WL 4202169, at *9-10 (finding party "has not met his burden of identifying evidence of record sufficient to establish the existence of a valid contract" because he has "failed to demonstrate that there is a genuine issue of material fact as to whether the alleged contract is supported by consideration, which is an essential element of any valid contract.") (internal quotations omitted).

118. Accordingly, there is no genuine issue of material fact regarding the Alleged Agreement Defense or any other affirmative defense, and Plaintiff is, therefore, entitled to summary judgment on HCMFA's breach of its obligations under the Pre-2019 Notes.

---

[29] The fiction of the Alleged Agreements and their complete lack of consideration is highlighted by the absurd claim that the Pre-2019 Notes would be forgiven if any of the portfolio companies were sold by a "third party" for any amount. A "third party" controlled sale could happen only after Mr. Dondero's defenestration, and that was not a possibility until the bankruptcy. Moreover, Mr. Dondero was defenestrated because of accusations of his wrong doing and alleged damage to Highland. Highland receives no consideration whatsoever for rewarding Mr. Dondero for his alleged bad acts.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court (i) grant its Motion, (ii) hold HCMFA liable for (a) breach of contract and (b) turnover for all amounts due under the Pre-2019 Notes, including the costs of collection and reasonable attorneys' fees in an amount to be determined and (iii) grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:45802.9 36027/003

Dated: May 27, 2022          **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

39

# EXHIBIT A

1

## PARTIES, WITNESSES, AND DEFINITIONS

1.      "Corporate Obligors" refers to HCMFA, NexPoint, HCMS, and HCRE in their capacities as makers under their respective Notes.

2.      "HCMFA" refers to Highland Capital Management Advisors, L.P.  HCMFA is an entity that provides investment advisory services to certain retail funds. Ex. 105 at 32:17-23. HCMFA is directly or indirectly owned and controlled by Mr. Dondero. Ex. 96 at 228:11-15.

3.      "Lead District Court Note Action" refers to Case No. 21-881, the lead District Court case overseeing the Main Notes Litigation and the Second HCMFA Notes Action.

4.      "NexPoint" refers to NexPoint Advisors, L.P.  NexPoint is an entity that provides investment advisory services to certain retail funds. Ex. 105 at 32:17-23.  HCMFA is directly or indirectly owned and controlled by Mr. Dondero. Ex. 96 at 228:16-19.

5.      "HCRE" refers to HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC), and is an entity that is directly or indirectly owned by Mr. Dondero. Ex. 96 at 228:20-23.

6.      "HCMS" refers to Highland Capital Management Services, Inc., and is an entity that is directly or indirectly owned or controlled by Mr. Dondero. Ex. 96 at 228:24-229:4.

7.      "Main Notes Defendants" refers to the five defendants in the Main Notes Litigation: (i) James Dondero, (ii) HCMFA, (iii) NexPoint, (iv) HCRE, and (v) HCMS.

8.      "Main Notes Litigation" refers to the five adversary proceedings commenced against the Main Note Defendants for breach of their respective obligations under certain notes. *See* Adv. Proc. Nos. 21-03003-sgj, 21-03004-sgj, 21-03005-sgj, 21-03006-sgj, 21-03007-sgj.

9.      "Mr. Dondero" refers to an individual named James Dondero.  Mr. Dondero is the founder and former president and Chief Executive Officer of Highland.  Ex. 96 at 248:3-6.  Mr. Dondero served as Highland's president from 1994 until January 9, 2020. Ex. 98 at 291:6-292:16.

1

At all relevant times, Mr. Dondero also served as President of HCMFA and directly or indirectly owned or controlled each of the Corporate Obligors.  Ex. 37; Ex. 96 at 228:6-229.

10.    "Ms. Dondero" refers to an individual named Nancy Dondero.  Ms. Dondero is Mr. Dondero's sister.  At Mr. Dondero's request, Ms. Dondero became the sole Trustee of Dugaboy in October 2015 and has served in that capacity since that time.  Ex. 96 at 174:21-25; Ex. 100 at 166:19-169:5.

11.    "Mr. Norris" refers to an individual named Dustin Norris.  Mr. Norris has been an officer of HCMFA since 2012, and currently serves as the Executive Vice President of HCMFA.  Ex. 35; Ex. 192 at 18:11-25.

12.    "Mr. Post" refers to an individual named Jason Post. Mr. Post was employed by Highland in 2018 and 2019, and then became an employee of HCMFA and served as the Chief Compliance Officer for each of the Advisors.  Ex. 105 at 184:13-185:3; Ex. 192 at 32:6-33:25.

13.    "Mr. Sauter" refers to an individual named Dennis C. Sauter.  Mr. Sauter served as Highland's general counsel of real estate from approximately February 2020 until April 2021, and has served as the general counsel of NexPoint from April 2021 to the present.  Ex. 193 at: 7:16-9:12.

14.    "Ms. Thedford" refers to an individual named Lauren Thedford.  Ms. Thedford is an attorney who was previously employed by Highland while simultaneously serving as an officer of HCMFA and NexPoint, holding the title of Secretary.  Ms. Thedford also served as an officer of the retail funds managed by the Advisors until early 2021.  Ex. 35; Ex. 37; Ex. 105 at 172:10-173:25.

15.    "Mr. Waterhouse" refers to an individual named Frank Waterhouse.  Mr. Waterhouse is a Certified Public Accountant who joined Highland Capital Management, L.P. in

2

2006 and served as Highland's Chief Financial Officer ("CFO") on a continuous basis from approximately 2011 or 2012 until early 2021. While serving as Highland's CFO, Mr. Waterhouse simultaneously served as (1) an officer of HCMFA, NexPoint, and HCMS, holding the title of Treasurer and (2) Principal Executive Officer of certain retail funds managed by the Advisors. As Treasurer and Principal Executive Officer of these entities, Mr. Waterhouse was responsible for managing the Advisor's accounting and finance functions. Ex. 35; Ex. 37; Ex. 105 at 18:6-15, 18:23-19:6, 21:15-17, 23:5-20, 25:17-26:8, 27:17-28:16, 29:2-10, 30:9-31:6, 34:12-35:19, 38:20-39:5.

16. "PwC" refers to Pricewaterhouse Coopers, firm that served as Highland's outside auditors from 2003 through at least June 3, 2019. Ex. 34; Exs. 63-66; Exs. 69-72; Ex. 87 at 9 (Item 26b.1).

17. "Second Klos Dec." refers to the *Declaration of David Klos in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment*, filed simultaneously with the Motion.

DOCS_NY:45802.9 36027/003