# EXHIBIT 231

Appx. 05049



May 21, 2015

PricewaterhouseCoopers LLP
2001 Ross Avenue, Suite 1800
Dallas, TX 75201

We are providing this letter in connection with your audit of the consolidated financial statements for Highland Capital Management, L.P. and its subsidiaries (Appendix 1) (collectively the "Partnership") as of December 31, 2014 (hereinafter referred to as the "balance sheet date") and for the year then ended (hereinafter referred to as the "period"), (hereinafter collectively referred to as the "consolidated financial statements"), for the purpose of expressing an opinion as to whether such consolidated financial statements present fairly, in all material respects, the financial position, results of operations, changes in partners' capital and of cash flows of the Partnership in conformity with accounting principles generally accepted in the United States of America. We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter of May 14, 2015, for the preparation and fair presentation in the consolidated financial statements of financial position, results of operations, changes in partners' capital and of cash flows in conformity with accounting principles generally accepted in the United States of America, including the appropriate selection of accounting policies.

Certain representations in this letter are described as being limited to those matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would have been changed or influenced by the omission or misstatement. Materiality used for purposes of this letter is $1,000,000.

We confirm, to the best of our knowledge and belief, as of May 21, 2015, the date of your report, the following representations made to you during your audit:

1.  The consolidated financial statements referred to above are fairly presented in conformity with accounting principles generally accepted in the United States of America (GAAP), and include all disclosures necessary for such fair presentation and disclosures otherwise required to be included therein by the laws and regulations to which the Partnership is subject. We have prepared the Partnership's consolidated financial statements on the basis that the Partnership is able to continue as a going concern, including to meet its obligations in the ordinary course of business, and we are not aware of any significant information to the contrary.

2.  We have made available to you:

    a.  All financial records and related data.

    b.  Unconditional access to persons within the entity from whom you have requested audit evidence.

    c.  All minutes of the meetings of committees or other governing bodies applicable to the Partnership, including but not limited to, investors, Partners and committees of Partners, including summaries of actions of recent meetings for which minutes have not yet been prepared. The most recent meetings held were: Pricing Committee, May 11, 2015.

    d. Partnership agreements, Memoranda and Articles of Association, Confidential Offering Memoranda, amendments thereto (individually or collectively referred to hereinafter as the "Governing Documents"), and all other agreements to which the Partnership is subject.

    e. Contracts or other agreements with the Partnership's service providers.

    f. Reports, findings, recommendations and communications (whether written or oral) from specialists or professional advisors engaged to review investments, systems, processes, operations, or compliance programs of the Partnership that are material to the Partnership individually or in the aggregate.

    g. Side letter arrangements, whether written or oral, with any investors entered into or cancelled during the period for which noncompliance would have a material effect on the Partnership's consolidated financial statements. These side letters are allowed under the terms of the Governing Documents.

3. We have appropriately reconciled our books and records (e.g., general ledger accounts) underlying the consolidated financial statements to their related supporting information (e.g., sub ledger or third-party data). All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the consolidated financial statements, as necessary. There were no material un-reconciled differences or material general ledger suspense account items that should have been adjusted or reclassified to another account balance. There were no material general ledger suspense account items written off to a balance sheet account, which should have been written off to an income statement account and vice versa. All consolidating entries have been properly recorded. All intra-entity accounts have been eliminated or appropriately measured and considered for disclosure in the consolidated financial statements.

4. There have been no communications from regulatory agencies concerning noncompliance with or deficiencies in financial reporting practices.

5. There are no material transactions, agreements or accounts that have not been properly recorded in the accounting records underlying the consolidated financial statements.

6. The effects of the out of period adjustments summarized in the accompanying schedule are immaterial, both individually and in the aggregate, to the consolidated financial statements taken as a whole.

7. We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter of May 14, 2015, for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error and we are not aware of any deficiencies in the design or operation of internal control over financial reporting.

8. We acknowledge our responsibility for the design and implementation of programs and controls to provide reasonable assurance that fraud is prevented and detected.

9. We have discussed with you the results of our assessment of the risk that the consolidated financial statements may be materially misstated as a result of fraud and we have no knowledge of any fraud or suspected fraud affecting the Partnership involving:

    a. Management,

2

     b. Employees who have significant roles in internal control over financial reporting, or

     c. Others where the fraud could have a material effect on the consolidated financial statements.

10. We have no knowledge of any allegations of fraud or suspected fraud affecting the Partnership received in communications from employees, former employees, analysts, regulators, short sellers, or others, except as you are aware.

     (As to items 8, 9 and 10, we understand the term "fraud" to mean those matters described in Auditing Standards No. 99)

11. There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency.

12. The Partnership has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities. We have no plans or intentions to liquidate the Partnership or to cease operations.

13. The following, if material, have been properly recorded or disclosed in the consolidated financial statements:

     a. All pertinent rights and privileges of both general partner and limited partner interests in the Partnership.

     b. Relationships and transactions with related-parties, as described in Accounting Standards Codification (ASC) 850, *Related Party Disclosures*, including sales, purchases, loans, transfers, leasing arrangements, and guarantees, and amounts receivable from or payable to related parties.

     c. Guarantees, whether written or oral, under which the Partnership is contingently liable.

     d. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with ASC 275, *Risks and Uncertainties*, 275-10-50. (Significant estimates are estimates at the balance sheet date that could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which events could occur that would significantly disrupt normal finances within the next year.)

     e. Commitments to purchase or sell financial instruments, commitments on certain debt instruments such as revolving credit facilities and obligations to fund capital calls.

     f. Transactions made on margin or selling short.

     g. Fee income and expenses associated with stock lending and borrowing arrangements.

     h. Transactions made in foreign currencies.

     i. All financial instruments, including those with off-balance-sheet risk (including, but not limited to, swaps, forwards and futures), as required under GAAP. This includes the following information with respect to the off-balance-sheet risks and the concentrations of credit risk:

       a. The extent, nature, and terms of financial instruments with off-balance-sheet risk.

3

D-HCMFA2-016710

**Appx. 05052**

      b. The amount of credit risk of financial instruments with off-balance-sheet risk and information about the collateral supporting such financial instruments.

      j. Each significant concentration of credit risk arising from all financial instruments, and information about the collateral supporting such financial instruments, whether from an individual counterparty/prime broker or group of counterparties/prime brokers in accordance with ASC 825, Financial Instruments and ASC 815, Derivatives and Hedging (ASC 815), 815-10-65.

14. The Partnership has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, except as disclosed in the consolidated financial statements.

15. The Partnership has complied with all aspects of contractual agreements that would have a material effect on the consolidated financial statements in the event of noncompliance.

16. Receivables recorded in the consolidated financial statements represent bona fide claims against debtors for sales or other charges arising on or before the balance sheet dates and are not subject to discount except for normal cash discounts. All receivables have been appropriately reduced to their estimated net realizable value.

17. All liabilities of the Partnership of which we are aware are included in the consolidated financial statements at the balance sheet dates. There are no other liabilities or gain or loss contingencies that are required to be accrued or disclosed by ASC 450, *Contingencies*, and no unasserted claims or assessments that our legal counsel has advised us are probable of assertion and required to be disclosed in accordance with that Topic.

18. We are responsible for all significant estimates and judgments affecting the consolidated financial statements. Significant estimates and judgments and their underlying assumptions, methods, procedures and the source and reliability of supporting data are reasonable and based on applicable guidance, are completely and appropriately disclosed in the consolidated financial statements, and appropriately reflect management's intent and ability to carry out specific courses of action, where relevant. The procedures and methods utilized in developing assumptions, estimates and judgments are appropriate and have been consistently applied in the periods presented. There have been no subsequent events which would require the adjustment of any significant estimate and related disclosures.

19. We have notified you of (i) our current or planned offerings of securities on a regulated market in a non-U.S. country or (ii) when we have provided or plan to provide audited financial statements to a non-U.S. regulator or government in connection with our access to its public capital markets, whether or not we include or refer to your report or include reference to your Firm.

20. With respect to Partnership investments:

      a. Portfolio investments included in the Partnership's consolidated financial statements have been stated at values as determined by management in accordance with the valuation methods set forth in the Partnership's policies and procedures. Such policies are in accordance with GAAP (e.g., fair value of an investment is that price which would be received to sell or paid to transfer, respectively, those assets or liabilities in orderly transactions between market participants).

4

D-HCMFA2-016711

b. The valuation policies used for securities or investments whose fair values have been estimated by management are appropriate and have been consistently applied and documented. The policies for fair value measurement are appropriately disclosed in the Partnership's consolidated financial statements. The methods, assumptions, and inputs used are appropriate and result in a fair value appropriate for financial statement measurement and disclosure purposes. As of the balance sheet date, the investments for which fair value were determined by estimates made by the Partnership's management are appropriately disclosed in the Partnership's consolidated financial statements.

c. We have informed you of any securities as of December 31, 2014 which are restricted in any way as to their resale or are otherwise not marketable, and have appropriately considered such restrictions in our fair value determinations.

d. The cost of portfolio securities was determined on the basis of FIFO.

e. All Partnership investments made during the year ended December 31, 2014 were in accordance with the investment policies of the Partnership.

21. The Partnership has not made any commitments during the year as underwriter, nor did it engage in joint trading or a joint investment account.

22. All material expenses charged to the Partnership are permissible under the terms of the Governing Documents. All directed brokerage and other expense reimbursement agreements have been properly disclosed in the consolidated financial statements.

23. Partner capital balances, including the allocation of income, gains and losses and the calculation of management fees and performance fees/allocations have been properly calculated throughout the period in accordance with the Governing Documents, after giving consideration to the terms identified in each investor's subscription document. The methodology was consistently applied throughout the period and was correctly applied in the computation of contribution and withdrawal transactions during the period.

24. The Partnership has netted certain balances within the consolidated financial statements. All netting has been performed in accordance with the specific requirements of ASC 815-10-45-5 and ASC 210, Balance Sheet, 210-20-45-11 through 45-13, as appropriate.

25. The Partnership has properly recorded, classified and disclosed the prime broker margin collateral requirements in the consolidated financial statements in accordance with ASC 860, Transfers and Servicing, as to the recognition and reclassification of collateral and disclosures relating to securitization transactions and collateral.

26. The Partnership is not an "SEC registrant" as that term is used in ASC 480, Distinguishing Liabilities from Equity, 480-10-65-1. The Partnership has properly classified and disclosed as liabilities its mandatorily redeemable securities and other financial instruments (e.g., redemptions payable) that are within the scope of ASC 480-10-65, Effective Date, Disclosures, and Transition for Mandatorily Redeemable Financial Instruments of Certain Nonpublic Entities and Certain Mandatorily Redeemable Noncontrolling Interests, in the consolidated financial statements.

27. All cash and deposit accounts and all other properties and assets of the Partnership are included in the consolidated financial statements. Arrangements with financial institutions involving compensating balances or other arrangements involving restrictions on cash balances, lines of credit,

5

D-HCMFA2-016712

**Appx. 05054**

collateral posted or similar arrangements have been properly disclosed in the consolidated financial statements.

28. We consistently applied our policy regarding classification of cash and cash equivalents, which are short-term, highly liquid investments that are readily convertible to known amounts of cash and are so near their maturity that there is insignificant risk of changes in value due to interest rate or other credit risk changes.

29. All borrowings and financial obligations of the Partnership have been disclosed to you and are properly recorded and disclosed in the consolidated financial statements.

30. We evaluated all contracts and financial instruments to determine whether they meet the definition of a derivative under ASC 815, Derivatives and Hedging (ASC 815).

31. We classified as liabilities (or as assets in some circumstances) all mandatorily redeemable securities and other financial instruments (e.g., written put options, forward purchase contracts and warrants on mezzanine securities) in accordance with ASC 480, Distinguishing Liabilities from Equity.

32. The actuarial valuation of pension benefit obligations was determined using an acceptable methodology applied on a consistent basis and taking into account the individual characteristics of the plan and reasonable assumptions, including those for the discount rate, rate of return on plan assets, mortality rate and other demographic assumptions.

33. We accurately described the processes used by management to make investment decisions, including the target allocation percentages or range of percentages for each major category of plan assets, and to determine the overall expected long-term rate of return on assets.

34. The amounts of expected employer contributions to the benefit plan during the next fiscal year represent our best estimate.

35. We do not intend to compensate for the reduction of postretirement benefits by granting an increase in pension or other benefits.

36. We applied the recognition, disclosure and measurement date provisions of ASC 715, Compensation-Retirement Benefits (ASC 715). The resulting benefit asset represents the overfunded status of the plan, and accumulated other comprehensive income (AOCI) includes all previously unrecognized prior service costs and credits, net gains/losses and transition assets and obligations, net of taxes.

37. We measured and recognized all plan assets as of the plan's measurement date at fair value in accordance with ASC 715, Compensation- Retirement Benefits (ASC 715).

38. We assume responsibility for the findings of specialists. We did not give or cause any instructions to be given to specialists with respect to the values or amounts derived in an attempt to bias their work, and we are not aware of any matters that have had an impact on the independence or objectivity of the specialists. We adequately considered qualifications of the specialists in determining the amounts and disclosures used in the consolidated financial statements and underlying accounting records related to employee benefit plans and financial instruments.

39. We evaluated, recorded and disclosed in the consolidated financial statements transfers of financial assets to determine that control over the transferred financial assets has been surrendered and that all of the conditions in accordance with ASC 860-10-40-4 and 40-5 have been met to be accounted

D-HCMFA2-016713
**Appx. 05055**

for as a sale, including but not limited to (1) transactions involving qualifying special purpose entities to determine that all of the conditions in accordance with but not limited to ASC 860-40-15-3 have been met and (2) agreements to repurchase assets previously sold, including contingent removal of accounts provisions and clean-up calls.

40. The Partnership has properly disclosed in the current litigation summary letter provided by the Partnership's general counsel, all litigation or pending litigation that could materially impact the consolidated financial statements. With respect to the suit filed by UBS related to the Knox Warehouse in CDO Opportunity Master Fund LP, Management is unable to conclude on the impact to Highland Capital Management, L.P. Management and has recorded the potential liability in CDO Opportunity Master Fund LP (a Consolidated Fund).

41. We disclosed the fair values of financial assets and liabilities in the consolidated financial statements in accordance with ASC 825, Financial Instruments and ASC 820, even though the valuation of these assets and liabilities recorded in the consolidated financial statements are not subject to the fair value provisions of ASC 820.

42. We are responsible for all significant estimates and judgments affecting derivative financial instruments and commodity derivatives valuation. Significant estimates and judgments and their underlying assumptions, methods, procedures and the source and reliability of supporting data are reasonable and are disclosed in the consolidated financial statements. The procedures and methods utilized in developing assumptions, estimates and judgments are appropriate and have been consistently applied in the period presented.

43. We disclosed in the consolidated financial statements and advised you of all significant tax positions for which it is reasonably possible the amount of unrecognized tax benefit will either increase or decrease in the next twelve months. We recognized changes in recognition and measurement of uncertain tax positions in the period to which they relate, including the interim period, and disclosed in the consolidated financial statements all individually significant changes in uncertain tax positions, even if the net amount of all such changes was insignificant. We recognized and measured all uncertain tax positions in accordance with ASC 740.

44. We provided you with all information related to material significant income tax uncertainties of which we are aware could result in an ASC 740 liability. We also provided you with access to all opinions and analyses that relate to material positions we have taken regarding significant income tax matters that could result in an ASC 740 liability. The Partnership is currently under an IRS audit for the tax year 2008 and 2009. The IRS audit for the 2005 tax year was settled in 2014.

45. No contracts were executed outside of Texas or the U.S. on behalf of the Partnership during 2014.

46. We have no plans or intentions that may materially affect the consolidated funds' carrying value or classification of assets and liabilities. We have no plans or intentions to liquidate the consolidated funds or to cease operations.

47. We are responsible for the determination of the fair value of investments.

48. On April 14, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Credit Strategies Scheme") for the Highland Credit Strategies Funds that facilitates the winding-down of the investments of the Highland Credit Strategies Master Partnership and the distribution of its assets. A substantial majority of the investors consented to the plan of distribution as outlined in the Credit Strategies Scheme. The Credit Strategies Scheme became

7

D-HCMFA2-016714
**Appx. 05056**

effective as of May 1, 2011 and required a shift of capital among limited partners, resulting in a transfer among the Highland Credit Strategies Funds.

We have provided you with all documents governing the Credit Strategies Scheme that have an effect on the Highland Credit Strategies Funds. The consolidated financial statements appropriately reflect the actions required under the Credit Strategies Scheme and the related effects on the capital balances. The consolidated financial statements also include all applicable disclosure which we believe are required under US GAAP.

49. On July 15, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Crusader Scheme") for the Highland Crusader Funds that facilitates the winding-down of the investments of the Highland Crusader Master Partnership and the distribution of its assets. A substantial majority of the investors consented to the plan of distribution as outlined in the Crusader Scheme. The Crusader Scheme became effective as of August 1, 2011 and required a shift of capital among limited partners, resulting in a transfer amongst the Highland Crusader Funds.

We have provided you with all documents governing the Scheme that have an effect on the Highland Crusader Funds. The consolidated financial statements appropriately reflect the actions required under the Crusader Scheme and the related effects on the capital balances. The consolidated financial statements also include all applicable disclosure which we believe are required under US GAAP.

Additionally, with respect to the schedule of distributions set forth in the Crusader Scheme, we do not believe they meet the requirements under US GAAP to be recorded as withdrawal payables at the balance sheet date; however, we have made the appropriate disclosure of these scheduled distributions in the notes to the Highland Crusader Funds' financial statements.

50. Other than the litigation described in the Current Litigation Memo dated May 21, 2015 and disclosed in the consolidated financial statements, there is no other litigation that would materially impact the Partnership and the Fund's.

51. We identified all variable interests, determined whether each variable interest in an entity was a variable interest entity (VIE), consolidated the VIEs for which the Company was the primary beneficiary, considered reconsideration events and complied with the consolidated financial statement disclosure requirements, including those VIEs that were not consolidated, in accordance with the guidance of ASC 810, Consolidation (ASC 810), which was applicable to the period presented.

52. The Partnership, as general partner of limited partnerships (which are not subject to the consolidation guidance under the variable interest entity model), has evaluated consolidation in accordance with ASC 810-20-25-4 through 25-7, Evaluating Presumption of General Partner Control and has determined that the entities listed in Note 3 of the consolidated financial statements have been properly consolidated. For entities that have not been consolidated by the Partnership, as general partner, the Partnership has adequately overcome the presumption of consolidation by the general partner based on the guidance noted above.

53. The consolidated financial statements disclose all matters of which we are aware that are relevant to the Partnership's ability to continue as a going concern, including all significant conditions and events and management's plans. We have the intent and ability to take actions necessary for the Partnership to continue as a going concern and accordingly the Partnership's consolidated financial statements are prepared on a going concern basis. We made available to you all relevant information

8

on the Partnership's ability to continue as a going concern that could affect the consolidated financial statements. We derecognize liabilities if and only if it has been extinguished. A liability has been extinguished when the debtor pays the creditor and is relieved from its obligation or when the debtor has been legally released from being the primary obligor under the liability, either judicially or by the creditor.

54. We acknowledge responsibility for the presentation of the Supplemental Consolidating Balance Sheet, Supplemental Consolidating Statement of Income, Supplemental Unconsolidated Balance Sheet, and Supplemental Unconsolidated Statement of Income in accordance with US GAAP and we believe such information, including its form and content, is fairly presented in accordance with US GAAP. We have communicated to you all changes in measurement or presentation from those used in the prior period. We have informed you about any significant assumptions or interpretations underlying the measurement or presentation of the information.

9

To the best of our knowledge and belief, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the aforementioned consolidated financial statements.

_____

James Dondero, President

Highland Capital Management, L.P.

_____

Frank Waterhouse, Chief Financial Officer

Highland Capital Management, L.P.

10

D-HCMFA2-016717

Appx. 05059

### Appendix 1

Highland Crusader Offshore Partners, L.P. ("Crusader Master")

Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund")

Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master")

Highland Multi Strategy Credit Fund, L.P. ("Multi Strategy Master"), formerly Highland Credit Opportunities CDO, L.P. Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master")

Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder")

Canopy Timberlands, L.P.

Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore")

Highland Restoration Capital Partners, L.P. ("Restoration Onshore")

BB Votorantim, Highland Infastructure LLC ("BB Votorantim")

HCM Europe, Ltd. ("HCM Europe")

Highland Capital Special Allocation, LLC ("HCSA")

HFP GP, LLC

Highland Receivables Finance 1, LLC

Highland Capital Management (Singapore) Pte, Ltd.

Highland Capital Management Korea, Ltd.

HE Capital, LLC

De Kooning, Ltd.

Hirst, Ltd.

Hockney, Ltd.

Oldenburg, Ltd.

11

D-HCMFA2-016718
**Appx. 05060**

Penant Management, L.P.

Semence, LLC

SK Shareholder Service, LLC

Pollack, Ltd.

Warhol, Ltd.

HCREF-1 Holding Corp.

HCREF-X Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

Highland Employee Retention Assets, LLC

Highland Diversified Credit Fund, L.P.

Highland Select Equity Fund, L.P.

Highland Equity Partners, L.P.

Highland Equity Focus Fund, L.P.

Highland Merger Arbitrage Fund, L.P.

12

D-HCMFA2-016719
**Appx. 05061**

Summary of Out-of-Period Adjustments for Entities Consolidated by Highland Capital Management, L.P.

| *PRICEWATERHOUSECOOPERS* 🏢 | | Summary of Out-of-period Adjustments Recorded by Management |
|---|---|---|
| Client: | Highland Capital Management, L.P. | |
| Period: | 12/31/14 | [PwC Audit Section 6275] |

### Out-of-period Adjustments (1)

| WIP Ref. | Out-of-period Adj.# | Description | Net Investment Income | Real/Unreal Gain/Loss | Partners' Capital |
|---|---|---|---|---|---|
| | 1 | Crusader Offshore Partners | | | |
| | | Cr. Interest Income | (391,749) | | |
| | | Cr. Dividend Income | (803,409) | | |
| | | Cr. Other Expense | (212,124) | | |
| | | Dr. Partners' Capital | | | 1,407,283 |
| | | *To reflect the tax withholding true-up that should have been booked against income in the prior period.* | | | |
| | 2 | Multi-Strategy Credit Fund | | | |
| | | Cr. Net realized loss on investment transactions | | 829,031 | |
| | | Cr. Other expense | 2,765 | | |
| | | Dr. Partners' Capital | | | (831,796) |
| | | *To reflect the tax withholding true-up that should have been booked against the net impact in partners' capital resulting from operations* | | | |
| | | Total Out-of-period Adjustments - Pretax | (1,404,518) | 829,031 | 575,487 |

| Out-of-period Adjustments as a % of FS Amounts | FS Amount | % of FS Amount |
|---|---|---|
| Net Increase in Partners' Capital | 627,113,090 | -0.22% |

D-HCMFA2-016720
Appx. 05062

# EXHIBIT 232

Appx. 05063



May 19, 2017

PricewaterhouseCoopers LLP
**2001 Ross Avenue, Suite 1800**
**Dallas, TX 75201**

We are providing this letter in connection with your audit of the consolidated financial statements for Highland Capital Management, L.P. and its subsidiaries (Appendix 1) (collectively the "Partnership") as of December 31, 2016 (hereinafter referred to as the "balance sheet date") and for the year then ended (hereinafter referred to as the "period"), (hereinafter collectively referred to as the "consolidated financial statements"), for the purpose of expressing an opinion as to whether such consolidated financial statements present fairly, in all material respects, the financial position, results of operations, changes in partners' capital and of cash flows of the Partnership in conformity with accounting principles generally accepted in the United States of America. We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter of March 6, 2017 for the preparation and fair presentation in the consolidated financial statements of financial position, results of operations, changes in partners' capital and of cash flows in conformity with accounting principles generally accepted in the United States of America, including the appropriate selection of accounting policies.

Certain representations in this letter are described as being limited to those matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would have been changed or influenced by the omission or misstatement. Materiality used for purposes of this letter is $ 2,000,000

We confirm, to the best of our knowledge and belief, as of May 19, 2017, the date of your report, the following representations made to you during your audit:

1. The consolidated financial statements referred to above are fairly presented in conformity with accounting principles generally accepted in the United States of America (US GAAP), and include all disclosures necessary for such fair presentation and disclosures otherwise required to be included therein by the laws and regulations to which the Partnership is subject. We have prepared the Partnership's consolidated financial statements on the basis that the Partnership is able to continue as a going concern including to meet its obligations in the ordinary course of business, and we are not aware of any significant information to the contrary.

2. We have made available to you:

   a. All financial records and related data.

   b. Unconditional access to persons within the entity from whom you have requested audit evidence.

   c. All minutes of the meetings of committees or other governing bodies applicable to the Partnership, including but not limited to, investors, Partners, and committees of Partners including summaries of actions of recent meetings for which minutes have not yet been prepared. The most recent meetings held were Pricing Committee, May 13, 2016.

      d. Partnership agreements, Memoranda and Articles of Association, Confidential Offering Memoranda, and amendments thereto (individually or collectively referred to hereinafter as the "Governing Documents"), and all other agreements to which the Partnership is subject.

      e. Contracts or other agreements with the Partnership's service providers.

      f. All official written reports, findings, recommendations and communications from specialists or professional advisors engaged to review investments, systems, processes, operations, or compliance programs of the Partnership that are material to the Partnership, individual or in aggregate.

      g. All side letter arrangements, whether written or oral, with any investors entered into or cancelled during the period for which noncompliance would have a material effect on the Partnership's consolidated financial statements. These side letters are allowed under the terms of the Governing Documents.

3. We have appropriately reconciled our books and records (e.g., general ledger accounts) underlying the consolidated financial statements to their related supporting information (e.g., sub ledger or third-party data). All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the consolidated financial statements, as necessary. There were no material unreconciled differences or material general ledger suspense account items that should have been adjusted or reclassified to another account balance. There were no material general ledger suspense account items written off to a balance sheet account, which should have been written off to an income statement account and vice versa. All consolidating entries have been properly recorded. All intra-entity accounts have been eliminated or appropriately measured and considered for disclosure in the consolidated financial statements.

4. There have been no communications from regulatory agencies concerning noncompliance with or deficiencies in financial reporting practices.

5. There are no material transactions, agreements or accounts that have not been properly recorded in the accounting records underlying the consolidated financial statements.

6. We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter of March 6, 2017, for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error and we are not aware of any deficiencies in the design or operation of internal control over financial reporting.

7. We acknowledge our responsibility for the design and implementation of programs and controls to provide reasonable assurance that fraud is prevented and detected.

8. We have disclosed to you the results of our assessment of the risk that the consolidated financial statements may be materially misstated as a result of fraud and except with respect to the Partnership's allegations against Joshua Terry as disclosed in Highland Capital Management, L.P. v. Joshua Terry, Cause No. DC-16-11396 pending in the 162nd Judicial District of Dallas County, Texas (the "Terry Action"), we have no knowledge of any fraud or suspected fraud affecting the Partnership involving:

      a. Management,
      b. Employees who have significant roles in internal control over financial reporting, or

D-HCMFA2-016699

**Appx. 05065**

c. Others where the fraud could have a material effect on the consolidated financial statements.

9. Except as disclosed in the Terry Action, we have no knowledge of any allegations of fraud or suspected fraud affecting the Partnership received in communications from employees, former employees, analysts, regulators, short sellers, or others.

   (As to items 7, 8 and 9, we understand the term "fraud" to mean those matters described in AICPA AU-C 240.)

10. There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency.

11. The Partnership has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities. We have no plans or intentions to liquidate the Partnership or to cease operations.

12. We have disclosed to you the identity of the Partnership's related parties and all the related party relationships and transactions of which we are aware.

13. The following, if material, have been properly recorded or disclosed in the consolidated financial statements:

    a. All pertinent rights and privileges of both general partner and limited partner interests in the Partnership.

    b. Relationships and transactions with related-parties, as described in Accounting Standards Codification (ASC) 850, *Related Party Disclosures*, including sales, purchases, loans, transfers, leasing arrangements, and guarantees, and amounts receivable from or payable to related parties.

    c. Guarantees, whether written or oral, under which the Partnership is contingently liable.

    d. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with ASC 275, *Risks and Uncertainties*, 275-10-50. (Significant estimates are estimates at the balance sheet date that could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which events could occur that would significantly disrupt normal finances within the next year.)

    e. Commitments to purchase or sell financial instruments, commitments on certain debt instruments such as revolving credit facilities and obligations to fund capital calls.

    f. Transactions made on margin or selling short.

    g. Fee income and expenses associated with stock lending and borrowing arrangements.

    h. Transactions made in foreign currencies.

    i. All financial instruments, including those with off-balance-sheet risk (including, but not limited to, swaps, forwards and futures), as required under US GAAP. This includes the following information with respect to the off-balance-sheet risks and the concentrations of credit risk:

D-HCMFA2-016700

**Appx. 05066**

     a. The extent, nature, and terms of financial instruments with off-balance-sheet risk.

     b. The amount of credit risk of financial instruments with off-balance-sheet risk and information about the collateral supporting such financial instruments.

    j. Each significant concentration of credit risk arising from all financial instruments, and information about the collateral supporting such financial instruments, whether from an individual counterparty/prime broker or group of counterparties/prime brokers in accordance with ASC 825, Financial Instruments and ASC 815, Derivatives and Hedging (ASC 815), 815-10-65.

14. The Partnership has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, except as disclosed in the consolidated financial statements.

15. The Partnership has complied with all aspects of contractual agreements that would have a material effect on the consolidated financial statements in the event of noncompliance.

16. Receivables recorded in the consolidated financial statements represent bona fide claims against debtors for sales or other charges arising on or before the balance sheet date and are not subject to discount except for normal cash discounts. All receivables have been appropriately reduced to their estimated net realizable value.

17. All liabilities of the Partnership of which we are aware are included in the consolidated financial statements at the balance sheet date. There are no other liabilities or gain or loss contingencies that are required to be accrued or disclosed by ASC 450, *Contingencies*, and no unasserted claims or assessments that our legal counsel has advised us are probable of assertion and required to be disclosed in accordance with that Topic.

18. We are responsible for all significant estimates and judgments affecting the consolidated financial statements. Significant estimates and judgments and their underlying assumptions, methods, procedures and the source and reliability of supporting data are reasonable and based on applicable guidance, are completely and appropriately disclosed in the consolidated financial statements, and appropriately reflect management's intent and ability to carry out specific courses of action, where relevant. The procedures and methods utilized in developing assumptions, estimates and judgments are appropriate and have been consistently applied in the period presented. There have been no subsequent events which would require the adjustment of any significant estimate and related disclosures.

19. We have notified you of (i) our current or planned offerings of securities on a regulated market in a non-U.S. country or (ii) when we have provided or plan to provide audited consolidated financial statements to a non-U.S. regulator or government in connection with our access to its public capital markets, whether or not we include or refer to your report or include reference to your Firm.

20. With respect to Partnership investments:

    a. Portfolio investments included in the Partnership's consolidated financial statements have been stated at fair values as determined by management in accordance with the valuation methods set forth in the Partnership's policies and procedures. Such policies are in accordance with US GAAP (e.g., fair value of an investment is that price which would be received to sell or paid to transfer, respectively, those assets or liabilities in orderly transactions between market participants).

D-HCMFA2-016701
**Appx. 05067**

b. The valuation policies used for securities or investments whose fair values have been estimated by management are appropriate and have been consistently applied and documented. The policies for fair value measurement are appropriately disclosed in the Partnership's consolidated financial statements. The methods, assumptions, and inputs used are appropriate and result in a fair value appropriate for financial statement measurement and disclosure purposes. As of the balance sheet date, the investments for which fair value were determined by estimates made by the Partnership's management are appropriately disclosed in the Partnership's consolidated financial statements.

c. We have informed you of any securities as of December 31, 2016 which are restricted in any way as to their resale or are otherwise not marketable, and have appropriately considered such restrictions in our fair value determinations.

d. The cost of portfolio securities was determined on the basis of FIFO.

e. All Partnership investments made during the year ended December 31, 2016 were in accordance with the investment policies of the Partnership.

21. The Partnership has not made any commitments during the year as underwriter, nor did it engage in joint trading or a joint investment account.

22. All material expenses charged to the Partnership are permissible under the terms of the Governing Documents. All directed brokerage and other expense reimbursement agreements have been properly disclosed in the consolidated financial statements.

23. Partner capital balances, including the allocation of income, gains and losses and the calculation of management fees and performance fees/allocations have been properly calculated throughout the period in accordance with the Governing Documents, after giving consideration to the terms identified in each investor's subscription document. The methodology was consistently applied throughout the period and was correctly applied in the computation of contribution and withdrawal transactions during the period.

24. The Partnership has netted certain balances within the consolidated financial statements. All netting has been performed in accordance with the specific requirements of ASC 815-10-45-5 and ASC 210, Balance Sheet, 210-20-45-11 through 45-13, as appropriate.

25. The Partnership has properly recorded, classified and disclosed the prime broker margin collateral requirements in the consolidated financial statements in accordance with ASC 860, Transfers and Servicing, as to the recognition and reclassification of collateral and disclosures relating to securitization transactions and collateral.

26. The Partnership is not an "SEC registrant" as that term is used in ASC 480, Distinguishing Liabilities from Equity, 480-10-65-1. The Partnership has properly classified and disclosed as liabilities its mandatorily redeemable securities and other financial instruments (e.g., redemptions payable) that are within the scope of ASC 480-10-65, Effective Date, Disclosures, and Transition for Mandatorily Redeemable Financial Instruments of Certain Nonpublic Entities and Certain Mandatorily Redeemable Noncontrolling Interests, in the consolidated financial statements.

27. All cash and deposit accounts and all other properties and assets of the Partnership are included in the consolidated financial statements. Arrangements with financial institutions involving compensating balances or other arrangements involving restrictions on cash balances, lines of credit,

D-HCMFA2-016702

Appx. 05068

collateral posted or similar arrangements have been properly disclosed in the consolidated financial statements.

28. We consistently applied our policy regarding classification of cash and cash equivalents, which are short-term, highly liquid investments that are readily convertible to known amounts of cash and are so near their maturity that there is insignificant risk of changes in value due to interest rate or other credit risk changes.

29. All borrowings and financial obligations of the Partnership have been disclosed to you and are properly recorded and disclosed in the consolidated financial statements.

30. We evaluated all contracts and financial instruments to determine whether they meet the definition of a derivative under ASC 815, Derivatives and Hedging (ASC 815).

31. We classified as liabilities (or as assets in some circumstances) all mandatorily redeemable securities and other financial instruments (e.g., written put options, forward purchase contracts and warrants on mezzanine securities) in accordance with ASC 480, Distinguishing Liabilities from Equity.

32. The actuarial valuation of pension benefit obligations was determined using an acceptable methodology applied on a consistent basis and taking into account the individual characteristics of the plan and reasonable assumptions, including those for the discount rate, rate of return on plan assets, mortality rate and other demographic assumptions.

33. We accurately described the processes used by management to make investment decisions, including the target allocation percentages or range of percentages for each major category of plan assets, and to determine the overall expected long-term rate of return on assets.

34. The amounts of expected employer contributions to the benefit plan during the next fiscal year represent our best estimate.

35. We do not intend to compensate for the reduction of postretirement benefits by granting an increase in pension or other benefits.

36. We applied the recognition, disclosure and measurement date provisions of ASC 715, Compensation-Retirement Benefits (ASC 715). The resulting benefit asset represents the overfunded status of the plan, and accumulated other comprehensive income (AOCI) includes all previously unrecognized prior service costs and credits, net gains/losses and transition assets and obligations, net of taxes.

37. We measured and recognized all plan assets as of the plan's measurement date at fair value in accordance with ASC 715, Compensation- Retirement Benefits (ASC 715).

38. We assume responsibility for the findings of specialists. We did not give or cause any instructions to be given to specialists with respect to the values or amounts derived in an attempt to bias their work, and we are not aware of any matters that have had an impact on the independence or objectivity of the specialists. We adequately considered qualifications of the specialists in determining the amounts and disclosures used in the consolidated financial statements and underlying accounting records related to employee benefit plans and financial instruments.

39. We evaluated, recorded and disclosed in the consolidated financial statements transfers of financial assets to determine that control over the transferred financial assets has been surrendered and that all of the conditions in accordance with ASC 860-10-40-4 and 40-5 have been met to be accounted

for as a sale, including but not limited to (1) transactions involving qualifying special purpose entities to determine that all of the conditions in accordance with but not limited to ASC 860-40-15-3 have been met and (2) agreements to repurchase assets previously sold, including contingent removal of accounts provisions and clean-up calls.

40. The Partnership has properly disclosed in the current litigation summary letter provided by the Partnership's general counsel, all litigation or pending litigation that could materially impact the consolidated financial statements.

41. We disclosed the fair values of financial assets and liabilities in the consolidated financial statements in accordance with ASC 825, Financial Instruments and ASC 820, even though the valuation of these assets and liabilities recorded in the consolidated financial statements are not subject to the fair value provisions of ASC 820.

42. We are responsible for all significant estimates and judgments affecting derivative financial instruments and commodity derivatives valuation. Significant estimates and judgments and their underlying assumptions, methods, procedures and the source and reliability of supporting data are reasonable and are disclosed in the consolidated financial statements. The procedures and methods utilized in developing assumptions, estimates and judgments are appropriate and have been consistently applied in the period presented.

43. We disclosed in the consolidated financial statements and advised you of all significant tax positions for which it is reasonably possible the amount of unrecognized tax benefit will either increase or decrease in the next twelve months. We recognized changes in recognition and measurement of uncertain tax positions in the period to which they relate, including the interim period, and disclosed in the consolidated financial statements all individually significant changes in uncertain tax positions, even if the net amount of all such changes was insignificant. We recognized and measured all uncertain tax positions in accordance with ASC 740.

44. We provided you with all information related to material significant income tax uncertainties of which we are aware could result in an ASC 740 liability. We also provided you with access to all opinions and analyses that relate to material positions we have taken regarding significant income tax matters that could result in an ASC 740 liability.

45. No contracts were executed outside of Texas or the U.S. on behalf of the Partnership during 2016.

46. We have no plans or intentions that may materially affect the consolidated funds' carrying value or classification of assets and liabilities. We have no plans or intentions to liquidate the consolidated funds or to cease operations.

47. We are responsible for the determination of the fair value of investments.

48. Other than the litigation described in the Current Litigation Memo dated May 19, 2017 and disclosed in the consolidated financial statements, there is no other litigation that would materially impact the Partnership and the consolidated funds.

49. We identified all variable interests, determined whether each variable interest in an entity was a variable interest entity (VIE), consolidated the VIEs for which the Partnership was the primary beneficiary, considered reconsideration events and complied with the consolidated financial statement disclosure requirements, including those VIEs that were not consolidated, in accordance

with the guidance of ASC 810, Consolidation (ASC 810), which was applicable to the period presented.

50. The Partnership, as general partner of limited partnerships (which are not subject to the consolidation guidance under the variable interest entity model), has evaluated consolidation in accordance with ASC 810-20-25-4 through 25-7, Evaluating Presumption of General Partner Control and has determined that the entities listed in Note 3 of the consolidated financial statements have been properly consolidated. For entities that have not been consolidated by the Partnership, as general partner, the Partnership has adequately overcome the presumption of consolidation by the general partner based on the guidance noted above.

51. The consolidated financial statements disclose all matters of which we are aware that are relevant to the Partnership's ability to continue as a going concern, including all significant conditions and events and management's plans. We have the intent and ability to take actions necessary for the Partnership to continue as a going concern and accordingly the Partnership's consolidated financial statements are prepared on a going concern basis. We made available to you all relevant information on the Partnership's ability to continue as a going concern that could affect the consolidated financial statements. We derecognize liabilities if and only if it has been extinguished. A liability has been extinguished when the debtor pays the creditor and is relieved from its obligation or when the debtor has been legally released from being the primary obligor under the liability, either judicially or by the creditor.

52. We acknowledge responsibility for the presentation of the Supplemental Consolidating Balance Sheet, Supplemental Consolidating Statement of Income, Supplemental Unconsolidated Balance Sheet and Supplemental Unconsolidated Statement of Income in accordance with US GAAP and we believe such information, including its form and content, is fairly presented in accordance with US GAAP. We have communicated to you all changes in measurement or presentation from those used in the prior period. We have informed you about any significant assumptions or interpretations underlying the measurement or presentation of the information.

To the best of our knowledge and belief, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustments to, or disclosure in, the aforementioned consolidated financial statements.

James Dondero, President
Highland Capital Management, L.P.
By: Strand Advisors, Inc., its general partner

Frank Waterhouse, Treasurer
Highland Capital Management, L.P.
By: Strand Advisors, Inc., its general partner

**Appendix 1**

Highland Multi Strategy Credit Fund, L.P.

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Fund, L.P.

Highland Restoration Capital Partners Offshore, L.P.

Highland Restoration Capital Partners, L.P.

BB Votorantim, Highland Infrastructure LLC

Highland Capital Special Allocation, LLC

Highland Receivables Finance 1, LLC

Highland Brasil, LLC

Highland Capital Management Partners Charitable Trust #1

Highland Capital Management (Singapore) Pte, Ltd.

Highland Capital Management Korea, Ltd.

HE Capital, LLC

De Kooning, Ltd.

Hirst, Ltd.

Hockney, Ltd.

Oldenburg, Ltd.

Penant Management, L.P.

Pollack, Ltd.

Warhol, Ltd.

HCREF- I Holding Corp.

HCREF-X Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

Highland ERA Management, LLC

The Dondero Insurance Rabbi Trust

The Okada Insurance Rabbi Trust

Highland Employee Retention Assets, LLC

Highland Diversified Credit Fund, L.P.

Highland Select Equity Master Fund, L.P.

Highland Select Equity Fund, L.P.

**Bandera Strategic Credit Partners I SLP, L.P.**

Highland Fund Holdings, LLC

HCM Holdco, LLC

Maple Avenue Holdings, LLC

Neutra, Ltd.

Eames, Ltd.

# EXHIBIT 233

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | _____ |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR (I) BREACH OF CONTRACT AND
## (II) TURNOVER OF PROPERTY OF HIGHLAND'S ESTATE

Plaintiff Highland Capital Management, L.P., the reorganized debtor ("Highland") in the above-captioned chapter 11 case (the "Bankruptcy Case") and the plaintiff (the "Plaintiff") in the above-captioned adversary proceeding (the "Adversary Proceeding"), by its undersigned counsel, files this complaint (the "Complaint") against defendant Highland Capital Management Fund Advisors, L.P. ("HCMFA" or "Defendant") and alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

## **PRELIMINARY STATEMENT**[1]

1.      Highland brings this action against HCMFA as a result of HCMFA's defaults under two promissory notes executed by HCMFA in favor of Highland in the aggregate original principal amount of $6,300,000 and payable upon Highland's demand.  Despite demand having been made, HCMFA has failed to pay amounts due and owing under the Notes and the accrued but unpaid interest thereon.

2.      As remedies, Highland seeks (a) damages from HCMFA in an amount equal to (i) the aggregate outstanding principal due under the Notes, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to Highland's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the Notes) and (b) turnover by HCMFA to Highland of the foregoing amounts.

## **JURISDICTION AND VENUE**

3.      This Adversary Proceeding arises under and relates to Highland's Bankruptcy Case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] Capitalized terms shall take on the meanings ascribed to them below.

**Appx. 05076**

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Highland consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### THE PARTIES

7.      Highland is a limited liability partnership formed under the laws of Delaware with a business address at 100 Crescent Court, Suite 1850, Dallas, Texas 75201.

8.      Upon information and belief, HCMFA is a limited partnership with offices located in Dallas, Texas, and is organized under the laws of the state of Delaware.

### CASE BACKGROUND

9.      On October 16, 2019, Highland filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

10.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[2]

11.     On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order") confirming the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., as Modified* [Docket No. 1808] (the "Plan").

---

[2] All docket numbers refer to the main docket for the Highland Bankruptcy Case maintained by this Court.

DOCS_NY:44352.4 36027/003

**Appx. 05077**

12.     The Plan went Effective (as defined in the Plan) on August 11, 2021, and Highland is the Reorganized Debtor (as defined in the Plan) since the Effective Date. *See Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 2700].

## STATEMENT OF FACTS

### A.    The HCMFA Notes

13.     HCMFA is the maker under a series of promissory notes in favor of Highland.

14.     Specifically, on February 26, 2014, HCMFA executed a promissory note in favor of Highland, as payee, in the original principal amount of $4,000,000 ("HCMFA's First Note"). A true and correct copy of HCMFA's First Note is attached hereto as **Exhibit 1**.

15.     HCMFA's First Note was executed in exchange for a contemporaneous transfer from Highland to HCMFA in the amount of $4,000,000 (the "First Payment").

16.     On February 26, 2016, HCMFA executed a promissory note in favor of Highland, as payee, in the original principal amount of $2,300,000 ("HCMFA's Second Note", and together with HCMFA's First Note, the "Notes").  A true and correct copy of HCMFA's Second Note is attached hereto as **Exhibit 2.**

17.     HCMFA's Second Note was executed in exchange for a contemporaneous transfer from Highland to HCMFA in the amount of $2,300,000 (the "Second Payment", and together with the First Payment, the "Payments").

18.     Section 2 of each Note provides: "**Payment of Principal and Interest**.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee."

19.     Section 4 of each Note provides:

**Acceleration Upon Default**.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other

4

notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

20.    Section 6 of each Note provides:

**Attorneys' Fees**.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**B.     Highland Agrees Not to Demand Payment under the Notes Prior to May 31, 2021**

21.    On April 15, 2019, James Dondero signed a letter on behalf of both Highland and HCMFA pursuant to which Highland agreed not to demand payment under the Notes prior to May 31, 2021 (the "Acknowledgement Letter") on the ground that "HCMFA expects that it may be unable to repay such amounts should they become due, for the period commencing today and continuing through May 31, 2021."  A true and correct copy of the Acknowledgement Letter is attached hereto as **Exhibit 3**.[3]

**C.     HCMFA's Default under Each Note**

22.    By letter dated June 2, 2021, Highland made demand on HCMFA for payment under the Notes by June 4, 2021 (the "Demand Letter").  A true and correct copy of the Demand Letter is attached hereto as **Exhibit 4**.  The Demand Letter provides:

By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $3,143,181.93, which represents all accrued interest and principal through and including June 4, 2021.

---

[3] On January 22, 2021, Highland commenced a similar adversary proceeding against HCMFA for its default under two other promissory notes. [*See* Adv. Proc. 21-3004, *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate*, Docket No. 1] (the "First Complaint").  The Notes that are the subject of this Complaint were not included in the First Complaint because of the Acknowledgement Letter.

DOCS_NY:44352.4 36027/003

**Appx. 05079**

> **Payment is due on June 4, 2021, and failure to make payment in full on such date will constitute an event of default under the Notes.**

23.     Despite Highland's demand, HCMFA did not pay all or any portion of the amounts demanded by Highland on June 4, 2021, or at any time thereafter.

24.     As of June 4, 2021, there was an outstanding principal amount of $2,134,166.53 on HCMFA's First Note and accrued but unpaid interest in the amount of $11,288.28, resulting in a total outstanding amount as of that date of $2,145,454.81.

25.     As of June 4, 2021, there was an outstanding principal balance of $990,757.62 on HCMFA's Second Note and accrued but unpaid interest in the amount of $6,969.50, resulting in a total outstanding amount as of that date of $997,727.12.

26.     Thus, as of June 4, 2021, the total outstanding principal and accrued but unpaid interest due under the Notes was $3,143,181.93

27.     Pursuant to Section 4 of each Note, each Note is in default and is currently due and payable.

**FIRST CLAIM FOR RELIEF**
**(For Breach of Contract)**

28.     Highland repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

29.     Each Note is a binding and enforceable contract.

30.     HCMFA breached each Note by failing to pay all amounts due to Highland upon Highland's demand.

31.     Pursuant to each Note, Highland is entitled to damages from HCMFA in an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to Highland's costs of

6

**Appx. 05080**

collection (including all court costs and reasonable attorneys' fees and expenses) for HCMFA's breach of its obligations under each of the Notes.

32.     As a direct and proximate cause of HCMFA's breach of each Note, Highland has suffered damages in the total amount of at least $3,143,181.93 as of June 4, 2021, plus an amount equal to all accrued but unpaid interest from that date, plus Highland's costs of collection.

## <u>SECOND CLAIM FOR RELIEF</u>
### (Turnover by HCMFA Pursuant to 11 U.S.C. § 542(b))

33.     Highland repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

34.     HCMFA owes Highland an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to Highland's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for HCMFA's breach of its obligations under each of the Notes.

35.     Each Note is property of Highland's estate, and the amounts due under each Note are matured and payable upon demand.

36.     HCMFA has not paid the amounts due under the Notes to Highland.

37.     Highland has made demand for the turnover of the amounts due under each Note.

38.     As of the date of filing of this Complaint, HCMFA has not turned over to Highland all or any of the amounts due under the Notes.

39.     Highland is entitled to the turnover of all amounts due under the Notes.

DOCS_NY:44352.4 36027/003

**Appx. 05081**

WHEREFORE, Highland prays for judgment as follows:

(i)      On its First Claim for Relief, damages in an amount to be determined at trial but including (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to Highland's costs of collection (including all court costs and reasonable attorneys' fees and expenses);

(ii)     On its Second Claim for Relief, ordering turnover by HCMFA to Highland of an amount equal to (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to Highland's costs of collection (including all court costs and reasonable attorneys' fees and expenses); and

(iii)    Such other and further relief as this Court deems just and proper.

DOCS_NY:44352.4 36027/003

**Appx. 05082**

Dated:  November 9, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:44352.4 36027/003

**Appx. 05083**

# EXHIBIT 1

# PROMISSORY NOTE

$4,000,000.00             February 26, 2014

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. (*"Maker"*) promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP (*"Payee"*), in legal and lawful tender of the United States of America, the principal sum of FOUR MILLION and 00/100 Dollars ($4,000,000.00), together with interest, on the terms set forth below (the *"Note"*). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.     Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term *"applicable federal rate"* (1.97%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.     Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.     Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.     Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.     Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.     Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

Appx. 05086

# EXHIBIT 2

**Appx. 05087**

# PROMISSORY NOTE

$2,300,000.00

February 26, 2016

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, THREE HUNDRED THOUSAND and 00/100 Dollars ($2,300,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "*applicable federal rate*" (2.62%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    Payment of Principal and Interest.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    Prepayment Allowed; Renegotiation Discretionary.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

**Appx. 05089**

# EXHIBIT 3

**Acknowledgement from HCMLP**

April 15, 2019

      Reference is hereby made to certain outstanding amounts loaned from HIGHLAND CAPITAL MANAGEMENT, L.P. ("HCMLP") to HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. ("HCMF") for funding of HCMF's ongoing operations, which are payable on demand and remained outstanding on December 31, 2018 and as of the date hereof.

      HCMF expects that it may be unable to repay such amounts should they become due, for the period commencing today and continuing through May 31, 2021.

      HCMLP hereby agrees to not demand payment on amounts owed by HCMF prior to May 31, 2021.

Highland Capital Management, L.P.
By: Strand Advisors, Inc., its general partner

By: _____

**Acknowledged By:**

Highland Capital Management Fund Advisors, L.P.
By: Strand XVI, Inc., its general partner

By: _____

# EXHIBIT 4

# HIGHLAND CAPITAL MANAGEMENT, L.P.

June 2, 2021

Highland Capital Management Fund Advisors, LP
2515 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Attention: Frank Waterhouse

   Re: Demand on Promissory Notes:

Dear Mr. Waterhouse,

Highland Capital Management Fund Advisors, LP ("Maker") entered into the following promissory notes (collectively, the "Notes"), among others,[1] in favor of Highland Capital Management, L.P. ("Payee"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (6/4/21) | Accrued But Unpaid Interest (6/4/21) | Total Amount Outstanding (6/4/21) |
|---|---|---|---|---|
| 2/26/2014 | $4,000,000 | $2,134,166.53 | $11,288.28 | $2,145,454.81 |
| 2/26/2016 | $2,300,000 | $990,757.62 | $6,969.50 | $997,727.12 |
| TOTALS | $6,300,000 | $3,124,924.14 | $18,257.78 | $3,143,181.93 |

Copies of the notes are attached hereto as **Appendix A**.

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee. By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $3,143,181.93, which represents all accrued and unpaid interest and principal through and including June 4, 2021.

**Payment is due on June 4, 2021, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds. Payee's wire information is attached hereto as **Appendix B**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are

---

[1] Maker is also obligated to pay amounts due under promissory notes issued in favor of Payee on May 2, 2019, and May 3, 2019 (the "May Notes"). Payee sent a demand letter to Maker with respect to the May Notes on December 3, 2020. A copy of such letter is attached hereto as **Appendix C**. Payee reserves all rights with respect the May Notes.

expressly reserved.  Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full.  Any such interest will remain the obligation of Maker.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:    Jeffrey Pomerantz
       John Morris
       Gregory Demo
       DC Sauter
       Davor Rukavina

Appx. 05094

# Appendix A

# PROMISSORY NOTE

$2,300,000.00

February 26, 2016

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, THREE HUNDRED THOUSAND and 00/100 Dollars ($2,300,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1. <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "***applicable federal rate***" (2.62%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2. <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3. <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4. <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5. <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6. <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.    The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

**Appx. 05097**

# PROMISSORY NOTE

$4,000,000.00                                                    February 26, 2014

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of FOUR MILLION and 00/100 Dollars ($4,000,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "***applicable federal rate***" (1.97%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

Appx. 05098

7.    Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

**Appx. 05099**

# Appendix B



Case 21-03082-sgj Doc 1-4 Filed 11/09/21   Entered 11/09/21 17:28:27   Page 10 of 14

**Appendix B**

ABA #:            322070381
Bank Name:        East West Bank
Account Name:  Highland Capital Management, LP
Account #:        5500014686

# Appendix C

Appx. 05102

## HIGHLAND CAPITAL MANAGEMENT, L.P.

December 3, 2020

Highland Capital Management Fund Advisors, LP
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:  Frank Waterhouse, CFO

      Re:  Demand on Promissory Notes:

Dear Mr. Waterhouse,

Highland Capital Management Fund Advisors, LP ("Maker") entered into the following promissory notes (collectively, the "Notes"), among others,[1] in favor of Highland Capital Management, L.P. ("Payee"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (12/11/20) | Accrued But Unpaid Interest (12/11/20) | Total Amount Outstanding (12/11/20) |
|---|---|---|---|---|
| 5/2/2019 | $2,400,000 | $2,457,517.15 | $35,884.46 | $2,493,401.61 |
| 5/3/2019 | $5,000,000 | $5,119,827.40 | $74,424.05 | $5,194,251.45 |
| **TOTALS** | **$7,400,000** | **$7,577,344.55** | **$110,308.52** | **$7,687,653.07** |

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee.  By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $7,687,653.07, which represents all accrued and unpaid interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds.  Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are

---

[1] Maker is also obligated to pay amounts due under promissory notes issued in favor of Payee prior to April 15, 2019.  Pursuant to that certain *Acknowledgment from HCMLP*, dated as of April 15, 2019, Payee agreed not to demand payment on such amounts until May 31, 2021.  Payee reserves all rights with respect to such amounts.

expressly reserved. Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full. Any such interest will remain the obligation of Maker.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:    Fred Caruso
       James Romey
       Jeffrey Pomerantz
       Ira Kharasch
       Gregory Demo
       DC Sauter

Appx. 05104



**Appendix A**

| | |
|---|---|
| ABA #: | 322070381 |
| Bank Name: | East West Bank |
| Account Name: | Highland Capital Management, LP |
| Account #: | 5500014686 |

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Highland Capital Management, L.P. | DEFENDANTS<br>Highland Capital Management Fund Advisors, L.P. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Hayward PLLC<br>10501 N. Central Expressway, Suite 106<br>Dallas, Texas 75231  Tel.: (972) 755-7100 | ATTORNEYS (If Known)<br>Munsch Hardt Kopf & Harr, P.C.<br>500 N. Akard Street, Suite 3800<br>Dallas, Texas 75201  Tel.: (214) 855-7500 |
| PARTY (Check One Box Only)<br>☑ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☑ Other<br>☐ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>Count 1: Breach of contract; Count 2: Turnover pursuant to 11 U.S.C. 542 |
|---|

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☑ 11-Recovery of money/property – §542 turnover of property<br>☐ 12-Recovery of money/property – §547 preference<br>☐ 13-Recovery of money/property – §548 fraudulent transfer<br>☐ 14-Recovery of money/property – other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability – §523(a)(5), domestic support<br>☐ 68-Dischargeability – §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability – §523(a)(8), student loan<br>☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation<br>    (other than domestic support)<br>☐ 65-Dischargeability - other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §§523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>    actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☑ 02-Other (e.g. other actions that would have been brought in state court<br>    if unrelated to bankruptcy case) |
| **(continued next column)** | |

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 3,143,181.93 plus interest, fees, and expenses |
| Other Relief Sought |  |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br>19-34054-sgj11 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Stacey G. C. Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>November 9, 2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Zachery Z. Annable | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# EXHIBIT 234

Appx. 05108

Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant Highland Capital*
*Management Fund Advisors, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**



| In re | § | |
| | § | **Case No. 19-34054-sgj11** |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Adversary No. 21-03082** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT** | § | |
| **FUND ADVISORS, L.P.** | § | |
| | § | |
| Defendant. | § | |

<u>**DEFENDANT'S ORIGINAL ANSWER**</u>

COMES NOW Highland Capital Management Fund Advisors, L.P. ("<u>HCMFA</u>" or

"<u>Defendant</u>"), the defendant in the above-styled and numbered adversary proceeding (the

"<u>Adversary Proceeding</u>") filed by Highland Capital Management, L.P. ("<u>HCMLP</u>" or "<u>Plaintiff</u>"),

and files this its *Defendant's Original Answer* (the "<u>Answer</u>"), responding to the *Complaint for (I)*

**Appx. 05109**

*Breach of Contract and (II) Turnover of Property of Highland's Estate* (the "Complaint").  Where an allegation in the Complaint is not expressly admitted in this Answer, it is denied.

## PRELIMINARY STATEMENT

1.      The first sentence of ¶ 1 sets forth the Plaintiff's objective in bringing the Complaint and does not require a response.  To the extent it contains factual allegations, they are denied.  The second sentence contains a legal conclusion that does not require a response.  To the extent it contains factual allegations, they are denied.

2.      Paragraph 2 contains a summary of the relief the Plaintiff seeks and does not require a response.  To the extent it contains factual allegations, they are denied.

## JURISDICTION AND VENUE

3.      The Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers Constitutional or statutory authority on the Bankruptcy Court to adjudicate this dispute.  Any allegations in ¶ 3 not expressly admitted are denied.

4.      The Defendant admits that the Court has jurisdiction of this Adversary Proceeding but not authority to enter final orders or judgment.  Any allegations in ¶ 4 not expressly admitted are denied.

5.      The Defendant denies that a breach of contract claim is core.  The Defendant denies that a § 542(b) turnover proceeding is the appropriate mechanism to collect a contested debt.  The Defendant admits that a § 542(b) turnover proceeding is statutorily core but denies that it is Constitutionally core under *Stern v. Marshall*.  The Defendant does not consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding.  Any allegations in ¶ 5 not expressly admitted are denied.

6.      The Defendant admits ¶ 6 of the Complaint.

## THE PARTIES

7.      The Defendant admits ¶ 7 of the Complaint.

8.      The Defendant admits ¶ 8 of the Complaint.

## CASE BACKGROUND

9.      The Defendant admits ¶ 9 of the Complaint.

10.      The Defendant admits ¶ 10 of the Complaint.

11.      The Defendant admits ¶ 11 of the Complaint, subject to the ongoing appeal of the Confirmation Order.  In the event the Confirmation Order is reversed, ¶ 11 is denied.

12.      The Defendant admits ¶ 12 of the Complaint, subject to the ongoing appeal of the Confirmation Order.  In the event the Confirmation Order is reversed, ¶ 12 is denied.

## STATEMENT OF FACTS

A.      **The HCMFA Notes**

13.      The Defendant admits that it has executed at least one promissory note under which the Debtor is the payee.  Any allegations in ¶ 13 not expressly admitted are denied.

14.      The Defendant admits the allegations in ¶ 14 of the Complaint.  The Defendant admits that the attached document appears to be a copy of the referenced note.

15.      The Defendant admits the allegations in ¶ 15 of the Complaint.

16.      The Defendant admits the allegations in ¶ 16 of the Complaint. The Defendant admits that the attached document appears to be a copy of the referenced note.

17.      The Defendant admits the allegations in ¶ 17 of the Complaint.

18.      The Defendant admits ¶ 18 of the Complaint.

19.      The Defendant denies ¶ 19 of the Complaint.  The document speaks for itself and the quote set forth in ¶ 19 is not verbatim.

20.     The Defendant admits ¶ 20 of the Complaint.

**B.    Highland Agrees Not to Demand Payment Under the Notes Prior to May 31, 2021**

21.     The Defendant admits that James Dondero executed the document attached to the Complaint as Exhibit 3 and the Exhibit 3 is a true and correct copy.  The Defendant admits that the Plaintiff has accurately quoted the second sentence of the letter, which provides, "HCMF expects that it may be unable to repay such amounts should they become due, for the period commencing today and continuing through May 31, 2021."  The Defendant admits that the letter also provides, "HCMLP hereby agrees to not demand payment on amounts owed by HCMF prior to May 31, 2021.  To the extent not expressly admitted, ¶ 21 of the Complaint is denied.

**C.    HCMFA's Default under Each Note**

22.     The Defendant admits that Exhibit 4 to the Complaint (the "<u>Demand Letter</u>") is a true and correct copy of what it purports to be and that the document speaks for itself.  To the extent ¶ 22 of the Complaint asserts a legal conclusion, no response is required, and it is denied.  To the extent not expressly admitted, ¶ 22 of the Complaint is denied.

23.     To the extent ¶ 23 of the Complaint asserts a legal conclusion, no response is necessary, and it is denied.  The Defendant otherwise admits ¶ 23 of the Complaint.

24.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 24 of the Complaint and therefore denies the same.

25.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 25 of the Complaint and therefore denies the same.

26.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 26 of the Complaint and therefore denies the same.

27.     The Defendant denies ¶ 27 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

28.     Paragraph 28 of the Complaint is a sentence of incorporation that does not require a response.  All prior denials are incorporated herein by reference.

29.     Paragraph 29 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 29 of the Complaint.

30.     Paragraph 30 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 30 of the Complaint.

31.     Paragraph 31 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 31 of the Complaint.

32.     The Defendant denies ¶ 32 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (Turnover by HCMFA Pursuant to 11 U.S.C. § 542(b))

33.     Paragraph 33 of the Complaint is a sentence of incorporation that does not require a response.  All prior denials are incorporated herein by reference.

34.     Paragraph 34 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 34 of the Complaint.

35.     Paragraph 35 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 35 of the Complaint.

36.     The Defendant denies ¶ 36 of the Complaint.

37.    Paragraph 37 of the Complaint states a legal conclusion that does not require a response.  The Defendant admits that the Plaintiff transmitted the Demand Letter.  To the extent ¶ 37 alleges other facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 37 of the Complaint and therefore denies the same.

38.    The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in ¶ 38 of the Complaint and therefore denies the same.

39.    Paragraph 39 of the Complaint states a legal conclusion that does not require a response.  To the extent it alleges facts, the Defendant denies the allegations in ¶ 39 of the Complaint.

40.    The Defendant denies that the Plaintiff is entitled to the relief requested in the prayer, including parts (i), (ii), and (iii).

## AFFIRMATIVE DEFENSES

41.    Plaintiff's claims are barred in whole or in part because, prior to the demands for payment, Plaintiff agreed that it would not collect the Notes upon fulfilment of conditions subsequent.  Specifically, sometime between December of the year in which each Note was made and February of the following year, Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of Mr. Dondero's control. The purpose of this agreement was to provide compensation to Mr. Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP and in the industry. This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant believes there may be testimony or email correspondence that

discusses the existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

42.    Plaintiff pleads ambiguity with respect to the Notes.

43.    Due to the fact that the Plaintiff is in control of documents and information relevant to the Notes, Defendant is unable to complete its investigation into potential affirmative defenses. Out of an abundance of caution, Defendant conditionally pleads the following affirmative defenses subject to Defendant's ability to obtain and review relevant documents and information from the Plaintiff: waiver, estoppel, failure of consideration, and prepayment.

## **JURY DEMAND**

44.    The Defendant demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.

45.    The Defendant does <u>not</u> consent to the Bankruptcy Court conducting a jury trial and therefore demands a jury trial in the District Court.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests that, following a trial on the merits, the Court enter a judgment that the Plaintiff take nothing on the Complaint and provide the Defendant such other relief to which it is entitled.

Dated: December 10, 2021                    Respectfully submitted,

                                            **STINSON LLP**

                                            */s/ Deborah Deitsch-Perez*
                                            Deborah Deitsch-Perez
                                            Texas State Bar No. 24036072
                                            Michael P. Aigen
                                            Texas State Bar No. 24012196
                                            3102 Oak Lawn Avenue, Suite 777
                                            Dallas, Texas 75219-4259
                                            Telephone: (214) 560-2201
                                            Email:  deborah.deitschperez@stinson.com
                                            Email:  michael.aigen@stinson.com

                                            **ATTORNEYS FOR DEFENDANT**
                                            **HIGHLAND CAPITAL MANAGEMENT**
                                            **FUND ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that, on the 10th day of December, 2021, a true and correct copy of this document was served electronically via the Court's CM/ECF system on the following recipients:

        **Zachery Z. Annable**
        Hayward PLLC
        10501 N. Central Expressway
        Suite 106
        Dallas, TX 75231
        Email: zannable@haywardfirm.com

                                            */s/Deborah Deitsch-Perez*
                                            Deborah Deitsch-Perez

# EXHIBIT 235

Appx. 05117



MEMBER FDIC        NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
Payments received at the address indicated on this statement by 3:00 p.m. Central Standard Time
each banking day will be credited as of that date.

| OUTSTANDING CHECKS | RECONCILIATION INSTRUCTIONS |
|---|---|

**Reconciliation of Account**

Date _____

| CHECKS WRITTEN BUT NOT PAID | |
|---|---|
| NUMBER | AMOUNT |

Please examine this statement and items at once and refer any exceptions immediately.

Sort your checks numerically or by date issued.

Mark off in your checkbook each of your checks paid by the bank and list the numbers and amounts of those not paid in the space provided at the left. Include any checks still not paid from previous statements.

Subtract from your checkbook balance any SERVICE CHARGE (S.C.) or bank charge appearing on this statement.

Reconcile your statement in the space provided below.

| | | |
|---|---|---|
| Enter bank balance from statement | | |
| Add depos ts not credited by bank (if any) | | |
| TOTAL | | |

| Total of Checks not paid | | Subtract total of checks not paid | | |
|---|---|---|---|---|

| THIS AMOUNT SHOULD EQUAL YOUR CHECKBOOK BALANCE--> | | |
|---|---|---|

Any Charge for Imprinted Checks Includes State Sales Tax Computed at the Current Rate, When Applicable
Notice: The Annual Percentage Rate and Daily Periodic Rate may vary.

**EXPLANATION OF BALANCE ON WHICH THE INTEREST CHARGE IS COMPUTED**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the b ing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances/fees, and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:
**NexBank**
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
You may also contact us on the Web: www.nexbank.com
In your letter, give us the following information

- Account information: Your name and account number.
- Dollar Amount: The do lar amount of the suspected error.
- Description of Problem: If you think there is an error on your b l, describe what you believe is wrong and why you be leve t is a mistake.

You must contact us w thin 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing or electronically. You may ca l us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your cred t lim t.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 972.934.4700 or Write us at NexBank, 2515 McKinney Avenue, 11th Floor, Da las, Texas 75201 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number (if any).
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the do lar amount of the suspected error.
We w l investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time t takes us to complete our investigation.

D-HCMFA2-017514

**Appx. 05120**

# EXHIBIT 236

Appx. 05121



**NEXBANK**

2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com

FDIC

|  |  |
|---|---|
| Date 2/29/16 | Page 1 |
| Primary Account |  |
| Enclosures |  |

Highland Capital Management LP
300 Crescent Court Suite 700
Dallas TX 75201

NexBank's Privacy Policy is accessible at www.NexBank.com

Checking Account/s

Account Type: Highland Capital Management LP

Analysis Checking w/ Interest
Account Number _____ Statement Dates 2/01/16 thru 2/29/16

----------------------------------------------------------------------------

Deposits and Additions
Date      Description                                    Amount

MEMBER FDIC        NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
          Payments received at the address indicated on this statement by 3:00 pm. Central Standard Time
          each banking day will be credited as of that date.

D-HCMFA2-017554

**Appx. 05122**



**NEXBANK**

2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com

FDIC

Date 2/29/16    Page    2
Primary Account    ▮▮▮▮▮
Enclosures

Analysis Checking w/ Interest    ▮▮▮▮    (Continued)

Deposits and Additions
Date    Description    Amount

----------------------------------------------------------------

Checks and Withdrawals
Date    Description    Amount

2/26    IB Transfer from D ****130 to    2,300,000.00-
        D ****415

MEMBER FDIC                    NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
          Payments received at the address indicated on this statement by 3:00 pm, Central Standard Time
          each banking day will be credited as of that date.

D-HCMFA2-017555

Appx. 05123



D-HCMFA2-017556

**Appx. 05124**





**NEXBANK**
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com

FDIC

Date  2/29/16          Page    5
Primary Account       ███████
Enclosures

Analysis Checking w/ Interest        ████    (Continued)

----------------------------------------------------------------------

Daily Balance Information
Date        Balance      Date       Balance      Date       Balance

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████

----------------------------------------------------------------------

                    Interest Rate Summary
                 Date            Rate
                 ██████████████████████████

End of Statement

MEMBER FDIC                NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
              Payments received at the address indicated on this statement by 3:00 pm, Central Standard Time
              each banking day will be credited as of that date.

D-HCMFA2-017558

**Appx. 05126**

| OUTSTANDING CHECKS | | | | RECONCILIATION INSTRUCTIONS |
|---|---|---|---|---|

**Reconciliation of Account**

Date _____

CHECKS WRITTEN BUT NOT PAID

| NUMBER | AMOUNT |
|---|---|

Please examine this statement and items at once and refer any exceptions immediately.

Sort your checks numerically or by date issued.

Mark off in your checkbook each of your checks paid by the bank and list the numbers and amounts of those not paid in the space provided at the left. Include any checks still not paid from previous statements.

Subtract from your checkbook balance any SERVICE CHARGE (S.C.) or bank charge appearing on this statement.

Reconcile your statement in the space provided below.

Enter bank balance from statement

Add depos ts not credited by bank (if any)

TOTAL

Total of Checks not paid

Subtract total of checks not paid

**THIS AMOUNT SHOULD EQUAL YOUR CHECKBOOK BALANCE->**

Any Charge for Imprinted Checks Includes State Sales Tax Computed at the Current Rate, When Applicable
Notice: The Annual Percentage Rate and Daily Periodic Rate may vary.

**EXPLANATION OF BALANCE ON WHICH THE INTEREST CHARGE IS COMPUTED**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances/fees, and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:
NexBank
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
You may also contact us on the Web: www.nexbank.com
In your letter, give us the following information:
- Account Information: Your name and account number.
- Dollar Amount: The do lar amount of the suspected error.
- Description of Problem: If you think there is an error on your b ll, describe what you believe is wrong and why you be ieve t is a mistake.
You must contact us w thin 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing or electronically. You may ca l us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your cred t lim t.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 972.934.4700 or Write us at NexBank, 2515 McKinney Avenue, 11th Floor, Da las, Texas 75201 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number (if any).
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the do lar amount of the suspected error.
We w ll investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time t takes us to complete our investigation.

D-HCMFA2-017559

**Appx. 05127**

# EXHIBIT 237

**Appx. 05128**

**THE DUGABOY INVESTMENT TRUST**
**James D. Dondero, Primary Beneficiary**

October 12, 2015

Dana Scott Breault
5207 Scarborough Lane
Dallas, Texas 75287

Cynthia D. M. Brown, President
Commonwealth Trust Company
29 Bancroft Mills Road #2
Wilmington, Delaware 19806

      Re:    The Dugaboy Investment Trust

Dear Ms. Breault,

     I, James D. Dondero, am writing to inform you that on October 12, 2015, I received notice from Grant James Scott that he will cease to serve as Family Trustee of The Dugaboy Investment Trust (the "**Trust**") and shall stop performing all duties and responsibilities undertaken as Family Trustee of the Trust.

     Pursuant to the attached Resignation of Family Trustee from Grant James Scott, I appoint Nancy Marie Dondero as the successor Family Trustee of the Trust.

     This letter and the attached Resignation of Family Trustee shall satisfy my obligations under Section 5.2 of that Trust Agreement entered into on November 15, 2010 to provide you, Settlor, with notice of my appointment of a successor Family Trustee.

Very truly yours,

James D. Dondero

**App. 87**
**DEFENDANT 000037**

**Appx. 05129**

**THE DUGABOY INVESTMENT TRUST**
**Grant James Scott, Family Trustee**

October 12, 2015

Dana Scott Breault
5207 Scarborough Lane
Dallas, Texas 75287

Cynthia D. M. Brown, President
Commonwealth Trust Company
29 Bancroft Mills Road #2
Wilmington, Delaware 19806

      Re:    The Dugaboy Investment Trust

Dear Ms. Breault,

      I, Grant James Scott, am writing to inform you that as of October 12, 2015, I will cease to serve as Family Trustee of The Dugaboy Investment Trust (the "**Trust**") and shall stop performing all duties and responsibilities undertaken as Family Trustee of the Trust pursuant to the attached Resignation of Family Trustee.

      This letter and the attached Resignation of Family Trustee shall satisfy my obligations under Section 5.1 of that Trust Agreement entered into on November 15, 2010 to provide you, Settlor, with written notice of my resignation.

Very truly yours,

Grant James Scott

**App. 88**

**DEFENDANT 000038**

**Appx. 05130**

## RESIGNATION OF FAMILY TRUSTEE

I, **GRANT JAMES SCOTT**, do hereby acknowledge that I voluntarily tender my resignation as Family Trustee of The Dugaboy Investment Trust pursuant to that Trust Agreement, dated November 15, 2010 by, between and among Dana Scott Breault, as Settlor, and Common Wealth Trust Company, as Administrative Trustee.

This resignation shall take effect immediately upon the execution hereof and delivery of a written acknowledged instrument wherein NANCY MARIE DONDERO accepts the trust and the position of Family Trustee.

**IN WITNESS WHEREOF**, I hereby sign my Resignation as Family Trustee of the above trust.

Signed, sealed and delivered in the presence of:

_____          10/12/2015
Family Trustee                                       Date

STATE OF TEXAS                  §
COUNTY OF DALLAS            §

Before me, a notary public, on this day personally appeared **GRANT JAMES SCOTT** known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14ᵗʰ day of October, 2015.

_____
Notary Public's Signature

[SEAL]

Expiration: January 15, 2019

MICAELA SUE ALLEN
Notary Public, State of Texas
My Commission Expires
January 15, 2019

**App. 89**

**DEFENDANT 000039**

**Appx. 05131**

### ACCEPTANCE OF APPOINTMENT OF FAMILY TRUSTEE

I, **NANCY MARIE DONDERO**, appointed as Family Trustee under Article V, Section 5.2(a)(i) of The Dugaboy Investment Trust, dated November 15, 2010 (the "**Trust**"), hereby acknowledge and accept the position of Family Trustee of the Trust and hereby agree to faithfully perform all the duties and adopt all of the obligations imposed.

Signed this 13th day of October, 2015.

_____
**NANCY MARIE DONDERO**
**Family Trustee**

STATE OF TEXAS         §
COUNTY OF DALLAS       §

Before me, a notary public, on this day personally appeared **NANCY MARIE DONDERO** known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14th day of October, 2015.

_____
Notary Public's Signature

[SEAL]

MICAELA SUE ALLEN
Notary Public, State of Texas
My Commission Expires
January 15, 2019

Expiration: January 15, 2019

## ACKNOWLEDGEMENT OF DELIVERY

I, JAMES D. DONDERO, acknowledge that this Acceptance of Appointment of Family Trustee by NANCY MARIE DONDERO was delivered to and received by me on October __, 2015.

_____
James D. Dondero

**App. 91**

**DEFENDANT 000041**

**Appx. 05133**

# EXHIBIT 238

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:    MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

STINSON LLP
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Telecopier: (214) 560-2203
Email:    deborah.deitschperez@stinson.com
          michael.aigen@stinson.com

*Attorneys for defendant Highland Capital Management Fund Advisors, L.P.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § § | Adv. Proc. No. 21-03082-sgj |
| vs. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § | Case No. 3:21-cv-00881-X |
| Defendant. | § § § § | |

### STIPULATION CONCERNING THE APPLICATION OF CERTAIN PAYMENTS TO PRINCIPAL AND INTEREST UNDER THE PRE-2019 NOTES

This Stipulation is entered into between Highland Capital Management, L.P. (the "Plaintiff") and Highland Capital Management Fund Advisors, L.P. ("HCMFA" and together with Plaintiff, the "Parties"), the parties in the above-referenced adversary proceeding (the "Adversary Proceeding").

### RECITALS

WHEREAS, on February 26, 2014, Plaintiff loaned HCMFA $4 million in exchange for a demand note, a copy of which is attached hereto as **Exhibit A** (the "2014 Note").

WHEREAS, on February 26, 2016, Plaintiff loaned HCMFA $2.3 million in exchange for a demand note, a copy of which is attached hereto as **Exhibit B** (the "2016 Note" and together with the 2014 Note, the "Pre-2019 Notes");

WHEREAS, from time to time, HCMFA made payments against the then-outstanding principal and interest due under the Pre-2019 Notes (collectively, the "Payments");

WHEREAS, attached as **Exhibit C** is a spreadsheet that Plaintiff produced in discovery showing the application of the Payments to the then-outstanding principal and interest due under the Pre-2019 Notes; and

WHEREAS, as part of its discovery demands, Plaintiff requested information from HCMFA's books and records concerning the treatment of the Payments against the Pre-2019 Notes (the "Books and Records Requests"); and

WHEREAS, the Parties have conferred concerning the Books and Records Requests and desire to enter into this Stipulation to avoid motion practice.

**Appx. 05136**

## **STIPULATION**

NOW, THEREFORE, in consideration of the foregoing, the Parties agree and stipulate as follows:

1.      **Exhibit C** is a document prepared by HCMLP's accounting group showing how each of the Payments made against the Pre-2019 Notes were applied against then-outstanding principal and interest then due.

2.      The Parties stipulate and agree that **Exhibit C** (a) may be admitted into evidence in this Adversary Proceeding without objection, (b) accurately sets forth the dates and amounts of each Payment made against each of the Pre-2019 Notes, and (c) accurately sets forth the application of the Payments against outstanding principal and interest.

Dated:  May 27, 2022

CONSENTED AND AGREED TO BY:

*/s/ John A. Morris*
John A. Morris *(pro hac vice)*
(NY Bar No. 266326)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone:  (310) 277-6910
Email: jmorris@pszjlaw.com

*Attorneys for Highland Capital Management, LP*

*/s/ Michael P. Aigen*
Deborah Deitsch-Perez (TX Bar No. 24036072)
Michael P. Aigen (TX Bar No. 24012196)
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone:  (214) 560-2201
Email:  Deborah.deitschperez@stinson.com
            Michael.aigen@stinson.com

*Attorneys for Highland Capital Management Fund Advisors, L.P.*

**Appx. 05137**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 27, 2022, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this case.

*/s/ Zachary Annable*
Zachary Annable

# EXHIBIT A

# PROMISSORY NOTE

$4,000,000.00                                                                      February 26, 2014

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of FOUR MILLION and 00/100 Dollars ($4,000,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "*applicable federal rate*" (1.97%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

Appx. 05140

7.    Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

# EXHIBIT B

# PROMISSORY NOTE

$2,300,000.00

February 26, 2016

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, THREE HUNDRED THOUSAND and 00/100 Dollars ($2,300,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "*applicable federal rate*" (2.62%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.    The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

**Appx. 05144**

# EXHIBIT C



*Summary of loans dated February 26, 2014 and February 26, 2016*
*Privileged and confidential - prepared at direction of counsel*
*Prepared February 28, 2022*

| Loan dated 2/26/14 | | $ 4,000,000.00 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Application** | | | |
| Description | Type | Cash amount | Bank statement date | Bank statement ref | | Principal | Interest | Total | Total Applied to other loans |
| Initial loan | Payment | $ (4,000,000.00) | 2/26/2014 | P. 2 of 3 | $ | (4,000,000.00) $ | - $ | (4,000,000.00) $ | - |
| May 2019 receipt | Receipt | 1,000,000.00 | 5/29/2019 | P. 6 of 13 | | 978,101.91 | 21,898.09 | 1,000,000.00 | - |
| June 2019 receipt | Receipt | 500,000.00 | 6/4/2019 | P. 2 of 9 | | 500,000.00 | - | 500,000.00 | - |
| September 2019 receipt | Receipt | 500,000.00 | 9/5/2019 | P. 1 of 3 | | 484,171.75 | 15,828.25 | 500,000.00 | - |
| October 2019 receipt | Receipt | 375,000.00 | 10/3/2019 | P. 2 of 10 | | 375,000.00 | - | 375,000.00 | - |
| December 2021 receipt [1] | Receipt | 180,472.81 | 12/28/2021 | P. 1 of 4 | | - | 35,477.45 | 35,477.45 | 144,995  See notes |
| Total cash receipts | | | | | $ | 2,337,273.66 $ | 73,203.79 $ | 2,410,477.45 | |
| Non-cash PIK interest (cumulative 2014-2021) | | | | | | (471,440.19) | 471,440.19 | | |
| Total principal outstanding 12/31/21 | | | | | $ | **2,134,166.53**  Original principal less principal repayments plus PIK'd interest | | | |
| Total interest outstanding 12/31/21 | | | | | | - | | | |

| Loan dated 2/26/16 | | $ 2,300,000.00 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Application** | | | |
| Description | Type | Cash amount | Bank statement date | Bank statement ref | | Principal | Interest | Total | Total Applied to other loans |
| Initial loan | Payment | $ (2,300,000.00) | 2/26/2016 | P. 2 of 3 | $ | (2,300,000.00) $ | - $ | (2,300,000.00) $ | - |
| September 2016 receipt [2] | Receipt | 1,000,000.00 | 9/1/2016 | P. 1 of 3 | | 434,394.68 | 31,038.03 | 465,432.71 | 534,567  See notes |
| April 2017 receipt | Receipt | 1,000,000.00 | 4/12/2017 | P. 1 of 3 | | 970,137.03 | 29,862.97 | 1,000,000.00 | - |
| December 2021 receipt [1] | Receipt | 180,472.81 | 12/28/2021 | P. 1 of 4 | | - | 21,904.16 | 21,904.16 | 158,569  See notes |
| Total cash receipts | | | | | $ | 1,404,531.71 $ | 82,805.16 $ | 1,487,336.87 | |
| Non-cash PIK interest (cumulative 2016-2021) | | | | | | (95,289.33) | 95,289.33 | | |
| Total principal outstanding 12/31/21 | | | | | $ | **990,757.62**  Original principal less principal repayments plus PIK'd interest | | | |
| Total interest outstanding 12/31/21 | | | | | | - | | | |

Notes:
[1] Total receipt in December 2021 was $180,472.81. Application of payment was $35,477.45 to the loan dated 2/26/14; $21,904.16 to the loan dated 2/26/16; $123,091.20 to loans from May 2019 that are part of a separate litigat
[2] Total receipt in September 2016 was $1,000,000.00. Application of payment was $465,432.71 to the loan dated 2/26/16; $534,567.29 was applied to the loan dated 8/28/2015, which fully retired that loan.

ion.

D-HCMFA2-017585
**Appx. 05147**

# EXHIBIT 239

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | § Adv. Proc. No. 21-03082-sgj |
| | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT FUND | § |
| ADVISORS, L.P., | § Case No. 3:21-cv-00881-X |
| | § |
| | § |
| Defendant. | § |
| | § |

## DECLARATION OF DAVID KLOS IN SUPPORT OF HIGHLAND CAPITAL MANAGEMENT L.P.'S MOTION FOR SUMMARY JUDGMENT

I, David Klos, pursuant to 28 U.S.C. § 1746(a), under penalty of perjury, declare as follows:

1.    I am the Chief Financial Officer ("CFO") of the reorganized Highland Capital Management, L.P. ("Highland" or "HCMLP"), and I submit this Declaration in support of *Highland Capital Management, L.P.'s Motion for Summary Judgment* in the above-referenced action (the "Motion").  This Declaration is based on my personal knowledge.  I could and would testify to the facts and statements set forth herein if asked or required to do so.

2.    I joined Highland in 2009 and served as Controller from 2017 to 2020 and Chief Accounting Officer from 2020 to February 2021.  At all relevant times, I reported to Frank Waterhouse until he left the company in February 2021.  I was appointed CFO in March 2021 following confirmation of Highland's Plan.[1]

**B.    The Notes**

3.    In the ordinary course of business, Highland had (and continues to have) a regular practice of maintaining electronic copies of all promissory notes issued by any officer, employee, or corporate affiliate.

4.    Attached as **Exhibit A** is a true and correct copy of a promissory note dated February 26, 2014, executed by Mr. James Dondero ("Mr. Dondero") on behalf of Highland Capital Management Fund Advisor, L.P. ("HCMFA"), as the maker, in the original principal amount of $4,000,000 in favor of Highland (the "2014 Note").  A copy of the 2014 Note was and is maintained in Highland's books and records in the ordinary course of business and was provided to PricewaterhouseCoopers ("PwC"), the long-standing outside auditors for HCMFA and HCMLP, in connection with its annual audits.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

5.      Attached as **Exhibit B** is a true and correct copy of a promissory note dated February 26, 2016, executed by Mr. James Dondero ("Mr. Dondero") on behalf of Highland Capital Management Fund Advisor, L.P. ("HCMFA"), as the maker, in the original principal amount of $2,300,000 in favor of Highland (the "2016 Note" and together with the 2016 Note, and "Pre-2019 Notes").  A copy of the 2016 Note was and is maintained in Highland's books and records in the ordinary course of business and was provided to PwC in connection with its annual audits.

## C.    Highland's Loan Summaries

6.      Highland's accounting group has a regular practice of creating and maintaining "loan summaries" in the ordinary course of business (the "Loan Summaries").  The Loan Summaries identify amounts owed to Highland under affiliate notes and are created by updating underlying schedules for activity and reconciling with Highland's general ledger. Exhibit 199 is an example of a Loan Summary.  The Loan Summaries identify each obligor by reference to the "GL" number used in Highland's general ledger.  *See* Ex. 199 (HCMS ("GL 14530"), HCMFA ("GL 14531"), NexPoint ("GL 14532"), HCRE ("GL 14533"), and Mr. Dondero ("GL 14565")).

7.      The Loan Summaries were used in connection with the PwC audits and to support accounting entries and year-end balances in the ordinary course of Highland's business. For example, Exhibit 199 ties exactly into Exhibit 198, the "back up" to the "Due from affiliates" entry in the January 2021 MOR.  Docket No. 2020.[2]

---

[2] Colloquially, the Loan Summaries are the "back up" to the "back up."  To illustrate, and working backwards, the January 2021 MOR reported that $152,538,000 was "Due from affiliates."  Docket No. 2030 (balance sheet). Exhibit 198 is the "back up" to the January 2021 MOR and it shows that $152,537,622 was the "Total Due from Affiliates" (the January 2021 MOR rounded up to the nearest thousand). Exhibit 199, the Loan Summary, is the "back up" to the "back up," and is reconciled with Highland's general ledger.  As can be seen, the Loan Summary specifies

8.      The 2014 Note is shown on the Loan Summary marked as Exhibit 199 as "HCMFA #2" and the 2016 Note is shown on the Loan Summary as "HCMFA #5." Ex. 199, Appx. at 3246.

9.      The Pre-2019 Notes were identified on the Loan Summary as "HCMFA #2" and "HCMFA #5," respectively, because, in exchange for loans, HCMFA also issued (i) one note to Highland before issuing the 2014 Note, and (ii) two notes to Highland after issuing the 2014 but before issuing the 2016 Note (collectively, the "Paid Off Notes"). The Paid Off Notes were referred to on prior versions of Loan Summaries as "HCMFA #1," "HCMFA #3," and "HCMFA #4," respectively, but are not included on Exhibit 199 because HCMFA paid off all principal and interest due under the Paid Off Notes before the version of the Loan Summary marked as Exhibit 199 was created.

A.      **The Application of Payments to the Obligations Under the Pre-2019 Notes**

10.     By their plain and unambiguous terms, the Pre-2019 Notes were payable on demand. However, HCMFA was permitted to make "prepayments" under each of the Pre-2019 Notes; in other words, HCMFA had the right to pay down its obligations under the Pre-2019 Notes before Highland made a demand for payment. Section 3 sets forth HCMFA's agreement concerning the treatment of "prepayments" and provides:

>      3.    Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. **Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.**

**Exhibit A ¶** 3; **Exhibit B ¶** 3 (emphasis added).

11.     After issuing the Pre-2019 Notes, HCMFA made certain payments against

---

the outstanding principal amounts due under each Note. Interest on these Notes is accrued in a single account (general ledger account 14010).

its obligations under the Pre-2019 Notes (collectively, the "Payments").

12.    Bank statements showing the date and amount of each of the Payments are attached hereto as **Exhibits D through J**, respectively.

13.    In accordance with section 3 of the Pre-2019 Notes, HCMLP's accounting group applied the Payments first to unpaid accrued interest thereon, and then to unpaid principal[3].

14.    Attached as **Exhibit C** is a document prepared by HCMLP's accounting group showing how each of the Payments made against the Pre-2019 Notes were applied.

15.    I understand that HCMFA does not dispute the propriety of the application of the Payments to the obligations under each of the Pre-2019 Notes, as shown on **Exhibit C**. Exhibit 238, Appx. 5134-5147.

## B.    The Amounts Due and Owing Under the Pre-2019 Notes

16.    On April 15, 2019, Mr. Dondero signed the Acknowledgment Letter in which he agreed on behalf of HCMLP not to demand payment on amounts then owed by HCMFA prior to May 31, 2021.  Exhibit 217, Appx. at 4990.[4]  Highland received no consideration in exchange for agreement contained in the Acknowledgment Letter.

---

[3] There were three *de minimus* exceptions to this treatment.  In June 2019 and October 2019, two Payments were applied entirely to principal on the 2014 Note.  In each instance, the Payment occurred shortly after a separate Payment had been made and applied first to all accrued and outstanding interest and second to principal.  As a result, in these two instances, *de minimus* accrued interest remained outstanding when the June and October 2019 Payments were made and applied entirely to principal.  A separate payment on the 2016 Note in April 2017 was applied to interest first, then principal at the time of the Payment.  However, following the application of the Payment, it was identified that the accrued interest should have been capitalized on the anniversary of the 2016 Note, so the loan schedule was updated to reflect the capitalization of the interest.  The application of the Payment was unchanged, leaving interest in a "pre-paid" position until further interest accrued and exhausted the Prepayment.  The combined effect of these exceptions is *de minimus* (cumulatively less than $650.00) with respect to total current outstanding principal and interest.  Moreover, regardless of the application of the Payments, Highland always had the unquestionable and unfettered right to demand payment for all remaining amounts due and owing under the Pre-2019 Notes, subject only to the Acknowledgement Letter.

[4] In May 2019, HCMFA issued two other Notes to Highland in exchange for loans that are the subject of one of the adversary proceedings in the Main Notes Litigation.  *See* Adv. Pro. No. 21-03004.  Because those Notes were issued in May 2019, they were not subject to the Acknowledgment Letter.

17.    HCMLP's complied with Acknowledgment Letter in this regard and did not demand payment of the outstanding obligations due under the Pre-2019 Notes until June 2, 2021. *See* Complaint, Exhibit 4.

18.    As of May 27, 2022, after giving effect to the Payments, the unpaid principal and accrued interest due under the 2014 Note is $2,151,130.84, and the unpaid principal and accrued interest due under the 2016 Note is $1,001,238.06.

19.    I declare under penalty of perjury that the forgoing is true and correct.

Dated: May 27, 2022

_/s/ David Klos_
David Klos

# EXHIBIT A

**Appx. 05155**

## PROMISSORY NOTE

$4,000,000.00                                                                  February 26, 2014

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of FOUR MILLION and 00/100 Dollars ($4,000,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "*applicable federal rate*" (1.97%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

Appx. 05156

7.    Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

# EXHIBIT B

# PROMISSORY NOTE

$2,300,000.00

February 26, 2016

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, THREE HUNDRED THOUSAND and 00/100 Dollars ($2,300,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1. Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the mid-term "*applicable federal rate*" (2.62%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2. Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3. Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4. Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5. Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6. Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.      <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.      <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

# EXHIBIT C

*Summary of loans dated February 26, 2014 and February 26, 2016*
*Privileged and confidential - prepared at direction of counsel*
*Prepared February 28, 2022*

| Loan dated 2/26/14 | | $ 4,000,000.00 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Application** | | | | |
| Description | Type | Cash amount | Bank statement date | Bank statement ref | | Principal | Interest | Total | Total Applied to other loans | |
| Initial loan | Payment | $ (4,000,000.00) | 2/26/2014 | P. 2 of 3 | $ | (4,000,000.00) $ | - | $ (4,000,000.00) $ | - | |
| May 2019 receipt | Receipt | 1,000,000.00 | 5/29/2019 | P. 6 of 13 | | 978,101.91 | 21,898.09 | 1,000,000.00 | - | |
| June 2019 receipt | Receipt | 500,000.00 | 6/4/2019 | P. 2 of 9 | | 500,000.00 | - | 500,000.00 | - | |
| September 2019 receipt | Receipt | 500,000.00 | 9/5/2019 | P. 1 of 3 | | 484,171.75 | 15,828.25 | 500,000.00 | - | |
| October 2019 receipt | Receipt | 375,000.00 | 10/3/2019 | P. 2 of 10 | | 375,000.00 | - | 375,000.00 | - | |
| December 2021 receipt [1] | Receipt | 180,472.81 | 12/28/2021 | P. 1 of 4 | | - | 35,477.45 | 35,477.45 | 144,995 | See notes |
| Total cash receipts | | | | | $ | 2,337,273.66 $ | 73,203.79 $ | 2,410,477.45 | | |
| Non-cash PIK interest (cumulative 2014-2021) | | | | | | (471,440.19) | 471,440.19 | | | |
| Total principal outstanding 12/31/21 | | | | | $ | **2,134,166.53** | Original principal less principal repayments plus PIK'd interest | | | |
| Total interest outstanding 12/31/21 | | | | | | - | | | | |

| Loan dated 2/26/16 | | $ 2,300,000.00 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Application** | | | | |
| Description | Type | Cash amount | Bank statement date | Bank statement ref | | Principal | Interest | Total | Total Applied to other loans | |
| Initial loan | Payment | $ (2,300,000.00) | 2/26/2016 | P. 2 of 3 | $ | (2,300,000.00) $ | - | $ (2,300,000.00) $ | - | |
| September 2016 receipt [2] | Receipt | 1,000,000.00 | 9/1/2016 | P. 1 of 3 | | 434,394.68 | 31,038.03 | 465,432.71 | 534,567 | See notes |
| April 2017 receipt | Receipt | 1,000,000.00 | 4/12/2017 | P. 1 of 3 | | 970,137.03 | 29,862.97 | 1,000,000.00 | - | |
| December 2021 receipt [1] | Receipt | 180,472.81 | 12/28/2021 | P. 1 of 4 | | - | 21,904.16 | 21,904.16 | 158,569 | See notes |
| Total cash receipts | | | | | $ | 1,404,531.71 $ | 82,805.16 $ | 1,487,336.87 | | |
| Non-cash PIK interest (cumulative 2016-2021) | | | | | | (95,289.33) | 95,289.33 | | | |
| Total principal outstanding 12/31/21 | | | | | $ | **990,757.62** | Original principal less principal repayments plus PIK'd interest | | | |
| Total interest outstanding 12/31/21 | | | | | | - | | | | |

Notes:
[1] Total receipt in December 2021 was $180,472.81. Application of payment was $35,477.45 to the loan dated 2/26/14; $21,904.16 to the loan dated 2/26/16; $123,091.20 to loans from May 2019 that are part of a separate litigat
[2] Total receipt in September 2016 was $1,000,000.00. Application of payment was $465,432.71 to the loan dated 2/26/16; $534,567.29 was applied to the loan dated 8/28/2015, which fully retired that loan.

# EXHIBIT D

Page 1 of 13
Primary Account: ▮▮▮▮▮▮
Beginning May 1, 2019 - Ending May 31, 2019          31

**BBVA** Compass

21     HIGHLAND CAPITAL MANAGEMENT LP
       MASTER OPERATING ACCOUNT
       300 CRESCENT CT STE 700
       DALLAS TX 75201-7849

### Contacting Us

Available by phone 24/7

Phone   1-800-266-7277

Online   bbvacompass.com

Write   BBVA Compass
        Customer Service
        P.O. Box 10566
        Birmingham, AL 35296

## Summary of Accounts

### Deposit Accounts/ Other Products

| Account | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|
| TREASURY MANAGEMENT ANALYSIS CHECKING | ▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮▮▮ | | ▮▮▮▮ | ▮▮▮▮ |

D-HCMFA2-017524

**Appx. 05164**

Page 2 of 13
Primary Account: ▮▮▮▮▮
Beginning May 1, 2019 - Ending May 31, 2019          31

**BBVA** Compass

# TREASURY MANAGEMENT ANALYSIS CHECKING

Account Number: ▮▮▮▮▮▮▮▮▮▮▮▮

## Activity Summary

## Deposits and Other Credits

| Date * | Check/Serial # | Description | Deposits/Credits |
|--------|----------------|-------------|------------------|

**BBVA** Compass

| Date * | Check/<br>Serial # | Description | Deposits/<br>Credits |
|--------|--------|-------------|----------------------|
| ██ | | ████████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ██████████████ | █████ |
| ██ | | ██████████████ | ██████ |
| ██ | | ██████████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ███████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ███████████████ | ██████ |
| ██ | | ████████████ | █████ |
| ██ | | ██████████████████ | ██████ |
| ██ | | ██████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | ██████████████████ | ██████ |
| ██ | | ███████████████ | ██████ |
| ██ | | █████████████████ | ██████ |
| ██ | | ████████████████ | █████ |

**BBVA** Compass

| Date * | Check/<br>Serial # | Description | Deposits/<br>Credits |
|---|---|---|---|
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉▉ | ▉▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |
| ▉ | | ▉▉▉▉▉▉▉▉ | ▉▉▉ |

**BBVA** Compass



**BBVA** Compass

| Date * | Check/Serial # | Description | Deposits/Credits |
|--------|----------------|-------------|------------------|
| ██ | | █████████████████ | ██████ |
| ██ | | ████████████████ | ██████ |
| ██ | | █████████████ | ██████ |
| ██ | | ██████████ | ██████ |
| ██ | | ██████████ | ██████ |
| ██ | | █████████ | ██████ |
| ██ | | █████████ | ██████ |
| ██ | | ███████████████ | ████ |
| ██ | | ██████████ | ████ |
| ██ | | █████████ | ██████ |
| ██ | | ████████████ | ██████ |
| ██ | | █████████████ | ████ |
| ██ | | ████████████ | █████ |
| ██ | | █████████ | ██████ |
| ██ | | ██████████ | █████ |
| ██ | | ███████████████ | ██████ |
| ██ | | ████████████ | ██████ |
| ██ | | ██████████ | ██████ |
| ██ | | ██ █████ | ██████ |
| ██ | | █████████ | ██████ |
| 5/29 | | INCOMING WIRE W/ADVICE REF 20190529F2QCZ60C00298805291425FT03 ORG HIGHLAND CAPITAL M | $1,000,000.00 |
| ██ | | █████████████ | ██████ |

Page 7 of 13
Primary Account: 
Beginning May 1, 2019 - Ending May 31, 2019          31

**BBVA** Compass



## Withdrawals and Other Debits



**BBVA** Compass

| Date * | Check/Serial # | Description | Withdrawals/Debits |
|--------|----------------|-------------|--------------------|
| ██ | | ███████████ ████████████ | ████ |
| ██ | | ████████████ ███████████████ | ████ |
| ██ | | ████████████ ████████████████ | ████ |
| ██ | | ████████████████████ ████████████████ | █████ |
| ██ | | ██████████████ █████████████████ | █████ |
| ██ | | ██████████████ █████████████████ | █████ |
| ██ | | ██████████████ ████████████████████ | █████ |
| ██ | | ██████████████████████████████ | █████ |
| ██ | | █████████████████ ████████████████████ | █████ |
| ██ | | ██████████████████ ██████████████████ | ████ |
| ██ | | █████████████████ ██████████████████ | █████ |
| ██ | | ██████████████████████████████ | █████ |
| ██ | | █████████████████████████████████ | █████ |
| ██ | | ██████████████████ ███████████████████ | ████ |
| ██ | | ██████████████████████████████████ | █████ |
| ██ | | ████████████████████████████ | █████ |
| ██ | | ██████████████████████████████ | █████ |
| ██ | | ██████████████████████████████ | █████ |
| ██ | | █████████████████████████████ | █████ |
| ██ | | ████████████████████████████████ | █████ |
| ██ | | █████████████ ████████████████████ | ██ |
| █ | | █████████████ ████████████████████████ | ██ |
| ██ | | █████████████ ████████████████████████ | ████ |
| ██ | | ████████████████████████████████████ | |
| ██ | | ██████████████████████████████ | █████ |
| ██ | | ██████████████████████████████ | █████ |
| ██ | | ███████████████████████████████████ | ████ |
| ██ | | ██████████████████ ██████████████████ | ████ |
| ██ | | ██████████████████ ██████████████████ | ████ |
| ██ | | ████████████████████████ | ██████ |

D-HCMFA2-017531
**Appx. 05171**

Page 9 of 13
Primary Account
Beginning May 1, 2019 - Ending May 31, 2019          31

**BBVA** Compass

| Date * | Check/ Serial # | Description | | Withdrawals/ Debits |
|---|---|---|---|---|

Page 10 of 13
Primary Account: ▮▮▮▮▮▮
Beginning May 1, 2019 - Ending May 31, 2019          31

**BBVA** Compass

| Date * | Check/ Serial # | Description | | Withdrawals/ Debits |
|---|---|---|---|---|

Page 11 of 13
Primary Account: ▮▮▮▮
Beginning May 1, 2019 - Ending May 31, 2019                31

**BBVA** Compass

| Date * | Check/ Serial # | Description | | Withdrawals/ Debits |
|---|---|---|---|---|

Page 12 of 13
Primary Account: ████████
Beginning May 1, 2019 - Ending May 31, 2019          31

**BBVA** Compass



| Date * | Check/Serial # | Description | Withdrawals/Debits |
|--------|----------------|-------------|--------------------|

D-HCMFA2-017535

**Appx. 05175**

**BBVA** Compass

## How to Balance Your Account

**Step 1** • Enter all checks, deposits, and other automated teller card (ATM) transactions in your register.
• Record all automated deductions, debit card transactions and electronic bill payments.
• Record and deduct service charges, check printing charges, or other bank fees.
• If you have an interest bearing account, add any interest earned shown on this statement.

**Step 2** • If applicable, sort checks in numerical order and mark in your register each check or other transaction that is listed on this statement.

**Step 3** • List any deposits or credits your have made that do not appear on this statement (see space provided below).

**Step 4** • List any checks you have written, debit card transactions, electronic payments and other deductions that do not appear on this statement (see space provided below).

| Date/Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Step 3 Total | $ |

| Date/Description | Check # | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| Step 4 Total |  | $ |

## Balancing Your Register to this Statement

| Step 5 | • Enter the "current balance" shown on this statement | |
|---|---|---|
| | • Add total from Step 3 | |
| | • Subtotal | |
| | • Subtract total from Step 4 | |
| | • This balance should equal your register balance | |
| | If it does not agree, see steps below | $ |

If your account does not balance, review the following:
· Check all your addition and subtraction above in your register.
· Make sure you remembered to subtract service charges listed on this statement and add any interest earned to your register.
· Amounts of deposits and withdrawals on this statement should match your register entries.
· If you have questions or need assistance, please refer to the phone number on the front of this statement.

**Change of Address**
Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Electronic Transfers** *(for consumer accounts only)*
In case of errors or questions about your Electronic Transfers, write to BBVA Compass Bank, Operations Compliance Support, P.O. Box 10566, Birmingham, AL 35296. Or simply call your local customer service number printed on the front of this statement. Call or write as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent the first statement on which the error or problem appeared.

• Tell us your name and account number (if any).
• Describe the error or he transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
• Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 on claims on accounts opened less than 30 calendar days) to do this, we will credit your account for the amount you think is in error, so hat you will have the use of the money during the time it takes us to complete our inves igation.

*For Non-Consumer Account customers, please refer to your current Non-Consumer Account Agreement for details regarding Electronic Fund Transfers.

**Overdraft Protection**
**Calculation of Interest Charge and Balance Subject to Interest Rate**. The interest charge is computed using your annual percentage rate divided by 365 or, in he case of a leap year, 366, which gives you the "Applicable Rate." Although we calculate the interest charge by applying the Applicable Rate to each daily balance, the interest charge can also be calculated by multiplying the Applicable Rate by the "average daily balance"(Balance Subject to Interest Rate) shown on this statement, hen multiplying that sum by the number of days in the billing cycle. To get the "Balance Subject to Interest Rate" shown on this statement we take the beginning balance of your account less any unpaid finance charges each day, add any new advances or debits, and subtract any payments or credits. This gives us the daily balance. Then we add all the daily balances for the billing cycle and divide by the number of days in the billing cycle. This give us the "average daily balance" shown on the statement as "Balance Subject to Interest Rate". Payments. Payments to your overdraft protec ion loan account made through our tellers or deposited at our automated teller machines (ATM s) Monday through Friday before he posted cut-off time will be posted to your account on the date they are accepted. Otherwise, they will be posted on the next business day. Payments made through our ATM s via a funds transfer will be posted on the date they are received or on the next business day if made after 6pm CT (6pm MT for Arizona accounts and 6pm PT for California accounts) Monday through Friday or any ime Saturday, Sunday or bank holidays. BBVA Compass Bank business days are Monday through Friday, excluding holidays.

**In Case of Errors or Questions About Your Statement** (Overdraft Protection Only)
If you think your statement is wrong, or if you need more information about a transaction on your statement, write your issue on a separate document and send it to Bankcard Center, P.O. Box 2210, Decatur, AL 35699-0001. Telephone inquires may be made by calling your local BBVA Compass branch listed on the front of this statement to speak with a Customer Service Representative. Please note: a telephone inquiry will not preserve your rights under federal law. We must hear from you no later than sixty (60) days after we sent you the first statement on which the error or problem appeared.

• Tell us your name and account number (if any).
• Describe the error or he transfer you are unsure about, and explain as clearly as you can why you believe it is an error or what you need more information.
• Tell us the dollar amount of the suspected error.

You can stop the automatic deduction of the Minimum Payment from you checking account if you think your statement is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic deduction is scheduled to occur.

**Reporting Other Problems**
Please review your statement carefully. It is essential that any account errors or any improper transactions on your account be reported to us as soon as reasonably possible. If you fail to notify us of any suspected problems, errors or unauthorized transactions within the time periods specified in the deposit account agreement, we are not liable to you for any loss related to the problem, error or unauthorized transaction.

BBVA Compass is a trade name of Compass Bank, a member of the BBVA Group. Compass Bank, Member FDIC.

# EXHIBIT E

Appx. 05177

Page 1 of 9
Primary Account: ██████
Beginning June 1, 2019 - Ending June 30, 2019                    30

**BBVA**

21        HIGHLAND  CAPITAL  MANAGEMENT  LP
          MASTER  OPERATING  ACCOUNT
          300  CRESCENT  CT  STE  700
          DALLAS  TX  75201-7849

## Contacting Us

Available by phone 24/7

Phone   1-800-266-7277

Online   bbvausa.com

Write    BBVA
         Customer Service
         P.O. Box 10566
         Birmingham, AL 35296

## Your BBVA Account(s)

Please see important message regarding your
TREASURY MANAGEMENT ANALYSIS CHECKING
account

# Summary of Accounts

## Deposit Accounts/ Other Products

| Account | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|
| TREASURY MANAGEMENT ANALYSIS CHECKING | ██████ | ██████ | ██████ |
| ██████ | | ██████ | ██████ |

BBVA Compass is now BBVA. Transforming banking to put the world's opportunities in your hands.

———

Page 2 of 9
Primary Account: ███
Beginning June 1, 2019 - Ending June 30, 2019     30



# TREASURY MANAGEMENT ANALYSIS CHECKING

Account Number: ███

## Account Information

We have updated the Treasury Management Service Agreement. These terms and
conditions will become effective as of August 1, 2019.  You can find a current version of
the agreement by going to:
http://www.bbvausa.com/commercial/treasury-management/resource-central/
 The user ID is "treasury" and the password is "management."

## Activity Summary

## Deposits and Other Credits

| Date * | Check/ Serial # | Description | Deposits/ Credits |
|--------|-----------------|-------------|-------------------|
| ███ | | ███ | ███ |
| 6/4 | | INCOMING WIRE W/ADVICE REF 20190604F2QCZ60C00344906041614FT03 ORG HIGHLAND CAPITAL M | $500,000.00 |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |
| ███ | | ███ | ███ |

**BBVA**



## Withdrawals and Other Debits

D-HCMFA2-017517
**Appx. 05180**

Page 4 of 9
Primary Account: ████
Beginning June 1, 2019 - Ending June 30, 2019            30





| Date * | Check/Serial # | Description | Withdrawals/Debits |
|---|---|---|---|



| Date * | Check/Serial # | Description | Withdrawals/Debits |
|---|---|---|---|



D-HCMFA2-017519
**Appx. 05182**

Page 6 of 9
Primary Account: █████
Beginning June 1, 2019 - Ending June 30, 2019          30





D-HCMFA2-017520
**Appx. 05183**





D-HCMFA2-017521

Appx. 05184

Page 8 of 9
Primary Account: ███████
Beginning June 1, 2019 - Ending June 30, 2019          30



| Date * | Check/<br>Serial # | Description | Withdrawals/<br>Debits |
|---|---|---|---|



D-HCMFA2-017522
**Appx. 05185**

Page 9 of 9
Primary Account:
Beginning June 1, 2019 - Ending June 30, 2019     30



## How to Balance Your Account

**Step 1** • Enter all checks, deposits, and other automated teller card (ATM) transactions in your register.
• Record all automated deductions, debit card transactions and electronic bill payments.
• Record and deduct service charges, check printing charges, or other bank fees.
• If you have an interest bearing account, add any interest earned shown on this statement.

**Step 2** • If applicable, sort checks in numerical order and mark in your register each check or other transaction that is listed on this statement.

**Step 3** • List any deposits or credits your have made that do not appear on this statement (see space provided below).

**Step 4** • List any checks you have written, debit card transactions, electronic payments and other deductions that do not appear on this statement (see space provided below).

| Date/Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Step 3 Total | $ |

| Date/Description | Check # | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Step 4 Total | $ |

## Balancing Your Register to this Statement

| Step 5 | | |
|---|---|---|
| • Enter the "current balance" shown on this statement | |
| • Add total from Step 3 | |
| • Subtotal | |
| • Subtract total from Step 4 | |
| • This balance should equal your register balance | |
| If it does not agree, see steps below | $ |

If your account does not balance, review the following:
· Check all your addition and subtraction above in your register.
· Make sure you remembered to subtract service charges listed on this statement and add any interest earned to your register.
· Amounts of deposits and withdrawals on this statement should match your register entries.
· If you have questions or need assistance, please refer to the phone number on the front of this statement.

**Change of Address**
Please call us at the telephone number listed on he front of this statement to tell us about a change of address.

**Electronic Transfers** *(for consumer accounts only)*
In case of errors or questions about your Electronic Transfers, write to BBVA, Operations Compliance Support, P.O. Box 10566, Birmingham, AL 35296. Or simply call your local customer service number printed on he front of this statement. Call or write as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent the first statement on which the error or problem appeared.

• Tell us your name and account number (if any).
• Describe the error or he transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
• Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 on claims on accounts opened less than 30 calendar days) to do this, we will credit your account for the amount you think is in error, so hat you will have the use of the money during the time it takes us to complete our inves igation.

*For Non-Consumer Account customers, please refer to your current Non-Consumer Account Agreement for details regarding Electronic Fund Transfers.

**Overdraft Protection**
**Calculation of Interest Charge and Balance Subject to Interest Rate.** The interest charge is computed using your annual percentage rate divided by 365 or, in he case of a leap year, 366, which gives you he "Applicable Rate." Although we calculate the interest charge by applying the Applicable Rate to each daily balance, the interest charge can also be calculated by multiplying the Applicable Rate by the "average daily balance"(Balance Subject to Interest Rate) shown on this statement, hen multiplying that sum by the number of days in the billing cycle. To get the "Balance Subject to Interest Rate" shown on this statement we take the beginning balance of your account less any unpaid finance charges each day, add any new advances or debits, and subtract any payments or credits. This gives us the daily balance. Then we add all the daily balances for the billing cycle and divide by the number of days in the billing cycle. This give us the "average daily balance" shown on the statement as "Balance Subject to Interest Rate". Payments. Payments to your overdraft protec ion loan account made hrough our tellers or deposited at our automated teller machines (ATM s) Monday through Friday before he posted cut-off time will be posted to your account on the date they are accepted. Otherwise, they will be posted on the next business day. Payments made through our ATM s via a funds transfer will be posted on the date they are received or on the next business day if made after 6pm CT (6pm MT for Arizona accounts and 6pm PT for California accounts) Monday through Friday or any ime Saturday, Sunday or bank holidays. BBVA business days are Monday hrough Friday, excluding holidays.

**In Case of Errors or Questions About Your Statement** (Overdraft Protection Only)
If you think your statement is wrong, or if you need more information about a transaction on your statement, write your issue on a separate document and send it to Bankcard Center, P.O. Box 2210, Decatur, AL 35699-0001. Telephone inquires may be made by calling your local BBVA branch listed on the front of this statement to speak with a Customer Service Representative. Please note: a telephone inquiry will not preserve your rights under federal law. We must hear from you no later than sixty (60) days after we sent you the first statement on which the error or problem appeared.

• Tell us your name and account number (if any).
• Describe the error or he transfer you are unsure about, and explain as clearly as you can why you believe it is an error or what you need more information.
• Tell us the dollar amount of the suspected error.

You can stop he automatic deduction of the Minimum Payment from you checking account if you think your statement is wrong. To stop the payment, your letter must reach us three (3) business days before he automatic deduction is scheduled to occur.

**Reporting Other Problems**
Please review your statement carefully. It is essential that any account errors or any improper transactions on your account be reported to us as soon as reasonably possible. If you fail to notify us of any suspected problems, errors or unauthorized transactions within the time periods specified in the deposit account agreement, we are not liable to you for any loss related to the problem, error or unauthorized transaction.

BBVA and BBVA Compass are trade names of BBVA USA, a member of the BBVA Group. BBVA USA, Member FDIC.

D-HCMFA2-017523

**Appx. 05186**

# EXHIBIT F

10/22/2019                  FX : Accounts: Get Statement

**NEXBANK™**

Welcome HAYLEY ELIASON ⌄    Log Out    Contact Us     **2 Messages** ⌄    ⌂ Alerts ⌄

# Accounts



**NEXBANK™**

2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com

FDIC

```
Date   9/30/19        Page    1
Primary Account
Enclosures
```

```
Highland Capital Management LP
300 Crescent Court Suite 700
Dallas TX 75201
```

NexBank's Privacy Notice, which has not changed, is available on our website
at www.NexBank.com/files/privacynotice.pdf.  If you would like a copy of our
Privacy Notice mailed to you, please call us at (972-934-4700).

Checking Account/s

      Account Type:  Highland Capital Management LP

Analysis Checking w/ Interest
Account Number              Statement Dates    9/03/19 thru  9/30/19

------------------------------------------------------------

Deposits and Additions
```
Date    Description                              Amount
```
```
9/05    LB Transfer from D ****415 to        500,000.00
        D ****130
```

**MEMBER FDIC**       NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
Payments received at the address indicated on this statement by 3:00 pm. Central Standard Time
each banking day will be credited as of that date.

**NEXBANK™**

2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
972.934.4700
www.NexBank.com

FDIC

```
Date   9/30/19        Page    2
Primary Account
Enclosures
```

D-HCMFA2-017537
**Appx. 05188**

10/22/2019

**FX : Accounts: Get Statement**

Analysis Checking w/ Interest          ████ (Continued)

--------------------------------------------------------------------

Checks and Withdrawals

Date    Description                              Amount

End of Statement

---

MEMBER FDIC

NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
Payments received at the address indicated on this statement by 3 00 pm. Central Standard Time
each banking day will be credited as of that date.

| OUTSTANDING CHECKS | | | | RECONCILIATION INSTRUCTIONS | | | |
|---|---|---|---|---|---|---|---|
| **Reconciliation of Account** | | | | Date _____ | | | |
| CHECKS WRITTEN BUT NOT PAID | | | | Please examine this statement and items at once and refer any exceptions immediately. | | | |
| NUMBER | AMOUNT | | | | | | |
| | | | | Sort your checks numerically or by date issued. | | | |
| | | | | Mark off in your checkbook each of your checks paid by the bank and list the numbers and amounts of those not paid in the space provided at the left. Include any checks still not paid from previous statements. | | | |
| | | | | Subtract from your checkbook balance any SERVICE CHARGE (S.C.) or bank charge appearing on this statement. | | | |
| | | | | Reconcile your statement in the space provided below. | | | |
| | | | | Enter bank balance from statement | | | |
| | | | | Add deposits not credited by bank (if any) | | | |
| | | | | | TOTAL | | |
| Total of Checks not paid | | | | Subtract total of checks not paid | | | |
| | | | | THIS AMOUNT SHOULD EQUAL YOUR CHECKBOOK BALANCE-> | | | |

Any Charge for Imprinted Checks Includes State Sales Tax Computed at the Current Rate, When Applicable
Notice: The Annual Percentage Rate and Daily Periodic Rate may vary.

**EXPLANATION OF BALANCE ON WHICH THE INTEREST CHARGE IS COMPUTED**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances/fees, and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:
**NexBank**
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
You may also contact us on the Web: www.nexbank.com
In your letter, give us the following information:
- **Account Information:** Your name and account number.
- **Dollar Amount:** The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

D-HCMFA2-017538
**Appx. 05189**

10/22/2019 FX : Accounts: Get Statement

• Description of Problem. If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in underlined writing or electronically. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
• We cannot try to collect the amount in question, or report you as delinquent on that amount.
• The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
• We can apply any unpaid amount against your credit limit.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 972.934.4700 or Write us at NexBank, 2515 McKinney Avenue, 11th Floor, Dallas, Texas 75201 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number (if any).
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

D-HCMFA2-017539
**Appx. 05190**

# EXHIBIT G

Page 1 of 10
Primary Account: ▮▮▮▮▮▮
Beginning October 1, 2019 - Ending October 31, 2019          31



21    HIGHLAND CAPITAL MANAGEMENT LP
      MASTER OPERATING ACCOUNT
      300 CRESCENT CT STE 700
      DALLAS TX 75201-7849

**Contacting Us**

Available by phone 24/7

Phone  1-800-266-7277

Online  bbvausa.com

Write  BBVA
       Customer Service
       P.O. Box 10566
       Birmingham, AL 35296

# Summary of Accounts

## Deposit Accounts/ Other Products

| Account | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|
| TREASURY MANAGEMENT ANALYSIS CHECKING | ▮▮▮▮▮ | ▮▮▮▮▮ | ▮▮▮▮▮ |
| ▮▮▮▮▮▮▮▮▮▮ | | ▮▮▮▮▮ | ▮▮▮▮▮ |

D-HCMFA2-017540

**Appx. 05192**

Page 2 of 10
Primary Account: ▆▆▆▆▆
Beginning October 1, 2019 - Ending October 31, 2019          31



# TREASURY MANAGEMENT ANALYSIS CHECKING

Account Number: ▆▆▆▆▆▆▆▆▆▆▆▆

## Activity Summary

## Deposits and Other Credits



| Date * | Check/Serial # | Description | Deposits/Credits |
|---|---|---|---|
| | | | |
| | | | |
| 10/3 | | INCOMING WIRE W/ADVICE REF 20191003F2QCZ60C00240510031400FT03 ORG HIGHLAND CAPITAL M | $375,000.00 |

D-HCMFA2-017541

Appx. 05193





## Withdrawals and Other Debits

| Date * | Check/Serial # | Description | Withdrawals/Debits |
|--------|----------------|-------------|--------------------|



| Date * | Check/Serial # | Description | Withdrawals/Debits |
|---|---|---|---|

Page 5 of 10
Primary Account: ███████
Beginning October 1, 2019 - Ending October 31, 2019



31

| Date * | Check/Serial # | Description | Withdrawals/Debits |
|---|---|---|---|

D-HCMFA2-017544

**Appx. 05196**

Page 6 of 10
Primary Account: ███████
Beginning October 1, 2019 - Ending October 31, 2019          31



| Date * | Check/Serial # | Description | Withdrawals/Debits |
|---|---|---|---|

Page 7 of 10
Primary Account: ▓▓▓▓▓▓
Beginning October 1, 2019 - Ending October 31, 2019                31



| Date * | Check/ Serial # | Description | | | Withdrawals/ Debits |
|---|---|---|---|---|---|
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓ ▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓ ▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓ ▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓ ▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓ ▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓ ▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓ | | | ▓ |
| ▓▓ | | ▓▓ ▓▓▓ | | | ▓ |
| ▓▓ | | ▓ ▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓▓▓▓ | | | ▓▓ |
| ▓▓ | | ▓ ▓▓▓▓ | | | ▓ |



| Date * | Check/ Serial # | Description | Withdrawals/ Debits |
|---|---|---|---|

D-HCMFA2-017547
Appx. 05199



Page 9 of 10
Primary Account: ████
Beginning October 1, 2019 - Ending October 31, 2019          31

D-HCMFA2-017548
**Appx. 05200**

Page 10 of 10
Primary Account: ▮▮▮▮▮▮
Beginning October 1, 2019 - Ending October 31, 2019                    31



## How to Balance Your Account

**Step 1** • Enter all checks, deposits, and other automated teller card (ATM) transactions in your register.
  • Record all automated deductions, debit card transactions and electronic bill payments.
  • Record and deduct service charges, check printing charges, or other bank fees.
  • If you have an interest bearing account, add any interest earned shown on this statement.

**Step 2** • If applicable, sort checks in numerical order and mark in your register each check or other transaction that is listed on this statement.

**Step 3** • List any deposits or credits your have made that do not appear on this statement (see space provided below).

**Step 4** • List any checks you have written, debit card transactions, electronic payments and other deductions that do not appear on this statement (see space provided below).

| Date/Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Step 3 Total | $ |

| Date/Description | Check # | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| Step 4 Total |  | $ |

## Balancing Your Register to this Statement

| Step 5 | |
|---|---|
| • Enter the "current balance" shown on this statement | |
| • Add total from Step 3 | |
| • Subtotal | |
| • Subtract total from Step 4 | |
| • This balance should equal your register balance | |
| If it does not agree, see steps below | $ |

If your account does not balance, review the following:
· Check all your addition and subtraction above in your register.
· Make sure you remembered to subtract service charges listed on this statement and add any interest earned to your register.
· Amounts of deposits and withdrawals on this statement should match your register entries.
· If you have questions or need assistance, please refer to the phone number on the front of this statement.

**Change of Address**
Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Electronic Transfers** *(for consumer accounts only)*
In case of errors or questions about your Electronic Transfers, write to BBVA, Operations Compliance Support, P.O. Box 10566, Birmingham, AL 35296. Or simply call your local customer service number printed on the front of this statement. Call or write as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent the first statement on which the error or problem appeared.

• Tell us your name and account number (if any).
• Describe the error or  he transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
• Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 on claims on accounts opened less than 30 calendar days) to do this, we will credit your account for the amount you think is in error, so  hat you will have the use of the money during the time it takes us to complete our inves igation.

*For Non-Consumer Account customers, please refer to your current Non-Consumer Account Agreement for details regarding Electronic Fund Transfers.

**Overdraft Protection**
**Calculation of Interest Charge and Balance Subject to Interest Rate.** The interest charge is computed using your annual percentage rate divided by 365 or, in  he case of a leap year, 366, which gives you the "Applicable Rate." Although we calculate the interest charge by applying the Applicable Rate to each daily balance, the interest charge can also be calculated by multiplying the Applicable Rate by the "average daily balance"(Balance Subject to Interest Rate) shown on this statement,  hen multiplying that sum by the number of days in the billing cycle. To get the "Balance Subject to Interest Rate" shown on this statement we take the beginning balance of your account less any unpaid finance charges each day, add any new advances or debits, and subtract any payments or credits. This gives us the daily balance. Then we add all the daily balances for the billing cycle and divide by the number of days in the billing cycle. This give us the "average daily balance" shown on the statement as "Balance Subject to Interest Rate". Payments. Payments to your overdraft protec ion loan account made through our tellers or deposited at our automated teller machines (ATM s) Monday through Friday before  he posted cut-off time will be posted to your account on the date they are accepted. Otherwise, they will be posted on the next business day. Payments made through our ATM s via a funds transfer will be posted on the date they are received or on the next business day if made after 6pm CT (6pm MT for Arizona accounts and 6pm PT for California accounts) Monday through Friday or any ime Saturday, Sunday or bank holidays. BBVA business days are Monday  hrough Friday, excluding holidays.

**In Case of Errors or Questions About Your Statement** (Overdraft Protection Only)
 If you think your statement is wrong, or if you need more information about a transaction on your statement, write your issue on a separate document and send it to Bankcard Center, P.O. Box 2210, Decatur, AL 35699-0001. Telephone inquires may be made by calling your local BBVA branch listed on the front of this statement to speak with a Customer Service Representative. Please note: a telephone inquiry will not preserve your rights under federal law. We must hear from you no later than sixty (60) days after we sent you the first statement on which the error or problem appeared.

• Tell us your name and account number (if any).
• Describe the error or  he transfer you are unsure about, and explain as clearly as you can why you believe it is an error or what you need more information.
• Tell us the dollar amount of the suspected error.

You can stop the automatic deduction of the Minimum Payment from your checking account if you think your statement is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic deduction is scheduled to occur.

**Reporting Other Problems**
Please review your statement carefully. It is essential that any account errors or any improper transactions on your account be reported to us as soon as reasonably possible. If you fail to notify us of any suspected problems, errors or unauthorized transactions within the time periods specified in the deposit account agreement, we are not liable to you for any loss related to the problem, error or unauthorized transaction.

BBVA and BBVA Compass are trade names of BBVA USA, a member of the BBVA Group. BBVA USA, Member FDIC.

# EXHIBIT H

 **EAST WEST BANK** Your financial bridge®

9300 Flair Dr., 1St FL
El Monte, CA. 91731

Direct inquiries to:
888 761 3967

**ACCOUNT STATEMENT**
Page 1 of 3
STARTING DATE: December 01, 2021
ENDING DATE: December 31, 2021
Total days in statement period: 31

( 0 )

HIGHLAND CAPITAL MANAGEMENT LP
CHAPTER 11 DEBTOR IN POSSESSION
CASE #19 12239
OPERATING ACCOUNT
300 CRESCENT CT SUITE 700
DALLAS TX 75201 0000

Protecting the security of your account
and personal information is our top
priority. Learn about online security
practices and ways to protect yourself
from cybercrime at eastwestbank.com in
the "Privacy & Security" section.

## Commercial Analysis Checking

| | | | | |
|---|---|---|---|---|
| Account number | | Beginning balance | | |
| Low balance | | Total additions | ( 9) | |
| Average balance | | Total subtractions | ( 75) | |
| | | Ending balance | | |

**CREDITS**

| Number | Date | Transaction Description | Additions |
|---|---|---|---|
| | 12 28 | Wire Trans-IN     HIGHLAND CAPITAL M GMT FUND ADV | 180,472.81 |

**DEBITS**

| Date | Transaction Description | Subtractions |
|---|---|---|



3409    rev 05-16

D-HCMFA2-017550
**Appx. 05203**



ACCOUNT STATEMENT
Page 2 of 3
STARTING DATE: December 01, 2021
ENDING DATE: December 31, 2021

9300 Flair Dr., 1St FL
El Monte, CA. 91731

HIGHLAND CAPITAL MANAGEMENT LP

| Date | Transaction Description | | Subtractions |
|------|------------------------|---|--------------|



D-HCMFA2-017551
**Appx. 05204**



EAST WEST BANK Your financial bridge®

9300 Flair Dr., 1St FL
El Monte, CA. 91731

HIGHLAND CAPITAL MANAGEMENT LP

ACCOUNT STATEMENT
Page   3   of   3
STARTING DATE: December 01, 2021
ENDING DATE: December 31, 2021

D-HCMFA2-017552
Appx. 05205

## STATEMENT BALANCING
### Fill in the amounts below from the front of this statement and your checkbook.

**ENTER**
Ending Balance of
this Statement……………........... $_____

**ENTER**
Present Balance in
your checkbook……………… $_____

**Add** Deposits not shown
on this Statement $_____
_____
_____
**Sub Total**……… $_____

**Subtract** any service
charges, finance or
any other charges……………… $_____

**Sub Total** ………… $_____

**Subtract** Checks Issued
but not on Statement

| CHECK NUMBER OR DATE | AMOUNT | CHECK NUMBER OR DATE | AMOUNT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | | TOTAL | |

**Add** Monthly Interest
Earned ……………………………. $_____

**Add** any deposits not yet
entered in checkbook
(Reverse Advances)……………….. $_____
_____
_____
_____

**Subtract** any checks not
yet entered in checkbook
(Reverse Payments)……………….. $_____
_____
_____
_____

**Total** amount of outstanding
checks…………………………… $_____

**Balance**……………………………** $_____

**Balance**……....................................... $_____

#### IN CASE OF ERRORS OR QUESTIONS REGARDING YOUR CHECKING ACCOUNT
You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods as specified in the Deposit Agreement (which periods are no more than 60 days after we make the statement available to you and in some cases 30 days or less), we are not liable to you for, and you agree not to make a claim against us for problems or unauthorized transactions.

#### IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS
Telephone or write your local branch of account, listed on the statement front, as soon as you can if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we send you the FIRST statement on which the error or problem appeared.
1. Tell us your name and account number.
2. Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If our investigation takes longer than 10 business days from the date we received your notification, we will provisionally credit your account for the disputed amount until our investigation has been completed. If the disputed amount involves an electronic funds transfer to or from an account within 30 days after the first deposit to the account was made, we will provisionally credit your account within 20 business days from the date we receive your notification.

#### ACCOUNTS WITH CHECK STORAGE
Upon your request, we will provide you, without charge, legible copies of two checks from each account statement. Additional copies of canceled checks are subject to our service charges. You can make a request for these copies by contacting the branch listed on the front of this statement.

#### CHANGE OF ADDRESS
*Please notify us immediately for change of address by phoning or writing your local branch of account, listed on the front of this statement.*

MEMBER FDIC

(REV 11/07)

# EXHIBIT I

Appx. 05207





MEMBER FDIC          NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
Payments received at the address indicated on this statement by 3:00 pm, Central Standard Time
each banking day will be credited as of that date.

| OUTSTANDING CHECKS | RECONCILIATION INSTRUCTIONS |
|---|---|

**Reconciliation of Account**

**CHECKS WRITTEN BUT NOT PAID**

| NUMBER | AMOUNT |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Date _____

Please examine this statement and items at once and refer any exceptions immediately.

Sort your checks numerically or by date issued.

Mark off in your checkbook each of your checks paid by the bank and list the numbers and amounts of those not paid in the space provided at the left. Include any checks still not paid from previous statements.

Subtract from your checkbook balance any SERVICE CHARGE (S.C.) or bank charge appearing on this statement.

Reconcile your statement in the space provided below.

| | | | |
|---|---|---|---|
| Enter bank balance from statement | | | |
| Add depos.ts not credited by bank (if any) | | | |
| | TOTAL | | |
| Total of Checks not paid | Subtract total of checks not paid | | |
| | THIS AMOUNT SHOULD EQUAL YOUR CHECKBOOK BALANCE-> | | |

Any Charge for Imprinted Checks Includes State Sales Tax Computed at the Current Rate, When Applicable
Notice: The Annual Percentage Rate and Daily Periodic Rate may vary.

**EXPLANATION OF BALANCE ON WHICH THE INTEREST CHARGE IS COMPUTED**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the bi ling cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances/fees, and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:
**NexBank**
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
You may also contact us on the Web: www.nexbank.com
In your letter, give us the following information:
- Account Information: Your name and account number.
- Dollar Amount: The do lar amount of the suspected error.
- Description of Problem: If you think there is an error on your bi I, describe what you believe is wrong and why you be ieve t is a mistake.
You must contact us w thin 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing or electronically. You may ca l us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your cred t lim t.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 972.934.4700 or Write us at NexBank, 2515 McKinney Avenue, 11th Floor, Da las, Texas 75201 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number (if any).
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the do lar amount of the suspected error.
We w l investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time t takes us to complete our investigation.

# EXHIBIT J



NexBank's Privacy Notice, which has not changed, is available on our website at www.NexBank.com/files/privacynotice.pdf. If you would like a copy of our Privacy Notice mailed to you, please call us at 972-934-4700.

Checking Account/s

Account Type: Highland Capital Management LP

Analysis Checking w/ Interest

Account Number ▇▇▇▇ Statement Dates 4/03/17 thru 4/30/17

--------------------------------------------------------------------------------

Deposits and Additions

| Date | Description | Amount |
|------|-------------|--------|
| | | |
| | | |
| | | |
| 4/12 | IB Transfer from D ****415 to D ****130 | 1,000,000.00 |
| | | |

MEMBER FDIC          NOTICE: SEE LAST PAGE FOR IMPORTANT INFORMATION
Payments received at the address indicated on this statement by 3:00 pm. Central Standard Time
each banking day will be credited as of that date.

D-HCMFA2-017566

**Appx. 05212**

| OUTSTANDING CHECKS | | | | RECONCILIATION INSTRUCTIONS | | | |
|---|---|---|---|---|---|---|---|
| **Reconciliation of Account** | | | | Date _____ | | | |
| CHECKS WRITTEN BUT NOT PAID | | | | Please examine this statement and items at once and refer any exceptions immediately. | | | |
| NUMBER | | AMOUNT | | | | | |
| | | | | Sort your checks numerically or by date issued. | | | |
| | | | | Mark off in your checkbook each of your checks paid by the bank and list the numbers and amounts of those not paid in the space provided at the left. Include any checks still not paid from previous statements. | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | Subtract from your checkbook balance any SERVICE CHARGE (S.C.) or bank charge appearing on this statement. | | | |
| | | | | | | | |
| | | | | Reconcile your statement in the space provided below. | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | Enter bank balance from statement | | | |
| | | | | Add depos.ts not credited by bank (if any) | | | |
| | | | | | TOTAL | | |
| Total of Checks not paid | | | | Subtract total of checks not paid | | | |
| THIS AMOUNT SHOULD EQUAL YOUR CHECKBOOK BALANCE-> | | | | | | | |

Any Charge for Imprinted Checks Includes State Sales Tax Computed at the Current Rate, When Applicable
Notice: The Annual Percentage Rate and Daily Periodic Rate may vary.

**EXPLANATION OF BALANCE ON WHICH THE INTEREST CHARGE IS COMPUTED**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the bing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances/fees, and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT**

If you think there is an error on your statement, write to us at:
**NexBank**
2515 McKinney Avenue, 11th Floor
Dallas, Texas 75201
You may also contact us on the Web: www.nexbank.com
In your letter, give us the following information:
- Account information: Your name and account number.
- Dollar Amount: The do lar amount of the suspected error.
- Description of Problem: If you think there is an error on your b.l, describe what you believe is wrong and why you be.eve 1 is a mistake.
You must contact us w.thin 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing or electronically. You may ca l us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true.
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your cred t lim t.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 972.934.4700 or Write us at NexBank, 2515 McKinney Avenue, 11th Floor, Da las, Texas 75201 as soon as you can. If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number (if any).
(2) Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the do lar amount of the suspected error.
We wi l investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time t takes us to complete our investigation.

D-HCMFA2-017569

**Appx. 05215**

# EXHIBIT 240

Appx. 05216

Page 1

1

2        IN THE UNITED STATES BANKRUPTCY COURT

3         FOR THE NORTHERN DISTRICT OF TEXAS

4                  DALLAS DIVISION

5    ------------------------X

6    IN RE:                     Chapter 11

7             Case No. 19-34054-SGJ-11

8    HIGHLAND CAPITAL

9    MANAGEMENT, L.P.,

10            Debtor.

11   ------------------------X

12   HIGHLAND CAPITAL
     MANAGEMENT, L.P.,
13           Plaintiff,  Adversary Proceeding No.

14    -vs-                     21-03004

15   NEXPOINT ADVISORS, L.P.,
     JAMES DONDERO, NANCY
16   DONDERO, and the
     DUGABOY INVESTMENT
17   TRUST,

18            Defendants.

19   ------------------------X

20           REMOTE DEPOSITION OF ALAN JOHNSON
                 Montclair, New Jersey
21                May 27, 2022

22

23

24   Reported by:  BONNIE PRUSZYNSKI, RMR, RPR, CLR

25   JOB NO. 210473

Appx. 05217

Page 2

1

2

3

4

5

6

7

8

9                              May 27, 2022

10                             10:40 A.M.

11

12

13

14              REMOTE VIDEOTAPED DEPOSITION OF

15  ALAN JOHNSON, held remotely from Montclair, New

16  Jersey, before Bonnie Pruszynski, a Registered

17  Professional Reporter, Registered Merit Reporter,

18  Certified Livenote Reporter, and Notary Public of

19  the State of New York.

20

21

22

23

24

25

```
 1
 2    R E M O T E·  ·A P P E A R A N C E S:
 3
 4    PACHULSKI STANG ZIEHL & JONES LLP
 5    Attorneys for Highland Capital Management, L.P.
 6             780 Third Avenue
 7             New York, NY 10017
 8    BY: JOHN MORRIS, ESQ.
 9
10    STINSON LLP
11    Attorneys for James Dondero, HCRE, HCMS
12             3102 Oak Lawn Avenue
13             Dallas, TX 75219
14    BY: MICHAEL AIGEN, ESQ.
15
16    Also Present:
17             La Asia Canty, Senior Paralegal
18
19
20
21
22
23
24
25
```

Appx. 05219

Page 4

```
 1                      A. Johnson
 2            THE REPORTER:  Do all parties
 3       stipulate to the validity of this remote
 4       swearing and that it will be admissible
 5       in the courtroom as if it had been taken
 6       following Rule 30 of the Federal Rules of
 7       Civil Procedure and the state's rules
 8       where this case is pending?
 9            MR. MORRIS:  Yes.
10            MR. AIGEN:  Yes.
11            (Witness sworn.)
12  ALAN JOHNSON,
13            called as a witness, having been first
14            duly sworn, was examined and testified
15            as follows:
16  EXAMINATION
17  BY MR. MORRIS:
18       Q.    Can you hear me okay, Mr. Johnson?
19       A.    Yes, you are clear.
20       Q.    Okay.  We are on the record now,
21  Mr. Johnson.  This is the second time that I
22  have deposed you in connection with the
23  Highland matter, and I just want to go over a
24  little bit of background briefly to make sure
25  we are all on the same page.
```

1                         A. Johnson

2              You previously issued an expert

3    report in support of Mr. Dondero in

4    connection with the notes litigation.  Do I

5    have that right?

6         A.    Yes.

7         Q.    And I took your deposition in

8    connection with that particular report.  Do I

9    have that right?

10        A.    Yes.

11        Q.    Okay.  Are you aware that the

12   parties to this litigation have agreed that

13   we can use the transcript from your first

14   deposition in connection with this second

15   lawsuit?

16        A.    Yes.

17        Q.    Okay.  Have you had an opportunity

18   to review that transcript?

19        A.    I reviewed it when it was

20   originally given to me.  I haven't looked at

21   it since.

22        Q.    Okay.  As you sit here today, can

23   you think of anything in the, in the -- in

24   the transcript, as opposed to the report, can

25   you think of anything in the transcript that

1                              A. Johnson

2    was wrong or inaccurate that you want to

3    correct?

4        A.    I can't think of anything, no.

5        Q.    And so, then you prepared a second

6    report for use in the second lawsuit.  Do I

7    have that right?

8        A.    Yes.

9        Q.    And is it fair to say that your

10   second report -- withdrawn.

11             Is it fair to say that you prepared

12   your second report by beginning and then

13   modifying your first report in certain

14   respects?

15       A.    Yes.  I updated my first report.

16   Started there, yes.

17       Q.    Can you tell me in broad strokes

18   what changes were made to the first report

19   that are reflected in the second report?  I

20   know, for example -- I will just put out an

21   example -- you have included an analysis of

22   the founder's premium.  Do I have that right?

23       A.    Yes.

24       Q.    And you have made adjustments to

25   Mr. Dondero's compensation to take into

Page 7

1                    A. Johnson

2  account some of the issues that we discussed

3  during your first deposition.  Do I have that

4  right?

5       A.    Yes.

6       Q.    Okay.  Other than those two

7  changes, can you share with me any other

8  substantive changes that you made in the

9  second report from the first report?

10      A.    I think those would be the two.

11 There are some wording changes, but I think

12 that those are the substantive changes.

13      Q.    Okay.  I appreciate that, and that

14 will make this go as I had expected.

15            With respect to the work that you

16 did in -- let's focus on the founder's

17 premium first.  You didn't include an

18 analysis of the founder's premium in your

19 first report; correct?

20      A.    Right.

21      Q.    Can you describe for me what

22 information you relied upon to do the

23 analysis of the founder's premium?  And if

24 it's helpful to you -- do you have your

25 report in front of you?

Page 8

1                    A. Johnson

2        A.    Yes, I do.

3        Q.    Okay.  I know that the founder's

4   premium discussion can be found on page 13.

5   I'm happy to put it on the screen if that's

6   helpful.

7             My question is kind of simple.  Can

8   you tell me what information you relied upon

9   to determine -- to conduct the analysis of

10  the founder's premium?

11       A.    Looked in the -- the public domain

12  and found an academic article that addressed

13  founder's premiums.  Also in the public

14  domain, there is examples of founders in

15  financial services that are unusually well

16  paid, and that's documented.  And then my own

17  client experience, working with founders in,

18  you know, mainly private financial services

19  firms.

20       Q.    Okay.  Was any of that information

21  unavailable to you at the time you prepared

22  your first analysis?

23       A.    I hadn't done the research when I

24  prepared first report, but all of that would

25  have likely been available.

Page 9
1                         A. Johnson

2       Q.    Okay.  Can you identify any piece

3    of information that you relied upon in your

4    founder's premium analysis that you do not

5    believe would have been available to you at

6    the time you prepared your first report?

7       A.    I don't -- I can't think of

8    anything.

9       Q.    How much time did you spend

10   preparing the analysis on the founder's

11   premium?  Do you recall?

12      A.    Between me and my colleague,

13   probably 30, 40 hours, probably.

14      Q.    Is that on the whole report, or is

15   that on the founder's premium analysis?

16      A.    Primarily on the founder's premium.

17      Q.    Did you speak with Mr. Dondero or

18   anybody at Highland in connection with the

19   preparation of your founder's premium

20   analysis?

21      A.    I don't believe so.

22      Q.    Okay.  So, you didn't rely upon any

23   new factual information to support your

24   founder's premium analysis; is that fair?

25      A.    I did the analysis, which I had not

Appx. 05225

1                              A. Johnson

2    done at first, but I did not -- I'm confused

3    on the question.  I'm sorry.

4        Q.    And that's fair.  Maybe it's the

5    use of the word "fact."

6              I want to distinguish between the

7    facts that relate to the founder's premium,

8    meaning Mr. Dondero's status and the work he

9    did, as opposed to the research that you did

10   where you found articles in the field.  And

11   with that distinc- -- do you understand the

12   distinction that I am making?

13       A.    Yes.

14       Q.    Okay.  So, with that distinction in

15   mind, did you -- did you learn of any facts

16   in connection with the founder's premium

17   analysis that you didn't have at the time you

18   prepared the first report?

19       A.    No, I don't believe so.

20       Q.    And let's talk about the facts for

21   a minute.  Are you aware of any -- any person

22   in the world who is also referred to from

23   time to time as one of the founders of

24   Highland besides Mr. Dondero?

25       A.    Mr. Okada.  I think he was

```
 1                         A. Johnson
 2    considered a founder as well, I believe.
 3         Q.    Did you do any analysis to
 4    determine how work was allocated --
 5    withdrawn.
 6              Do you know whether Mr. Okada is
 7    still affiliated with Highland today?
 8         A.    I do not know.
 9         Q.    Do you know how work was allocated
10    between Mr. Okada and Mr. Dondero during the
11    period 2013 to 2019?
12         A.    No.
13         Q.    Did you do any analysis to try to
14    determine how work was allocated between
15    those two individuals?
16         A.    No.
17         Q.    Do you know if there is anybody in
18    the world who is considered to be a founder
19    of Highland other than Mr. Okada and
20    Mr. Dondero?
21         A.    I do not know.
22         Q.    Would it be relevant to your
23    analysis if there were more than two
24    co-founders?
25         A.    Not from the work I did, no.
```

1                          A. Johnson

2        Q.    So, regardless of how many founders

3   there were and the work that those other

4   co-founders had done, you believe that

5   Mr. Dondero would be entitled to a founder's

6   premium of 15 to 50 percent?

7        A.    Yes.  Considering his role during

8   this period, yes.

9        Q.    Okay.  But that doesn't take into

10  account -- I just want to make sure we're

11  clear about this.  That doesn't take into

12  account in any way any role played by any

13  other founder in connection with the

14  business; correct?

15       A.    It does not, no.

16       Q.    And you didn't do any work to try

17  to determine the role played by Mr. Okada or

18  any other founder of Highland, other than

19  Mr. Dondero; correct?

20       A.    That's right.

21       Q.    Do you have an opinion as to where

22  between 15 and 50 percent Mr. --

23  Mr. Dondero's premium should fall?

24       A.    I do not.

25       Q.    Okay.  It's somewhere within that

1                        A. Johnson

2    band of 15 to 50 percent.  Do I have that

3    right?

4        A.    Yes.

5        Q.    Is there any information that you

6    would need to determine where within that

7    band the founder's premium should properly

8    lie?

9        A.    I think I would probably need to do

10   an additional analysis of, as you mentioned,

11   the roles of other people within the

12   organization to get -- to have an opinion

13   within that range.

14       Q.    Okay.  But that's not work that you

15   did in connection with this report; correct?

16       A.    No, I did not.

17       Q.    Now, again -- do you have both

18   reports in front of you?

19       A.    I do not.

20       Q.    Okay.  Let's see if I can -- if I

21   can do this easily.

22             Do you recall that in the first

23   report, you concluded that based on an

24   analysis of the compensation you believed

25   Mr. Dondero had received from 2013 to 2019,

```
 1                    A. Johnson
 2   there was approximately a $21 million
 3   shortfall between the compensation he
 4   received and what you believed a reasonable
 5   executive of his type would have received
 6   during that period?
 7       A.    I don't recall the exact figure,
 8   but that sounds about right, yes.
 9       Q.    And now that figure has increased
10   to a range of 22 to 37 million dollars, even
11   though you've added $5 million of
12   compensation, and the reason for that is the
13   founder's premium; fair?
14       A.    Yes.
15       Q.    Okay.  So, if we accept your
16   analysis as true and accurate, without
17   debate, and we find that Mr. Dondero was
18   undercompensated by a magnitude of 22 to
19   37 million dollars for the seven-year period
20   that you've analyzed, your report doesn't
21   provide any justification for the forgiveness
22   of any loans beyond the $37 million; is that
23   fair?
24           MR. AIGEN:  Objection, form.
25       A.    Well, I looked at a couple of
```

```
 1                          A. Johnson
 2    different things.  One is the -- the
 3    compensation, what the market compensation,
 4    but I also addressed the issue of loans and
 5    the issue of loan forgiveness.  So, I think
 6    from a compensation perspective, the range
 7    you mentioned I believe is accurate, but
 8    it -- I think the other substantive thing is
 9    the -- you know, the use of loans and the
10    potential forgiveness of loans.
11        Q.    So, is it your expert opinion that
12    because loans are forgiven for executives,
13    that it would be reasonable for Highland to
14    have forgiven loans in excess of $37 million,
15    even though $37 million is the maximum amount
16    of undercompensation that you've -- that
17    you've analyzed?
18             MR. AIGEN:  Objection, form.
19        A.    Well, I think it ties into the fact
20    that Mr. Okada and Mr. Dondero didn't take as
21    much compensation or earnings out of the
22    business over time.  These loans were -- I
23    think the term "delayed gratification" in the
24    business.  So, I think it's all tangled up or
25    tied up with the issue of them not taking
```

1                          A. Johnson

2    money out of the business, but from a

3    compensation perspective, I think the range

4    is as you described it.

5        Q.    So that if -- withdrawn.

6              If I asked you to assume that a

7    substantial portion of the loans at issue

8    were made to corporate affiliates in order to

9    fund the operations of the corporate

10   affiliates, and the corporate affiliates

11   carried those loans as liabilities on their

12   balance sheet, do you have any experience

13   where loans of that type, operational loans,

14   were forgiven for purposes of compensating an

15   executive?

16       A.    That I can't recall.  I can't

17   recall any.

18       Q.    Right.

19             Have you ever seen any analysis

20   anywhere that suggests it would be

21   appropriate to forgive corporate compensation

22   as part of -- withdrawn.

23             Have you ever seen any analysis

24   anywhere that suggests it would be

25   appropriate to forgive corporate loans as

```
 1                    A. Johnson
 2   part of an executive's personal compensation
 3   package?
 4       A.    I apologize.  I lost your train of
 5   thought on the question.  I'm sorry.
 6       Q.    Have you ever seen any analysis
 7   that suggests it's either appropriate or --
 8   withdrawn.
 9            Have you ever seen any study that
10   suggests it's appropriate to forgive a
11   corporate loan that was used -- that was used
12   and obtained for operational purposes, to
13   forgive that loan as part of the personal
14   compensation package of an executive?
15       A.    With those specific facts, I'm not
16   familiar with any, no.
17       Q.    Okay.  Do you understand that a
18   substantial portion of the loans at issue
19   were given to corporate affiliates owned or
20   controlled by Mr. Dondero and not to
21   Mr. Dondero personally?
22       A.    Yes, I'm aware of that.
23       Q.    Okay.  And do you have any
24   understanding as to what the purpose of those
25   loans were?
```

1                      A. Johnson

2      A.    I -- at least I -- it was unclear

3  to me.

4      Q.    Did you ask anybody why Highland

5  made loans to affiliates owned and controlled

6  by Mr. Dondero?

7      A.    No, I did not.

8      Q.    So, that's not a factor that you

9  took into your account in your analysis;

10  correct?

11      A.    No.

12      Q.    And do you understand that it's

13  those very loans -- withdrawn.

14           Do you understand that there are

15  corporate loans that were made for

16  operational purposes that Mr. Dondero now

17  contends should be forgiven as part of his

18  personal compensation package?

19      A.    In reading Mr. Dondero's

20  deposition, at least my reading of it, the

21  exact use of those loans was not clear.  So,

22  I know that loans were made at the entities,

23  but at least reading the deposition, the

24  purpose, it was not clear, at least reading

25  his deposition.

1                          A. Johnson

2        Q.    Okay.  Have you ever advised a

3    company to forgive a corporate loan as part

4    of an executive's personal compensation

5    package?

6        A.    Yes, I have.

7        Q.    Can you identify -- and did you

8    tell them that it would be appropriate to do

9    that?

10       A.    Yes, I have.

11       Q.    And is that in a case other than

12   Highland?

13       A.    It would be other clients, yes.

14       Q.    And so, you've done that, but you

15   haven't seen any study or any analysis

16   anywhere that says that's appropriate; right?

17       A.    I don't -- I don't -- I have never

18   seen that study, no.

19       Q.    Okay.  Can you identify -- how many

20   times have you advised companies to forgive

21   corporate obligations as part of an

22   executive's personal compensation package?

23       A.    I must have misunderstood your

24   question.  I thought you had asked the loans

25   directly to the executive.

Page 20

```
 1                      A. Johnson
 2      Q.    No.  So let me start again, and I
 3   appreciate that, and this is not -- not the
 4   easiest topic to inquire about, so, forgive
 5   me.
 6           So, the question is:  Have you ever
 7   advised a company to forgive loans that it
 8   had made to a corporate affiliate for the
 9   purpose of compensating one of the
10   corporation's executives?
11      A.    Those specific facts, I don't
12   believe so.
13      Q.    Okay.  Are you aware of any company
14   that has ever forgiven a loan that it made to
15   a corporate affiliate for the purpose of
16   providing compensation to one of its
17   executives?
18      A.    I don't recall any, no.
19           MR. MORRIS:  Okay.  I have no
20      further questions.
21           MR. AIGEN:  I have nothing.
22           MR. MORRIS:  Okay.  Mr. Johnson,
23      thanks again.  Have a great weekend.
24           MR. AIGEN:  Thank you, everyone.
25                     oOo
```

Page 21

1                           A. Johnson

2            I,  ALAN JOHNSON, the witness herein, do

3         hereby certify that the foregoing testimony

4    of the  pages of this deposition to be a true and

5    correct  transcript, subject to the corrections,

6    if any, shown on the attached page.

7         _____

8

9         Subscribed and sworn to before me this

10        _____day of _____,_____.

11        _____

12         NOTARY PUBLIC

13

14

15

16

17

18

19

20

21

22

23

24

25

Appx. 05237

Page 22

1                           A. Johnson

2                    C E R T I F I C A T E

3          I, Bonnie Pruszynski, RPR, RMR, do

4       hereby certify that on May 27, 2022,

5       appeared telephonically before me, ALAN

6  JOHNSON.

7              I further certify that the said

8        witness was first duly sworn to testify to

9  the truth in the cause aforesaid.

10             I further certify that the signature

11       of the witness to the foregoing deposition

12  was not specified by counsel.

13             I further certify that I am not

14       counsel for nor in any way related to any of

15  the parties to this suit, nor financially

16  interested in  the action.

17             IN WITNESS WHEREOF, I have hereunto

18       set my hand this 27TH of May,  2022.

19       _____

20       Bonnie Pruszynski

21

22

23

24

25

Appx. 05238

Page 23

```
 1                     ERRATA SHEET

 2   Case Name:

 3   Deposition Date:

 4   Deponent:

 5   Pg.  No. Now Reads      Should Read  Reason

 6   ____ ____ _____    _____   _____

 7   ____ ____ _____    _____   _____

 8   ____ ____ _____    _____   _____

 9   ____ ____ _____    _____   _____

10   ____ ____ _____    _____   _____

11   ____ ____ _____    _____   _____

12   ____ ____ _____    _____   _____

13   ____ ____ _____    _____   _____

14   ____ ____ _____    _____   _____

15   ____ ____ _____    _____   _____

16   ____ ____ _____    _____   _____

17   ____ ____ _____    _____   _____

18   ____ ____ _____    _____   _____

19   ____ ____ _____    _____   _____

20                          _____
                                    Signature of Deponent
21

22   SUBSCRIBED AND SWORN BEFORE ME

23   THIS _____ DAY OF _____, 2022.

24   _____

25   (Notary Public)   MY COMMISSION EXPIRES:_____
```

Appx. 05239

1                      A. Johnson

2                  I N D E X

3   WITNESS                          PAGE

4   ALAN JOHNSON

5   Examination by Mr. Morris                5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Appx. 05240**