Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant Highland Capital*
*Management Fund Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | **Case No. 19-34054-sgj11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Adversary No. 21-03082** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.** | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   Preliminary Statement.................................................................................................... 1

II.  Statement of Facts...................................................................................................... 2

   A.  Procedural Background............................................................................................ 2

   B.  The Promissory Notes.............................................................................................. 2

   C.  Plaintiff Agreed to Forgive the Notes Upon Fulfilment of Conditions Subsequent........... 2

      1.  The Agreements to Forgive the Notes. ................................................................ 2

      2.  Forgivable Loans as Compensation. .................................................................. 4

      3.  The LPA Does Not Prohibit the Agreements. ..................................................... 6

      4.  Dugaboy Was Entitled to Make the 2014 Agreement Regardless of Who Was Trustee........................................................................................................ 8

      5.  The Agreements Were Not "Secret." ................................................................. 10

      6.  HCMFA Was Entitled to and Did Make Prepayments. ......................................... 13

      7.  Jim and Nancy Dondero Provide Sworn Deposition Testimony and Declarations Evidencing the Agreements. ..................................................... 14

III. Argument and Authorities........................................................................................... 15

   A.  Legal Standard. ................................................................................................... 15

   B.  Plaintiff is Not Entitled to Summary Judgment because Defendant Raises Genuine Issues of Material Fact with its Defenses. ................................................................ 18

      1.  The Evidence Shows that the Agreements Exist. .................................................. 18

         a.  Jim Dondero Not Declaring the Notes "Forgiven" upon the Sale of a Small portion of HCM's MGM Shares is Not Probative of Whether the Agreements Exist. ........................................................................... 19

         b.  Nancy Dondero was Competent to Enter into the 2016 Agreement.................... 20

            (i)   Nancy Dondero Lacking Certain Information Has No Bearing on her Competency to Enter into the 2016 Agreement. ........................................... 21

            (ii)  Nancy Dondero Had the Information She Needed to Justify Entering into the 2016 Agreement. ............................................................. 21

            (iii) Whether Nancy Dondero's Had Detailed Knowledge of HCM's Financials Has No Bearing on the Validity or Enforceability of the 2016 Agreement. ....................................................................... 23

            (iv)  Nancy Dondero Was Personally "Competent" to Cause Plaintiff to Enter into the 2016 Agreement. ................................................... 24

         c.  The LPA Does Not Preclude the Agreements. ................................................. 25

i

d. Publication is Not a Prerequisite to the Existence or Validity of an Agreement. ................................................................................................... 26

e. The Agreements Are Not Required to be in Writing. ............................................. 27

f. The Evidence Shows the Agreements Were Supported by Consideration. .......... 27

g. Agreements Need Not Be Hotly or Even Gently Negotiated to Exist and be Valid and Enforceable. ........................................................................................... 30

h. Defendant's Summary Judgment Evidence Shows that Plaintiff Does Have a History of Forgiving Loans as Compensation. ..................................................... 31

i. Any Minor Inconsistency Between the Answer and Testimony is Simply Fodder for Cross Examination, Not a Basis for Summary Judgment. ................... 31

j. HCMFA's Prepayments on the Notes Do Not Undermine the Existence of the Agreements. ..................................................................................................... 32

k. Plaintiff Miscites Alan Johnson's Testimony Which in Fact Supports Defendant's Position. ............................................................................................ 33

2. Both Sides to the Agreements Provide Summary Judgment Evidence Attesting to the Agreements' Existence. ................................................................................... 35

IV. Conclusion ....................................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

<u>Pages(s)</u>

**Cases**

*1320/1390 Don Haskins, Ltd. v. Xerox Com. Sols., LLC*,
    584 S.W.3d 53 (Tex. App. 2018) ............................................................................28

*271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*,
    03-07-00498-CV, 2008 WL 2387630 (Tex. App.—Austin June 11, 2008, no pet.) ..............37

*Al-Saud v. Youtoo Media, L.P.*,
    3:15-CV-3074-C, 2017 WL 3841197 (N.D. Tex. Mar. 15, 2017)..............................16, 17, 35

*Anderson Bros. Corp. v. O'Meara*,
    306 F.3d 672 (5th Cir. 1962) ................................................................................24

*Armstrong v. Assocs. Int'l Holding Corp.*,
    No. 3:05-CV-02006-K, 2006 U.S. Dist. LEXIS 70043 (N.D. Tex. Sept. 20, 2006) ..............23

*Brown v. Jackson*,
    40 S.W. 162 (Tex. Civ. App. 1897) ..........................................................................28

*Buxani v. Nussbaum*,
    940 S.W.2d 350 (Tex. App.—San Antonio 1997, no writ) ....................................................35

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex. 2005)................................................................................16

*Clark v. W. Chem. Products, Inc.*,
    557 F.2d 1155 (5th Cir. 1977) ................................................................................18

*Corsaro v. Columbia Hosp. at Med. City Dallas Subsidiary, LP*,
    No. 3:21-CV-01748-N, 2021 LEXIS 247218 (N.D. Tex., Dec. 29, 2021)..................24, 25, 30

*Critchfield v. Smith*,
    151 S.W.3d 225 (Tex. App.—Tyler 2004, pet. denied).........................................................27

*In re Davenport*,
    552 S.W.3d 452 (Tex. 2017)................................................................................26

*Del Bosque v. AT&T Adver., L.P.*,
    441 Fed. Appx. 258 (5th Cir. Sept. 16, 2011)........................................................25

*Dobson v. Masonite Corporation*,
    359 F.2d 921 (C.A.4, 1966) ................................................................................8

*Dorsett v. Hispanic Hous. & Educ. Corp.*,
   389 S.W.3d 609 (Tex. App.—Houston [14th Dist.] 2012, no pet.)..........................16

*Envtl. Conservation Org. v. City of Dallas, Tex.*,
   529 F.3d 519 (5th Cir. 2008) ...............................................................................16

*First Com. Bank v. Palmer*,
   226 S.W.3d 396 (Tex. 2007)................................................................................28

*Fisher v. Blue Cross and Blue Shield of Tex., Inc.*,
   3:10-CV-2652-L, 2015 WL 5603711 (N.D. Tex. Sept. 23, 2015) ...................36, 37

*Franklin v. Regions Bank*,
   CV 5:16-1152, 2021 WL 867261 (W.D. La. Mar. 8, 2021) ...................................37

*Garcia v. Lumacorp, Inc.*,
   No. CIV.A. 3:02-CV-2426-, 2004 WL 1686635 (N.D. Tex. July 27, 2004),
   aff'd, 429 F.3d 549 (5th Cir. 2005) .......................................................................30

*Ginther-Davis Ctr., Ltd. v. Houston Nat. Bank*,
   600 S.W.2d 856 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e) ......23

*Gulbenkian v. Penn.*,
   151 Tex. 412, 252 S.W.2d 929 (1952)......................................................17, 18, 31

*Haverda v. Hays County*,
   723 F.3d 586 (5th Cir. 2013) ...............................................................................16

*Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding*,
   480 S.W.2d 607 (Tex. 1972)................................................................................35

*Hoard v. McFarland*,
   229 S.W. 687 (Tex. Civ. App. 1921) ...................................................................28

*Honore v. Douglas*,
   833 F.2d 565 (5th Cir. 1987) ...............................................................................38

*Ibarra v. Texas Employment Commission*,
   823 F.2d 873 (5th Cir. 1987) ...............................................................................23

*Insurance Co. of North America v. Bosworth Const. Co.*,
   469 F.2d 166 (5th Cir. 1972) ...............................................................................18

*Katy Int'l, Inc. v. Jinchun Jiang*,
   451 S.W.3d 74 (Tex. App. 2014)..........................................................................28

*LegacyRG, Inc. v. Harter*,
   705 F. App'x 223 (5th Cir. 2017).........................................................................17

iv

*Looney v. Irvine Sensors Corp*,
CIV.A.309-CV-0840-G, 2010 WL 532431 (N.D. Tex. Feb. 15, 2010) ................................15

*Mandell & Wright v. Thomas*,
441 S.W.2d 841 (Tex. 1969)................................................................................................25

*Marx v. FDP, LP*,
474 S.W.3d 368 (Tex. App. 2015)........................................................................................28

*In re Palms at Water's Edge, L.P.*,
334 B.R. 853 (Bankr. W.D. Tex. 2005)..........................................................................35, 36

*PGP Gas Products, Inc. v. Reserve Equip., Inc.*,
667 S.W.2d 604 (Tex. App.—Austin 1984, writ ref'd n.r.e.)................................................37

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*,
810 F.3d 940 (5th Cir. 2015) ...............................................................................................17

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133, 120 S. Ct. 2097 (2000)..................................................................................17

*Roark v. Stallworth Oil and Gas, Inc.*,
813 S.W.2d 492 (Tex. 1991).................................................................................................30

*Runnells v. Firestone*,
746 S.W.2d 845 (Tex. App.—Houston [14th Dist.] 1988, writ denied).................................35

*Samuel v. Holmes*,
138 F.3d 173 (5th Cir. 1998) ...............................................................................................16

*Science Spectrum, Inc. v. Martinez*,
941 S.W.2d 910 (Tex. 1997).................................................................................................17

*Southern Equip. Sales, Inc. v. Ready Mix Sols., LLC*,
No. 05-17-01176-CV, 2018 WL 3454801 (Tex. App. July 18, 2018) ...................................28

*WCW Int'l, Inc. v. Broussard*,
No. 14–12–00940–CV, 2014 WL 2700892 (Tex. App.-Houston [14th Dist.]
Mar. 4, 2014, pet. filed) .......................................................................................................28

*Yaquinto v. Segerstrom (In re Segerstrom)*,
247 F.3d 218 (5th Cir. 2001) ...............................................................................................16

*Zell Ins. Agency, Inc. v. Guar. Sec. Ins. Co.*,
399 F.2d 147 (5th Cir. 1968) ..................................................................................................8

v

**Other Authorities**

Restatement (Second) of Contracts § 12(2) (1981) .......................................................................25

14 Tex. Jur. 3d Contracts § 157 ................................................................................................28

3 Williston on Contracts § 7:44 (4th ed.)..................................................................................28

CORE/3522697.0002/174672747.14

Defendant Highland Capital Management Fund Advisors, L.P. ("HCMFA" or "Defendant") files this Memorandum of Law in Response to Highland Capital Management, L.P.'s ("Highland Capital" or "Plaintiff") *Motion for Summary Judgment* (the "Motion").

## I. Preliminary Statement

1.      Once again, Plaintiff submits an almost entirely fact-based Motion in which it daftly attempts to maneuver around the record's evidentiary support for HCMFA's defenses. Plaintiff's central argument is that it does not believe – and therefore, this Court should not believe – Defendant's and other uncontroverted witness testimony that the loans at issue are subject to agreements providing for forgiveness upon the occurrence of certain circumstances. Plaintiff has failed to meet its initial burden of pointing out the absence of evidence supporting HCMFA's case, and thus, Plaintiff's Motion must be denied. Plaintiff's assertion that "there is a complete absence of evidence to support HCMFA's conjured affirmative defenses" is demonstrably false and misleading.[1] Indeed, the very fact that Plaintiff's principal argument is that "HCMFA's assertions are so weak that the Court must grant [Plaintiff's] Motion" is a concession that the case turns on disputed genuine issues of material fact, regardless of how loudly or snidely Plaintiff avows disbelief. Plaintiff's disdain for Defendant's defenses does not equate to an absence of evidence. Defendant's affirmative defenses are supported by facts and evidence in both Plaintiff and Defendant's Appendices, and the Court – when viewing the evidence in the light most favorable to the Defendants – must deny Plaintiff's Motion. Plaintiff's Motion is essentially its closing argument at trial – arguing that Plaintiff's version of the facts should be accepted over Defendant's version – rather than a motion for summary judgment, as it is based almost entirely on the credibility of disputed facts and lacks authorities addressing the legal sufficiency of Defendant's

---

[1] Motion, ¶ 3.

evidence.   In this Response, Defendant directs the Court to summary judgment evidence supporting its defenses that create genuine issues of material fact requiring the Court to deny Plaintiff's Motion.

## II.    Statement of Facts

### A.    Procedural Background.

2.    Defendants generally agree with Plaintiff's recitation of procedural background recited in its Motion.[2]  The procedural history, however, is not relevant to this Response.

### B.    The Promissory Notes.

3.    Plaintiff issued two demand promissory notes  to HCMFA, one in 2014 and one in 2016 (the "2014 Note" and the "2016 Note" respectively, and collectively, the "Notes").[3] Defendant does not dispute the amounts or the existence of the Notes as Plaintiff has recited and referenced them.[4]

### C.    Plaintiff Agreed to Forgive the Notes Upon Fulfilment of Conditions Subsequent.

#### 1.    The Agreements to Forgive the Notes.

4.    The Highland Capital Limited Partnership Agreement (the "LPA") authorized the Dugaboy Family Trust ("Dugaboy") to approve compensation for the General Partner and Affiliates of the General Partner.  Specifically, the LPA provides, in pertinent part:

(a)    "Compensation.  The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements *unless approved by a Majority Interest.*"[5]

The LPA defines the relevant actors in the Compensation provision as follows:

---

[2] Motion, ¶¶ 6-20.
[3] Def. Ex. 4, Declaration of James Dondero, dated June 30, 2022 ("J Dondero Dec."), ¶¶ 5-6, Def. Appx. 304-305.
[4] Motion, ¶ 21.
[5] Pl. Ex. 30, 4th LPA, § 3.10(a) (emphasis added), Pl. Appx. 00622 (emphasis added).

2

"'**Majority Interest'** means the owners of more than fifty percent (50%) of the Percentage Interests of Class A Limited Partners."[6]

"'***Class A Limited Partners'*** means those Partners holding a Class A Limited Partnership Interest, as shown on <u>Exhibit A</u>."[7]

<u>**Exhibit A**</u> reflects "The Dugaboy Investment Trust" as a Class A Limited Partner owning 74.4426% of the Class A Limited Partnership Interests.[8]

Jim Dondero served as the Dugaboy Trustee from October, 2010 to August 26, 2015, and Nancy Dondero has been the Dugaboy Trustee from October 14, 2015 to present day.[9] Thus, Jim Dondero represented the "Majority Interest," and was the individual entitled to approve compensation under the LPA at the time the 2014 Agreement (defined below) was made, and Nancy Dondero was the individual entitled to approve compensation under the LPA at the time the 2016 Agreement (defined below) was made.

5. In December of 2014 or January of 2015, Jim Dondero – on behalf of Defendant and on behalf of Plaintiff as representative for a majority of Class A shareholders at that time – entered into an agreement that Plaintiff would forgive the 2014 Note upon the fulfilment of certain conditions subsequent (the "<u>2014 Agreement</u>").[10] Specifically, if certain portfolio companies were sold for greater than cost – namely, Trussway, Cornerstone, or MGM – the Notes would be forgiven.[11] Nancy Dondero was subsequently appointed the Dugaboy Trustee on October 14, 2015, making her the majority of Class A shareholders from that point to present day.[12] In either December of 2016 or January of 2017, Jim Dondero on behalf of Defendant and Nancy Dondero

---

[6] *Id.*, § 2.1, Pl. Appx. 00612.
[7] *Id*., § 2.1, Pl. Appx. 00610.
[8] *Id.*, <u>Exhibit A</u>, line 5, Pl. Appx. 00639.
[9] Def. Ex. 4, J. Dondero Dec. ¶ 9, Def. Appx. 305-306; Def. Ex. 4-A, Nancy Dondero's Acceptance of Appointment of Family Trustee for the Dugaboy Family Trust effective October 14, 2015, Def. Appx. 313-318.
[10] Def. Ex. 4, J. Dondero Dec. ¶ 13, Def. Appx. 307..
[11] *Id.*
[12] *Id*., ¶ 9, Def. Appx. 305-306.

in her capacity as Dugaboy Trustee entered into an identical Agreement subsequent to the issuance of the 2016 Note (the "2016 Agreement," and together, the "Agreements").[13]

6.      The Agreements benefitted Plaintiff on two fronts. First, Jim Dondero forwent opting to increase his own salary with cash compensation in accordance with § 3.10 of the LPA, as he would have been allowed to do.[14] Instead, Jim Dondero elected to make his potential compensation conditional upon his own successful performance, and Plaintiff benefitted from the Agreements by not paying Jim Dondero higher base compensation, something Jim Dondero thought was "great for the [Plaintiff] at the time," and "reduces other compensation [that he would have otherwise taken]."[15] Second, the Agreements served as an incentive for Jim Dondero to work particularly diligently on the sale of the portfolio companies and to make sure they were successful.[16] This incentive benefitted Plaintiff by maintaining its profitability and reputation across the industry for successful performance as a private equity firm.[17] The Agreements acted to motivate and retain Jim Dondero as Plaintiff's employee.[18] In sum, Plaintiff benefited from the Agreements by: (i) not paying Jim Dondero a higher base compensation, and (ii) receiving more focused and dedicated work from Jim Dondero in his efforts to make the portfolio companies more profitable.

### 2.      Forgivable Loans as Compensation.

7.      Contrary to Plaintiff's assertion that "[Plaintiff] did not have a 'practice' of forgiving loans," it was not uncommon for Plaintiff to provide executives with forgivable loans as

---

[13] Def. Ex. 4, J Dondero Dec., ¶ 15, Def. Appx. 308.
[14] Def. Ex. 4, J Dondero Dec., ¶ 13, Def. Appx. 307.
[15] Pl. Ex. 96, James Dondero 5/28/21 Tr. 182:2-18, Pl. Appx. 01660; Def. Ex. 4, J Dondero Dec., ¶13, Def. Appx. 307.
[16] *Id.*
[17] Def. Ex. 4, J Dondero Dec., ¶ 13, Def. Appx. 307.
[18] *Id.*

compensation.[19]   Along with Jim Dondero, several of Plaintiff's executives received loans that were forgiven, including Mike Hurley, Tim Lawler, Pat Daugherty, Jack Yang, Paul Adkins, Gibran Mahmud, Jean-Luc Eberlin, and Appu Mundassery.[20]   Defendant provides this Court with a sworn declaration from Michiel Hurley – an executive who founded Incline Capital ("Incline") – who personally benefitted from a loan forgiven by HCMFA:

> 5. As part of this [advisory] relationship [with HCMFA], Incline and HCMFA had a fee sharing arrangement, which is usual and customary in relationships such as these.  Due to a loss of assets under management ("AUM") in the Fund, the level of fee income generated was materially less than when Incline and HCMFA initially entered into the agreement.

> 6. When this unexpectedly occurred, Incline was advanced funds from HCMFA as an advance on fees that we believed would be earned in the future.  It was both parties' expectation that these advances would eventually be paid back by Incline once the Fund regained its AUM.

> 7. In 2013, Jim Dondero, on behalf of HCMFA, agreed to forgive this debt, which was owed by Incline to HCMFA.  At that time, approximately $435,000 was owed to HCMFA and forgiven.  Because I was the founder and owner of Incline and because it was a pass-through entity for tax purposes, I would have been personally responsible for this debt.  Therefore, the forgiveness of this debt benefitted me individually.[21]

> 8.      Plaintiff's corporate representative, James Seery, confirmed that several of the

above-named individuals (including Michiel Hurley) received loans that were forgiven in the past.[22]   Using forgivable loans to compensate Jim Dondero made sense for Plaintiff, as Jim

---

[19] Motion, ¶ 95; Def. Ex. 4, J Dondero Dec., ¶ 11, Def. Appx. 306; Pl. Ex. 98, Jim Dondero 10/29/21 Tr. 424:4-8, Pl. Appx. 01777.

[20] Def. Ex. 4, J Dondero Dec., ¶ 11, Def. Appx. 306; Pl. Ex. 24, Jim Dondero's Objections and Responses to Plaintiff's Requests for Admission, Interrogatories, and Requests for Production, Pl. Appx. 00526; Pl. Ex. 194, Kristin Hendrix 10/27/21 Tr. 109:7-22, Pl. Appx. 03154; Pl. Ex. 195, David Klos 10/27/21 Tr. 106:6-22, Pl. Appx. 03208; Pl. Ex. 101, Alan Johnson (Expert) 11/2/21 Tr. 212:4-25, Pl. Appx. 02011.

[21] Def. Ex. 6, Declaration of Michiel Hurley ("Hurley Dec.") ¶¶ 5-7, Def. Appx. 383.

[22] Pl. Ex. 101, Alan Johnson (Expert) 11/2/21 Tr. 94:21-96:22, Pl. Appx. 01982; Def. Ex. 3-A, Deposition of James P. Seery, Jr. (177:19-178:5), Def. Appx. 141-142.

CORE/3522697.0002/174672747.14

Dondero was undercompensated in his position compared to other similarly-situated contemporaries at comparable investment firms.[23]

### 3. The LPA Does Not Prohibit the Agreements.

9. Plaintiff's assertion that "[t]he [] Agreements were not authorized under the [LPA]" is an inaccurate representation of the LPA, and is a last ditch attempt to conjure another meritless new argument that was never once raised throughout the Notes Litigation.[24] Plaintiff claims, without any analysis or explanation, that "the Limited Partners only have authority to approve agreements for compensation, not to execute them[,]" citing to Article 3.10(a) of the LPA, which is dictated *supra*, C.1.[25] Even from the most scrutinous reading of Article 3.10(a)'s plain language, no restriction exists on Limited Partners to "execute" any agreements as Plaintiff would have this Court believe. Rather, the LPA simply requires the Majority Interest to approve compensation agreements.[26] Not the Limited Partners, not the General Partner, but only the Majority Interest's approval is required under the LPA. Thus, Plaintiff's claim that "Dugaboy was not authorized to enter into [the Agreements] on behalf of HCMLP" has no support in the language of the LPA.[27]

10. Plaintiff misconstrues the plain language of the LPA in another way, asserting that the Agreements "have to be in writing,"[28] pointing only to the LPA's Notice provision in Article 6.2, which contains no such requirement. Rather, Article 6.2 concerns only certain notices under the LPA:

---

[23] Def. Ex. 4, J Dondero Dec., ¶ 11, Def. Appx. 306; Pl. Ex. 101, Alan Johnson (Expert) 11/2/21 Tr. 160:10-161:3; 218:12-222:14, Pl. Appx. 02013-02014; Def. Ex. 3-B, Deposition of Bruce McGovern Tr. 24:7-25:4, Def. Appx. 193 (providing expert testimony that the Agreements did not create taxable income for Jim Dondero).
[24] Motion, ¶ 89.
[25] *Id*.
[26] Pl. Ex. 30, 4th LPA, § 3.10(a), Pl. Appx. 00622.
[27] Motion, ¶ 89.
[28] *Id*.

**"6.2. Addresses and Notices.** Any notice, demand, request, or report required or permitted to be given or made to a Partner under this Agreement shall be in writing. . . ."[29]

When Articles 3.10(a) and 6.2 are read together, it is clear that there is no requirement that an agreement to increase compensation or agreement by the Majority Interest to approve such an increase be in writing.[30] Plaintiff has not pointed to any provision in the LPA demonstrating otherwise and has not and cannot plausibly contend that the Agreements are "notices, demands, requests or reports required or permitted to be given or made to a Partner under the LPA." Plaintiff's assertion that the LPA's Notice provision requires an adjustment to compensation to be in writing (when the plain language demonstrates otherwise) shows that Plaintiff is willing to say just about anything in its effort to win summary judgment. That speaks volumes about Plaintiff's credibility, not Defendant's.

11.     Finally, Plaintiff raises Article 4.1(e)(ii) of the LPA as a basis for summary judgment. Article 4.1(e)(ii) provides:

**"[Article 4.1] (e)(ii).** The General Partner or any of its Affiliates may enter into an agreement with the Partnership to render services, including management services, for the Partnership. Any *service rendered* for the Partnership by the General Partner or any Affiliate thereof shall be on terms that are fair and reasonable to the Partnership."[31]

12.     As a preliminary matter, Plaintiff's contention that that the Agreements were not "fair by any objective standard," citing Article 4.1(e)(ii) of the LPA, does not say anything one way or the other about whether the Agreements were made.[32]

13.     To the extent Plaintiff is asking the Court not to enforce the Agreements because they are "not fair," that is ***not*** a claim plead in Plaintiff's complaint and the LPA does not define

---

[29] Pl. Ex. 30, 4th LPA, § 6.2, Pl. Appx. 00633.
[30] *See* Pl. Ex. 30, 4th LPA, Pl. Appx. 00605-641.
[31] *Id.* (emphasis added).
[32] Motion, ¶ 89.

fairness, making the issue one of fact,[33] even if it was plead, which it was not. In any event, as "fairness" was not plead as a basis to enforce the loans, it cannot be a basis to grant summary judgment.

### 4. Dugaboy Was Entitled to Make the 2014 Agreement Regardless of Who Was Trustee.

14. Jim Dondero was not "forced to change his tale again" when he recalled during live testimony that he entered into the 2014 Agreement as the Dugaboy Trustee.[34] While opposing counsel questioned Jim Dondero about an Agreement that occurred more than seven years ago, Plaintiff points to Jim Dondero's testimony that:

> Q: Okay. So is it fair to say that paragraph 41 [of Defendant's Original Answer] is not accurate to the extent that it states or suggests that Nancy Dondero entered into the [2014 Agreement]?
>
> A: . . . . .
>
> I can't recall the 2014 note being prior to the 2016 discussion or not or if – this 2014 [note] was a small note; so was [the] 2016 [note] for that matter. I can't – I can't remember if she would have been involved in the '14 note or [if] the '14 note was part of the 2016 conversation.[35]

Opposing counsel's contrived efforts to portray Jim Dondero as changing his narrative for the 2014 Agreement "at the last second" fail because Jim Dondero had already clarified the identity of the parties to the 2014 Agreement just minutes earlier at the same deposition:

> Q: Having seen – having scrolled through at least the portion of the answer prior to the affirmative defenses, are you aware of anything that is inaccurate in any way in HCMFA's answer?

---

[33] *See Zell Ins. Agency, Inc. v. Guar. Sec. Ins. Co.*, 399 F.2d 147, 149 (5th Cir. 1968) (holding that, where an interpretation of the understanding of the terms of an agreement are at issue, such an interpretation "is always a question of fact") (citing *Dobson v. Masonite Corporation,* 359 F.2d 921, 923 (C.A.4, 1966)).
[34] Motion, ¶ 97.
[35] Def. Ex. 7-A, J. Dondero Tr. 33:5-18., Def. Appx. 396.

> A:     I – not specifically other than, as I note below, I was the Dugaboy Trustee
> in 2014, not Nancy, and so I spoke for Highland re the agreement regarding
> the 2014 note.[36]

Here, Jim Dondero recalled that it was himself, not Nancy Dondero, that served as Dugaboy

Trustee in 2014 just moments prior to the quote Plaintiff relies on for its Motion. Throughout both

this litigation and the Main Notes Litigation,[37] Jim Dondero has never once varied from his

position that it was the Dugaboy Trustee who entered into the Agreements.[38] Thus, the adequacy

of Jim Dondero's recollection of who served as Dugaboy Trustee seven years ago does not affect

the existence of the 2014 Agreement, especially because Nancy Dondero not only recalled the

2016 Agreement, but also that Jim told her about 2014 Agreement when they discussed the 2016

Agreement, explaining why Mr. Dondero's recollections about events so many years ago would

not be as sharp.[39]

15.     Further, Jim Dondero provides the Court with declaration testimony disputing

Plaintiff's characterization of Jim Dondero's refreshed memory as some type of contrived ruse

devised to mislead the Court:

> 14. I understand that Plaintiff takes issue with the fact that I recently remembered
> that I was actually the Dugaboy Trustee when the 2014 Agreement was made,
> characterizing my recollection as some kind of last-second surprise revelation. I
> simply did not think about the exact time frame during which I was the Dugaboy
> Trustee until around the time of my deposition on May 5, 2022 – about seven years
> after the 2014 Agreement was made.[40]

---

[36] *Id.*, 29:6-13, Def. Appx. 395.

[37] "Main Notes Litigation" is a defined term in Plaintiff's Motion, ¶ 13.

[38] Main Notes Litigation, throughout.

[39] Def. Ex. 7-B, N. Dondero Tr. 4/29/22, 22:12-23:4, Def. Appx. 426:

Q:     Was there anything substantively different about the conversations you had with your brother regarding the
       agreement covering the February of 2016 note that was different than the conversations you had with your
       brother as it pertains to the other [2016] agreement?

A:     We're going back a long time, Hayley, obviously, so the memory is a little fuzzy. The only difference that I
       would imagine, that I think was he would have referenced the note from '14 in the '16 conversation.

Q:     What do you mean by "he would have referenced" that note in the conversation?

A:     I – he – when we had a conversation in '16, he would have brought up the note in '14 that was also to be
       forgiven upon the condition subsequent.

[40] Def. Ex. 4, J Dondero Dec., ¶ 14, Def. Appx. 307.

CORE/3522697.0002/174672747.14

This fact was no surprise to Plaintiff because it possessed the documents – that were on the Highland server – and produced in litigation, showing who was the Dugaboy Trustee in each time period.[41] Plaintiff's attempt to bolster its Motion based on small conflicts in recollections of events many years prior is unavailing because Jim Dondero testified in both his deposition and declaration that he was, in fact, the Dugaboy Trustee for the 2014 Agreement and Nancy Dondero corroborates the occurrence of the 2014 Agreement based upon her recollection of her communications with Jim Dondero about the 2016 Agreement.

### 5.    The Agreements Were Not "Secret."

16.    Plaintiff's assertion that the Agreements were "kept secret" and "never disclosed by Mr. Dondero" is inaccurate and does not serve as   proof that the Agreements do not exist..[42] Not only did Jim Dondero file in the Bankruptcy Court – in May of 2020, long before any of the litigation over the notes started – a document disclosing the potential foregivability of all of the Notes, but Jim Dondero also indicated to both Frank Waterhouse and Plaintiff's counsel that the Notes were forgivable.[43]  In light of this evidence, Plaintiff simply cannot continue to repeatedly claim that it was entirely unaware of the Agreements or that they were "secret."

17.    Specifically, Jim Dondero publicly filed a pleading in this Bankruptcy Court on May 26, 2020 – well before this litigation began – specifically explaining to the Court, as well as any creditors or other parties to the bankruptcy, that the Notes in this adversary proceeding as well as the prior adversary proceedings "were issued by him for funds advanced in lieu of compensation," and that he was providing this notice "in the event that collection efforts are made

---

[41] Def. Ex. 4-A, Nancy Dondero's Acceptance of Appointment of Family Trustee for the Dugaboy Family Trust Effective October 14, 2015, Def. Appx. 313-318; *Id*., Def. Appx. 88-89 (letter indicating Grant Scott's retirement as Dugaboy Family Trustee; Def. Ex. 1-C, Documents showing J. Dondero proof of service as Family Trustee for the Dugaboy Family Trust and subsequent resignation, Def. Appx. 32-72;; Pl. Ex. 100, Nancy Dondero 10/18/21 Tr. 22:13-15, Pl. Appx. 01880; Pl. Ex. 98, Jim Dondero 10/29/21 Tr. 400:8-19, Pl. Appx. 01771.
[42] Motion, ¶ 98.
[43] Def. Ex. 4, J Dondero Dec., ¶ 19 Def. Appx. 309.

to collect the Notes."[44]  This pleading (specifically Schedule A thereof) put Plaintiff (as well as everyone else in the world) on notice that Jim Dondero believed that the funds provided pursuant to the Notes were potentially forgivable as compensation and thus he did not expect any effort to collect on the notes unless and until it became impossible for the conditions subsequent to be satisfied.  The language in this pleading is entirely inconsistent with Plaintiff's conspiracy-based theory that the Agreements were kept secret.  That Schedule A does not detail the agreements or the nature of the triggering events does not diminish its value as notice of the most extreme case for Plaintiff-Debtor – that the Notes could in fact be forgiven in their entirety.

18.     Further, well before these proceedings, Jim Dondero told Frank Waterhouse, the Debtor's Chief Financial Officer, that there were "mechanisms in place for forgiving the Notes, or for having them considered as compensation and not being an asset to the Debtor's estate."[45] Further, on February 1, 2021, counsel for Jim Dondero – the late Judge Michael Lynn – informed opposing counsel that "[a]s you are aware, in addition to other defenses, Mr. Dondero views the notes in question as *having been given in exchange for loans by Highland made in lieu of compensation to Mr. Dondero*."[46]  Although that correspondence did not detail every facet of the Agreements, it alerted Debtor to Defendants' position that the Notes were potentially forgivable, which Debtor did not question.  Therefore, because Jim Dondero: (i) filed a pleading (prior to any demand) putting the Debtor on notice that the Notes were potentially forgivable as compensation and that he did not expect any effort to collect on the note until such forgiveness could not happen,

---

[44] Def. Ex. 4-D, Proof of Claim No. 188, dated May 26, 2020, Ex. A, Def. Appx. 367.  While the Proof of Claim was withdrawn, the information contained in Schedule A remained part of the Bankruptcy Record.
[45] Pl. Ex. 99, James Dondero 11/4/21 Tr. 167:10-16, Pl. Appx. 01854; Def. Ex. 4, J Dondero Dec., ¶ 17, Def. Appx. 308.
[46] Def. Ex. 1-D, Letter to Pachulski Stang Ziehl & Jones, LLP, Def. Appx. 74 (emphasis added).

and (ii) told Frank Waterhouse about their potential forgiveness, Plaintiff cannot argue that it was unaware of the Agreements' existence or that it was "kept secret."

19.    Jim Dondero did not disclose the Agreements to the financial auditors at Highland Capital because such disclosure was unnecessary.[47]  Plaintiff's claim that "[t]here were no 'material' transactions or agreements that were not recorded in the [Plaintiff's] financial statements," regarding the Notes is – contrary to Plaintiff's argument – consistent with HCMFA's position that the Agreements were not material enough to be disclosed.[48]  Indeed, in light of Highland Capital's sizable financial assets, potential Note forgiveness under the Agreements was *de minimis.*[49]  Such a disclosure was not considered material, and would have been unwarranted.[50] And, of course, whether the Agreements were disclosed to the financial auditors – or anyone else for that matter – has no bearing on whether the Agreements are legally enforceable.

20.    Plaintiff's claim in ¶ 37 of its Motion that: "[i]f PwC had learned before June 3, 2019, at any of the Notes (a) might not be collectible, or (b) might be forgiven, or (c) was amended, or (d) would be extinguished based on the fulfillment of certain conditions subsequent, it would have required that fact to be disclosed," is demonstrably untrue, as cross-examination testimony from Peet Burger of PwC – the testimonial basis for Plaintiff's position – concedes.[51]  On cross examination, Burger confirmed that disclosure of the Agreements would only have been required when the Notes were *actually forgiven*, not that they *might* be forgivable.[52]  Thus, Peet Burger

---

[47] Def. Ex. 4, J Dondero Dec., ¶ 16, Def. Appx. 308.
[48] Motion, ¶ 34.
[49] Def. Ex. 4, J Dondero Dec., ¶ 16, Def. Appx. 308.
[50] *Id.*
[51] Motion, ¶ 47, citing the Deposition of Peet Burger (74:19-76:12), Pl. Appx. 1571.
[52] Pl. Ex. 94 Peet Burger 7/30/21 Tr. 78:11-79:13, Pl. Appx. 01572:

   Q:    And I want to focus on this. I know these are [Plaintiff's counsel's] questions, so it may not have been your language, but you were asked if it [the loans] might be forgiven. What does that mean to you? Are we talking about is there a difference for you if there was a 1 percent chance that something would be forgiven or a 90 percent chance of it being forgiven?

very quickly changed his position and conceded that he misunderstood Plaintiff's counsel's question when he gave the quote that forms the basis of Plaintiff's Motion, ¶ 37. Plaintiff is fully aware of the recantation, making its use of a demonstrably false statement in its Motion a concession of the Motion's lack of merit.

### 6. HCMFA Was Entitled to and Did Make Prepayments.

21. Plaintiff's lengthy discussion about whether and how much of the Notes' principal or interest was prepaid is not proof that the Agreements do not exist, but is rather an issue of fact for the jury.[53] Indeed, the Notes each allowed for HCMFA to make prepayments at its own discretion,[54] and HCMFA did make prepayments to reduce the overall potentially forgivable obligation.[55] However, because the Agreements made the Notes *potentially* forgivable, no guarantee existed that the conditions subsequent would ever occur forgiving the Notes. If none of the assets were ever sold for above cost, HCMFA would have been liable for the original balance of the Notes. Therefore, the simple fact that HCMFA made some prepayments on the Notes bears no relevance on whether or not the Agreements existed, and Plaintiff cites no authority to the contrary. This is all the more so given Mr. Dondero's testimony that he was always watchful of HCM's financial picture and would pay down (or cause to be paid down) loans when HCM needed cash, regardless of whether the loan paid down was actually due:

> 21. . . . . In addition, I was always watchful that HCM had the funds it needed for
> its operations and obligations. Therefore, even when certain Notes were not

---

A:      If we learned about something, let's say, we learned [it] might be forgiven, that would have resulted in additional audit work. *The question I understood to be and the answer I gave was if something happened where there was an event that actually occurred before or on June 3rd, we would have required disclosure.*

Q:      Got it. So is it fair to say that in response to all of [Plaintiff's counsel's] questions about what would have been required to be disclosed, in your mind he was referring those events or items have *actually occurred* and the notes being *actually forgiven* at that point in time; is that correct?

Q:      I didn't hear your answer.

A:      Correct.

[53] Motion, ¶¶ 69-74, 98.

[54] Pl. Ex. 226, HCMFA Promissory Note in the amount of $4m dated February 26, 2014, Pl. Appx. 5029-5031; Pl. Ex. 227, HCMFA Promissory Note in the amount of $2.3m dated February 26, 2016, Pl. Appx. 5032-5034.

[55] Motion, ¶ 98 ("HCMFA paid almost $4 million dollars against the obligations due under the [Notes]").

required by their terms to be paid down, I caused payments to be made for HCM's benefit.[56]

### 7. Jim and Nancy Dondero Provide Sworn Deposition Testimony and Declarations Evidencing the Agreements.

22. Throughout this litigation, Plaintiff has taken the position that the Agreements are fabricated and lack any evidence of their existence.[57] However, Jim and Nancy Dondero have consistently testified under oath that the Agreements took place, exist, and are valid.[58] Further, both Jim and Nancy Dondero have provided this Court with declarations swearing to the Agreements' factual existence:

13. At either the end of 2014 or the beginning of 2015, I – acting on behalf of Dugaboy for HCM and also on behalf of HCMFA – entered into an agreement (the "2014 Agreement") that HCM would not collect on the 2014 Note if certain events occurred. Specifically, if one of three portfolio companies – either MGM, Cornerstone, or Trussway – were sold for above cost, or sold in a circumstance outside of my control, HCM agreed that the 2014 Note would be forgiven.[59]

7. In either December of 2016 or January of 2017, I caused Dugaboy (solely in my capacity as Dugaboy's Family Trustee) to cause HCM to enter into an agreement with HCMFA that provided that the repayment obligation on the 2016 Note would be forgiven if HCM sold any of Trussway, Cornerstone, or MGM for a price greater than its cost, or if any of those portfolio companies were sold in a circumstances that was outside of Jim Dondero's control (the "2016 Agreement"). I fully understood the implications and terms of the 2016 Agreement. At the time we made the 2016 Agreement, Jim told me about the substantially the same agreement Dugaboy made with respect to the 2014 Note.[60]

---

[56] Def. Ex. 4, J. Dondero Dec., ¶ 21, Def. Appx. 310; *see also* Declaration of David Klos in Support of [Plaintiff's Motion], Ex. C (showing Note payments made by HCMFA); Pl. Ex. 113, Payment from HCMFA dated 05/29/19, Pl. Appx. 2246-2259; Pl. Ex. 114, Payment HCMFA dated 09/05/19, Pl. Appx. 2260-2263; Pl. Ex. 115, Payment from HCMFA dated 10/03/19, Pl. Appx. 2264-2274; Pl. Ex. 123, Payments from HCMFA and NPA dated 06/04/19, Pl. Appx. 2332-2341; Pl. Ex. 228, Payment from HCMFA dated 12/28/21, Pl. Appx. 5035-5039; Pl. Ex. 229, Payment from HCMFA dated 09/01/16, Pl. Appx. 5040-5043; Pl. Ex. 230, Payment from HCMFA dated 04/12/17, Pl. Appx. 5044-5048.
[57] Motion, ¶¶ 76-78.
[58] Pl. Ex. 100, Nancy Dondero 10/18/21 Tr. 162:22-163:8, Pl. Appx. 01915; Pl. Ex. 96, James Dondero 5/28/21 Tr. 176:20-177:5, Pl. Appx. 01659; Def. Ex. 4, J Dondero Dec., ¶¶ 13-15, Def. Appx. 306-307; Def. Ex. 2, N Dondero Dec., throughout, Def. Appx. 77-85.
[59] Def. Ex. 4, J Dondero Dec., ¶ 13, Def. Appx. 307.
[60] Def. Ex. 5, N. Dondero Dec., ¶ 7, Def. Appx. 373.

14

Defendants refer the Court to the declarations and deposition testimony of Jim Dondero and Nancy Dondero to demonstrate that the Agreements exist, and Plaintiff's assertion that "no reasonable trier of fact can find that the [] Agreement[] existed" is simply inconsistent with the summary judgment evidence.

## III.  Argument and Authorities

### A.  Legal Standard.

23.     Plaintiff suggests that there is a separate or independent summary judgment standard for promissory notes.[61]  The fact that the elements of breach of promissory note differ slightly from breach of contract in no way lessens Plaintiff's burden of proving there are no genuine issues of material fact.[62]  *Looney v. Irvine Sensors Corp*, CIV.A.309-CV-0840-G, 2010 WL 532431 at 2 (N.D. Tex. Feb. 15, 2010) (noting that, although the elements for breach of a promissory note differs from traditional breach of contract, "[s]ummary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, what that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law").

24.     Plaintiff's Motion is a "no-evidence" motion, arguing that "there is a complete absence of evidence to support HCMFA's. . .affirmative defenses."[63]  Therefore, the Court may only grant Plaintiff's Motion if: ". . . (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla,

---

[61] Compare, Motion, III. A. 1: "Summary Judgment Standard" with III. A. 2: "Summary Judgment Standard for Promissory Notes."
[62] Motion, ¶ 132 (under the heading: "Summary Judgment Standard for Promissory Notes").
[63] Motion, ¶ 3.

15

or (4) the evidence conclusively establishes the opposite of the vital fact."[64]  *Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)).  In *Dorsett*, the plaintiff responded to defendant's no-evidence motion for summary judgment to dismiss a breach of promissory note case with only her own affidavit and a document prepared on defendant's letterhead titled "Promissory Note."  *Id.*  On appeal, the court found that plaintiff's affidavit and exhibit alone were "sufficient to raise a question of fact as to each element of her cause of action [challenged by the defendant]," and reversed the lower court's decision granting defendant's no-evidence motion for summary judgment.  *Id.* at 614.

25.  When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.[65]  To determine whether a genuine dispute exists such that the case must be submitted to a jury, not only must courts consider all of the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party, it must also refuse to make credibility determinations or weigh the relative strength of the evidence, and disregard all evidence favorable to the movant that the jury would not be required to believe.[66]  *Al-Saud v. Youtoo Media, L.P.,* 3:15-CV-3074-C, 2017 WL 3841197, at *2 (N.D. Tex. Mar. 15, 2017) (citing *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013)).

26.  In *Al-Saud*, plaintiff moved for summary judgment for – among other issues – breach of contract concerning the refund of a $3,000,000 down payment made on a loan pursuant

---

[64] *Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005)).
[65] *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008); *Yaquinto v. Segerstrom (In re Segerstrom),* 247 F.3d 218, 223 (5th Cir. 2001); *Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir. 1998).
[66] *Al-Saud v. Youtoo Media, L.P.,* 3:15-CV-3074-C, 2017 WL 3841197, at 2 (N.D. Tex. Mar. 15, 2017) (citing *Haverda v. Hays County,* 723 F.3d 586, 591 (5th Cir. 2013)).

to a letter of intent. *Al-Saud*, 3:15-CV-3074-C, 2017 WL 3841197 at *4. Defendant responded by "pointing out that the Letter of Intent allows for [repayment of the down payment] 'through a mechanism which is to be agreed upon between the Parties. . .[,]'" and that defendant and plaintiff "agreed to a mechanism that would repay [plaintiff]" by means other than a payment in cash, although the agreement to repay the plaintiff "does not clearly require repayment in cash, or even full repayment by a specified date." *Id*. The court noted that "[contrary to plaintiff's claims that there exists no genuine issue of material fact], it appears that there is a fact question concerning whether the parties agreed to an alternative payment mechanism, and whether [defendant] has complied with its repayment obligations[,]" and that "[t]hese questions [of fact] *must be decided by a jury*." *Id*. (emphasis added). The court denied plaintiff's motion for summary judgment on this issue, finding issues regarding the vague terms and mechanisms of repayment under an agreement – when contested by the parties thereto – raise genuine issues of material fact that must be decided by a jury.

27. "The duty of the Court hearing [a] motion for summary judgment is to determine if there are any issues of fact to be tried, and *not* to weigh the evidence or determine its credibility," and "[a]ll doubts as to the existence of a genuine issue as to a material facts *must be resolved against the party moving for a summary judgment*."[67] "The general rule is that if a motion involves

---

[67] *Gulbenkian v. Penn.*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952) (emphasis added); s*ee also Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000) (Supreme Court reversed judgment because the Court of Appeals concluded that certain circumstances so overwhelmed the evidence favoring petitioner that no rational trier of fact could have found that petitioner was fired because of his age in employment discrimination case. The Court of Appeals impermissibly substituted its judgment concerning the weight of the evidence for the jury's);
*LegacyRG, Inc. v. Harter*, 705 F. App'x 223, 230 (5th Cir. 2017) (Fifth Circuit remanded the case because there was a genuine issue of material fact as the district court erred by crediting plaintiff's affidavit and rejecting defendant's. Because the facts contained in each affidavit were critical in each claim, the grant of summary judgment was improper, and a genuine issue of material fact existed); *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (Fifth Circuit reversed district court's grant of summary judgment because the nonmovant presented a substantial conflict of competent summary judgment evidence); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997) (Texas Supreme Court affirmed and remanded Court of Appeals finding of genuine issue of material fact on the grounds that movant did not address all allegations in its motion).

the credibility of affiants or deponents, or the weight of the showings [of fact] or, it is said, a mere ground of inference, *the motion will not be granted*."[68]   The Fifth Circuit adheres to the high standard that "[t]he burden [at summary judgment] is on the moving party [], to show that there is '*not the slightest doubt* as to the facts and that only the legal conclusion remains to be resolved."[69]

## B. Plaintiff is Not Entitled to Summary Judgment because Defendant Raises Genuine Issues of Material Fact with its Defenses.

### 1. The Evidence Shows that the Agreements Exist.

28.     Plaintiff once again levies a laundry list of factual contentions against Defendant – most of which are irrelevant – that it tries to pass of as conclusive proof requiring summary judgment.  Plaintiff argues that ". . .no reasonable trier of fact can find that the [] Agreements ever existed[,]" because: (a) Jim Dondero "failed to declare the Notes forgiven" when MGM stock was sold in November 2019, (b) "Ms. Dondero was not competent to enter into the 2016 [] Agreement[s], (c) "[t]he [] Agreements were not authorized under the [LPA]," (d) the Agreements were "kept secret and were never disclosed," (e) "[n]o document exists that reflects the existence or terms of the [] Agreements," (f) the Agreements are "unenforceable for lack of consideration," (g) Jim Dondero "fixed the terms of the [] Agreements without negotiation,"  (h) "Highland did not have a 'practice' of forgiving loans," (i) Jim Dondero's contention that he entered into the 2014 Agreement "contradicts HCMFA's Answer and was contrived at the last second," (j) HCMFA made prepayments under the Notes, and (k) "HCMFA's expert [Alan Johnson] never advised a company to forgive an affiliate loan [as compensation]."[70]   These are simply closing

---

[68]  *Gulbenkian v. Penn.*, 151 Tex. 412 at 417, 252 S.W.2d 929 at 932 (emphasis added).
[69] *Clark v. W. Chem. Products, Inc.*, 557 F.2d 1155, 1157 (5th Cir. 1977) (quoting *Insurance Co. of North America v. Bosworth Const. Co.,* 469 F.2d 166, 1267 (5th Cir. 1972)) (emphasis added).
[70] Motion, ¶ 100.

CORE/3522697.0002/174642747.14

arguments that address credibility of evidence and are properly made at trial, not at summary judgment.

> **a.** **Jim Dondero Not Declaring the Notes "Forgiven" upon the Sale of a Small portion of HCM's MGM Shares is Not Probative of Whether the Agreements Exist.**

29.     Plaintiff provides no legal authority (nor have Defendants located any) supporting its peculiar argument that the fact that Mr. Dondero did not declare the Notes forgiven when, in late 2019, HCM sold a small amount of MGM shares under what was effectively duress is somehow evidence that the Agreements do not exist. Its argument simply makes no sense.

30.     Moreover, Plaintiff is estopped from arguing that Jim Dondero should have declared forgiveness after the November 2019 sale of some shares of MGM because that argument is contradicted by Plaintiff's sworn interrogatory answers. When Defendant requested Plaintiff "[i]dentify any sale or potential sale of any portfolio companies (or a portion of such portfolio companies) owned (wholly or partially) by the [Plaintiff], including, but not limited to, Trussway, MGM and Cornerstone…," Plaintiff responded (after November of 2019) that it "ha[d] not sold Trussway, MGM or Cornerstone.…"[71]

31.     With respect to the later sale of all of MGM to Amazon, HCMFA did "declare" forgiveness. As Mr. Dondero testified:

> Q:     You're not aware of any discount that was ever applied to the value of the [HCMFA] notes, at least as it concerns HCMFA's balance sheet; is that fair?
>
> A:     . . . . I have learned that the financials reflect the sale of MGM to Amazon as of the time it occurred and the dispute between HCMFA and [HCM] over whether that effected forgiveness.[72]

---

[71] Def. Ex. 1-H, Highland Capital Management, L.P.'s Responses and Objections to Defendants' Joint Discovery Requests, Interrogatory 14, Def. Appx. 299.
[72] Def. Ex. 7-A, J. Dondero Tr. 27:21-28:4, Def. Appx. 395, 409.

32.     That is, after the complete sale of MGM to Amazon, liquidating all of HCM's interest in MGM, that event was recorded in HCMFA's books with Defendant's April 2022 vs. March 2022 balance sheet including a footnote stating:

> As of 3/17/2022, the 2/26/2014 and 2/26/2016 notes were discharged due to a portfolio company sale, however, due to active litigation with HCMLP, the note(s) are still reflected on the balance sheet.[73]

33.     More importantly, Plaintiff is estopped from arguing that Jim Dondero should have declared forgiveness after the November 2019 small sale of MGM because that argument is contradicted by HCM's sworn interrogatory answers.   When – well after November 2019 – Defendant requested Plaintiff "[i]dentify any sale or potential sale of any portfolio companies (or a portion of such portfolio companies) owned (wholly or partially) by the [Plaintiff], including, but not limited to, Trussway, MGM and Cornerstone…," Plaintiff responded that it "ha[d] not sold Trussway, MGM or Cornerstone.…"[74]

> **b.     Nancy Dondero was Competent to Enter into the 2016 Agreement.**

34.     Plaintiff argues that Nancy Dondero was not "competent" to enter into the 2016 Agreement.[75]   The cited evidence has nothing to do with Nancy Dondero's competency to contract (as "competency" is normally understood under Texas law), but instead references various bits of information that Nancy Dondero allegedly lacked when she caused Plaintiff to enter into the 2016 Agreement.   Although mislabeled, the Debtor's argument appears to be that the Agreements are unenforceable because they were the product of a unilateral mistake by Nancy Dondero.

---

[73] Def. Ex. 4-E, HCMFA's April 2022 vs. March 2022 Balance Sheet, Def. Appx. 368-369.
[74] Def. Ex. 1-H, Highland Capital Management, L.P.'s Responses and Objections to Defendants' Joint Discovery Requests, Interrogatory 14, Def. Appx. 299.
[75] Motion ¶ 87.

20

35.     This argument fails for several reasons.  First, Texas law provides that Nancy Dondero gets to determine the information she needed to decide whether to cause Plaintiff to enter into the 2016 Agreement, and the evidence confirms that she had what she needed, as explained below.[76]  Second, Plaintiff does not argue or submit any evidence suggesting that Plaintiff – the actual party to the Agreements – lacked any relevant information.[77]  Third, a unilateral mistake can invalidate a contract only when it goes to a material term, when enforcement of the contract would be unreasonable, and when the mistake is made despite the exercise of due care.[78]  Plaintiff does not even allege any of these elements, much less submit any evidence to support them.

> **(i)     Nancy Dondero Lacking Certain Information Has No Bearing on her Competency to Enter into the 2016 Agreement.**

36.     The evidence shows that Nancy Dondero had the information she considered necessary and appropriate to cause Plaintiff to enter into the Agreements, and Texas law requires nothing more, as discussed further *infra*, III.B.1.(b)(iii).  Plaintiff's assertion that Nancy Dondero should have had more and different information before entering into those Agreements has no legal effect on their validity or enforceability.

> **(ii)    Nancy Dondero Had the Information She Needed to Justify Entering into the 2016 Agreement.**

37.     Plaintiff's allegation that Nancy Dondero was ignorant of the facts and circumstances giving rise to the 2016 Agreement is not accurate.[79]  Specifically, at the time Nancy Dondero caused Plaintiff to enter into the 2016 Agreement, she knew Plaintiff was in the private equity business which included buying and selling portfolio companies, and she knew that it owned

---

[76] See Section III.B.1.(b)(iii).
[77] See Section III.B.1.(b)(ii).
[78] See Section III.B.1.(b)(iii).
[79] Motion, ¶ 87; Plaintiff also ignores Nancy Dondero's business experience outlined in Def. Ex. 5, N Dondero Dec., ¶ 2 , Def. Appx. 372.

an interest in each of Cornerstone, MGM and Trussway, the portfolio companies involved in the Agreements.[80] She knew that Jim Dondero's annual salary had historically been around $500,000 to $700,000 in the years preceding the 2016 Agreement, and she understood that Jim Dondero was undercompensated as compared to other senior executives in the financial services industry.[81] She also knew that executives in the financial services industry tend to be paid on a bonus or incentive basis.[82] Nancy Dondero knew that potentially increasing Jim Dondero's compensation through contingent loan forgiveness would have less of an impact on Plaintiff's financial condition than requiring it to pay him additional cash in salary or bonus at the time the 2016 Agreement was made.[83]

38.     Nancy Dondero was aware that Plaintiff owned an interest in Cornerstone, MGM, and Trussway, the portfolio companies that were involved in the Agreements.[84] Nancy Dondero knew that Plaintiff's business included, among other things, buying and selling portfolio companies or interests in them for a profit.[85] Nancy Dondero also knew that Jim Dondero would the person most involved in, and responsible for, Plaintiff's marketing and eventual sale of Cornerstone, MGM, and Trussway.[86] And Nancy Dondero knew and believed that the Agreements would operate to further motivate and incentivize Jim Dondero to maximize Plaintiff's return on its investments in Cornerstone, MGM, and Trussway.[87] That Nancy Dondero may not have known

---

[80] *Id.* at ¶ 8, Def. Appx. 373.
[81] *Id.* at ¶ 4, Def. Appx. 372.
[82] *Id.* at ¶ 8, Def. Appx. 373.
[83] *Id.* at ¶ 9, Def. Appx. 373-374.
[84] *Id.* at ¶ 8, Def. Appx. 373.
[85] *Id.*
[86] *Id.*
[87] *Id.* at ¶ 10, Def. Appx. 374.

22

every detail identified by the Plaintiff has no bearing on whether she had sufficient information to cause Plaintiff to enter into the valid and binding 2016 Agreement.[88]

> ### (iii) Whether Nancy Dondero's Had Detailed Knowledge of HCM's Financials Has No Bearing on the Validity or Enforceability of the 2016 Agreement.

39.     Under Texas law, the parties to a contract determine what they need to know before entering into an agreement.[89] The summary judgment evidence confirms that Nancy Dondero knew and understood the nature of the 2016 Agreement, and had all of the information she believed she needed to cause Plaintiff to enter into it.[90] Nancy Dondero did not investigate the additional specifics identified by the Plaintiff because she did not believe she needed that information in order to make an informed and reasonable decision regarding the 2016 Agreement.[91]

40.     Nevertheless, Plaintiff seems to argue that the 2016 Agreement should be invalidated under the doctrine of unilateral mistake, arguing that Nancy Dondero was mistaken about, or unaware of, certain facts. Under Texas law, a unilateral mistake is generally not grounds for voiding a contract, and can do so only when (i) the mistake relates to a material term, (ii) the mistake makes enforcement of the contract unreasonable, and (iii) the mistake is made despite the exercise of due care.[92] Plaintiff does not allege the existence of any (much less all) of these conditions, or offer any supporting evidence.

---

[88] Plaintiff ignores the fact that Plaintiff was the actual party to the Agreements, and, even if Nancy Dondero lacked specific information, Plaintiff cannot credibly claim that it too lacked that information.

[89] *Ginther-Davis Ctr., Ltd. v. Houston Nat. Bank,* 600 S.W.2d 856, 861 (Tex. Civ. App.—Houston [1ˢᵗ Dist.] 1980, writ ref'd n.r.e) (recognizing that it is presumed that a contracting party has sufficient information to enter into an agreement in Texas).

[90] Def. Ex. 5, N. Dondero Dec. ¶ 10, Def. Appx. 374.

[91] *Id.* The Debtor's claim that Alan Johnson, Jim Dondero's executive compensation expert, would deem Nancy Dondero incompetent to enter into the Agreements is absurd. Mr. Johnson never said this or anything like it. Rather, he testified that he had no awareness of the Agreements and had never ever heard Nancy Dondero's name, other than that she was represented by legal counsel. Pl. Ex. 101, Alan Johnson (Expert) 11/2/21 Tr. 99:5-100:5, Pl. Appx. 01983.

[92] *Armstrong v. Assocs. Int'l Holding Corp.*, No. 3:05-CV-02006-K, 2006 U.S. Dist. LEXIS 70043, **9-10 (N.D. Tex. Sept. 20, 2006) (*citing Ibarra v. Texas Employment Commission*, 823 F.2d 873, 879 (5ᵗʰ Cir. 1987)).

41.     Unsurprisingly, Texas law does not permit a party to avoid a contractual obligation when it could have conducted further investigation into the facts and circumstances underlying the contract, but chose not to do so.

> It has been stated that 'though a court of equity will relieve against mistake, it will not assist a man whose condition is attributable to the want of due diligence which may be fairly expected from a reasonable person.' This is consistent with the general rule of equity that when a person does not avail himself of an opportunity to gain knowledge of the facts, he will not be relieved of the consequences of acting on supposition.

*Anderson Bros. Corp. v. O'Meara*, 306 F.3d 672, 677 (5th Cir. 1962) (internal citation omitted).

42.     Nancy Dondero had all of the information she considered necessary to decide whether to cause Plaintiff to enter into the 2016 Agreement.[93]  Plaintiff apparently disagrees, listing numerous details and specifics that it believes she should have investigated further.[94]  But Texas law does not permit a party to avoid a contract by claiming unilateral mistake when that party has conducted the due diligence it considered appropriate and necessary prior to entering into that contract. *Id.* This is exactly what happened here, and these facts cannot support a finding that the 2016 Agreement was – as a matter of law – the result of any "mistake" by Nancy Dondero.

### (iv)     Nancy Dondero Was Personally "Competent" to Cause Plaintiff to Enter into the 2016 Agreement.

43.     The only other possible construction of Plaintiff's "competency" argument is that Nancy Dondero lacked the personal capacity to cause Plaintiff to contract.  Texas law presumes that every party to a legal contract has sufficient capacity to understand the transaction involved, and the burden of proof to overcome this presumption is on the party challenging it.[95]  "A person

---

[93] Def. Ex. 5, N Dondero Dec., ¶ 10, Def. Appx. 374.
[94] Motion, ¶ 87.
[95] *Corsaro v. Columbia Hosp. at Med. City Dallas Subsidiary, LP*, No. 3:21-CV-01748-N, 2021 LEXIS 247218, 9 (N.D. Tex., Dec. 29, 2021).

has the mental capacity to contract under Texas law 'if she appreciated the effect of what she was doing and understood the nature and consequences of her acts.'"[96]

44.     A party lacks capacity to contract only when he or she is a minor, under a guardianship, mentally ill, or intoxicated.[97] The summary judgment evidence reflects that at the time she caused Highland Capital to enter into the 2016 Agreement, Nancy Dondero appreciated the effect of what she was doing and understood the nature and consequences of those acts.[98] Ms. Dondero was not mentally incompetent, under a legal guardianship, intoxicated, or under any other mental impairment at the time she caused Highland Capital to enter into the 2016 Agreement.[99]

### c.     The LPA Does Not Preclude the Agreements.

45.     Plaintiff's efforts to twist the wording of the LPA to convince the Court that the Agreements were precluded not only lacks supporting legal authority, but is also an inaccurate reading of the LPA.  The LPA's written notice and fairness provisions simply do not apply to potential deferred compensation arrangements.  Plaintiff grasps at straws by relying on sections of the LPA that are patently irrelevant to compensation agreements.

46.     Plaintiff wants this Court to believe that Dugaboy – as a Limited Partner – can somehow approve an agreement regarding compensation, but not "execute" such an agreement under the LPA, § 3.10(a).[100]  While Plaintiff's argument is unclear regarding what it means by "executing" an agreement – especially here, because the Agreements are verbal and obviously have no signed document to "execute" – as discussed *supra* C.1., § 3.10(a) places absolutely ***no restrictions*** on Dugaboy "executing" the same agreements it approves, nor does it distinguish

---

[96] *Id*. (*quoting Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969)).
[97] *Del Bosque v. AT&T Adver., L.P.*, 441 Fed. Appx. 258, 262 (5th Cir. Sept. 16, 2011) (*citing* RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 12(2) (1981)).
[98] Def. Ex. 5, N Dondero Dec. at ¶ 11, Def. Appx. 374.
[99] *Id.*
[100] Motion, ¶ 89 ("Specifically, pursuant to the LP Agreement, the Limited Partners only have authority to approve agreements for compensation, not to execute them.").

between approving compensation and executing compensation.  Plaintiff's attempt to convince this Court that LPA § 6.2 requires all agreements authorized by the LPA must be written is wholly without merit.  As also discussed in Section II.C.3 *supra*, the LPA contains no such provision requiring any compensation agreement to be in writing, and Plaintiff's reliance on an "Addresses and Notice" provision in the LPA is inherently indicative of the weakness of its argument.

47.     Texas law is clear on the interpretation of plain language in a contract such as the LPA, and is certainly controlling here.  The Supreme Court of Texas has plainly held that:

> Courts may not rewrite the parties' contract, nor should courts add to its language. [A Court] cannot make new contracts between the parties, and must enforce the contract as written.  When the terms are *plain, definite, and unambiguous*, as they are here, the court cannot very these terms.

*In re Davenport*, 552 S.W.3d 452, 458 (Tex. 2017) (emphasis).  Indeed, Plaintiff's newest argument against the Agreements is a thinly-veiled attempt to pull this Court's attention away from the fact that Defendant has shown evidence of these Agreements' existence, and asks this Court to alter or add to the plain language of the LPA, contrary to Texas law.  Because Defendants have shown more than a mere scintilla of evidence in support of its defenses, summary judgment must be denied.

### d.     Publication is Not a Prerequisite to the Existence or Validity of an Agreement.

48.     Plaintiff argues – without any supporting legal authority – that since the Agreements were "never disclosed . . . to anyone," there is no evidence supporting their existence.[101]  However, Plaintiff overlooks the fact that Jim Dondero alerted Frank Waterhouse that there were mechanisms in place for forgiving the Notes,[102] that Jim Dondero's counsel sent a letter to Plaintiff's counsel indicating that Jim Dondero planned on citing the Agreements as an

---

[101] Motion, ¶¶ 90.
[102] Response, ¶¶ 18, 20.

affirmative defense,[103] and that Jim Dondero filed a pleading in the Bankruptcy Court explaining that the funds provided pursuant to the Notes would potentially be compensation and thus he did not expect any effort to collect on the Notes.[104] Moreover, Plaintiff cites no authority for its proposition that a failure to broadly disclose an agreement has any bearing on whether the agreement does or does not exist. Plaintiff's lack of authority is especially telling in a case that is not a "he said, she said" debate on whether an agreement was made: rather both sides to the Agreements (Dugaboy for HCM and Jim Dondero) agree *that the Agreements were made*. Therefore, again, Plaintiff's argument does not support its motion for summary judgment.

### e. The Agreements Are Not Required to be in Writing.

49.     Plaintiff argues that, because there is no written documentation evidencing the oral Agreements, the existence of the oral Agreements cannot be believed.[105] The fact that the oral Agreements lack written documentation should not be surprising, as they were reached through verbal communication. In Texas, other than agreements governed by the statute of frauds, which these are not, oral contracts have the same validity and enforceability as written contracts. "The elements of written and oral contracts are the same and must be present for a contract to be binding." *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied). Plaintiff cites no authority to the contrary, and summary judgment on this issue must be denied.

### f. The Evidence Shows the Agreements Were Supported by Consideration.

50.     Plaintiff also argues that the Agreements are unenforceable due to a lack of consideration.[106] Specifically, Plaintiff asserts that "[n]o reasonable trier of fact could conclude"

---

[103] *Id.*
[104] Def. Ex. 4-D, Proof of Claim #188, Def. Appx. 362-367.
[105] Motion, ¶ 91.
[106] Motion, ¶¶ 92-93.

that Plaintiff needed to retain or motivate Jim Dondero or that Plaintiff received anything of value for the Agreements, going into no more detail than repeating their broad assertion that "Highland received no benefit in exchange [for the Agreements]."[107] Despite Plaintiff's lack of any relevant supporting facts or analogous legal authority behind their blanket assertion, the Agreements were supported by adequate consideration.

51. Consideration is a present exchange bargained for in return for a promise that may consist of **some** right, interest, or profit, or benefit that accrues to one party or of **some** forbearance, loss, or responsibility that is undertaken or incurred by the other party.[108] Consideration consists of **either** a benefit to the promisor **or** a detriment to the promisee and thus, there is valid consideration when "when a party gives up a pre-existing legal right."[109]

52. Here, Jim Dondero's forbearance from increasing his own compensation—a legal right he possessed prior to entering into the Agreements—as well as his contribution to increasing the value of all of the portfolio companies in efforts to sell the companies above cost, is adequate consideration for the Agreements. At the time the Agreements were formed, Jim Dondero was authorized as General Partner of the Plaintiff to set his own compensation subject to approval by

---

[107] Motion, ¶ 117.

[108] *Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 85 (Tex. App. 2014) (emphasis added) (citing *WCW Int'l, Inc. v. Broussard*, No. 14–12–00940–CV, 2014 WL 2700892, at *9 (Tex. App.-Houston [14th Dist.] Mar. 4, 2014, pet. filed) (sub. mem. op.).

[109] *See, e.g., 1320/1390 Don Haskins, Ltd. v. Xerox Com. Sols., LLC*, 584 S.W.3d 53, 65–66 (Tex. App. 2018); *Marx v. FDP, LP*, 474 S.W.3d 368, 378–79 (Tex. App. 2015) (cleaned up) (relinquishment of disputed claims against each other adequate consideration agreement granting purchaser option to purchase vendors' homestead); *First Com. Bank v. Palmer*, 226 S.W.3d 396, 398–99 (Tex. 2007) (guaranties executed in connection with renewal of promissory note to prevent payee from accelerating debt supported by consideration consisting of the payee's forbearance on prior guaranties and agreement to renew and extend the original debt); *Southern Equip. Sales, Inc. v. Ready Mix Sols., LLC*, No. 05-17-01176-CV, 2018 WL 3454801, at *5 (Tex. App. July 18, 2018) (extending time for payment of note or debt suffices as consideration); *Hoard v. McFarland*, 229 S.W. 687 (Tex. Civ. App. 1921) (cancellation of vendor's lien note before expiration of limitations period was sufficient consideration for reconveyance), writ refused (June 7, 1922); *Brown v. Jackson*, 40 S.W. 162 (Tex. Civ. App. 1897) (agreement by execution debtor with agent of execution creditor not to bid at execution sale was sufficient consideration for agent's promise to allow the debtor to redeem). *See also* 3 Williston on Contracts § 7:44 (4th ed.) ("Just as a promisor may make an agreement for acts or promises to act, so too may it bargain for forbearances or promises to forbear."); 14 Tex. Jur. 3d Contracts § 157 ("Generally, forbearance from exercising a legal right, or the outright surrender of a legal right that one is not bound to surrender, is sufficient consideration for a contract or promise.").

28

the Majority Interest.[110] Therefore, Jim Dondero had a legal right to increase his own salary that existed before the Agreements were formed.[111] Accordingly, his decision to make part of his compensation conditional upon his own performance instead of exercising his right under the LPA to increase the immediate cash component of his compensation provided adequate consideration in exchange for the Agreements. Jim Dondero's testimony was clear that the Agreements served both to motivate his performance with heightened focus and to reduce other compensation Plaintiff would have otherwise had to pay him through an increased salary.[112]

53.     At the time of the 2016 Agreement, Nancy Dondero believed that Jim Dondero was undercompensated for the work that he did for the Debtor and that he was also undercompensated in comparison to other asset managers in similar industry roles.[113] In addition, Nancy Dondero agreed that Jim Dondero's efforts to increase the value of any of the portfolio companies would cause them to be sold for the highest value possible; if she did not believe that to be true, the 2016 Agreement would not have been made.[114] Plaintiff's Motion fails to cite to any relevant authority to support failed or inadequate consideration. Therefore, Nancy Dondero understood Jim Dondero's forbearance from taking a pay increase and his added attention to maximizing the value of the illiquid assets as a fair exchange – and legally sufficient consideration – for the 2016 Agreement.

---

[110] Pl. Ex. 30, 4th LPA, § 3.10(a), Pl. Appx. 00622.
[111] *Id.*
[112] Pl. Ex. 96, James Dondero 5/28/21 Tr. 182:2-19, Pl. Appx. 01660; Def. Ex. 4, J Dondero Dec., ¶ 13, Def. Appx. 307.
[113] Pl. Ex. 100, Nancy Dondero 10/18/21 Tr. 193:19-25-194:1-19, 206:17-25-207:1-17, 211:12-23, Pl. Appx. 01922-01923, 01926-01927; Pl. Ex. 99, James Dondero 11/4/21 Tr. 51:8-13, 52:19-25-53:1-4, Pl. Appx. 01825-01826; Pl. Ex. 98, James Dondero 10/29/21 Tr. 421:4-17, Pl. Appx. 01776; Pl. Ex. 101, Alan Johnson (Expert) 11/2/21 Tr. 94:21-96:22, Pl. Appx. 01982.
[114] Pl. Ex. 100, Nancy Dondero 10/18/21 Tr. 194:20-25-195:1-10, 206:17-25-207:1-17, Pl. Appx. 01926.

54. Furthermore, "[i]n order for the consideration to be deemed inadequate, it must be *so grossly inadequate as to shock the conscience*, being tantamount to fraud."[115] Even if this Court finds that the Agreements were not made for precisely equal value, Jim Dondero's conditional forbearance to increase his own pay and his specific dedication to increase his focus on the profitable sale of the portfolio companies is ***not so inadequate as to shock the conscience***, particularly given that it is common practice in private companies to forgive bona fide debt in order to manage compensation and provide incentives to managers.[116] Simply because Plaintiff disagrees with Mr. Dondero's assessment does not make the consideration "grossly inadequate;" it is an issue of fact for a jury precluding summary judgment.[117] Thus, summary judgment on this issue of consideration must be denied.

> **g.** **Agreements Need Not Be Hotly or Even Gently Negotiated to Exist and be Valid and Enforceable.**

55. Plaintiff's argument that, because the Agreements were reached "without negotiation," then the Agreements must not be valid is absurd and without supporting legal authority. Defendant also has not located any requirement under Texas law that a contract must be negotiated (that is, that there needs to be back and forth, rather than acquiescence to suggested terms) to exist. Rather, Texas simply requires that all elements of a contract be present to support its existence.[118] Negotiation is not included as an element of contract formation anywhere in Texas law. The concept that a contract requires "negotiation" – whatever Plaintiff is trying to make the

---

[115] *Garcia v. Lumacorp, Inc.*, No. CIV.A. 3:02-CV-2426-, 2004 WL 1686635, at *11 (N.D. Tex. July 27, 2004), aff'd, 429 F.3d 549 (5th Cir. 2005) (emphasis added, citations omitted).

[116] It was common practice in private companies to loan money that is bona fide debt and then forgive it over time to manage compensation and as incentives to managers of private companies. Pl. Ex. 98, James Dondero 10/29/21 Tr. 421:18-25, Pl. Appx. 1776; Alan Johnson Expert Report p. 14-15.

[117] *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (determining that adequacy of consideration is a question of fact for the jury).

[118] *Corsaro v. Columbia Hosp. at Med. City Dallas Subsidiary, LP*, No. 3:21-CV-01748-N, 2021 LEXIS 247218, 9 (N.D. Tex., Dec. 29, 2021).

Court believe that means – is absent from Texas authority. Just imagine what havoc that would wreck in this hot real estate market. Is the contract of every buyer who accepted the seller's terms "as is" invalid? Surely not. Therefore, summary judgment on the issue of "negotiation" must be denied.

### h. Defendant's Summary Judgment Evidence Shows that Plaintiff Does Have a History of Forgiving Loans as Compensation.

56. Plaintiff's argument that "Highland did not have a 'practice' of forgiving loans" is rebutted by the record.[119] As demonstrated *supra*, Defendant presents evidence that Plaintiff has forgiven loans to several executives in the past.[120] Regardless, while Defendant's evidence showing the history of forgiven loans bolsters and makes more credible the existence of these loans, even if such loans had not been made (which they were) the absence of such loans would not prove that ***these*** loans were not subject to the Agreements made.

### i. Any Minor Inconsistency Between the Answer and Testimony is Simply Fodder for Cross Examination, Not a Basis for Summary Judgment.

57. Plaintiff argues that HCMFA "cannot recite a credible defense" because Jim Dondero recalled at his deposition that he was actually the Dugaboy Trustee when the 2014 Agreement was made, not Nancy Dondero, which is inconsistent with Defendant's Answer.[121] Plaintiff's argument on its face is not a basis for summary judgment because the Court cannot weigh the credibility of evidence at summary judgment.[122] The fact that Jim Dondero recalled that

---

[119] Motion, ¶¶ 95-96.
[120] Response, ¶¶ 7,8; Pl. Ex. 24, Jim Dondero's Objections and Responses to Plaintiff's Requests for Admission, Interrogatories, and Requests for Production, Pl. Appx. 00526; Pl. Ex. 194, Kristen Hendrix 10/27/21 Tr. 109:7-22, Pl. Appx. 03154; Pl. Ex. 195, David Klos 10/27/21 Tr. 106:6-22, Pl. Appx. 03208; Pl. Ex. 101 Alan Johnson (Expert) 11/2/21 Tr. 212:4-25, Pl. Appx. 02011; Def. Ex. 6, Hurley Dec., ¶ 7 (explaining that a loan to his company was forgiven and became compensation to him in 2013), Def. Appx. 383; Pl. Ex. 98, Jim Dondero 10/29/21 Tr. 424:4-8, Pl. Appx. 01777.
[121] Motion, D.1.i.
[122] *See Gulbenkian v. Penn.*, 252 S.W.2d 929, 931.

he was the Dugaboy Trustee when the 2014 Agreement was made is immaterial to the 2014 Agreement's existence, and simply because his memory was refreshed at deposition does not change his narrative. Jim Dondero has always asserted that it was the Dugaboy Trustee that entered the Agreements on behalf of Plaintiff. He (as well as Nancy) recalled that when they discussed the 2016 Note and made the 2016 Agreement, they also discussed the 2014 Note and Agreement,[123] leading to some confusion, but ultimately giving additional evidentiary support for the 2014 Agreement. Plaintiff's proclamation that "the Answer is facially and materially inaccurate" is an issue only for cross-examination, not summary judgment, as it attacks the credibility of a defense. This is another attempt by Plaintiff to draw the Court's attention away from the inescapable fact that Defendant's affirmative defense of the Agreements is supported by much more than a scintilla of evidence, and summary judgment must be denied.

> **j.      HCMFA's Prepayments on the Notes Do Not Undermine the Existence of the Agreements.**

58.      As discussed *supra*, the Agreements provide a mechanism for the Notes to *potentially* be forgiven, but in no way *guarantee* their forgiveness.[124] Plaintiff ignores this distinction when it implies that because Defendant made prepayments on the Notes, then the Notes must not have been subject to the Agreements.[125] This logical fallacy ignores the fact that if MGM, Cornerstone, or Trussway were *not* sold for above cost, then Defendant would indeed be responsible for the balance of the Notes. Plaintiff's argument that because Defendant made prepayments on the Notes then the Agreements must not exist completely ignores basic business sense, and Plaintiff's conjecture as to what *might* happen if the Notes were forgiven does not speak

---

[123] Def. Ex. 7-B, N. Dondero Tr. 4/29/22, 22:12-23:4, Def. Appx. 426; Def. Ex. 7-A, Deposition of J. Dondero (33:5-19), Def. Appx. 396.
[124] Response, ¶¶ 18, 20, 23.
[125] *See* Motion, ¶¶ 69-74.

to whether or not the Agreements exist. It also ignores Mr. Dondero's testimony that he would cause his and related party note payments to be made when Highland needed money, even if such payments were not required.[126] Plaintiff cites no authority to the contrary, but again relies on a red-herring factual argument to support its Motion. Therefore, summary judgment on this issue must be denied.

### k. Plaintiff Miscites Alan Johnson's Testimony Which in Fact Supports Defendant's Position.

59. Plaintiff suggests that Defendant's compensation expert Alan Johnson has not advised a company to forgive a loan for purposes of compensation.[127] As a preliminary matter, this is just false:

> Q (Morris): Okay. Have you ever advised a company to forgive a corporate loan as part of an executive's personal compensation package?
>
> A (Johnson): Yes, I have.
>
> Q (Morris): Can you identify – and did you tell them that it would be appropriate to do that?
>
> A (Johnson): Yes, I have.
>
> Q (Morris): And is that in a case other than Highland?
>
> A (Johnson): It would be other clients, yes.[128]

Having not received the favorable answer it was seeking, Plaintiff later moved to much narrower question in an effort to limit the damage caused by its prior questions:

> Q: No. So let me start again, and I appreciate that, and this is not – not the easiest topic to inquire about, so, forgive me. So, the question is [now]: Have you ever advised a company to forgive loans that it had made to a corporate affiliate for the purpose of compensating one of the corporation's executives?

---

[126] Def. Ex. 4, J Dondero Dec., ¶ 26, Def. Appx. 312.
[127] Motion, ¶ 2.
[128] Pl. Ex. 240, Deposition of Alan Johnson, 19:2-13, Pl. Appx. 05235.

A:      Those specific facts, I don't believe so.[129]

That Johnson has not in his advisory capacity encountered the exact circumstances here does not

undermine the fact that forgiveness of loans is a commonplace part of executive compensation.

60.    As noted above, Michiel Hurley testifies in his sworn declaration that he was the

beneficiary of forgiveness of debt to a company affiliated with HCM in which he was an owner in

the amount of $435,000.[130]   Hurley added "I believe this [forgiveness] was done in recognition of

the value of my services and was a fair and generous gesture[,]" demonstrating an example of a

loan to a company forgiven as a benefit to an executive.[131]

61.    Plaintiff's characterization of Johnson's testimony as an "admission" is inaccurate

and unfair. He did not say that forgiving the loan of a company owned in whole or in part by an

executive could or should not be compensation.   In fact he said the opposite.[132] As Johnson

testified, he has advised companies to forgive corporate loans as part of an executive's

compensation package.[133]   Finally, Plaintiff provides no legal authority supporting its argument

that the fact that Jonson had not previously provided advice on the exact circumstances here is

relevant to the issue **on this motion** of whether there is a material issue of fact whether the

subsequent agreements were made.

---

[129] *Id.*, 20:2-12.
[130] Def. Ex. 6, Hurley Dec., ¶ 7, Def. Appx. 383.
[131] *Id.*, ¶ 8.
[132] Pl. Ex. 240, Deposition of Alan Johnson (expert) 05/27/2022 19:2-13, Pl. Appx. 05235:
Q:     Okay.  Have you ever advised a company to forgive a corporate loan as part of an executive's personal
       compensation package?
A:     Yes, I have.
Q:     Can you identify – and did you tell them that it would be appropriate to do that?
A:     Yes, I have.
Q:     And is that in a case other than Highland?
A:     It would be other clients, yes.
[133] *Id.*

2. **Both Sides to the Agreements Provide Summary Judgment Evidence Attesting to the Agreements' Existence.**

62. Plaintiff's representation that "there is a complete absence of *any* credible evidence supporting the existence" of the Agreements is simply wrong, and easily refuted by Texas law. Jim and Nancy Dondero's testimony alone is sufficient under Texas law to show that the Agreements exist and defeat Plaintiff's Motion. Plaintiff's lack of legal authority supporting the proposition that when *both sides* to an agreement testify to that same agreement's existence, there is somehow still a material issue of fact regarding that agreement's existence, should not come as a surprise. Only *one* side to an oral agreement is required to testify as to its existence to survive a motion for summary judgment. "Where there is no written contract in evidence, and *one party* attests to a contractual agreement while the other vigorously denies any meeting of the minds, determining the existence of a contract is a question of fact under Texas law."[134]

63. For example, in *Al-Saud*, plaintiff and defendant each provided conflicting summary judgment evidence regarding whether or not conditions existed that would allow the repayment and refund of a down payment to a loan at issue.[135] Because the summary judgment evidence – in that case, deposition testimony – was conflicting regarding whether or not those conditions (i.e.: an agreement) existed, summary judgment was denied.[136] Here, Defendants' summary judgment evidence is more than sufficient to provide proof that the Agreements exist and create a genuine issue of material fact, since they present testimony from *both* sides to the Agreements while Texas law only requires testimony from *one*.

---

[134] *In re Palms at Water's Edge, L.P.*, 334 B.R. 853, 857 (Bankr. W.D. Tex. 2005) (citing *Runnells v. Firestone*, 746 S.W.2d 845, 849 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (emphasis added); *Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607, 610 (Tex. 1972); *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ)).
[135] *Al-Saud v. Youtoo Media, L.P.*, 3:15-CV-3074-C, 2017 WL 3841197, at *4.
[136] *Id.*, at *6.

35

64.     Further, "whether the parties had a meeting of the minds or common understanding is better suited for the trier of fact and cannot be determined by the court at this [summary judgment] juncture."[137]  In *Fisher*, the movant argued on summary judgment that no implied contract with the non-movant existed.   However, the court denied summary judgment on the existence of an implied contract where the non-movant produced evidence of a course of conduct that "raised a genuine dispute of material fact as to whether the parties had an implied contract…"[138]

65.     Of course, unlike the case cites above, here, ***both sides*** that made the Agreements attest the Agreements exist.   Jim and Nancy Dondero – the only two individuals who have firsthand knowledge of the Agreements – have testified numerous times that the Agreements occurred and do exist.  Nancy Dondero testified to the Agreements' existence at her deposition:

> Q:     Is it your testimony that you, as the trustee of The Dugaboy Investment Trust, entered into oral agreements with your brother between December and the year each note was made and February of the following year, pursuant to which plaintiff agreed that plaintiff would forgive the notes if certain portfolio companies were sold for greater than cost or on a basis outside of James Dondero's control?
>
> A:     That is correct.[139]

Jim Dondero also testified to the Agreements' existence at his deposition on May 28, 2021:

> Q:     Okay.   And in the first sentence to your answer in Interrogatory 1, you wrote, or somebody wrote on your behalf, quote: "The agreements were entered into on behalf of the debtor by James Dondero, subsequent to the time each note was executed."   Is that an accurate statement, or is it an inaccurate statement?"

---

[137] *Fisher v. Blue Cross and Blue Shield of Tex., Inc.,* 3:10-CV-2652-L, 2015 WL 5603711 at 10 (N.D. Tex. Sept. 23, 2015) (analogizing the *In re Palms* in a summary judgment context: "[s]imply alleging there was no meeting of the minds is not a legitimate basis for summary judgment because "[w]here there is no written contract in evidence, and ***one party*** attests to a contractual agreement while the other vigorously denies any meeting of the minds, determining the existence of a contract is a question of fact.").

[138] *Id*. at 10.

[139] Pl. Ex. 100, Nancy Dondero 10/18/21 Tr. 164:13-23, Pl. Appx. 1915.

A:      Again, it was between me and the Class A, the majority of the Class A members. It was a Class A – the Class A members were representing Highland, never the debtor, because the debtor didn't exist yet.[140]

And again at his deposition on May 5, 2022:

Q:      Did you enter into the agreement with respect to the 2014 note both in your capacity as the president of Highland and simultaneously in your capacity as the trustee of the Dugaboy Trust?

A:      Yes.

66.      Plaintiff ignores this testimony in its Motion, likely because it is consistent with Jim Dondero's unchanging narrative that it was the "the majority of the Class A members [Dugaboy]" that entered into the Agreements. Again, Jim Dondero has always contended that it was the Dugaboy Trustee that entered the Agreements on behalf of Plaintiff. Moreover, both Jim and Nancy Dondero also provide this Court with sworn Declarations explicitly asserting that the Agreements exist, *supra*, II.C.7. Based on the evidence above, Defendant Jim Dondero provides evidence that the Agreements exist, and creates a genuine issue of material fact. *See, Fisher* at 10.

67.      Plaintiff seems to suggest that testimony from Jim and Nancy Dondero attesting to the Agreements' existence is insufficient to create an issue of material fact that the Agreements exist. While this may be the case in one state with markedly different law than other states (*see Franklin v. Regions Bank*, CV 5:16-1152, 2021 WL 867261 (W.D. La. Mar. 8, 2021) (statutorily requiring corroborating evidence in addition to testimony from one party to prove an oral contract in excess of $500.00 in Louisiana)), this is not the case in Texas. In Texas, "[t]he existence of an oral contract may be proved by circumstantial evidence as well as by direct evidence."[141] The circumstantial evidence supports the existence of the Agreements. Plaintiff never demanded any

---

[140] Pl. Ex. 96, James Dondero 5/28/21 Tr. 165:8-20, Pl. Appx. 01656.
[141] *271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*, 03-07-00498-CV, 2008 WL 2387630 at 4 (Tex. App.—Austin June 11, 2008, no pet.) (citing *PGP Gas Products, Inc. v. Reserve Equip., Inc.*, 667 S.W.2d 604, 607 (Tex. App.—Austin 1984, writ ref'd n.r.e.)).

CORE/3522697.0002/174672747.14

of demand notes at issue in this case (nor did it declare any Term Notes to be in default) until James Seery assumed control of Plaintiff. Actually, it was not until Plaintiff was in bankruptcy that Plaintiff decided to conspicuously call all the demand notes for payment.[142] Prior to the bankruptcy, Plaintiff made no attempt to demand the Notes. Circumstantially, it appears that Plaintiff was operating from 2014 to 2020 as if the Agreements were valid and in effect.

68.     Plaintiff's argument that the evidence of the Agreements' existence is factually insufficient flies in the face of black letter law that the court cannot "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."[143] Because Jim and Nancy Dondero have sworn to the existence and validity of the Agreements, Plaintiff's arguments amount to nothing more than factual attacks that impermissibly require this Court to opine on the credibility of Defendants' evidence. Thus, summary judgement must be denied.

## IV.     Conclusion

WHEREFORE, Defendant respectfully requests this Court Deny Plaintiff's Motion for Partial Summary Judgment and grant such other and further relief as the Court deems just and proper.

---

[142] Motion, ¶ 22 (referencing Plaintiff's demand on the Demand Notes); Pl. Ex. 2, Amended Complaint against NPA et al., ¶ 27, Pl. Appx. 00029; Pl. Ex. 3, Amended Complaint against HCMS, ¶ 43, Pl. Appx. 00189; Pl. Ex. 4, Amended Complaint against HCRE et al., ¶ 43, Pl. Appx. 00189.
[143] *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987).

CORE/3522697.0002/174672747.14

Dated: July 1, 2022                   Respectfully submitted,

                                      **STINSON LLP**

                                      */s/ Deborah Deitsch-Perez*
                                      Deborah Deitsch-Perez
                                      Texas State Bar No. 24036072
                                      Michael P. Aigen
                                      Texas State Bar No. 24012196
                                      3102 Oak Lawn Avenue, Suite 777
                                      Dallas, Texas 75219-4259
                                      Telephone: (214) 560-2201
                                      Email:  deborah.deitschperez@stinson.com
                                      Email:  michael.aigen@stinson.com

                                      **ATTORNEYS FOR DEFENDANT**
                                      **HIGHLAND CAPITAL MANAGEMENT**
                                      **FUND ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on July 1, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for Plaintiff Highland Capital Management, L.P. and on all other parties requesting or consenting to such service in this case.

                                      */s/Deborah Deitsch-Perez*
                                      Deborah Deitsch-Perez

39