PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adv. Proc. No. 21-03082-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | |
| ADVISORS, L.P., | § | |
| | § | Case No. 3:21-cv-881-X |
| Defendant. | § | |
| | § | |

---

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     ARGUMENT .............................................................................................................2

     A.    Highland Makes its Prima Facie Case for Summary Judgment ............................ 2

     B.    HCMFA Fails to Rebut Highland's Prima Face Case ........................................... 3

          1.    No Reasonable Jury Could Find that HCMFA or Mr. Dondero ever
              Disclosed the Terms or Existence of the Alleged Agreements.................. 4

              i.    Proof of Claim 188 did not Disclose the Terms or Existence of the
                   Alleged Agreements......................................................................... 5

              ii.   Neither Mr. Dondero nor Mr. Lynn Disclosed the Terms or
                   Existence of the Alleged Agreements to Mr. Waterhouse,
                   Highland's Counsel, or anyone else................................................. 10

          2.    No reasonable Jury Could Find that the Alleged Agreements Exist
              Based on the Donderos' Self-Serving Statements ................................... 11

          3.    Mr. Hurley's Declaration Does Not Create a Genuine Dispute of
              Material Fact that Highland had a "Practice" of Forgiving Loans ........... 15

          4.    HCMFA's Remaining Assertions Fail to Create Genuine Issues of
              Material Fact ............................................................................................ 17

               i.    HCMFA's Right to Pay Down its Obligations Under the Pre-2019
                   Notes Does Not Rebut Highland's Prima Facie Case.................. 17

               ii.   Highland's Demand on the Pre-2019 Notes Post-Petition is Not
                   "Circumstantial Evidence" of the Existence of the Alleged
                   Agreement ...................................................................................... 18

     C.    Proof of Claim 188 is Conclusive, Direct Evidence that HCMFA's
          Mistake Defense in the Main Notes Litigation Was Fabricated .......................... 19

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*,
  03-07-00498-CV, 2008 WL 2387630 (Tex. App.— Austin June 11, 2008) ........................... 13

*Al-Saud v. Youtoo Media, L.P.*,
  3:15-CV-3074-C, 2017 WL 3841197 (N.D. Tex. March 15, 2017) ........................................ 12

*Alton v. Texas A&M Univ.*,
  168 F.3d 196 (5th Cir. 1999) ................................................................................................... 4

*BMG Music v. Martinez*,
  74 F.3d 87 (5th Cir.1996) ...................................................................................................... 12

*Buxani v. Nussbaum*,
  940 S.W.2d 350 (Tex. App.—San Antonio 1997)................................................................. 13

*Derr v. Swarek*,
  766 F.3d 430 (5th Cir. 2014) ................................................................................................. 10

*DIRECTV, Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) ................................................................................................. 15

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) ................................................................................................. 15

*Fisher v. Blue Cross and Blue Shield of Tex., Inc.*,
  3:10-CV-2652-L, 2015 WL 5603711 at 10 (N.D. Tex. Sept. 23, 2015) ................................. 12

*Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding*,
  480 S.W.2d 607 (Tex. 1972) .................................................................................................. 12

*Honore v. Douglas*,
  833 F.2d 565 (5th Cir. 1987) ................................................................................................. 12

*In re Hinsley*,
  201 F.3d 638 (5th Cir. 2000) ................................................................................................. 15

*In re Magna Cum Latte, Inc.*,
  07-31814, 2007 WL 3231633 (Bankr. S.D. Tex. Oct. 30, 2007) ............................................. 4

*In re Palms at Water's Edge, L.P.*,
  334 B.R. 853 (Bankr. W.D. Tex. 2005).................................................................................. 12

*Kariuki v. Tarango,*
709 F.3d 495 (5th Cir. 2013) ........................................................................... 12

*Latimer v. Smithkline & French Laboratories,*
919 F.2d 301 (5th Cir.1990) ............................................................................ 4

*Lavergne v. Jefferson County, Tex.,*
164 F.R.D. 441 (E.D. Tex. 1995) .................................................................... 14

*Looney v. Irvine Sensors Corp.,*
CIV.A.309-CV-0840-G, 2010 WL 532431 (N.D. Tex. Feb. 15, 2010) ................... 3

*Main Street Bank v. Unisen, Inc.,*
No. H-06-3776, 2008 WL 11483415 (S.D.Tex. Feb. 15, 2008)............................ 15

*Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,*
40 F.3d 698 (5th Cir. 1994) ......................................................................... 4, 18

*Park Cities Bank v. Lee,*
3:10-CV-1584-K, 2012 WL 833189 (N.D. Tex. Mar. 12, 2012) ........................... 2

*Resolution Tr. Corp. v. Starkey,*
41 F.3d 1018 (5th Cir. 1995) ........................................................................... 2

*Salama v. W. Wind Energy Corp.,*
2013 WL 6079548 No. 4:12–cv–03535 (S.D.Tex. Nov. 19, 2013)....................... 15

*Sanchez v. Dallas/Fort Worth Int'l Airport Bd.,*
438 Fed. Appx. 343, 346–47 (5th Cir. 2011)................................................... 14

*Schwarz v. Folloder,*
767 F.2d 125 (5th Cir. 1985) ......................................................................... 10

*Scott v. Harris,*
550 U.S. 372 (2007).................................................................................... 15

*Tyler v. Cedar Hill Indep. Sch. Dist.,*
426 Fed.Appx. 306 (5th Cir. 2011).................................................................. 14

*United States v. Lawrence,*
276 F.3d 193 (5th Cir. 2001) ......................................................................... 12

DOCS_NY:46116.12 36027/003

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Highland Capital Management, L.P., the reorganized debtor and the plaintiff ("Highland"
or "Plaintiff") in the above-captioned adversary proceeding, hereby files this reply memorandum
of law (the "Reply") in further support of its *Motion for Summary Judgment* (the "Motion").  In
further support of its Motion, Highland states as follows:

## I.     PRELIMINARY STATEMENT[1]

1.      In its Report and Recommendation issued on July 19, 2022, the Court
rejected the "Alleged Agreement" defense that HCMFA adopted with respect to the Pre-2019
Notes.  This Reply is therefore limited to the evidence that the Court did not previously consider
but that HCMFA has now offered in an attempt to rebut Highland's *prima facie* case for summary
judgment.  HCMFA's new evidence does not move the needle at all.[2]  The Motion should be
granted with respect to the Pre-2019 Notes.

2.      In its Response, HCMFA attempts to create a genuine dispute of fact by
introducing evidence concerning HCMFA's contention that the Alleged Agreements were not
"secret" because their existence was disclosed prior to the Adversary Proceeding.  This evidence
does not rebut Highland's *prima facie* case.

3.      For example, Proof of Claim 188, in which Mr. Dondero states that the
Notes (including the Pre-2019 Notes) were advanced to him "in lieu of compensation," (a) does
not refer to or concern the Alleged Agreements and (b) directly conflicts with purpose of the

---

[1] Capitalized terms in this Preliminary Statement shall have the meanings ascribed to them below or in *Highland
Capital Management, L.P.'s Memorandum of Law in Support of Motion for Summary Judgment* [Docket No. 46] (the
"Brief").

[2] As discussed in Section II.C below, the exception is that Proof of Claim 188 proves that ***HCMFA's "Mutual
Mistake" defense was completely fabricated*** because it shows that Mr. Dondero knew more than six months before
any demand was made that the HCMFA Notes were valid and enforceable obligations, and that he was conjuring up
a defense to any collection action on those Notes.

Alleged Agreement. Moreover, HCMFA's last-second reliance on Proof of Claim 188 as "evidence" that "the world" was on notice of the existence of the Alleged Agreements is directly contradicted by the unconditional admissions made by HCMFA and Mr. Dondero that neither the terms nor the existence of the Alleged Agreements were ever disclosed to the Bankruptcy Court or in connection with the Bankruptcy Case and were never memorialized in a writing.

4.     Similarly, Mr. Dondero's statements to Mr. Waterhouse and Mr. Lynn's letter (sent after the commencement of litigation) do not create genuine disputes of material fact regarding the non-existence of the Alleged Agreement. Like Proof of Claim 188, those communications do not refer to or concern the Alleged Agreements.

5.     In the end, HCMFA has not presented any additional evidence or arguments in support of the Alleged Agreement defense that should cause the Court to deviate from its findings in the Report and Recommendation. The Motion should be granted.

## II.   ARGUMENT

### A.   Highland Makes Its *Prima Facie* Case for Summary Judgment

6.     Highland has established its *prima facie* case that it is entitled to summary judgment on HCMFA's breach of the Pre-2019 Notes because the undisputed evidence proves (i) the existence of the Notes in question; (ii) that they were signed by an authorized representative of HCMFA; (iii) that Highland is the legal owner and holder thereof; and (iv) that a certain balance is currently due and owing thereunder. *See* Brief ¶¶ 21-22 (citing evidence); *Park Cities Bank v. Lee*, 3:10-CV-1584-K, 2012 WL 833189, at *2 (N.D. Tex. Mar. 12, 2012) (plaintiff has "established that there is no genuine issue of material fact regarding its claim for recovery on a promissory note" where it established "the note in question, that the defendant signed it, that the plaintiff was the legal owner and holder thereof, and that a certain balance is due and owing on the note"); *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (holding that where

affidavit "describes the date of execution, maker, payee, principal amount, balance due, amount of accrued interest owed, and the date of default for each of the two promissory notes," movant "presented a prima facie case of default on the notes"); *Looney v. Irvine Sensors Corp.*, CIV.A.309-CV-0840-G, 2010 WL 532431, at \*2-3 (N.D. Tex. Feb. 15, 2010) (where movant "has attached a copy of the note ... to a sworn affidavit in which he states that the photocopy is a true and correct copy of the note, that he is the owner and holder of the note, and that there is a balance due on the note ... [movant] has made a prima facie case that he is entitled to summary judgment on the note").

7.      HCMFA does not dispute any of the foregoing facts.  In fact, HCMFA admits that the Pre-2019 Notes are valid and binding agreements and that "HCMFA borrowed money" from Highland in exchange for the Pre-2019 Notes.  *See* Def. Ex. 4 ¶¶ 5-6, Def. Appx. 304-05.[3]  Accordingly, Highland has proven its *prima facie* case for HCMFA's breach of the Pre-2019 Notes.

**B.      HCMFA Fails to Rebut Highland's *Prima Face* Case**

8.      In an attempt to rebut Highland's *prima facie* case for breach of the Pre-2019 Notes, HCMFA introduces: (a) a proof of claim that HCMFA contends put "the world" on notice of the "Alleged Agreement" defense; (b) largely cumulative, self-serving, and conclusory statements from Mr. Dondero and his sister that each of them entered into the Alleged Agreements; and (c) a declaration by a non-Highland employee who apparently had a modest loan forgiven by HCMFA (not Highland) nearly a decade ago, in an attempt to buttress its contention that Highland had a "practice" of forgiving loans.

---

[3] Citations to "Def. Ex. __, Def. Appx. __" refer to documents included in HCMFA's *Appendix in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment* [Docket No. 53].

9. As explained below, this "evidence" is insufficient to create a "genuine" dispute of "material" fact for trial. *See Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994) (to defeat a *prima facie* case for summary judgment, the nonmovant "must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial"); *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999) (a dispute about a material fact is "genuine" only where "the evidence is such that a *reasonable jury* could return a verdict in favor of the nonmoving party"); *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir.1990) (there is no "genuine" issue for trial where there is an "absence of evidence supporting the nonmoving party's case" ); *In re Magna Cum Latte, Inc.*, 07-31814, 2007 WL 3231633, at *3 (Bankr. S.D. Tex. Oct. 30, 2007) ("A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact"). HCMFA fails to come forward with any evidence sufficient to support the essential elements of its Alleged Agreement defense and thus fails to defeat Highland's *prima facie* case.

1. **No Reasonable Jury Could Find that HCMFA or Mr. Dondero Ever Disclosed the Terms or Existence of the Alleged Agreements**

10. If the Alleged Agreements actually existed (which they did not), each of the Corporate Obligors (including HCMFA), Mr. Dondero, Ms. Dondero, and Dugaboy would have been highly motivated to disclose and memorialize the Alleged Agreements because (a) they represented more than $50 million in potential compensation to Mr. Dondero; (b) if forgiven, would have wiped tens of millions of dollars of liabilities off of the Corporate Obligors' balance sheets; and (c) it would have prevented any accusation that the Alleged Agreements were fabricated for litigation purposes or entered into in violation of any agreement or duty.

11.     Yet, relying primarily on Defendants' own written responses to discovery and depositions, Highland has established that neither the terms nor the existence of the Alleged Agreements were (a) disclosed to anyone or (b) memorialized in any writing prior to the commencement of this Adversary Proceeding.  S*ee* Brief ¶¶ 90-91 (citing evidence).[4]

12.     HCMFA attempts to manufacture a dispute on this issue by offering a couple of irrelevant documents and repeating certain statements that Mr. Dondero claims to have made to Mr. Waterhouse after the Petition Date.  Such evidence fails to support HCMFA's contention that it disclosed or memorialized the terms or existence of the Alleged Agreements or otherwise put anyone on "notice" thereof.

      i.      **Proof of Claim 188 Did Not Disclose the Terms or Existence of the Alleged Agreements**

13.     HCMFA insists that the Alleged Agreements were not "secret" because, among other reasons, Mr. Dondero filed a personal proof of claim more than two years ago that supposedly "disclos[ed] the potential foregivability of all of the Notes" to "the world."  Response[5] ¶¶ 16-17.[6]  HMCFA's reliance on this proof of claim evinces an understandable state of desperation.

---

[4] *See also, e.g.*, *Highland Capital Management, L.P.'s Amended Memorandum of Law in Support of Motion for Partial Summary Judgment*, Adv. Pro. No. 21-03004, Docket No. 95 ("Highland's Main Br.") ¶¶ 98-99 (same, citing additional evidence).

[5] Citations to "Response __" are to *Defendant's Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment* [Docket No. 52].

[6] HCMFA produced the proof of claim on July 1, 2022, as part of a "supplemental production" made months after the deadline for the completion of fact discovery and just hours before the deadline to oppose the Motion.  Rather than engage in motion practice, the Parties entered into a Stipulation, approved by the Court, in which (a) Highland waived any objection to HCMFA's tardy and last-second "supplemental production" of documents, and (b) HCMFA consented to the inclusion of certain documents in a *Reply Appendix of Exhibits in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment* (the "Reply Appendix").  [Docket No. 56].  *See* Ex. 1, Reply Appx. 1-8.

14.     Before deciding whether the proof of claim creates a "genuine dispute of material fact," as HCMFA now contends, the Court should ask HCMFA's counsel why (a) neither Mr. Dondero nor any Obligor under any of the Notes at issue relied upon, or included in any way, the proof of claim as "evidence" when opposing Highland's motion for partial summary judgment in the Main Notes Litigation; (b) both HCMFA and Mr. Dondero tendered written discovery responses in which they each unconditionally admitted that, prior to the commencement of the Adversary Proceedings, (i) no document was created that concerned the Alleged Agreements or reflected or memorialized their terms, (ii) neither the terms nor the existence of the Alleged Agreements were disclosed to the Court, and (iii) neither the terms nor the existence of the Alleged Agreements were disclosed during the Bankruptcy Case; and (c) no witness—including Mr. Dondero and HCMFA's Rule 30(b)(6) witness—ever mentioned or referred to the proof of claim during any deposition.   The answer to these questions is obvious: none of the Main Note Defendants believed the proof of claim related to the "Alleged Agreement" defense.

15.     On May 26, 2020, Mr. Dondero filed a proof of claim that was denoted by the Debtor's claims agent as claim number 188 ("Proof of Claim 188").[7]  Proof of Claim 188 (a) included a Schedule that listed the types of Notes issued by Mr. Dondero and his affiliates to Highland, (b) disclosed the aggregate principal amount owed by each Maker to Highland, as of March 31, 2020, and (c) contained the following statement:

> This claim is a contingent claim asserted by James Dondero and is subject to any effort to collect on certain notes (the "Notes") identified as Schedule "A" hereto. In the event that collection efforts are made to collect the Notes, James Dondero asserts that ***the Notes were issued by him for funds advanced in lieu of compensation***."

Def. Ex. 4D, Def. Appx. 367 (emphasis added).

---

[7] Mr. Dondero filed Proof of Claim 188 about seven weeks after the bar date for general unsecured claims.

16.    Relying on this language, HCMFA contends that Proof of Claim 188 somehow disclosed the "potential foregivability of all of the Notes" and that "the world" was "on notice that Jim Dondero believed that the funds provided pursuant to the Notes were potentially forgivable as compensation and thus he did not expect any effort to collect on the notes unless and until it became impossible for the conditions subsequent to be satisfied."  Response ¶¶ 16-17.

17.    Nothing in Proof of Claim 188 supports HCMFA's contention that it put anyone on notice of the terms or existence of the Alleged Agreements.  HCMFA's Alleged Agreement defense was copied verbatim from the Main Notes Defendants who asserted it:

> Plaintiff's claims are barred in whole or in part because, prior to any alleged breach or acceleration, the Plaintiff **agreed** that it would not collect on the note upon **fulfilment of certain conditions subsequent**.  Specifically, sometime between December of the year in which each Note was made and February of the following year, **Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff** agreed with Mr. James Dondero, acting for Defendant, that Plaintiff would **forgive** the Notes if certain **portfolio companies were sold for greater than cost or on a basis outside of Mr. Dondero's control**.  This agreement setting forth the conditions subsequent to demands for payment on the Notes was an **oral agreement** . . . .

Ex. 234 ¶ 41, Appx. 5114 (emphases added).[8]

18.    <u>Proof of Claim 188 does not refer to or concern the Alleged Agreements.</u> While Mr. Dondero may have put "the world" on notice of his contention that "the Notes were issued by him for funds advanced in lieu of compensation," Proof of Claim 188 did not put *anyone* on notice that the Notes (including the Pre-2019 Notes) were subject to an "oral agreement," nor did it (a) disclose the existence of any agreement relating to the Notes; (b) refer to Nancy Dondero or Dugaboy in any way, let alone as the parties who supposedly bound Highland to any agreement;

---

[8] *See* Ex. 31 ¶ 82, Appx. 665 (Mr. Dondero asserted the exact same defense); Ex. 15 ¶ 83, Appx. 435-36 (NexPoint asserted the exact same defense); Ex. 16 ¶ 99, Appx. 451-52 (HCMS asserted the exact same defense); Ex. 17 ¶ 99, Appx. 468 (HCRE asserted the exact same defense).

7

(c) state that the Notes were "potentially forgivable" (as HCMFA now contends) or even use the word "forgive" (or any derivation thereof); or (d) disclose the existence or terms of any "conditions subsequent." Simply put, Proof of Claim 188 does not relate to the Alleged Agreements, the actual affirmative defense asserted by HCMFA and all of the other Main Notes Defendants subject to the Main Notes Litigation, and HCMFA and Mr. Dondero know that. *See supra* ¶ 14.

19.    <u>Proof of Claim 188 conflicts with the Alleged Agreements</u>. In Proof of Claim 188, Mr. Dondero asserted that the "***Notes were issued by him for funds advanced in lieu of compensation***." But Mr. Dondero and the Corporate Obligors have already admitted that the Notes (including the Pre-2019 Notes) were issued in exchange for loans made to each of them rather than being issued "in lieu of compensation."[9] Indeed, if the Notes were issued "in lieu of compensation," as HCMFA and Mr. Dondero now contend, then the Alleged Agreements would have been unnecessary. Stated another way, why would Mr. Dondero have needed to enlist his sister to enter into any subsequent agreement for the forgiveness of the Notes (including the Pre-2019 Notes) if the Notes were, in the first instance, "issued by [Mr. Dondero] for funds advanced in lieu of compensation"? This conflict cannot be reconciled.

20.    <u>HCMFA's current contention concerning Proof of Claim 188 conflicts with numerous prior sworn statements and contentions made by HCMFA and Mr. Dondero</u>. HCMFA's last-second contention that the Alleged Agreements were not "secret" because Proof of Claim 188 put "the world" on notice of their existence is contradicted by HCMFA's and Mr. Dondero's prior admissions, including the following:

---

[9] *See, e.g.*, Def. Ex. 1 ¶¶ 5-18, Def. Appx. 5-12 (Mr. Dondero admits that the Corporate Obligors of each Note in the Main Notes litigation "borrowed money from [Highland] and entered into" the respective Note); Def. Ex. 4 ¶¶5-6, Def. Appx. 304 (Mr. Dondero admits that "HCMFA borrowed money from [Highland] and entered into" the Pre-2019 Notes); *Defendants' Memorandum of Law in Response to Plaintiff's Motion for Partial Summary Judgment*, Adv. Pro. No. 21-03003, Docket No. 154 ¶¶ 3-6 (admitting that the Makers "do[] not dispute the initial amount[] loaned").

- HCMFA unconditionally admitted that **no document was created** prior to February 1, 2021, that reflects or memorializes the terms or existence of the Alleged Agreements (Ex. 220, Appx. 5019 (Responses to Requests for Admission 13 and 14));

- HCMFA unconditionally admitted that **it never disclosed** the terms or existence of the Alleged Agreements to the Bankruptcy Court prior to February 1, 2021 (Ex. 220, Appx. 5019) (Responses to Requests for Admission 17 and 18));

- HCMFA unconditionally admitted that **it never disclosed** the terms or existence of the Alleged Agreements in connection with the Bankruptcy Case prior to February 1, 2021 (Ex. 220, Appx. 5019-20) (Responses to Requests for Admission 20 and 21));

- Mr. Dondero unconditionally admitted that **no document was created** prior to the commencement of the Adversary Proceeding concerning the existence of the Alleged Agreements or that reflects or memorializes the terms of the Alleged Agreements (Ex. 24, Appx. 522) (Responses to Requests for Admission 7 and 8));[10]

- Mr. Dondero unconditionally admitted that **he never disclosed** the terms or existence of the Alleged Agreements to the Bankruptcy Court prior to the commencement of the Adversary Proceeding (Ex. 24, Appx. 523) (Responses to Requests for Admission 11 and 12)); and

- Mr. Dondero unconditionally admitted that **he never caused Highland to disclose** the terms or existence of the Alleged Agreements in connection with the Bankruptcy Case (Ex. 24, Appx. 523) (Responses to Requests for Admission 13 and 14)).

21.　These unconditional admissions directly contradict HCMFA's latest version of its defense[11] that Proof of Claim 188 put the "world" on notice of the existence of the Alleged Agreements.  In light of the unqualified and undisputed admissions above, the Court

---

[10] Mr. Dondero was specifically asked under oath to identify any documents created prior to the commencement of the Adversary Proceedings concerning the existence of the Alleged Agreements, and he failed to mention Proof of Claim 188 (Ex. 99 at 168:10-169:17, Appx. 1854).

[11] *See* HCMLP's Main Br. ¶¶ 81-88 (citing to undisputed evidence proving how the allegations concerning the Main Note Defendants' Alleged Agreement defense materially changed over time in response to litigation developments).

9

should reject HCMFA's last-second attempt to muddy the record through the introduction of a document completely unrelated to the Alleged Agreement defense.[12]

22.     In sum, Proof of Claim 188 (a) does not refer to or concern the Alleged Agreements; and (b) asserts a defense (that the Notes were issued "in lieu of compensation") that directly conflicts with (i) the "Alleged Agreement" defense, and (ii) a litany of unconditional admissions made by HCMFA and Mr. Dondero.  Proof of Claim 188 is not evidence that HCMFA or Mr. Dondero disclosed the terms or existence of the Alleged Agreements.

    **ii.     Neither Mr. Dondero nor Mr. Lynn Disclosed the Terms or Existence of the Alleged Agreements to Mr. Waterhouse, Highland's Counsel, or Anyone Else**

23.     HCMFA contends that the Alleged Agreements were not "secret" because (a) Mr. Dondero supposedly told Mr. Waterhouse that there were "mechanisms in place for forgiving the Notes, or for having them considered as compensation and not being an asset to the Debtor's estate";[13] and (b) Michael Lynn, then Mr. Dondero's lawyer, sent a letter ***after*** the commencement of litigation stating simply that "Mr. Dondero views the notes in question as having been given in exchange for loans by Highland made in lieu of compensation to Mr. Dondero." (Response ¶ 18) (citing Ex. 99 at 167:10-16, Appx. 1854; Def. Ex. 4 ¶ 17, Appx. 308; Def. Ex. 1-D, Def. Appx. 74).

---

[12] Notably, if HCMFA is correct that Proof of Claim 188 concerned the Alleged Agreements, then Mr. Dondero and all of the Corporate Obligors (including HCMFA) should be estopped from asserting this defense because Mr. Dondero withdrew Proof of Claim 188 "with prejudice to refiling" after Highland objected to it. (Ex. 2 (Highland's objection to Proof of Claim 188), Reply Appx. 9-26; Ex. 3 (stipulation pursuant to which Mr. Dondero withdrew Proof of Claim 188 "with prejudice to refiling"), Reply Appx. 27-29; Ex. 4 (order approving stipulation), Reply Appx. 30-34).  *See Derr v. Swarek*, 766 F.3d 430, 441 (5th Cir. 2014) (a party's "voluntary dismissal with prejudice" barred "any attempt" by that party from later re-asserting "the dismissed claims"); *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties").

[13] Mr. Waterhouse, Highland's former Chief Financial Officer who also served as an officer of HCMFA, could not corroborate Mr. Dondero's assertions.  Ex. 105 at 65:5-72:14, Appx. 2065-2067; 82:19-84:7, Appx. 2070.

24. While these *post hoc* statements may be consistent with Proof of Claim 188, they are insufficient to create a genuine dispute of material fact because they do not refer to or concern the Alleged Agreements. Like Proof of Claim 188, Mr. Dondero's comments to Mr. Waterhouse and Mr. Lynn's letter omitted the words "agreement," "contingency," "conditions subsequent," "Nancy," and "Dugaboy".[14]

25. If anything, these statements are further evidence that the entire "Alleged Agreement" defense is completely contrived. Mr. Dondero was obviously (and rightfully) concerned that he and his affiliates would be called upon to satisfy their respective obligations under the Notes given that those obligations exceeded $50 million. Yet, despite 18 months of litigation and two separate motions for summary judgment, Mr. Dondero and his affiliates have failed to offer *any* evidence proving that they disclosed the terms or the existence of the Alleged Agreements to anyone before the Adversary Proceedings were commenced.

## 2. No Reasonable Jury Could Find that the Alleged Agreements Exist Based on the Donderos' Self-Serving Statements

26. HCMFA argues that James and Nancy Dondero's deposition testimony and declarations provide evidence of the Alleged Agreements since both "have consistently testified under oath that the Agreements took place, exist, and are valid" and "have provided this Court with declarations swearing to the Agreements' factual existence." (Response ¶ 22) (citing evidence).

---

[14] Mr. Dondero's self-serving assertion that he "did not discuss every detail of the Agreements" with Mr. Waterhouse has no basis in fact; Mr. Dondero admittedly did not discuss *any* detail of the Alleged Agreements with Mr. Waterhouse or even mention their existence. *See* Ex. 99 at 167:10-168:3, Appx. 1854. The same is true of Mr. Lynn's letter, sent *after* the commencement of litigation. *Compare* Def. Ex. 1D, Def. Appx. 435 (letter from Mr. Lynn stating that "Mr. Dondero views the notes in question as having been given in exchange for loans by Highland made in lieu of compensation to Mr. Dondero") *with* Response ¶ 18 (contending that Mr. Lynn "did not detail every facet of the Agreement").

27.     These self-serving and uncorroborated statements are not the type of "probative evidence required" to defeat summary judgment, especially "in the face of conflicting probative evidence." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013); *see also BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for recovery of promissory note, where defendant's only evidence to rebut plaintiff's *prima facie* case consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment") (internal quotations omitted).

28.     HCMFA argues that its "summary judgment evidence is more than sufficient to provide proof that the Agreements exist" since it "present[s] testimony from both sides to the Agreement while Texas law only requires testimony from one." (Response ¶ 63).  The cases HCMFA relies on in support of this argument are easily distinguishable from the present facts.[15]  Here, unlike in those cases, neither HCMFA nor Mr. Dondero offers any probative evidence, other than the Donderos' self-serving statements, to corroborate the existence of the Alleged Agreements.  In other words, HCMFA fails to adduce *any* evidence from which the

---

[15] *See In re Palms at Water's Edge, L.P.*, 334 B.R. 853, 858 (Bankr. W.D. Tex. 2005) (a meeting of the minds "can be inferred from the parties' conduct and their course of dealing"); *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607 (Tex. 1972) (existence of contract can be "inferred from the circumstances" based on the "conduct of one party"); *Al-Saud v. Youtoo Media, L.P.*, 3:15-CV-3074-C, 2017 WL 3841197 (N.D. Tex. March 15, 2017) (corroborating evidence offered to support defense to breach of contract claim); *Fisher v. Blue Cross and Blue Shield of Tex., Inc.*, 3:10-CV-2652-L, 2015 WL 5603711 at 10 (N.D. Tex. Sept. 23, 2015) (denying summary judgment where evidence of the parties' course of dealing might enable a find-finder to infer the existence of an implied contract); *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987) (denying summary judgment where non-movant offered corroborating evidence including party admissions and other testimonial evidence).

existence of the Alleged Agreements can be "inferred from the circumstances" or the parties' "course of dealing."[16] For example, the undisputed facts establish that:

- No contemporaneous writing exists that reflects the existence (let alone terms) of the Alleged Agreements;

- Neither Mr. Dondero nor his sister ever sent a written communication at any time prior to the commencement of the Adversary Proceedings that reflected the existence (let alone terms) of the Alleged Agreements;

- Nothing in Highland's books and records reflects the existence (let alone terms) of the Alleged Agreements;

- Nothing in HCMFA's books and records reflects the existence (let alone terms) of the Alleged Agreements;

- Neither Mr. Dondero nor any of his affiliates disclosed the existence (let alone terms) of the Alleged Agreements to PwC, the outside auditors for Highland and HCMFA;

- Neither Mr. Dondero nor any of his affiliates disclosed the existence (let alone terms) of the Alleged Agreements to the Bankruptcy Court in connection with confirmation, even though Highland's projections assumed full recovery on all of the Notes; and

- No one without the last name "Dondero" (including Mr. Waterhouse) has ever testified to knowing about the existence (let alone terms) of the Alleged Agreements prior to the commencement of the Adversary Proceedings.

*See* Brief ¶¶ 29-68; 90-91 (citing evidence).

29.     Thus, there is a complete absence of evidence supporting HCMFA's Alleged Agreement defense. By contrast, the undisputed documentary evidence overwhelmingly demonstrates the enforceability of the Notes (including the Pre-2019 Notes) and HCMFA's breach thereunder. By way of example only, (a) Mr. Dondero and his affiliates paid tens of millions of

---

[16] HCMFA's other case cites in support of this argument are also inapplicable because the relevant issue here is not about the terms of the alleged contract, *see 271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*, 03-07-00498-CV, 2008 WL 2387630 (Tex. App.— Austin June 11, 2008, no pet.), or whether the "meeting of the minds" element is satisfied, *see Buxani v. Nussbaum*, 940 S.W.2d 350 (Tex. App.—San Antonio 1997, no writ)).

dollars in principal on the Notes prior to the Petition Date; (b) Highland consistently carried the Notes as assets in its audited financial statements, on its balance sheet, and in its books and records without qualification or discount (before ***and*** after Mr. Dondero was forced to cede control of Highland), while also providing multiple written representations, signed by Mr. Dondero, that all related party relationships and transactions had been disclosed to its auditors; and (c) Highland continuously represented to this Court and Highland's creditors (before ***and*** after Mr. Dondero was forced to cede control of Highland) that all of the Notes were assets of the estate without qualification or discount. *See* Brief ¶¶ 29-74 (citing evidence).

30.     HCMFA has not cited to any case where a court has denied summary judgment based on the self-serving, conclusory, and uncorroborated testimony of two family members, one of whom (*i.e.*, Ms. Dondero) has no pecuniary interest in the subject matter but who is aligned with the non-movant. As discussed *supra*, these self-serving statements are insufficient to defeat summary judgment in the face of the substantial, undisputed, and conflicting probative evidence. *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 309 (5th Cir. 2011) (affirming summary judgment, where "[a]fter closely reviewing the record ... the only document [party] provides to support her claim" is her conclusory, self-serving affidavit, noting "[w]e have repeatedly held that self- serving affidavits, without more, will not defeat a motion for summary judgment"); *Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 Fed. Appx. 343, 346–47 (5th Cir. 2011) (affirming summary judgment where party attempting to rebut summary judgment relies on "her own self- serving affidavit," noting "a self-serving affidavit, without more evidence, will not defeat summary judgment"); *Lavergne v. Jefferson Cnty., Tex.*, 164 F.R.D. 441, 443 (E.D. Tex. 1995) ("When an affidavit in response to a summary judgment motion contains "nothing more than a recital of unsupported allegations, conclusory in nature," the motion for summary judgment

should be granted"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (affirming summary judgment where defendant's "attempt to create a fact issue ... by relying on a conclusory and self-serving affidavit is on unsteady ground"); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (affirming summary judgment, and finding that "party's self-serving and unsupported" affidavit regarding her "intent" is "not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud").

31. HCMFA's "Alleged Agreement" defense is a fabricated story blatantly contradicted by the summary judgment record, and no reasonable jury could believe it. *See Salama v. W. Wind Energy Corp.*, 2013 WL 6079548, at *5, No. 4:12–cv–03535 (S.D. Tex. Nov. 19, 2013) ("As the Supreme Court has noted, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment'") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment); *Main St. Bank v. Unisen, Inc.*, No. H-06-3776, 2008 WL 11483415, at *7 (S.D. Tex. Feb. 15, 2008) ("The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment"). The Donderos' self-serving statements attached to HCMFA's Response are insufficient to defeat Highland's *prima facie* case for summary judgment.

**3.** **Mr. Hurley's Declaration Does Not Create a Genuine Dispute of Material Fact that Highland Had a "Practice" of Forgiving Loans**

32. Mr. Dondero admitted less than a year ago that Highland ***never*** forgave ***any*** loan that it ***ever*** extended to him, Mr. Okada, or "any entity directly or indirectly owned or controlled" by Mr. Dondero. Ex. 24 (Responses to Requests for Admission 15-17), Appx. 524.

Nevertheless, in a feeble attempt to create a "genuine dispute of material fact," HCMFA and Mr. Dondero cling to the notion that Highland had a "practice" of forgiving loans.[17]

33.     In support of its contention that Highland had a "practice" of forgiving loans, HCMFA offers the declaration of Michiel Hurley, currently an employee of NexPoint Advisors, L.P., an entity owned and controlled by Mr. Dondero. *See* Def. Ex. 6 ¶ 2, Def. Appx. 383.[18]  In its Rule 26 Disclosures, HCMFA asserted that Mr. Hurley was a "former employee" who "may have knowledge regarding the Debtor's prior use of forgivable loans," (Ex. 5, Reply Appx. 40), but both assertions are contradicted by Mr. Hurley's declaration.

34.     Mr. Hurley declared that in 2013, Mr. Dondero forgave a $435,000 debt that was owed by Mr. Hurley's then-employer (Incline Capital LLC) to HCMFA.  Def. Ex. 6 ¶ 3-7, Def. Appx. 383.  Mr. Hurley's declaration is irrelevant because: (a) Mr. Hurley does *not* declare that he was ever employed by Highland; (b) the obligation that was apparently forgiven was due from a third-party (*i.e.*, Incline Capital LLC), *not* from a Highland employee or affiliate; (c) HCMFA apparently forgave the obligation, *not* Highland; (d) the obligation forgiven was for $435,000, *not* (tens of) millions of dollars; and (e) the obligation was forgiven nearly a decade ago.

35.     Based on Mr. Hurley's declaration, the Court can and should only conclude that in 2013, Mr. Dondero agreed to write off $435,000 in uncollectible debt owed to HCMFA by a third party – facts that do nothing to change a statement that "appears to have been false" (*i.e.*,

---

[17] The Court has already observed that this notion "appears to have been false." *See Report and Recommendation to District Court: Court Should Grant Plaintiff's Motion for Partial Summary Judgment Against All Five Note Maker Defendants (With Respect to All Sixteen Promissory Notes) in the Above-Referenced Consolidated Notes Actions* the "Report and Recommendation"), Adv. Pro. 21-03005, Docket No. 207 at 24, n. 23.  Consequently, Highland limits this Reply to HCMFA's newly-submitted evidence on this issue—namely, the Declaration of Michiel Hurley.

[18] Like Proof of Claim 188, neither HCMFA nor Mr. Dondero offer any explanation why Mr. Hurley's declaration was not offered in the Main Notes Litigation.

Highland had a "practice" of forgiving loans made to its employees and affiliates) to one that might plausibly be true.[19]

    **4.**    **HCMFA's Remaining Assertions Fail to Create Genuine Issues of Material Fact**

    **i.**    **HCMFA's Right to Pay Down Its Obligations under the Pre-2019 Notes Does Not Rebut Highland's _Prima Facie_ Case**

36.    In addition to the undisputed evidence proving Highland's _prima facie_ case for summary judgment, Highland cites ample undisputed evidence to dispel any notion that the Alleged Agreements actually existed, including, among other things, HCMFA's voluntary payment of roughly half of the principal amount due under the Pre-2019 Notes years after the Alleged Agreements were purportedly entered into. _See_ Motion ¶¶ 69-74 (citing Second Klos Dec. Exhibits D through J, showing that between September 2016 and December 2021, HCMFA paid a total of nearly $4 million in principal and interest on the Pre-2019 Notes).

37.    HCMFA attempts to dismiss the import of this undisputed fact by asserting that "the Notes each allowed for HCMFA to make prepayments," and that "the simple fact that HCMFA made some prepayments on the Notes bears no relevance on whether or not the [Alleged] Agreements existed." (Response ¶ 21). HCMFA misses the point.

38.    Contrary to HCMFA's suggestion, Highland does not contend that HCMFA was not permitted to make the Payments under the Pre-2019 Notes. Rather, Highland cites to the undisputed evidence proving that HCMFA made substantial payments on the Pre-2019 Notes to demonstrate that Mr. Dondero's conduct was inconsistent with the existence of the Alleged

---

[19] For the sake of completeness, Highland notes that it has never "suggest[ed] that Defendant's compensation expert Alan Johnson has not advised a company to forgive a loan for purposes of compensation." (Response ¶ 59). Rather, Highland relies on Mr. Johnson's candid admission that he has never advised a company to forgive an affiliate loan for the purposes of compensating an executive, (Motion ¶ 100) (citing Ex. 240, at 20:6-18, Appx. 5236), to show there is no evidence of any "industry practice" of forgiving loans made to corporate affiliates for compensation purposes.

Agreements. The fact that HCMFA was allowed to make the Payments under the Pre-2019 Notes, and HCMFA's alleged reason for doing so, does not support the essential elements of its Alleged Agreement Defense on which HCMFA bears the burden of proof. *See Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994).

> ## ii.   Highland's Demand on the Pre-2019 Notes Post-Petition Is Not "Circumstantial Evidence" of the Existence of the Alleged Agreement

39.    HCMFA contends that Highland's demand on the Pre-2019 Notes post-petition somehow serves as "circumstantial evidence support[ing] the existence of the [Alleged] Agreements," because Highland was "operating from 2014 to 2020 as if the Agreements were valid and in effect." (Response ¶ 67). This contention is absurd and is directly contradicted by documents signed by Mr. Dondero

40.    There is no dispute that Mr. Dondero controlled the lender (*i.e.*, Highland) and the Corporate Obligors prior to the Petition Date. While at the helm, Mr. Dondero authorized the payment of approximately ***$44 million*** in principal owed under Notes issued by him and his affiliates. *See Plaintiff's Reply Memorandum of Law in Further Support of Its Motion for Partial Summary Judgment Against the Alleged Agreement Defendants*, Adv. Pro. No. 21-03003, Docket No. 159 ¶ 30 (citing to evidence showing approximately $40 million in payments made to satisfy obligations under certain Notes, including some notes that were paid off in full); Brief ¶¶ 69-74 (citing to evidence showing that HCMFA paid Highland nearly $4 million in principal and interest due under the Pre-2019 Notes); *see also* Exs. 228-230, Appx. 5035-5048 (bank statements showing the payment by HCMFA to Highland under the Pre-2019 Notes).

41.    Moreover, the Pre-2019 Notes (like all of the other Notes) that Mr. Dondero signed expressly stated that "[n]o failure or delay on the part of [Highland] in exercising any right, power or privilege hereunder shall operate as a waiver thereof." Ex. 226 (2014 Note) ¶ 4, Appx.

5030; Ex. 227 (2016 Note) ¶ 4, Appx. 5033.  Further, Mr. Dondero *personally* agreed in writing, on behalf of Highland, "***not to demand payment*** on amounts owed by HCMF prior to May 31, 2021."  Ex. 217 (Acknowledgement from HCMLP dated April 15, 2019), Appx. 4990 (emphasis added) (the "Forbearance Agreement").

42.      Thus, the undisputed evidence proves that (a) HCMFA and Mr. Dondero operated as if the Alleged Agreements did not exist by (i) paying down approximately 50% of the principal amount of the Pre-2019 Notes, and (ii) entering into the Forbearance Agreement; and (b) Highland had the clear and unequivocal contractual right to demand payment on the Notes at all times.

**C.      Proof of Claim 188 Is Conclusive, Direct Evidence that HCMFA's Mistake Defense in the Main Notes Litigation Was Fabricated**

43.      The Court has already rejected HCMFA's "Mutual Mistake" defense asserted in connection with the HCMFA Notes.  *See* Report and Recommendation at 29-33, 40-42.  In doing so, the Court observed that the foundation of this defense is that "Mr. Dondero (as the person in charge of both Highland and HCMFA) ***did not intend*** for $7.4 million of funds that were transferred from the Debtor to HCMFA in May 2019 to be loans—rather the money was intended to be ***compensation to HCMA from Highland***" to account for errors Highland allegedly made.  *Id*. at 29-30 (emphasis in original).

44.      Proof of Claim 188 is conclusive, direct evidence that the "Mutual Mistake" defense was completely fabricated because it proves that Mr. Dondero knew that the $7.4 million Highland transferred to HCMFA in May 2019 was in the form of a loan and not as "compensation" for anything.

45.      Specifically, in Schedule A to Proof of Claim 188, ***Mr. Dondero admitted that HCMFA owed Highland $10,458,219.89 as of March 31, 2020***.  Def. Ex. 4D, Def. Appx.

367.  Mr. Dondero could not have made that admission without including the outstanding principal then due under **both** the HCMFA Notes issued in 2019 (which had an original face amount of $7.4M in the aggregate) **and** the Pre-2019 Notes (which were for an aggregate, original principal amount of $6.3 million, but for which only about $3 million remained outstanding when this action was commenced).  There cannot be a genuine dispute of material fact that $7.4 million + $3 million = $10.4 million, roughly the amount that Mr. Dondero included in Proof of Claim 188.  Basic arithmetic proves that there is no conceivable way to show that Proof of Claim 188 *excluded* the amounts owed by HCMFA to Highland under the HCMFA Notes issued in 2019.

46.     By voluntarily including the HCMFA Notes executed in 2019 in Proof of Claim 188 (as HCMFA points out, before any litigation was commenced), Mr. Dondero (a) baldly admitted that he knew those Notes existed and were valid and enforceable obligations of HCMFA, (b) tried to avoid collection on those Notes by asserting that they "***were issued by him for funds advanced in lieu of compensation,***" and (c) therefore completely contradicted ***all*** of HCMFA's affirmative defenses in the Main Notes litigation.

47.     There is no way to reconcile the "Mutual Mistake" defense where HCMFA and Mr. Dondero contend that the HCMFA Notes were issued by mistake, without authority, and contrary to Mr. Dondero's intent with Mr. Dondero's voluntary decision to include the HCMFA Notes in Proof of Claim 188 and assert as a defense to collection that they were issued "in lieu of compensation."

## <u>CONCLUSION</u>

WHEREFORE, Highland respectfully requests that the Court (i) grant the Motion; (ii) hold HCMFA liable for (a) breach of contract and (b) turnover for all amounts due under the Pre-2019 Notes, including the costs of collection and reasonable attorneys' fees in an amount to be determined; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: July 20, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com
       hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
       ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*