UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re: | § | |
| Highland Capital Management, L.P. | § | |
| | § | Case No.:    19−34054−sgj11 |
| Debtor(s) | § | Chapter No.:   11 |
| Highland Capital Management, L.P. | § | |
| Plaintiff(s) | § | Adversary No.:   21−03082−sgj |
| vs. | § | |
| Highland Capital Management Fund Advisors, L.P. | § | Civil Case No.:        3:21−cv−00881 |
| Defendant(s) | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| Plaintiff(s) | § | |
| vs. | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | |
| ADVISORS, L.P., | § | |
| Defendant(s) | § | |
| | § | |

# NOTICE OF TRANSMITTAL OF REPORT AND RECOMMENDATION

I am transmitting:

One copy of:  Report and Recommendation to District Court regarding Highland Capital
Management, L.P.'s motion for summary judgment against Highland Capital Management Fund
Advisors, L.P.  .


DATED:  10/12/22                    FOR THE COURT:
                                   Robert P. Colwell, Clerk of Court

                                   by: /s/Sheniqua Whitaker, Deputy Clerk



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 11, 2022**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Reorganized Debtor. | Case No. 19-34054-sgj11<br><br>Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>     Plaintiff.<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,<br><br>     Defendant. | Adversary No. 21-03082-sgj<br><br>Civ. Act. No. 3:22-cv-00789<br><br>**(Consolidated Under Civ. Act. No. 3:21-cv-00881)** |

**REPORT AND RECOMMENDATION TO DISTRICT COURT REGARDING HIGHLAND
CAPITAL MANAGEMENT, L.P.'S MOTION FOR SUMMARY JUDGMENT AGAINST
HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

**I.**    **Introduction**

This court submits this report and recommendation to the district court ("District Court")

with respect to *Highland Capital Management, L.P.'s Motion for Summary Judgment* ("MSJ")[DE

#45][1] filed on May 27, 2022, in the above-referenced adversary proceeding ("Action").  The

Action is yet another lawsuit regarding promissory notes issued by the defendant, Highland Capital

Management Fund Advisors, L.P. ("HCMFA" or "Defendant") in favor of Highland Capital

Management, L.P.  This Action emanates from the above-referenced bankruptcy case (the

"Bankruptcy Case") of Highland Capital Management, L.P. ("Highland," "Plaintiff," or

sometimes "Debtor" or "Reorganized Debtor").  For the reasons set forth herein, this court

recommends that the District Court grant the MSJ and enter judgment against HCMFA.

## II.    Background and Procedural History

### A.  Highland and its Bankruptcy Case

Highland, a Dallas-based investment firm that managed billion-dollar investment

portfolios and assets, was co-founded in 1993 by James D. Dondero ("Mr. Dondero") and Mark

Okada ("Okada").  Highland's equity interest holders included Hunter Mountain Investment Trust

(99.5%), The Dugaboy Investment Trust, Dondero's family trust ("Dugaboy") (0.1866%), Okada,

personally and through trusts (0.0627%), and Strand Advisors, Inc. ("Strand"), which was wholly

owned by Dondero (0.25%), the only general partner of Highland.  Highland also managed assets

and portfolios for other investment advisers and funds through two Dondero-controlled entities –

HCMFA and NexPoint Advisors, L.P., pursuant to a Shared Services Agreement and Payroll

Reimbursement Agreement.  HCMFA had no employees of its own that provided investment

advisory services to its clients or managed portfolios. Dondero was the President and Chief

Executive Officer of Highland and also served as a high-level executive and controlling portfolio

manager for HCMFA.

---

[1] Citations to docket entries in the instant adversary proceeding shall be notated as follows: [DE # __].  Citations to docket entries in the main bankruptcy case shall be notated as follows: [Bankr. DE # __].

On October 16, 2019 (the "<u>Petition Date</u>"), with Mr. Dondero in control[2] and acting as Highland's CEO, president, and portfolio manager, facing a myriad of massive, business litigation claims – many of which had finally become liquidated (or were about to become liquidated) after a decade or more of contentious litigation in multiple forums all over the world, Highland filed for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS).  Neither HCMFA nor any of the other Dondero-controlled Highland affiliates joined in the bankruptcy filing as joint debtors.

On October 29, 2019, an official committee of unsecured creditors (the "<u>Committee</u>") was appointed in the bankruptcy case.  Almost immediately from its appointment, the Committee's relationship with Highland, with Mr. Dondero in control, was contentious.  First, the Committee moved for a change of venue to Dallas, which was granted over Highland's objections.[3]  Second, the Committee (and later, the United States Trustee) expressed its then-desire for the appointment of a chapter 11 trustee due to its concerns over and distrust of Mr. Dondero, his numerous conflicts of interest, and his history of alleged mismanagement (and perhaps worse).

After many weeks under the threat of the appointment of a trustee, Highland and the Committee engaged in substantial and lengthy negotiations, resulting in a corporate governance settlement approved by this court on January 9, 2020.[4]  As a result of this settlement, Mr. Dondero relinquished control of Highland and resigned his positions as officer or director of Highland and its general partner, Strand,[5] and three independent directors ("<u>Independent Directors</u>") were

---

[2] Mark Okada resigned from his role with Highland prior to the Petition Date.

[3] The bankruptcy case was transferred to the Dallas Division of the Bankruptcy Court for the Northern District of Texas in December 2019.

[4] Bankr. DE #339.

[5] Mr. Dondero agreed to this settlement pursuant to a stipulation he executed and that was filed in connection with Highland's motion to approve the settlement. *See Stipulation in Support of Motion of the Debtor for Approval of*

chosen to lead Highland through its chapter 11 case.  James P. Seery, Jr. ("Mr. Seery"), one of the

Independent Directors, was later appointed as Highland's Chief Executive Officer, Chief

Restructuring Officer, and Foreign Representative.[6]  Mr. Dondero agreed to remain with Highland

as an unpaid portfolio manager following his resignation.

Throughout the summer of 2020, Mr. Dondero informally proposed several reorganization

plans, none of which were embraced by the Committee or the Independent Directors.  When Mr.

Dondero's plans failed to gain traction, he and some of the related entities under his control,

including HCMFA, engaged in a "scorched earth" policy in the Bankruptcy Case that has resulted

in substantial, costly, and time-consuming litigation for Highland.[7]

During this time, the Independent Directors and the Committee negotiated their own plan

of reorganization which culminated in the filing by Highland of its *Fifth Amended Plan of

Reorganization of Highland Capital Management, L.P. (as Modified)* (the "Plan") [Bankr. DE

#1808] on January 22, 2021.  In its *Disclosure Statement for the Fifth Amended Plan of

Reorganization of Highland Capital Management, L.P.* filed on November 24, 2020 ("Disclosure

Statement") [Bankr. DE 1473], Highland included the Debtor's Liquidation Analysis/Financial

Projections (the "Projections") in support of the Plan. Pl. Ex. 90, Appx. 1497-1505.  Among the

assumptions supporting the Projections was that "[a]ll demand notes are collected in the year

2021." *Id.* at 173 of 178, Appx. 1500 (Assumption C).  Thus, even though Highland had not yet

---

*Settlement With the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures
for Operations in Ordinary Course* [Bankr. DE #338].

[6] See the June 16, 2020 order approving the retention by Highland of Mr. Seery as Chief Executive Officer, Chief
Restructuring Officer, and Foreign Representative, *nunc pro tunc*, to March 15, 2020. [Bankr. DE #854].

[7] According to Mr. Seery's credible testimony during the hearing on confirmation of the chapter 11 plan ultimately
filed by Highland that had been negotiated between the Committee and the Independent Directors, Mr. Dondero had
threatened to "burn the place down" if his proposed plan was not accepted. *See* Transcript of Confirmation Hearing
dated February 3, 2021 at 105:10-20 [Bankr. DE #1894].

demanded payment under the notes that are the subject of this Action, HCMFA was notified on

November 24, 2020 that the Projections assumed that all demand notes that Highland was holding

would be collected the following year.   Yet, while HCMFA, specifically, joined with other

Dondero-controlled funds (the "Funds") in the filing of an objection to confirmation of the Plan

("Funds Objection") [Bankr. DE #1670], it did not object to the Projections or the assumptions

that the notes that are the subject of this Action would be collected in 2021, and it did not disclose

the existence of its alleged "oral agreement" defense to Highland's collection on the notes or

suggest that the Projections were unreasonable in any way. *See* Bankr. DE #1670.

Although there were other objections to confirmation of the Plan, Highland had made

certain amendments and modifications to the Plan that addressed those objections so that, by the

time of the confirmation hearing that was held in February of 2021, the only remaining objections

to confirmation of the Plan were those by Mr. Dondero and the Dondero-related entities (including

HCMFA).[8]   This court entered its order ("Confirmation Order")[Bankr. DE #1943] confirming the

Plan, over the objections by Mr. Dondero and his related entities (including HCMFA), on February

22, 2021.  The effective date of the Plan occurred on August 11, 2021, and Highland became the

Reorganized Debtor under the Plan. On August 19, 2022, on direct appeal from this bankruptcy

court by Mr. Dondero and his related entities, the Fifth Circuit entered its original order in which

it "affirm[ed] the confirmation order in large part" and "revers[ed] only insofar as the plan

exculpates certain non-debtors in violation of 11 U.S.C. § 524(e), strik[ing] those few parties from

the plan's exculpation, and affirm[ed] on all remaining grounds."[9]

---

[8] In addition to the Funds Objection, objections to confirmation were filed by Mr. Dondero [Bankr. DE #1661] and
entities controlled by him. [Bankr. DE ##1667, 1673, 1676, and 1677]

[9] *In re Highland Capital Management, L.P.*, No. 21-10449, 2021 WL 3571094, at *1 (5th Cir. Aug, 19, 2022). On
September 7, 2022, following a petition for limited panel rehearing filed by certain appellants on September 2, 2022
"for the limited purpose of clarifying and confirming one part of its August 19, 2022, opinion," the Fifth Circuit

### B.  This Action and the Other, Earlier-Filed Note Actions

The instant Action was initiated by Highland on November 9, 2021, by the filing of a complaint ("Complaint")[DE #1] in the bankruptcy court against HCMFA, seeking damages for HCMFA's breach of contract in failing to pay, upon demand, amounts due and owing under two demand promissory notes issued by HCMFA in favor of Highland and seeking turnover to the reorganized estate of amounts due and owing under those promissory notes equal to (i) the aggregate outstanding principal due under each note, (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) Highland's costs of collection (including all court costs and reasonable attorneys' fees and expenses as provided for under the Pre-2019 Notes) for HCMFA's breach of its obligations under each of the Pre-2019 Notes. Complaint, ¶¶ 31 and 39.

The instant Action is a companion case to five earlier-filed note actions – each filed on January 22, 2021 – against Mr. Dondero and certain Dondero-controlled corporate affiliates of Highland that were makers of one or more of sixteen promissory notes in favor of Highland with more than $60 million of unpaid principal and interest alleged to be due and owing at the time the suits were filed ("Note Maker Defendants").[10] *See* Adv. Proc. No. 21-3004-sgj ("First HCMFA Note Action"); Adv. Proc. No. 21-3003 ("Dondero Note Action"); Adv. Proc. No. 21-3005 ("NexPoint Note Action"); Adv. Proc. No. 21-3006 ("HCMS Note Action"); Adv. Proc. No. 21-

---

withdrew its original opinion and replaced it with its opinion reported at *In re Highland Capital Management, L.P.*, No. 21-10449, 2021 WL 4093167 (5th Cir. Sept. 7, 2022).  The substituted opinion differed from the original opinion only by the replacement of one sentence from section "IV(E)(2) – *Injunction and Gatekeeper Provisions*" of the original opinion: "The injunction and gatekeeper provisions are, on the other hand, perfectly lawful." was replaced with "We now turn to the Plan's injunction and gatekeeper provisions."  In all other respects, the Fifth Circuit panel's original ruling remained unchanged.

[10] The Note Maker Defendants and their notes are as follows: (i) Dondero, in his individual capacity, is maker on three demand notes; (ii) HCMFA is maker on two demand notes; (iii) NexPoint Advisors, L.P. ("NexPoint") is maker on one term note; (iv) Highland Capital Management Services, Inc ("HCMS") is maker on five notes (four demand notes and one term note); and (v) HCRE Partners, LLC, n/k/a NexPoint Real Estate Partners, LLC ("HCRE") is maker on five notes (four demand notes and one term note).

3007 ("HCRE Note Action") (collectively, the "Five Earlier-Filed Note Actions").[11]  Highland did

not bring this current Action against HCMFA as part of the Five Earlier-Filed Note Actions

because Highland had agreed, prior to the Petition Date, that it would not demand payment under

the notes in this Action before May 31, 2021.

### C.  The Alleged Oral Agreement Defense

As noted above, HCMFA is one of many entities affiliated with Highland and owned or

controlled by Mr. Dondero.   In Defendant's Original Answer ("Answer")[DE #5] filed on

December 10, 2021, HCMFA asserted as its primary affirmative defense[12] that oral agreements

("Alleged Oral Agreements") exist pursuant to which Highland agreed that it would not collect the

Pre-2019 Notes upon the fulfillment of certain "conditions subsequent" ("Alleged Oral Agreement

Defense"). Answer, ¶ 41.  HCMFA specifically represents in its Answer that:

> Plaintiff agreed that it would not collect the Notes upon fulfilment [sic] of
> conditions subsequent. Specifically, sometime between December of the year in
> which each Note was made and February of the following year, Nancy Dondero, as
> representative for a majority of the Class A shareholders of Plaintiff agreed that
> Plaintiff would forgive the Notes if certain portfolio companies were sold for
> greater than cost or on a basis outside of Mr. Dondero's control. The purpose of
> this agreement was to provide compensation to Mr. Dondero, who was otherwise
> underpaid compared to reasonable compensation levels in the industry, through the
> use of forgivable loans, a practice that was standard at [Highland] and in the
> industry.  This agreement setting forth the conditions subsequent to demands for
> payment on the Notes was an oral agreement; however, Defendant believes there
> may be testimony or email correspondence that discusses the existence of this
> agreement that may be uncovered through discovery in this Adversary Proceeding.

---

[11]  The defendants in these five Note Actions are:  Mr. Dondero, Nancy Dondero ("Ms. Dondero"), and Dugaboy
(Adv. No. 21-3003); HCMFA (Adv. No. 21-3004); NexPoint Advisors, L.P., Mr. Dondero, Ms. Dondero, and
Dugaboy (Adv. No. 21-3005); Highland Capital Management Services, Inc. ("HCMS"), Mr. Dondero, Ms. Dondero,
and Dugaboy (Adv. No. 21-3006); and HCRE Partners, LLC, n/k/a NexPoint Real Estate Partners, LLC ("HCRE"),
Mr. Dondero, Ms. Dondero, and Dugaboy (Adv. No. 21-3007).

[12]  HCMFA also pleaded the affirmative defenses of ambiguity, waiver, estoppel, failure of consideration, and
prepayment. Answer, ¶¶ 42 and 43.

Answer, ¶ 41 (emphasis added).

The Alleged Oral Agreement Defense appears to be a "cut-and-paste" of the same alleged "oral agreement" defense that was ultimately asserted in the Five Earlier-Filed Note Actions by four of the five Note Maker Defendants (all but HCMFA).  To be clear, the defense morphed as the Five Earlier-Filed Note Actions progressed.  Only Mr. Dondero originally asserted that defense (somewhat vaguely, in his original answer—merely stating that "it was previously agreed that Plaintiff would not collect the Notes"),[13] and thereafter all of the Note Maker Defendants (except HCMFA) amended their pleadings to adopt the same affirmative defense.  First, it was simply an alleged agreement by Highland not to collect on **Mr. Dondero's** Notes.  Then, there were amended answers by each of the other Note Maker Defendants (except HCMFA) that obliquely referred to alleged agreements by Highland not to collect on the Notes upon fulfillment of undisclosed conditions subsequent.  Finally, the Alleged Oral Agreement Defense in the Five Earlier-Filed Note Actions was set up as follows:

> Plaintiff's claims are barred . . . because prior to the demands for payment Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent. Specifically, sometime between December of the year in which each note was made and February of the following year, [] Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of James Dondero's control.  The purpose of this agreement was to provide compensation to James Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP [Highland] and in the industry.[14]  This agreement setting forth the conditions subsequent to demands for payment on the

---

[13] Pl. Ex. 80, ¶ 40.

[14] This statement in the amended answers appears to have been inaccurate according to Mr. Dondero's own executive compensation expert, Alan Johnson. During the deposition of Mr. Johnson, he testified that he reviewed Highland's audited financial statements for each year from 2008 through 2018 (Pl. Ex. 101 at 119:14-189:21, Appx. 1988-2005) and concluded that (a) Highland did not have a standard practice of forgiving loans and had not forgiven a loan to anyone in the world since 2009, (b) Highland had never forgiven a loan of more than $500,000, (c) Highland had not forgiven any loan to Mr. Dondero since at least 2008, and (d) since at least 2008, Highland had never forgiven in whole or in part any loan that it extended to any affiliate. *Id.* at 189:24-192:10, Appx. 2005-2006. *See also* Pl. Ex. 98 at 422:18-428:14, Appx. 1776-1778.

> Notes was an oral agreement; however, Defendant [ ] believes there may be testimony or email correspondence that discusses the existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

Pl. Ex. 31 ¶ 82, Appx. 655 ("Dondero's Answer"). *See also* Pl. Ex. 15 ¶ 83, Appx. 435-436 ("NexPoint's Answer"); Pl. Ex. 16 ¶ 97, Appx. 451-452 ("HCMS's Answer"); and Pl. Ex. 17 ¶ 99, Appx. 468 ("HCRE's Answer").  The factual allegations pleaded by HCMFA in its Answer with respect to its Alleged Oral Agreement Defense in the instant Action were pleaded with nearly identical language as were pleaded in the Five Earlier-Filed Note Actions by Dondero and the other Note Maker Defendants (except HCMFA).

### D.  Posture Before District Court

On January 18, 2022, the parties filed an agreed motion to withdraw the reference ("Agreed Motion to Withdraw Reference") in the instant Action.  The bankruptcy clerk transmitted the motion to withdraw the reference to the District Court on April 6, 2022, resulting in the assignment of Civ. Action No. 3:22-cv-0789 before Judge Kinkeade, and, on April 7, 2022, the notice of this court's Report and Recommendation to the District Court with respect to the Agreed Motion to Withdraw Reference, recommending that the District Court grant the Agreed Motion to Withdraw Reference, "***but only at such time as the Bankruptcy Court certifies to the District Court that the lawsuit is trial ready***" and further recommending that the District Court "***defer to the Bankruptcy Court the handling of all pretrial matters***."  Judge Kinkeade thereafter entered an order reassigning this Action to this District Court (Judge Starr) on April 8, 2022.

On April 20, 2022, this District Court, *sua sponte*, issued an Order Consolidating Cases, consolidating this Action into District Court Civ. Act. No. 3:21-cv-881, such that this Action and the Five Earlier-Filed Note Actions are now consolidated into one action (the "Consolidated Notes

Action").[15]   Perhaps due to oversight, the District Court had not accepted the Report and Recommendation on the Agreed Motion to Withdraw Reference in this Action prior to consolidating it into the Consolidated Notes Action, and there are no indications on the docket of the consolidated case, after consolidation, that the District Court has accepted or adopted it.[16]

### E. The Current Motion for Summary Judgment

Highland filed its MSJ and supporting brief on May 27, 2022, seeking the entry of a judgment on its two claims for relief (breach of contract and turnover pursuant to Bankruptcy Code §542) that are set forth in its Complaint. [DE ## 45 and 46].  In support of its MSJ, Highland contemporaneously filed (1) a declaration of David Klos [DE #47],[17] the CFO of Highland, and (2) a 5,257-page appendix [DE #48].[18]

On July 1, 2022, HCMFA filed its *Opposition to Plaintiff's Motion For Summary Judgment* and *Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment* ("Opposition")[DE ## 54 and 52] and a 441-page appendix in support of its Opposition. [DE #53].[19]  In its Opposition, HCMFA argues that is has submitted summary judgment evidence in

---

[15] The District Court entered its *Order Granting Defendant's Motion to Consolidate the Note Cases* [Consolidated Notes Action DE #24].  There also happen to be four appeal actions consolidated within the Consolidated Notes Action, regarding this bankruptcy court's orders denying motions to compel arbitration in four of the Note Actions.

[16] A motion to withdraw the reference was also filed in each of the Five Earlier-Filed Note Actions, and notices of transmittal of this court's Report and Recommendation thereon were transmitted to the District Court on July 7, 2021, with respect to Adv. No. 21-3003, on July 9, 2021, with respect to Adv. Nos. 21-3004 and 21-3005, and on July 15, 2021, with respect to Adv. No. 21-3006 and 21-3007, resulting in the assignment of civil action numbers in the District Court of 3:21-cv-1010, 3:21-cv-0881, 3:21-cv-0880, 3:21-cv-1378, and 3:21-cv-1379, respectively.  Prior to ordering the consolidation of the Five Earlier-Filed Note Actions, the District Court accepted this court's recommendations that the District Court withdraw the reference when this bankruptcy court certifies the actions as trial-ready, in all but one of the Five Earlier-Filed Note Actions: Adv. Proceeding No. 21-3003/Civ. Action No. 3:21-cv-1010 in which Dondero, N. Dondero, and Dugaboy Trust are defendants.  The parties recently notified the District Court that the pending Report and Recommendation in Civ. Action No. 3:21-cv-1010 remains outstanding.

[17] When citing to this declaration in its briefing, Highland refers to it as the "Second Klos Dec." to distinguish it from the declaration of David Klos filed in each of the Five Earlier-Filed Note Actions.  The court will do the same.

[18] Citations to Highland's MSJ appendix are notated as follows: Pl. Ex. #, Appx. #.

[19] Citations to HCMFA's Opposition appendix are notated as follows: Def. Ex. #, Appx. #.

support of its Alleged Oral Agreement Defense that creates a genuine dispute of a material fact that would require a denial of Highland's MSJ.[20]

Notably, in the middle of this current MSJ litigation, on July 19, 2022, this court issued, in the Five Earlier-Filed Note Actions, a *Report and Recommendation to District Court:  Court Should Grant Plaintiff's Motion for Partial Summary Judgment Against All Five Note Maker Defendants (With Respect to all Sixteen Promissory Notes) in the Above-Referenced Consolidated Note Actions* ("MPSJ R&R"), which was docketed in each of the five earlier-filed underlying adversary proceedings.[21]  On July 20, 2022, the clerk of the Bankruptcy Court transmitted a copy of the MPSJ R&R to the District Court for filing in the Consolidated Notes Action.[22]  In the MPSJ R&R, this court recommended that the District Court grant Highland's motions for partial summary judgment against each of the Note Maker Defendants, holding them liable for (a) breach of contract and (b) turnover for all amounts due under the promissory notes pursuant to Bankruptcy Code Section 542, including costs of collection and reasonable attorneys' fees in an amount to be determined.  In so recommending, this court found that Highland had made its *prima facie* case for summary judgment for the Note Maker Defendants' breach of the promissory notes and for turnover and that the Note Maker Defendants failed to rebut Highland's *prima facie* case because they failed to show that there was a genuine dispute over a material fact with respect to their alleged defenses to the enforcement of the Notes, including, specifically, as to their Alleged Oral Agreement Defense.[23]  This court found (in the MPSJ R&R) that, having considered the record as

---

[20] HCMFA does not present any summary judgment evidence or argument with respect to the other affirmative defenses asserted by it in its Answer.

[21] Adv. Proceeding No. 21-3003 (DE#191); Adv. Proceeding No. 21-3004 (DE#163); Adv. Proceeding No. 21-3005 (DE #207); Adv. Proceeding No. 21-3006 (DE #213); Adv. Proceeding No. 21-3007 (DE #208).

[22] Civ. Act. No. 3:21-cv-0881 (DE #50).

[23] Although HCMFA was a Note Maker Defendant in one of the Five Earlier-Filed Note Actions, Highland brought the instant Note Action against HCMFA based on two demand promissory notes (defined, together, below as the "Pre-

a whole, ***including*** the declarations of Mr. Dondero and his sister, Ms. Dondero, submitted in support of the Alleged Oral Agreement Defense, that (i) there was a "complete lack of evidence" supporting the Alleged Oral Agreement Defense other than the self-serving, conclusory, and uncorroborated Dondero declarations; and (ii) that the Note Maker Defendants' Alleged Oral Agreement Defense blatantly contradicted the summary judgment record; accordingly, "***no reasonable jury could find that there was truly an "oral agreement" to forgive these loans to the Alleged [Oral] Agreement Defendants***."  MPSJ R&R at 25.

The next day, on July 20, 2022, Highland filed its *Reply Memorandum of Law in Support of Motion for Summary Judgment* ("Reply")[DE #62] and a 49-page appendix in support of its Reply [DE #63][24], in which it argues that HCMFA has not submitted summary judgment evidence showing the existence of a genuine dispute of a material fact in this Action with respect to the Alleged Oral Agreement Defense or any other defenses, and, thus, Highland is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On July 27, 2022, the court heard oral argument on the MSJ.

For the reasons set forth below, this court agrees with Highland that it is entitled to summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and recommends that the District Court grant the MSJ and enter judgment in favor of Highland and against HCMFA as to the Pre-2019 Notes.

---

2019 Notes") different and distinct from the HCMFA Notes sued upon in the earlier Note Action against HCMFA. To be clear, HCMFA was the only one of the Note Maker Defendants in the Five Earlier-Filed Note Actions that did not raise the same Alleged Oral Agreement Defense as a defense to Highland's suit on the two demand notes issued by HCMFA in 2019 as it has raised in the instant Action.

[24] Citations to Highland's Reply appendix are notated as follows: Pl. Rep. Ex. #, Rep. Appx. #.

III.   **Undisputed Material Facts**

   A.   *The Pre-2019 Notes*

On February 26, 2014, in exchange for a contemporaneous loan in the amount of $4,000,000 from Highland to HCMFA,[25] Mr. Dondero, on behalf of HCMFA, as maker, executed a demand promissory note in favor of Highland, as payee, in the original principal amount of $4,000,000 (the "2014 Note"). Second Klos Dec.[26] ¶ 4, Exhibit A; *see also* Pl. Ex. 226, Appx. 5029-5031; Pl. Ex. 219, Appx. 5005-5007; Pl. Ex. 235, Appx. 5117-5120; Pl. Ex. 215 at 15:20-17:11, 17:18-22, Appx. 4915-4917, 39:7-14, Appx. 4939; Pl. Ex. 234 ¶¶ 14-15, Appx. 5111; Pl. Ex. 220 (Responses to RFAs 1-2), Appx. 5017.

On February 26, 2016, in exchange for a contemporaneous loan in the amount of $2,300,000 from Highland to HCMFA,[27] Mr. Dondero, on behalf of HCMFA, as maker, executed a demand promissory note in favor of Highland, as payee, in the original principal amount of $2,300,000 (the "2016 Note" and together with the 2014 Note, the "Pre-2019 Notes").[28] Second Klos Dec. ¶ 5, Exhibit B; *see also* Pl. Ex. 227, Appx. 5032-5034; Pl. Ex. 219, Appx. 5005-5007; Pl. Ex. 236, Appx. 5121-5127; Pl. Ex. 215 at 21:6-22:8, 22:9-23:11, Appx. 4921-4923; Pl. Ex. 234 ¶¶ 16-17, Appx. 5111; Pl. Ex. 220 (Responses to RFAs 3-4), Appx. 5017.

---

[25] It is undisputed that this note was tendered to Highland in exchange for a contemporaneous loan from Highland to HCMFA in the amount of $4,000,000. Def. Ex. 4 at p.2, ¶ 5 (Declaration of James Dondero dated June 30, 2022); Appx. 304.

[26] Citations to "Second Klos Dec." refer to the *Declaration of David Klos in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment* filed by Highland in support of the MSJ in this adversary proceeding and are intended to distinguish it from the *Declaration of David Klos in Support of Highland Capital Management, L.P.'s Motion for Partial Summary Judgment in Notes Action* ("Klos Dec.") submitted in the Main Notes Action.

[27] It is undisputed that this note was tendered to Highland in exchange for a contemporaneous loan from Highland to HCMFA in the amount of $2,300,000. Def. Ex. 4 at p.2, ¶ 6; Appx. 304.

[28] The court uses the defined term "Pre-2019 Notes" (which was also used by Highland in its briefing) to refer to both of the two demand promissory notes issued by HCMFA that are the subject of this Action, together, as distinguished from the two promissory notes issued by HCMFA in 2019 that were the subject of the First HCMFA Note Action that was one of the Five Earlier-Filed Note Actions.

Except for the date, the amount, and the interest rate, the Pre-2019 Notes are identical and include the following relevant provisions:

2. <u>Payment of Principal and Interest</u>.   The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3. <u>Prepayment Allowed; Renegotiation Discretionary</u>.   Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

5. <u>Acceleration Upon Default</u>.   Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

6. <u>Waiver</u>.   Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

7. <u>Attorneys' Fees</u>.   If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

Pl. Ex. 226, Appx. 5029-5031; Pl. Ex. 227, Appx. 5032-5034.

### B. The April 2019 Acknowledgement Letter

In a document titled "Acknowledgement from HCMLP" ("<u>Acknowledgement Letter</u>") dated April 15, 2019 (which was prior to the Petition Date), with reference being made to "certain outstanding amounts loaned from HIGHLAND CAPITAL MANAGEMENT, L.P. ("HCMLP") to HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. ("HCMF") for funding of

HCMF's ongoing operations, which are payable on demand and remained outstanding on December 31, 2018 and as of the date hereof," Highland acknowledged that "HCMF expects that it may be unable to repay such amounts should they become due, for the period commencing today and continuing through May 31, 2021" and agreed "to not demand payment on amounts owed by HCMF prior to May 31, 2021." Pl. Ex. 217, Appx. 4989-4990; *see also* Second Klos Dec. ¶ 16; Pl. Ex. 215 49:8-50:7, Appx. 4949-4950, 55:15-22, Appx. 4955.   Mr. Dondero executed the Acknowledgement Letter on behalf of both parties – for Highland, on behalf of "Strand Advisors, Inc., its general partner" and for HCMFA, on behalf of "Strand XVI, Inc., its general partner." Pl. Ex. 217, Appx. 4989-4990. Highland received no consideration in exchange for agreeing not to demand payment from HCMFA until May 31, 2021. Pl. Ex. 215 at 50:8-22, Appx. 4950.   No reference was made in the Acknowledgement Letter to the Alleged Oral Agreements. Pl. Ex. 217, Appx. 4989-4990.

### C.  Demand for Payment by Highland and Non-payment by HCMFA

Highland did not demand payment of the outstanding obligations due under the Pre-2019 Notes until June 2, 2021. Second Klos Dec. ¶ 17; Pl. Ex. 218, Appx. 4991-5004 (the "Demand Letter").  In the Demand Letter, Highland made demand on HCMFA for payment, by June 4, 2021, of all principal and accrued interest due under the Pre-2019 Notes in the aggregate amount of $3,143,181.93, which represented all accrued and unpaid interest and principal through and including June 4, 2021.

Between May 2019 and December 2021, HCMFA made five separate payments against the 2014 Note, in the aggregate amount of approximately $2.4 million. Second Klos Dec., Exs. D-H.

Between September 2016 and December 2021, HCMFA made three separate payments against the 2016 Note in the aggregate amount of approximately $1.5 million. Second Klos Dec., Exs. H-J.

After demand was made, other than the payments made by HCMFA in December 2021, HCMFA made no further payments against its obligations due under the Pre-2019 Notes and otherwise failed to satisfy its obligations under the Pre-2019 Notes. Pl. Ex. 215 at 58:4-6, Appx. 4958.

As of May 27, 2022, after giving effect to the payments made in December 2021 as well as the payments made against the Pre-2019 Notes prior to the Petition Date, the unpaid principal and accrued interest due under the 2014 Note is $2,151,130.84, and the unpaid principal and accrued interest due under the 2016 Note is $1,001,238.06. Second Klos. Dec. ¶ 18.

### D. Undisputed Corroborating Evidence Regarding Validity and Enforceability of the Pre-2019 Notes

#### 1. The Pre-2019 Notes Were Both Disclosed on Highland's Financial Statements Audited by the Outside Accounting Firm PwC

As set forth below, the undisputed evidence establishes that (a) both of the Pre-2019 Notes were provided to the accounting firm PwC, Highland's long-time outside auditors, and were described in Highland's audited financial statements; (b) both of the Pre-2019 Notes were carried as assets on Highland's balance sheet and were valued in amounts equal to the accrued and unpaid principal and interest without any offset or reservation whatsoever; and (c) neither Highland nor Mr. Dondero disclosed to PwC the existence of an Alleged Oral Agreement that would provide HCMFA with a defense to the enforcement or collection of the Pre-2019 Notes, despite having an affirmative obligation to do so under generally accepted accounting principles ("GAAP").

Specifically, copies of the Pre-2019 Notes were and are maintained in Highland's books and records in the ordinary course of business and were provided to PwC in connection with its annual audits. Second Klos Dec. ¶¶ 3-5; Pl. Ex. 215 at 25:22-26:13, Appx. 4925-4926.

PwC's audit process was extensive and took months to complete. Pl. Ex. 94 at 9:24-12:14, Appx. 1554-1555.  As part of the PwC audit process, Highland drafted the financial statements and accompanying notes, and management provided the information that PwC needed to conduct its audits.  Pl. Ex 94 at 14:8-15:14, Appx. 1556; *see also* Pl. Ex. 94 at 49:11-50:22, Appx. 1564-1565.

All of Highland's employees who worked on the audit reported to Mr. Waterhouse (Highland's former CFO), and Mr. Waterhouse was ultimately responsible for making sure the audit was accurate before it was finalized.  Pl. Ex. 105 at 87:25-89:10, Appx. 2071.

In connection with its audit, PwC required Highland to deliver "management representation letters" that included specific representations upon which PwC relied.  Pl. Ex. 94 at 16:18-17:20, Appx. 1556, 23:4-9, Appx. 1558; s*ee also* Pl. Ex. 105 at 96:24-98:6, Appx. 2073-2074 (according to Mr. Waterhouse, management representation letters are "required in an audit to help verify completeness."). For at least the fiscal years 2014, 2016, 2017 and 2018, Mr. Dondero and Mr. Waterhouse signed Highland's management representation letters; their representations were applicable through the date of the audit's completion so that all "material" subsequent events could be included and disclosed.  Pl. Ex. 33, Appx. 729-740; Pl. Ex. 86, Appx. 1420-1431; Pl. Ex. 231, Appx. 5049-5062; Pl. Ex. 232, Appx. 5063-5073; Pl. Ex. 94 at 17:21-25, Appx. 1556, 19:2-22:6, Appx. 1557-1558; *see also* Pl. Ex. 105 at 92:4-8, Appx. 2072, 94:20-95:12, Appx. 2073.

Mr. Dondero and Mr. Waterhouse made the following representations to PwC, on May 19, 2016, in connection with PwC's audit of Highland's financial statements for the period ending December 31, 2016:

- The Affiliated Party Notes[29] represented bona fide claims against the makers, and all Affiliated Party Notes were current as of May 19, 2017. Pl. Ex. 232 ¶ 16, Appx. 5067.

- There were no "material" transactions or agreements that were not recorded in the financial statements. Pl. Ex. 232 ¶ 5, Appx. 5065.

- All relationships and transactions with, and amounts receivable or payable to or from, related parties were properly reported and disclosed in the consolidated financial statements. Pl. Ex. 232 ¶ 13(b), Appx. 5066.

- All related party relationships and transactions known to Mr. Dondero and Mr. Waterhouse were disclosed. Pl. Ex. 232 ¶ 12, Appx. 5066.

- All subsequent events were disclosed. Pl. Ex. 232 (signature page), Appx. 5071.

Under GAAP, Highland was required to disclose to PwC: (a) all "material" related party transactions; and (b) any circumstances that would call into question the collectability of any notes. Pl. Ex. 94 at 34:17-35:2, Appx. 1561, 51:17-52:5, Appx. 1565, 70:20-71:3, Appx. 1570. For purposes of the 2016 audit, the "materiality" threshold was $2 million.  Pl. Ex. 232 at 1, Appx. 5064.[30]

Neither Mr. Dondero nor anyone at Highland ever disclosed to PwC the existence or terms of the Alleged Oral Agreements. Pl. Ex. 220 (Responses to RFAs 7-8), Appx. 5018.

---

[29] "Affiliated Party Notes" is the term used by PwC to refer to any and all notes payable to Highland and made by officers, employees, or affiliates of Highland.  *See generally* Pl. Ex. 33, Appx. 729-740; Pl. Ex. 94, Appx. 1551-1585.

[30] For purposes of the 2018 audit, the "materiality" threshold was $1.7 million. Pl. Ex. 33 at 1, Appx. 730; Pl. Ex. 94 at 22:11-23:3, Appx. 1558.  *See also* Pl. Ex. 105 at 91:14-93:6, Appx. 2072.

For purposes of PwC's audit, "affiliate notes" were considered receivables of Highland and were carried on Highland's balance sheet under "Notes and other amounts due from affiliates." Pl. Ex. 34 at p. 2, Appx. 745; Pl. Ex. 72 at p. 2, Appx. 1291; Pl. Ex. 94 at 23:10-22, Appx. 1558, 31:11-33:20, Appx. 1560; Pl. Ex. 105 at 106:20-109:12, Appx. 2076.

For the 2016 fiscal year, Highland valued "Notes and other amounts due from affiliates" in the aggregate amount of approximately $172.6 million, which then constituted more than 12% of Highland's total assets. Pl. Ex. 71 at 2, Appx. 1240.   For the 2017 fiscal year, Highland valued "Notes and other amounts due from affiliates" in the aggregate amount of approximately $163.4 million, which then constituted more than 10% of Highland's total assets; and, for the 2018 fiscal year, Highland valued "Notes and other amounts due from affiliates" in the aggregate amount of approximately $173.4 million, which then constituted more than 15% of Highland's total assets. Pl. Ex. 72 at 2, Appx. 1291; Pl. Ex. 34 at 2, Appx. 745; Pl. Ex. 94 at 33:21-34:2, Appx. 1560-1561, 51:2-16, Appx. 1565.

The notes to the financial statements described the "Affiliate Notes" that were carried on Highland's balance sheet; management calculated the amounts due and owing to Highland from each Affiliate.  Pl. Ex. 72 at 30-31, Appx.1319-1320; Pl. Ex. 34 at 28-29, Appx. 771-772; Pl. Ex. 94 at 34:17-36:25, Appx. 1561, 51:17-53:12, Appx. 1565; Pl. Ex. 105 at 110:22-112:21, Appx. 2077.

The "fair value" of the Affiliate Notes was "equal to the principal and interest due under the notes." Pl. Ex. 72 at 30-31, Appx. 1319-1320; Pl. Ex. 34 at p. 28-29, Appx. 771-772; Pl. Ex. 94 at 37:11-39:12, Appx. 1561-1562; 53:19-25, Appx. 1565.  No discounts were given to the Affiliate Notes, and PwC concluded that the obligors under each of the Affiliate Notes had the

ability to pay all amounts outstanding.  Pl. Ex. 92, Appx. 1514-1530; Pl. Ex. 93, Appx. 1531-1550;

Pl. Ex. 94 at 41:2-45:6, Appx. 1562-1563, 55:17-60:22, Appx. 1566-1567, 68:20-25, Appx. 1569.

Note 17 to Highland's 2015 audited financial statements disclosed the issuance of the 2016

Note as a "subsequent event" (*i.e.*, an event occurring after the December 31, 2015 end of

Highland's fiscal year). Pl. Ex. 70 at 46, Appx. 1229; *see also*, Pl. Ex. 94 at 54:9-55:7, Appx. 1566.

### 2.  *In October 2020, HCMFA Informed Its Retail Board of Its Obligations Under the Pre-2019 Notes*

HCMFA has contracts to manage certain funds (the "Fund Agreements"), which are among

the most important contracts HCMFA has and are largely the reason for HCMFA's existence. Pl.

Ex. 192 at 66:3-66:23, Appx. 3031. The funds themselves, in turn, are overseen to an extent by a

board known as the "Retail Board," which must determine, on an annual basis, whether to renew

the Fund Agreements with HCMFA, a process referred to as a "15(c) Review."  As part of the

15(c) Review, the Retail Board requests information from HCMFA.  Pl. Ex. 99 at 129:17-130:3,

Appx. 1844-1845, Pl. Ex. 105 at 32:17-33:6, Appx. 2057, 168:9-12, Appx. 2091, 169:9-170:16,

Appx. 2091-2092.  Mr. Waterhouse, the Treasurer of HCMFA (in addition to being Highland's

CFO) and Mr. Norris, HCMFA's Executive Vice President, participated in the annual 15(c)

Review process with the Retail Board.  Pl. Ex. 192 at 67:7-68:19, Appx. 3031; Pl. Ex. 105 at

168:13-169:8, Appx. 2091.

In October 2020, the Retail Board, as part of the annual 15(c) Review, asked HCMFA to

provide information regarding whether there were "any outstanding amounts currently payable or

due in the future (e.g., notes) to [Highland] by HCMFA or . . . any other affiliate that provides

services to the Funds."  Pl. Ex. 36 at 3, Appx. 793.

The Pre-2019 Notes were recorded as liabilities in HCMFA's audited financial statements from the fiscal years 2014-2018. Pl. Exs. 221, 222, 224, and 225 at 2.[31]

HCMFA does not contend that its audited financial statements for the fiscal years 2014-2018 were inaccurate in any way with respect to the Pre-2019 Notes. *See* Pl. Ex. 215 at 28:5-9, Appx. 4928.

On October 23, 2020, HCMFA provided its formal responses to the questions posed by the Retail Board as to the issue of outstanding amounts currently payable or due by HCMFA to Highland or its affiliates:

> As of June 30, 2020, . . . $12,286,000 remains outstanding to HCMLP [Highland] from HCMFA.  . . .  The earliest the Note between HCMLP [Highland] and HCMFA could come due is in May 2021.  All amounts owed by . . . HCMFA pursuant to the shared services arrangement with HCMLP [Highland] have been paid as of the date of this letter.  The Advisor notes that both entities have the full faith and support of James Dondero.

Pl. Ex. 59 at p. 2, Appx. 885.  The $12,286,000 amount included the amounts due under the Pre-2019 Notes. Pl. Ex. 215 at 26:14-17, Appx. 4926; 27:3-28:4, Appx. 4927-4928; Pl. Ex. 192 at 54:6-9, 54:22-55:8, 55:23-56:3, Appx. 3028-3029; Pl. Ex. 194 at 117:16-122:15, Appx. 3156-3157; Pl. Ex. 195 at 120:23-122:13, Appx. 3211-3212.

> 3.  *Before and During the Bankruptcy Case, the Pre-2019 Notes Were Reflected on Highland's Books, Records, and In Its Bankruptcy Filings as Assets Owed to Highland, without Discounts*

In addition to its PwC-audited financial statements, Highland's contemporaneous books and records—before and after the Petition Date—recorded the Pre-2019 Notes as valid debts due and owing by HCMFA to Highland, without discount.

---

[31] HCMFA's audited financial statements were filed under seal and therefore do not have "Appx." numbers.

After the Petition Date, but while Mr. Dondero was still in control, Highland, as the debtor-in-possession, filed its *Schedules of Assets and Liabilities* [Bankr. DE #247] (the "Debtor's Schedules"). The Debtor's Schedules included the Pre-2019 Notes among Highland's assets. Pl. Ex. 40, Appx. 812-815 (excerpts of the Debtor's Schedules showing that Highland (a) disclosed as assets of the estate "Notes Receivable" in the approximate amount of $150 million (Item 71), and (b) provided a description of the Pre-2019 Notes (Exhibit D)).

In every one of the Debtor's Monthly Operating Reports filed during the Highland Bankruptcy Case (including those filed while Mr. Dondero was still in control of the Debtor), Highland included as assets of the estate amounts "Due from affiliates" that included the Pre-2019 Notes. *See, e.g.*, Pl. Ex. 41, Appx. 816-825; Pl. Ex. 42, Appx. 826-835; Pl. Ex. 88, Appx. 1475-1486; Pl. Ex. 89, Appx. 1487-1496. *See also* Bankr. DE # 405 (October 2019); Bankr. DE # 289 (November 2019); Bankr. DE # 418 (December 2019); Bankr. DE # 497 (January 2020); Bankr. DE # 558 (February 2020); Bankr. DE # 634 (March 2020); Bankr. DE # 686 (April 2020); Bankr. DE # 800 (May 2020), as amended in Bankr. DE # 905; Bankr. DE # 913 (June 2020); Bankr. DE # 1014 (July 2020); Bankr. DE # 1115 (August 2020); Bankr. DE # 1329 (September 2020); Bankr. DE # 1493 (October 2020); Bankr. DE # 1710 (November 2020); Bankr. DE # 1949 (December 2020); and Bankr. DE # 2030 (January 2021).

Highland's accounting group had a regular practice of creating, maintaining, and updating, on a monthly basis, "loan summaries" in the ordinary course of business (the "Loan Summaries"). Second Klos Dec. ¶ 6. The Loan Summaries identified amounts owed to Highland under affiliate notes and were created by updating underlying schedules for activity and reconciling with Highland's general ledger. *Id.*; Pl. Ex. 199, Appx. 3245-3246. The Loan Summaries identified each obligor under certain notes by reference to the "GL" number used in the general ledger. *See*

Pl. Ex. 199, Appx. 3246 (HCMS ("GL 14530"), HCMFA ("GL 14531"), NexPoint ("GL 14532"), HCRE ("GL 14533"), and Mr. Dondero ("GL 14565")). *See* Second Klos Dec. ¶ 6.  The 2014 Note is shown on the Loan Summary marked as Plaintiff's Exhibit 199 as "HCMFA #2," and the 2016 Note is shown on the Loan Summary as "HCMFA #5." Pl. Ex. 199, Appx. At 3246. Second Klos Dec. ¶ 8.

### E. Undisputed Facts That Point to the Non-Existence of the Alleged Oral Agreements With Respect to the Pre-2019 Notes

No document was ever uncovered or produced in discovery to establish, memorialize, reflect, or recognize the existence or terms of the Alleged Oral Agreements.  Neither Dugaboy nor Ms. Dondero (who were allegedly the ones who entered into the Alleged Oral Agreements, indirectly, on behalf of Highland) is aware of anything in writing that identifies the existence or terms of the Alleged Oral Agreements. Pl. Ex. 210 at 25:23-27:18, Appx. 4861-4863.  HCMFA has admitted that the terms or existence of the Alleged Oral Agreements were never reduced to writing. Pl. Ex. 220 (Responses to RFAs 13-14), Appx. 5019.

Other than Mr. Dondero and Ms. Dondero, no one is alleged to have participated in the discussions that led to the Alleged Oral Agreement regarding the 2016 Note (the "2016 Alleged Oral Agreement"). Pl. Ex. 210 at 27:19-21, Appx. 4863.   Ms. Dondero and Dugaboy have admitted that, prior to January 1, 2021, neither ever disclosed the existence or terms of the 2016 Alleged Oral Agreement to *anyone* at Highland or HCMFA (including Highland's auditors), other than Mr. Dondero. Pl. Ex. 210 at 25:6-22, Appx. 4861, 27:22-28:4, Appx. 4863-4864.  HCMFA has admitted that, prior to February 1, 2021, it never disclosed the existence or terms of any of the Alleged Oral Agreements to PwC, Mr. Okada, the Bankruptcy Court, or any creditor of Highland,

including in connection with any objection to the Plan or Disclosure Statement.[32] Ex. 220 (Responses to RFAs 7-12, 15-21), Appx. 5018.

Between May 2019 and December 2021, HCMFA made five separate pre-payments in the aggregate amount of $2,410,477.45 against amounts due under the 2014 Note, and between September 2016 and December 2021, HCMFA made three (3) separate pre-payments in the aggregate amount of $1,487,336.87 against amounts due under the 2016 Note. Second Klos Dec. ¶¶ 10-14; Pl. Ex. 219, Appx. 5005-5007.

In addition to the Pre-2019 Notes, and the Notes at issue in the First HCMFA Action, HCMFA issued at least three other notes to Highland in exchange for loans – one before issuing the 2014 Note and two after issuing the 2014 Note but before issuing the 2016 Note (collectively, the "Paid-Off Notes") – as to which HCMFA, prior to the Petition Date, paid all principal and interest due in full. Second Klos Dec. ¶ 9.

In November 2019, Mr. Dondero (while still in control of Highland) caused the sale of a substantial interest in the company Metro Goldwyn Mayer, Inc. ("MGM") for $123.25 million, a portion of which was for the Debtor's interest in a fund (and which sale price was well above its original cost), but he (whether on behalf of himself, personally, or on behalf of HCMFA or any of the Note Maker Defendants) and Highland failed to declare all of the promissory notes forgiven and remained silent about the alleged "oral agreements" altogether.  *See* Pl. Ex. 201 ¶¶ 29-30,

---

[32] As noted above, HCMFA filed an objection to confirmation of Highland's chapter 11 Plan (which Plan was based on the assumption that the Pre-2019 Notes would be collected in 2021), yet it failed to make any mention of the existence of the Alleged Oral Agreements or any claim HCMFA had against Highland relating to the potential forgiveness of the debt arising under the Pre-2019 Notes.  HCMFA similarly failed to mention the existence of the Alleged Oral Agreements or any claim HCMFA had against Highland relating to the potential forgiveness of the debt arising under the Pre-2019 Notes in its two proofs of claim filed in the Bankruptcy Case on April 8, 2020. [Bankr. Claim ## 95 and 119].

Appx. 3270-3271; Pl. Ex. 202 ¶ 14, Appx. 4135; Pl. Ex. 203 ¶ 1, Appx. 4143; Pl. Ex. 204 at p. 5
n.5, Appx. 4156.

The use of "forgiveable loans" to a corporate affiliate as compensation to individual
officers or employees of Highland was not a practice that was standard at Highland or in the
industry.  Mr. Alan Johnson, Mr. Dondero's own executive compensation expert, reviewed
Highland's audited financial statements for each year from 2008 through 2018, Pl. Ex. 101 at
119:14-189:21, and concluded that (a) Highland has not forgiven a loan to anyone in the world
since 2009, (b) the largest loan Highland has forgiven since 2008 was $500,000, (c) Highland has
not forgiven any loan to Mr. Dondero since at least 2008, and (d) at least since 2008, ***Highland
has never forgiven in whole or in part any loan that it extended to any affiliate***.[33] Pl. Ex. 101 at
189:24-192-10, Appx. 2005-2006.

### F. Undisputed Facts Relating to HCMFA's Defenses of Waiver, Estoppel, Failure of Consideration, Prepayment, and Ambiguity

Mr. Dondero, HCMFA's Rule 30(b)(6) witness, could not identify any relevant facts to
support HCMFA's affirmative defenses of waiver (*see* Pl. Ex. 215 at 44:18-45:14, Appx. 4944-
4945), estoppel (*id.* at 45:20-46:10, Appx. 4945-4946), lack of consideration (*id.* at 47:7-25, Appx.
4947), or prepayment (*id.* at 48:2-10, Appx. 4948). Mr. Dondero also could not identify a material
provision of either of the Pre-2019 Notes that he believed was ambiguous. *Id.* at 20:9-23, Appx.
4920, 24:19-25:11, Appx. 4924-4925.  Indeed, there is undisputed evidence contradicting these

---

[33] In his Expert Report dated May 28, 2021, Mr. Johnson stated that loans provided **to Mr. Dondero** – **not loans
provided to corporate affiliates** – should be considered "potential deferred compensation as they were similar to loans
given to **other professionals** at the firm" Def. Ex. G to Def. Ex. 3 (Declaration of Michael P. Aigen dated January 20,
2022) at 16, Appx. 252 (emphasis added).  Mr. Johnson further notes in his report that, between 2013 and 2019, (a)
"[s]everal loans were made [by Highland] **to Mr. Dondero**," Def. Ex. 3 at 8, Appx. 244, (b) "*[Mr. Dondero]* received
loans in lieu of additional current compensation," Def. Ex. 3 at 3, Appx. 239, and (c) "[c]onsistent with company
practice, the loans were considered a form of deferred compensation that could be realized over time as the loans were
forgiven and the income **recognized by the individuals**." *Id.* (emphasis added).

purported defenses. *See, e.g.*, Pl. Ex. 217, Appx. 4989-4990 (Acknowledgement Letter where HCMFA admits that loans from Highland were outstanding and payable on demand); Pl. Ex. 220, Appx. 5017 (responses to RFAs 1 through 4 in which HCMFA admits to tendering the Pre-2019 Notes in exchange for loans from Highland equal to the principal amount of the Pre-2019 Notes).

## IV.    **Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Although summary judgment used to be viewed in the Fifth Circuit as a "'disfavored procedural short cut,' applicable to a limited class of cases," that view was upended, beginning with the Supreme Court's trilogy of summary judgment opinions issued in 1986, that "made it clear that our earlier approach to Rule 56 was wrong-headed because it was simply inconsistent with the plain language of the rule." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc) (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 66 (5th Cir.1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).   Rather than being a disfavored rule, the Supreme Court instructs that Rule 56 "*mandates* the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis added in

---

[34] The Court in *Celotex* opined, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R. Civ. P. 1)(other citations omitted).

original)). The Supreme Court explained that "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552.

Under Rule 56, a movant meets its initial burden of showing there is no genuine issue for trial by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir.1990); *see also In re Magna Cum Latte, Inc.,* Bankr. No. 07-31814, 2007 WL 3231633, at *3 (Bankr. S.D. Tex. Oct. 30, 2007) ("A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact.").  The movant "need not 'negate' the elements of the nonmovant's case." *Little*, 37 F.3d at 1075.

"If the moving party carries [its] initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of genuine issue of material fact." *Latimer*, 919 F.2d at 303; *see also Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994) ("To withstand a properly supported motion for summary judgment, the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial.").  "[T]he nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little*, 37 F.3d at 1075; *see also Hall v. Branch Banking*, No. H-13-328, 2014 WL 12539728, at *1 (S.D. Tex. Apr. 30, 2014) ("[T]he nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment.").  The court must view the facts "in the light most favorable to the nonmoving party" but "only if there is a 'genuine' dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007);

*see also Hacienda Records, L.P. v. Ramos*, 718 F.App'x 223, 234 (5th Cir. 2018)("The court considers the record as a whole, and draws all justifiable inferences in favor of the non-movant[, b]ut the non-movant bears 'the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial.'")(internal citations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson*, 477 U.S. at 247-248, 106 S.Ct. at 2510). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citing *Matsushita*, 475 U.S. at 586-587 (footnote omitted)). "In considering the summary-judgment record, and although the court may not weigh the evidence or make credibility determinations, it must, of course, decide what evidence may be considered." *Hacienda Records*, 718 F.App'x at 234.

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations omitted); *see also Kennedy v. Allstate Texas Lloyd's*, 2020 WL 8300511, at *1 (N.D. Tex. Dec. 14, 2020)("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial.")(*citing Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). Nor may a party "present evidence contradicting admissions made in his pleadings for the purpose of defeating a summary judgment," *Jonibach Management Trust v.*

*Wartburg Enterprises, Inc.*, 136 F.Supp. 792, 821 n.29 (S.D. Tex. 2015),[35] declaration evidence

that contradicts or impeaches, without a valid explanation, sworn deposition testimony, *Hacienda*

*Records, L.P. v. Ramos*, 718 F. App'x at 234 ("[A party] is not entitled to use a declaration 'that

impeaches, without explanation, sworn testimony' to defeat summary judgment.")(quoting *S.W.S.*

*Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)),[36] or declaration evidence that is

internally inconsistent and self-contradictory. *Cooper Cameron Corp. v. United States Dep't of*

*Labor*, 280 F.3d 539, 550 (5th Cir. 2002)("[A party] cannot meet its [summary judgment] burden

with an internally inconsistent, self-contradictory affidavit."); *see also Freeman v. City of Fort*

*Worth, Texas*, 2011 WL 2669111, at *3 (N.D. Tex. July 7, 2001)(where the district court concluded

that the non-movant's internally inconsistent and self-contradictory affidavit was "insufficient to

create a dispute of fact as to any material issues.")(citations omitted).

The Supreme Court admonishes that "[w]hen opposing parties tell two different stories,

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

---

[35] The court in *Jonibach* cites *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107-108 (1987), where plaintiffs,
in attempting to defeat a summary judgment motion by showing that there was a genuine issue of material fact,
submitted an affidavit that clearly conflicted with earlier statements the plaintiffs had made in their complaints. The
Fifth Circuit stated that "the factual dispute d[id] not render summary judgment inappropriate," because "[i]rrespective
of which document contains the more accurate account, the [plaintiffs] are bound by the admissions in their pleadings,
and thus no factual issue can be evoked by comparing their pleadings with [the] affidavit." *Id.* The court noted that
the prohibition against the submission of affidavits or declarations that contradict the party's pleadings for the purposes
of defeating summary judgment is based on the proposition that "Factual assertions in pleadings . . . are considered to
be judicial admissions conclusively binding on the party who made them," *Jonibach*, 136 F.Supp. at 821 n.29 (quoting
*White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)), while also noting that "[a]lthough facts in
pleadings are not by themselves evidence, a judicial admission has the effect of withdrawing it from contention." *Id.*
(citing *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001)).

[36] This rule is known as the "sham-affidavit" rule, which provides a "party may not manufacture a dispute of fact
merely to defeat a motion for summary judgment," *Hacienda Records*, 718 F. App'x at 235 (quoting *Doe ex rel. Doe*
*v. Dallas Indep.. Sch. Dist.*, 220 F3d 380, 386 (5th Cir. 2000)). The Fifth Circuit, in *Hacienda Records*, noted that "so
long as inconsistent statements were 'made by [the party] the deponent and [the party] the affiant,' the court may
refuse to consider his declaration as competent evidence." *Id.*; *see also Free v. Wal-Mart Louisiana, L.L.C.*, 815
F.App'x 765, 767 (5th Cir. 2020)(where the Fifth Circuit concluded that the district court had not abused its discretion
and "reasonably applied the sham affidavit doctrine" when it struck an affidavit that, without explanation, conflicted
with prior deposition testimony).

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380, 127 S.Ct. at 1776.   "Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." *Armstrong v. City of Dallas*, 997 F.2d 62, 66 n.12 (5th Cir.1993) ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury."); *see also*, *Anderson*, 477 U.S. at 251-252, 106 S.Ct. at 2512 (where the Court stated that the inquiry under a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."),   If the nomoving party fails to meet its burden of submitting competent summary judgment evidence that there is a genuine dispute as to a material fact, "the motion for summary judgment ***must*** be granted." *Little*, 37 F.3d at 1076 (emphasis added)("A plaintiff should not be required to wait indefinitely for a trial when the defendant has a meritless defense that can be resolved on motion for summary judgment.").

## V.    Legal Conclusions

### A.  Highland Has Met Its Burden of Showing Its Prima Facie Case That It Is Entitled to Summary Judgment

It has often been said that "suits on promissory notes provide 'fit grist for the summary judgment mill.'" *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (quoting *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir. 1988)); *see also Looney v. Irvine Sensors Corp.*, Civ. Action No. 3:09-CV-0840-G, 2010 WL 532431, at *2 (N.D. Tex. Feb. 15, 2010) ("Suits on promissory notes are typically well-suited for resolution via summary judgment.").  To prevail on summary judgment for breach of a promissory note under Texas law,

the movant need not prove all essential elements of a breach of contract, but only must establish (i) the note in question, (ii) that the non-movant signed the note, (iii) that the movant was the legal owner and holder thereof, and (iv) that a certain balance was due and owing on the note. *See Resolution*, 41 F.3d at 1023; *Looney*, 2010 WL 532431, at *2-3; *Magna Cum Latte*, 2007 WL 3231633, at *15.

With regard to the Pre-2019 Notes, the evidence is that they are valid, signed by Mr. Dondero on behalf of HCMFA in Highland's favor, and, as of May 27, 2022, the total outstanding principal and accrued but unpaid interest due under the 2014 Note was $2,151,130.84, and the unpaid principal and accrued interest due under the 2016 Note was $1,001,238.06. Second Klos. Dec. ¶ 18.  HCMFA breached its obligations under the Pre-2019 Notes by failing to pay Highland all amounts due and owing upon Highland's demand.  Highland has been damaged by HCMFA's breaches in the amounts set forth above, plus the interest that has accrued under the Pre-2019 Notes since those calculations, plus collection costs and attorneys' fees.  Thus, Highland has made its prima facie showing that it's entitled to summary judgment on HCMFA's breach of each of the Pre-2019 Notes. *See Resolution*, 41 F.3d at 1023 (holding that where affidavit "describes the date of execution, maker, payee, principal amount, balance due, amount of accrued interest owed, and the date of default for each of the two promissory notes," movant "presented a prima facie case of default on the notes."); *Looney*, 2010 WL 532431, at *2-3 (where movant "has attached a copy of the note … to a sworn affidavit in which he states that the photocopy is a true and correct copy of the note, that he is the owner and holder of the note, and that there is a balance due on the note … [movant] has made a prima facie case that he is entitled to summary judgment on the note.").

### B.  HCMFA Has Failed to Rebut Highland's Prima Facie Case

Highland having met its initial burden, the burden shifts to HCMFA to demonstrate the existence of a genuine dispute of a material fact that would defeat the MSJ.  *Latimer*, 919 F.2d at 303; *see also Nat'l Ass'n of Gov't Emps*, 40 F.3d at 712.  HCMFA has failed its burden here.

With regard to HCMFA's Alleged Oral Agreement Defense,[37] HCMFA has failed to point to a genuine dispute of material fact such that a reasonable jury would find that the Alleged Oral Agreements existed and that the Alleged Oral Agreements, if they existed, would be valid and enforceable agreements under state law.  The only summary judgment evidence submitted by HCMFA in support of its Alleged Oral Agreement Defense is the conclusory, self-serving, unsubstantiated  declarations of Mr. Dondero and his sister, Ms. Dondero, regarding the existence of the Alleged Oral Agreements. *See* Declaration of James Dondero, dated June 30, 2022, Def. Ex. 4, Appx. 301-369; Declaration of Nancy Dondero, dated June 30, 2022, Def. Ex. 5, Appx. 370-380.[38]  The court will not consider the Dondero declarations, which contradict HCMFA's pleaded facts and prior deposition testimony, and which are internally inconsistent and self-contradictory, as providing competent summary judgment evidence regarding the existence of the Alleged Oral Agreements.  Therefore, HCMFA has failed to present any genuine dispute of material fact that could defeat the MSJ.

---

[37] HCMFA has failed to present any evidence whatsoever of a genuine dispute of a material fact with respect to its other affirmative defenses. *See infra* note 20.

[38] As noted above, HCMFA can point to no document or writing that was ever uncovered or produced in discovery to establish, memorialize, or reflect the existence or terms of the Alleged Oral Agreements.

1. *The Dondero Declarations Contradict the Pleaded Facts in HCMFA's Answer*

The Dondero declarations submitted by HCMFA in opposition to the MSJ contradict the pleaded facts in HCMFA's assertion of the Alleged Oral Agreement Defense in its Answer with respect to the 2014 Note,[39] and, therefore will not be considered as competent summary judgment evidence to defeat Highland's claims on the 2014 Note. *See Jonibach Management Trust v. Wartburg Enterprises, Inc.*, 136 F.Supp. at 821 n.29 ("A party cannot present evidence contradicting admissions made in his pleadings for the purpose of defeating a summary judgment). A review of the stated Alleged Oral Agreement Defense reveals that HCMFA claims that Highland is barred from collecting on the Pre-2019 Notes because "sometime between December of the year in which each Note was made and February of the following year" Highland, through the person of Ms. Dondero, as a representative for a majority of the Class A shareholders of Highland, entered into an oral agreement (without naming the other party to the oral agreement), whereby Highland "agreed that [it] would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of Mr. Dondero's control" and that "[t]he purpose of this agreement was to provide compensation to Mr. Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans" -- loans to whom, again, HCMFA does not say. Answer, ¶ 41. What is clear is that HCMFA alleges that Ms. Dondero is the person who entered into the Alleged Oral Agreement ten to twelve months ***after*** each of the Pre-2019 Notes were issued in exchange for hard-cash loans from Highland to HCMFA, and that the

---

[39] As noted, the Alleged Oral Agreement Defense is pleaded with nearly identical language to the same Alleged Oral Agreement Defense asserted in four of the Five Earlier-Filed Note Actions that significantly that morphed over time after the commencement of the Five Earlier-Filed Note Actions.

Alleged Oral Agreement was entered into for the purpose of providing compensation ***to Mr.
Dondero***. Answer, ¶¶ 1-2, 41.

Despite (a) having litigated the circumstances concerning the Alleged Oral Agreement
Defense for over a year in the Consolidated Notes Action, and (b) reviewing and authorizing
HCMFA's Answer before it was filed,[40] it was only under questioning that Mr. Dondero and Ms.
Dondero realized that she could not have entered into the 2014 Alleged Oral Agreement because
she had not been appointed the trustee of Dugaboy until October of 2015.[41]  As a result, Mr.
Dondero was forced to change HCMFA's assertions in its Answer regarding the formation of the
2014 Alleged Oral Agreement to assert that it was ***he who entered into the 2014 Alleged Oral
Agreement with himself***.  Dondero Declaration, ¶ 13 ("I – acting on behalf of Dugaboy for
[Highland] and also on behalf of HCMFA – entered into an agreement (the "2014 Agreement")
that [Highland] would not collect on the 2014 Note if certain events occurred.").[42]  HCMFA has
not sought leave to amend its Answer in this Action, even though Mr. Dondero's declaration
clearly contradicts the factual contentions in the Answer as to who allegedly entered into the 2014
Alleged Oral Agreement.

Mr. Dondero's declaration also contradicts the allegation in the Answer as to ***when*** the
agreement was made to potentially forgive the indebtedness under the Pre-2019 Notes as a means
of deferred compensation to Mr. Dondero.  In the Answer, HCMFA states that the Alleged Oral
Agreements were entered into "sometime between December of the year in which each Note was
made and February of the following year." Answer, ¶41.  Both of the Pre-2019 Notes were issued

---

[40] *See* Pl. Ex. 215 at 30:7-31:2, Appx. 4930-4931.

[41] *See* Pl. Ex. 210 at 16:6-18:24, Appx. 4852-4854; *see also*, Pl. Ex. 237, Appx. 5128-5133.

[42] *See* Pl. Ex. 215 at 31:3-25, 32:19-36:6, Appx. 4931-4936.

in February of the year in which they were made, which means HCMFA alleges that the Alleged

Oral Agreements were entered into ten to twelve months *after* each of the Pre-2019 Notes were

issued in exchange for loans from Highland.  Yet, Mr. Dondero, in his declaration,[43] points to, and

incorporates as exhibits to his declaration, two documents that state that the agreements to

potentially forgive the loans as compensation to Mr. Dondero were actually made

*contemporaneously* with the making of the loans and the issuance of the notes:[44]

- A letter from his counsel dated February 1, 2021 to opposing counsel (the "Letter") that Mr. Dondero alleges discloses "that one of the defenses in this litigation was that the Notes were subject to forgiveness as potential compensation," Dondero Declaration ¶18 (attaching a copy of the letter as Exhibit C to the declaration).  The letter references the Debtor's "recently commenced suit to collect on certain notes payable to it executed by Mr. Dondero and certain of his affiliates," and states, "As you are aware, in addition to other defenses, Mr. Dondero views the notes in question as *having been given in exchange for loans by Highland made in lieu of compensation to Mr. Dondero*." Def. Ex. 4 at Ex. C., Appx. 361 (emphasis added).

- Proof of Claim #188 filed by Mr. Dondero, individually, on May 26, 2020 ("Dondero POC") that Mr. Dondero avers "provided in 'Schedule A' [to the proof of claim] notice to the world that the Notes at issue in this and the other adversary proceedings concerning notes were potentially forgivable as compensation to me." Def. Ex. 4 at ¶19, Appx. 309.  Exhibit A to the proof of claim included a table labeled "Schedule A (as of March 31, 2020)" that listed various notes issued by Mr. Dondero and various affiliates (including HCMFA) to Highland, and stated that the claim was "a contingent claim asserted by James Dondero and is subject to any effort to collect on [the notes listed on Schedule]" and that "[i]n the event that collection efforts are made to collect the Notes, James Dondero asserts that *the Notes were issued by him for funds advanced in lieu of compensation*." Def. Ex. 4 at Ex. D, Appx. 367.

---

[43] Def. Ex. 4 at ¶¶ 18-19, Appx. 309.

[44] If the Alleged Oral Agreements were made contemporaneously with the issuance of the notes, HCMFA would be barred from submitting evidence of such agreements by the parole evidence rule. *See Faulkner v. Mikron Indus., Inc. (In re Heritage Organization, L.L.C.)*, 354 B.R. 407, 430 (N.D. Tex. Bankr. 2006)(where the court stated that "extrinsic evidence of a condition subsequent is not admissible to vary the terms of a valid and binding written agreement.")(citing, *Litton v. Hanley*, 823 S.W.2d 428, 430-31 (Tex.App.—Houston [1st Dist.] 1992), for its holding that "evidence of an alleged oral agreement that the note would only be due if the business subsequently turned a profit was inadmissible.")

Because these allegations in Mr. Dondero's declaration clearly contradict the allegations pleaded in the Answer – as to when the agreement to forgive the loans upon the occurrence of a condition subsequent -- the court will not consider his declaration in connection with its analysis of the MSJ.[45]

> 2. *Mr. Dondero's Declaration Contradicts His Prior Sworn Testimony Regarding the Alleged Oral Agreements*

Mr. Dondero's declaration evidence (the Letter and the Dondero POC) that state that the Pre-2019 Notes were issued "in lieu of compensation" contradicts the prior deposition testimony of Mr. Dondero that (a) the Pre-2019 Notes were issued in exchange for loans made to HCMFA, and (b) the Alleged Oral Agreements were entered into ten to twelve months after each of the Pre-2019 Notes were issued. *See, e.g.*, Pl. Ex. 215 at 15:20-17:11, 17:18-22, Appx. 4915-4917, 39:7-14, Appx. 4939; Pl. Ex. 215 at 21:6-22:8, 22:9-23:11, Appx. 4921-4923; Pl. Ex. 215 at 29:15-37:8, Appx. 4929-4937.

In addition, Mr. Dondero's declaration – wherein Mr. Dondero recollects that the Alleged Oral Agreements were entered into specifically with respect to the 2014 Note and the 2016 Note – is inconsistent with and contradicts his November 4, 2022 and May 5, 2022 deposition testimony as to whether the Pre-2019 Notes were subject to an Alleged Oral Agreement.  First, during his November 4, 2021 deposition, Mr. Dondero could not describe any material terms of the alleged "oral agreements" as relating to the notes that were the subject of the Consolidated Notes Action. Without a list prepared by counsel, Mr. Dondero could not identify any of the Notes subject to the

---

[45] Similarly, Ms. Dondero's declaration that, in late 2016 to early 2017, she caused Dugaboy Trust to cause Highland to enter into the 2016 Alleged Oral Agreement and that she was only told by her brother, Mr. Dondero, that "about the substantially the [sic] same agreement Dugaboy made with respect to the 2014 Note," contradicts the pleaded facts in the Answer that it was *she* who entered into both the 2014 and 2016 Alleged Oral Agreements, and, thus, will not be considered competent summary judgment evidence of a genuine issue of material fact regarding the existence of the 2014 Alleged Oral Agreement.

alleged "oral agreement" nor could he recall (i) the number of Notes subject to each alleged "oral agreement," (ii) the maker of each Note subject to each alleged "oral agreement," (iii) the date of each Note subject to each alleged "oral agreement," or (iv) the principal amount of any Note subject to the alleged "oral agreement." Pl. Ex. 99 at 13:4-28:22, Appx. 1815-1819.  When asked about the existence or terms of any promissory note, other than the promissory notes that were the subject of the Consolidated Notes Action, that was the subject of an agreement with the Dugaboy trustee, Mr. Dondero could not identify a single promissory note or any terms of such a promissory note, such as the maker, the date, or the principal amount. Pl. Ex. 99 at 28:6-31:14, Appx. 1818-1820, 33:22-34-12, Appx. 1820-1821.  When asked if he "was aware of any other Promissory Notes [other than the Promissory Notes that are the subject of the Consolidated Notes Action] that are the subject of any agreement that the Dugaboy trustee ever entered into as a representative of the majority of Class A shareholders," Mr. Dondero answered, "Not as I sit here today." Pl. Ex. 99 at 39:4-14, Appx. 1822.  During his deposition taken on May 5, 2022 (less than two months prior to his July 1, 2022 declaration), Mr. Dondero could not recall the details of the 2016 Alleged Oral Agreement, including whether the 2016 Alleged Oral Agreement was with respect to both the 2014 Note and the 2016 Note or whether he had entered into an oral agreement with himself in 2014, when he was the Dugaboy trustee, with respect to the 2014 Note. Pl. Ex. 215 at 33:12-34:8.

Yet, just five days after the November deposition, after Mr. Dondero reviewed HCMFA's Answer before authorizing HCMFA's attorneys to file it, Pl. Ex. 215 at 30:7-31:2, Appx. 4930-4931, HCMFA was able to allege that both of the Pre-2019 Notes were specifically the subject of a separate Alleged Oral Agreement, and, less than two months after the May deposition, Mr. Dondero filed his declaration in which he suddenly recollects the specifics of oral agreements that

occurred:  (a) with respect to the 2014 Note, at the end of 2014, beginning of 2015 (apparently between himself, as the Dugaboy trustee, acting on behalf of Highland, and himself, as a representative of HCMFA) and, (2) with respect to the 2016 Note, at the end of 2016, beginning of 2017 (between Ms. Dondero, as the Dugaboy trustee, acting on behalf of Highland, and himself, as a representative of HCMFA).  This goes to the heart of the issue of whether the alleged conversations occurred in 2014/2015 and 2016/2017 or whether they happened at all because the *only* evidence submitted by HCMFA regarding the existence of these conversations are the Dondero declarations.  Because Mr. Dondero's declaration contradicts Mr. Dondero's deposition testimony, the court will not consider his declaration as competent summary judgment evidence on the issue of the existence of the Alleged Oral Agreements. *See Hacienda Records*, 718 F. App'x at 234 ("[A party] is not entitled to use a declaration 'that impeaches, without explanation, sworn testimony' to defeat summary judgment.")(quoting *S.W.S. Erectors, Inc.*, 72 F.3d at 495).

> 3. *The Dondero Declarations Are Internally Inconsistent and Self-Contradictory*

Furthermore, both of the Dondero declarations are internally inconsistent and self-contradictory and, therefore, will not be considered as competent summary judgment evidence present by HCMFA that could defeat the MSJ. *See Cooper Cameron Corp.*, 280 F.3d at 550 ("[A party] cannot meet its [summary judgment] burden with an internally inconsistent, self-contradictory affidavit.").  Mr. Dondero's declaration is self-contradictory in several ways, beginning with the statement that the Alleged Oral Agreements were entered into ten to twelve months after each of the Pre-2019 Notes were issued in exchange for loans, which contradicts the statement in the declaration (incorporating the Letter and Dondero POC) that the Pre-2019 Notes were issued "in lieu of compensation." *Compare* Def. Ex. 4 at ¶¶ 5-6, 13-15, Appx. 304-305, 307-

308 *with id.*, Exhibits C and D, Appx. 361, 363-367.  Mr. Dondero's declaration is also self-contradictory on the issue of exactly who were the parties to the Alleged Oral Agreements – were the Alleged Oral Agreements entered into between Highland and HCMFA or between Highland and Mr. Dondero, in his individual capacity?  Mr. Dondero, essentially, alleges that the 2014 Alleged Oral Agreement was entered into between "[himself] – acting on behalf of Dugaboy for [Highland] and also on behalf of HCMFA." Def. Ex. 4 at ¶ 13, Appx. 307.  However, in describing the Alleged Oral Agreement, he alleges that the purpose of the agreement was for ***Highland*** to provide ***him, personally,*** with deferred compensation as a means of ***Highland*** incentivizing ***Mr. Dondero, personally***, to give his "utmost focus and attention [to the monetization of the portfolio companies and to "serve[ ] as an incentive for ***me*** to work particularly hard to make sure these assets were successful," providing ***Highland*** "the additional benefit . . . of not increasing ***my*** base salary" but instead making "***my compensation*** conditional on performance."   Def. Ex. 4 at ¶ 13, Appx. 307 (emphasis added).  Mr. Dondero further alleges that the Alleged Oral Agreement was in line with Highland's "common practice to compensate ***executives*** with forgivable loans" as supported by his professed knowledge that "several other ***individuals*** may have received loans by [Highland] that were forgiven." Def. Ex. 4 at ¶ 11, Appx. 306 (emphasis added).  If the conversations that led to the Alleged Oral Agreements happened at all, the conversations are alleged to have been between Highland and Mr. Dondero, personally, regarding his personal deferred compensation (which contradicts Mr. Dondero's allegation that he was acting on behalf of, and purporting to bind, HCMFA) when these alleged conversations occurred.

Ms. Dondero's declaration is similarly internally inconsistent and self-contradictory with respect to the issue of who the parties were to the Alleged Oral Agreements with respect to the Pre-2019 Notes.  Ms. Dondero alleges in her declaration that she, as the family trustee of Dugaboy,

"caused Dugaboy . . . to cause [Highland] to enter into [the Alleged Oral Agreement] with HCMFA." Def. Ex. 5 at ¶ 7, Appx. 373.  But, like Mr. Dondero, she goes on to describe the circumstances surrounding the Alleged Oral Agreement," stating that she "knew and believed that *Jim Dondero would be the person* most involved in, and responsible for, the marketing and eventual sale of [the portfolio companies] *by Highland*" and that "[t]he 2016 Agreement had two primary purposes . . . .  First, the 2016 Agreement would provide additional incentive and motivation *to Jim Dondero* to attempt to maximize the value and return to [*Highland*] . . . and to remain in [*Highland's*] employment," and "[s]econd, the 2016 Agreement would allow [*Highland*] to make part of *Jim's* compensation contingent on performance, instead of paying *him* additional cash in 2016 or 2017 . . . ." *Id.* at ¶ 9, Appx. 373-374.  Finally, Ms. Dondero alleges, "At the time I caused [Highland] to enter into the 2016 Agreement, I believed I had the authority, as the Dugaboy Family Trustee, to cause Dugaboy to cause [Highland] to enter into the 2016 Agreement" and that "I also intended, believed, and expected that the 2016 Agreement *would be a binding and enforceable agreement between Highland and Jim Dondero*" – not between Highland and HCMFA. *Id.* at ¶ 12, Appx. 374.  The court will not consider the internally inconsistent and self-contradictory declaration of Mr. Dondero as competent summary judgment evidence.

The Dondero declarations are the only summary judgment evidence presented by HCMFA in support of its Opposition to the MSJ.  Thus, the court's finding that neither constitutes competent summary judgment evidence results in the conclusion that HCMFA has failed to meet its burden of rebutting Highland's *prima facie* case for summary judgment.  Highland's MSJ should be granted.

4. *Even If the Court Were to Consider the Dondero Declarations, HCMFA Has Failed to Point to a Genuine Dispute With Respect to a Material Fact That Would Defeat Highland's MSJ*

Even if the court were to consider the Dondero declarations, when reviewed with the summary judgment record as a whole, HCMFA has not raised a genuine issue of material fact such that a reasonable jury might find the existence of the Alleged Oral Agreements. We have here a case of "opposing parties tell[ing] two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," such that "[the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380, 127 S.Ct. at 1776. HCMFA's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it" and so the court should adhere to the Supreme Court's admonition and not accept HCMFA's allegations of a fact for purposes of ruling on the MSJ.

**a) Could the Alleged Oral Agreements, If Made, Even Be Valid?**

HCMFA's opposition to the MSJ depends on HCMFA being able to submit competent summary judgment evidence that the Alleged Oral Agreements not only existed but are valid, binding contracts between Highland and HCMFA under Texas law. HCMFA cannot meet that burden here.

First, Ms. Dondero did not have authority to bind Highland to the Alleged Oral Agreements. HCMFA alleges that the Alleged Oral Agreements were between: (a) Mr. Dondero, acting on behalf of HCMFA; and (b) *his sister, Ms. Dondero*, of Vero Beach, Florida, acting on behalf of Highland. Notably, Ms. Dondero was never an officer, manager, or held any role with Highland. but, HCMFA's position is that she nevertheless had authority to act for Highland, in connection with agreeing not to collect on the Pre-2019 Notes, because she was/is the Family

Trustee of the Dugaboy Investment Trust,[46] which was the holder of a majority of the ***limited partnership interests of Highland***.  This, according to HCMFA, meant Dugaboy had authority, under the terms of Highland's limited partnership agreement (the "LPA"), to exert control over Highland and do things like release millions of dollars' worth of debt owed to Highland by a corporate affiliate, in order to provide compensation to Mr. Dondero as CEO, president, and controlling portfolio manager of Highland.  Specifically, HCMFA makes the bizarre argument that the holder of a majority of the limited partnership interests of Highland "was entitled to approve the compensation of [Highland's] General Partner and any 'Affiliate' of the General Partner" and, thus, Ms. Dondero could cause Highland to release obligations on the Pre-2019 Notes as a form of "compensation" to Mr. Dondero. Def. Ex. 4 at ¶ 8, Appx. 305 (citing Pl. Ex. 30, Appx. 612, 622, 639, the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.).  HCMFA, through Mr. Dondero's declaration, points specifically to Section 3.10(a) as the section of the LPA that gave Dugaboy the authority to bind Highland to the Alleged Oral Agreements. *Id.*, Appx. 622.  But Section 3.10(a) provides no such authority.

Section 3.10(a) is entitled "**Compensation and Reimbursement of the General Partner**."  Note that the General Partner of Highland was Strand.  Section 3.10(a) provides, in relevant part, "The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements unless approved by a Majority Interest." *Id.*  The argument of HCMFA is that, since Mr. Dondero was an affiliate of Strand, this provision was relevant to his compensation.  Even if one assumes that this provision pertains to compensation of Mr. Dondero, as CEO and president

---

[46] Mr. Dondero was himself the trustee of Dugaboy until his resignation as such on August 26, 2015. Def. Ex. 4 at ¶ 9, Appx. 305-306.

of Highland (as opposed to compensation while acting for Strand), the provision says nothing about the Majority Interest having the ***authority*** to act on behalf of Highland to enter into agreements with third parties regarding compensation. *Id.*  Approval and authority are different concepts.  In fact, Ms. Dondero testified that she had no meaningful knowledge, experience, or understanding of (a) Highland or its business, (b) the financial industry, (c) executive compensation matters, or (d) Mr. Dondero's compensation or whether he was "underpaid compared to reasonable compensation levels in the industry."  Pl. Ex. 100 at 42:22-43:8, Appx. 1885, 48:7-61:9, Appx. 1886-1889; 211:8-216:21, Appx. 1927-1928.

The further undisputed evidence shows that Ms. Dondero never reviewed Highland's financial statements (including balance sheets, bank statements, profit and loss statements, and statements of operations), never asked to see them, and knew nothing about Highland's financial condition prior to the Petition Date. *Id.* at 61:25-63:13, Appx. 1889-1890.  Ms. Dondero did not know of Highland's "portfolio companies" except for those her brother identified, and as to those, she did not know the nature of Highland's interests in the portfolio companies, the price Highland paid to acquire those interests, or the value of the portfolio companies. *Id.* at 63:18-80-22, Appx. 1890-1894; 208:24-210:13, Appx. 1926-1927.  Ms. Dondero never saw a promissory note signed by Mr. Dondero, nor any other officer or employee of Highland, nor any "affiliate" of Highland. *Id.* at 83:14-84:8, Appx. 1895; 95:3-16, Appx. 1898; 99:20-100:10, Appx. 1899; 115:11-116:4, Appx. 1903; 127:13-128:4, Appx. 1906; 140:15-141:22, Appx. 1909, 180:18-23, Appx. 1919.  Ms. Dondero purportedly learned from her brother that Highland allegedly had a "common practice" of forgiving loans but had no actual knowledge or information concerning any loan that Highland made to an officer, employee, or affiliate that was actually forgiven and made no effort to verify her brother's statement. *Id.* 84:9-92:3, Appx. 1895-1897, 100:11-103:8, Appx. 1899-1900.

In summary, the undisputed evidence shows that Ms. Dondero's "approval" of any compensation to Mr. Dondero as an officer and employee of Highland had never been sought by Highland prior to the Alleged Oral Agreements.  Moreover, Ms. Dondero, as the Family Trustee of Dugaboy, the holder of the majority limited partnership interests in Highland, did not have "authority," under Section 3.10(a) of the LPA or otherwise, to enter into any agreement with a third party regarding any compensation from Highland to anyone.

### b)  The Alleged Oral Agreements, If Any Were Made, Would Lack Enforceability Under Basic Contract Principles

Next, the Alleged Oral Agreements would be unenforceable as a matter of law for lack of: (a) consideration, (b) definiteness, and (c) a meeting of the minds. To be legally enforceable, a contract "must address all of its essential and material terms with a reasonable degree of certainty and definiteness."  *Scott v. Wollney*, No. 3:20-CV-2825-M-BH, 2021 WL 4202169, at * 7 (N.D. Tex Aug. 28, 2021) (internal quotations omitted); *In re Heritage Org., L.L.C.*, 354 B.R. 407, 431–32 (Bankr. N.D. Tex. 2006) (In order to prove existence of a valid and binding subsequent oral agreement binding upon parties, a party must prove that there was "(1) a meeting of the minds" and "(2) consideration to support such a subsequent oral agreement.")   "Whether a contract contains all of the essential terms for it to be enforceable is a question of law." *Id.* (internal quotations omitted).  "A contract must also be based on valid consideration." *Id.* "In determining the existence of an oral contract, courts look at the communications between the parties and the acts and circumstances surrounding those communications." *Melanson v. Navistar, Inc.*, 3:13-CV-2018-D, 2014 WL 4375715, at *5 (N.D. Tex. Sept. 4, 2014). *See also id.* at *6 (finding that a reasonable trier of fact could not find that based on the oral conversation between the plaintiff and the defendant that there was an offer, an acceptance, and a meeting of the minds because the conversation did not contain all essential terms); *Wollney*, 2021 WL 4202169, at *8 (finding that

"[w]hen, as here, 'an alleged agreement is so indefinite as to make it impossible for a court to 'fix'

the legal obligations and liabilities of the parties, a court will not find an enforceable contract,'"

finding that party "has not identified evidence of record that would allow a reasonable trier of fact

to find that there was an offer, an acceptance, and a meeting of the minds between Plaintiff and

Defendant.") (quoting *Crisalli v. ARX Holding Corp.*, 177 F. App'x 417, 419 (5th Cir. 2006)

(citation omitted)); *Heritage*, 354 B.R. at 431–32 (finding a "subsequent oral amendment" defense

fails where the summary judgment record does not support the existence of a subsequent

agreement).

Here, HCMFA has not submitted competent summary judgment evidence of any of the

essential elements for the formation of a valid and binding contract. Mr. Dondero could not identify

any material terms of the Alleged Oral Agreements, such as: (a) when the Alleged Oral

Agreements were entered into; (b) who – HCMFA or Mr. Dondero – was a party to the Alleged

Oral Agreements; (c) whether the Pre-2019 Notes were the subject of an Alleged Oral Agreement

(and whether the alleged oral conversations even occurred), (d) the number of notes subject to an

Alleged Oral Agreement; or (e) the maker, the date, or the principal amount of any note that was

subject to an Alleged Oral Agreement.  HCMFA alleges, through Mr. Dondero's declaration, that

the Alleged Oral Agreements were agreements between Highland and HCMFA while, at the same

time, it alleges, through both Dondero declarations, that the oral conversations were between

Highland and Mr. Dondero, personally.  HCMFA does not even allege that **HCMFA** gave any

consideration to Highland in exchange for Highland's alleged agreement to forgive HCMFA's

indebtedness under the Pre-2019 Notes upon the occurrence of a condition subsequent.   Thus, the

Alleged Oral Agreements would be unenforceable for lack of consideration.  The record evidence

clearly shows, as well, that HCMFA has failed to provide evidence of the essential and material

terms of the Alleged Oral Agreements with any degree of certainty and definiteness that would allow a reasonable trier of fact to find that the Alleged Oral Agreements were valid, binding agreements between Highland and HCMFA.  And, finally, the summary judgment record, as a whole, shows that there certainly was not a "meeting of the minds" between Highland and HCMFA with respect to the Alleged Oral Agreements.

### c) Most Importantly, HCMFA Has Not Raised a Genuine Issue of Fact Regarding the Existence of the Alleged Oral Agreements That Would Defeat the MSJ

Finally, the court finds that HCMFA has simply failed to present any summary judgment evidence that would allow a reasonable jury to find that the Alleged Oral Agreements existed. Beyond the fact that there are only self-serving, uncorroborated, and contradictory declarations and testimony of the Donderos submitted on this defense, it is simply not credible that a multi-billion-dollar enterprise, with sophisticated officers and directors, that was audited by one of the largest and most iconic public accounting firms in the world (PwC), would have entered into Alleged Oral Agreements to forgive millions of dollars of debt unbeknownst to any of those officers, directors, or PwC and, further, not disclose the existence of the Alleged Oral Agreements to any of those officers, directors, or PwC in the years leading up to the bankruptcy filing or to the bankruptcy court after the Petition Date until the Alleged Oral Agreement Defense was first raised in the Condolidated Notes Action.  No reasonable trier of fact would believe that Mr. Dondero entered into an "oral agreement" between himself, as a representative of Highland, and himself, as a representative of HCMFA – that he had a verbal conversation with himself – with respect to the 2014 Alleged Oral Agreement.  One would have to wonder just how that conversation would have played out.

HCMFA's (and Mr. Dondero's and Ms. Dondero's) actions before and after the Petition Date belie the existence of any Alleged Oral Agreement.  The Alleged Oral Agreements were never disclosed to anyone by Mr. Dondero or Ms. Dondero.  Other than Mr. Dondero and Ms. Dondero, no one participated in the discussions that led to the Alleged Oral Agreements (and, again, with respect to the 2014 Alleged Oral Agreement, HCMFA has alleged that Mr. Dondero had this discussion with himself).  Pl. Ex. 210 at 27:19-21, Appx. 4863.  Ms. Dondero and Dugaboy have admitted that neither ever disclosed the existence or terms of the 2016 Alleged Oral Agreement to **anyone**, including PwC, Mr. Waterhouse (again, Highland's former CFO), or Highland's co-founder, Mark Okada.  *Id.* at 25:6-22, Appx. 4861, 27:22-28:4, Appx. 4863-4864.  Mr. Dondero has admitted that he:  (1) never disclosed the existence or terms of the alleged "oral agreement" to PwC, Mr. Okada, or the bankruptcy court prior to the commencement of this Action, Pl. Ex. 24 (Responses to RFAs 11 and 12), Appx. 523; and (2) never caused Highland to disclose the existence or terms of any Alleged Oral Agreement to the bankruptcy court in connection with the Bankruptcy Case. Pl. Ex. 24 (Responses to RFAs 13 and 14), Appx. 523.   To be clear, Mr. Dondero represented that he did, indeed, inform Mr. Waterhouse about the Alleged Oral Agreements.  Pl. Ex. 24 (Responses to RFAs 3 & 4), Appx. 21.  However, Mr. Waterhouse— again, the CFO of Highland **and an officer of HCMFA**—testified that he did not learn of the Alleged Oral Agreements until recently and only believes that they were subject to "milestones" that he cannot identify.  Pl. Ex. 105 at 65:5-72:14, Appx. 2065-2067, 82:19-84:7, Appx. 2070.

More importantly in connection with HCMFA's assertion of its Alleged Oral Agreement Defense in this Action, HCMFA, itself, did not disclose the existence of the Alleged Oral Agreements when it was in its financial interests to do so during the Bankruptcy Case – either in its proofs of claim filed in the Bankruptcy Case or in its objection to confirmation of the Plan, even

though the Plan's financial projections were based on the stated assumption that all of the affiliate notes payable to Highland (including the Pre-2019 Notes) would be collected in 2021.[47]   In addition, Mr. Dondero sold MGM stock in November 2019—an event that would trigger the alleged "condition subsequent" under the Alleged Oral Agreements—but failed to declare the notes forgiven, and otherwise remained silent about the alleged agreement. Ms. Dondero, the counter-party to the Alleged Oral Agreements (or, just to the 2016 Alleged Oral Agreement, depending upon which of the contradictory allegations of fact between HCMFA's pleadings and the Dondero declarations and testimony is to be believed), never saw a note signed by Mr. Dondero or any affiliate of Highland and *had no authority to bind Highland to the Alleged Oral Agreements*.  No document exists memorializing or otherwise reflecting the existence or terms of the Alleged Oral Agreements.  There is no history of loans to affiliates being forgiven by Highland as a means of providing deferred compensation to Mr. Dondero.  Thus, even if the court were to consider the Dondero declarations as competent summary judgment evidence, no reasonable finder of fact could conclude that the Alleged Oral Agreements exist.

In conclusion, the summary judgment evidence shows that the Pre-2019 Notes: (i) are valid, (ii) were executed by HCMFA in favor of Highland; and (iii) there is a balance due and owing under each of the Pre-2019 Notes.  HCMFA failed to rebut Highland's prima facie case because it failed to present competent summary judgment evidence of a *genuine* dispute of material fact in connection with any of its affirmative defenses that would defeat Highland's MSJ.  Where, as here, two versions of the story collide and the non-movant's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it," *Scott*, 550 U.S.

---

[47] HCMFA has admitted that, prior to February 21, 2021, it never disclosed the existence or terms of the Alleged Oral Agreements to PwC, Mr. Okada, the bankruptcy court, or any creditor of Highland, including in connection with any objection to the Plan or Disclosure Statement. Pl. Ex. 220 (Responses to RFAs 7-12, 15-21), Appx. 5018).

at  380, 127 S.Ct. at 1776, and "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming," Rule 56 mandates judgment in favor of the movant.  *Armstrong*, 997 F.2d at 66 n.12.

For the reasons set forth above, the bankruptcy court hereby recommends that the District Court grant summary judgment in favor of the Highland.

## VI. **Conclusion:  Summary Judgment Recommended**

Accordingly, summary judgment should be entered holding HCMFA liable for:  (a) breach of contract with respect to the Pre-2019 Notes; and (b) turnover of all amounts due under the Pre-2019 Notes, pursuant to Bankruptcy Code Section 542, including the costs of collection and reasonable attorneys' fees as provided for in the Pre-2019 Notes in an amount to be determined. Specifically:

With regard to the 2014 Note, HCMFA should be liable on a Judgment for breach of contract and turnover in the amount of: (a) **$2,151,130.84**, the total outstanding principal and accrued but unpaid interest due under the 2014 Note as of May 27, 2022; plus (b) interest accrued since May 27, 2022; plus (c) the costs of collection and reasonable attorneys' fees in an amount to be determined.

With regard to the 2016 Note, HCMFA should be liable on a Judgment for breach of contract and turnover in the amount of: (a) **$1,001,238.06**, the total outstanding principal and accrued but unpaid interest due under the HCMFA Notes as of May 27, 2022; plus (b) interest accrued since May 27, 2022; plus (c) the costs of collection and reasonable attorneys' fees in an amount to be determined.

Submission of Judgment.  The bankruptcy court directs Plaintiff to promptly submit a form of Judgment that calculates proper amounts due pursuant to this Report and Recommendation, including interest accrued to date (and continuing to accrue per diem), as well as costs and attorneys' fees incurred.  The costs and attorneys' fees calculation shall be separately filed as a Notice with backup documentation attached. HCMFA shall have 21 days after the filing of such Notice to file an objection to the reasonableness of the attorneys' fees and costs.  The bankruptcy court will thereafter determine the reasonableness in Chambers (unless the bankruptcy court determines that a hearing is necessary) and will promptly submit the form Judgment, along with appropriate attorneys' fees and costs amounts inserted into the form Judgment, to the District Court, to consider along with this Report and Recommendation. This Report and Recommendation is immediately being sent to the District Court.

### End of Report and Recommendation ###