BTXN 221 (rev. 09/22)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re: | § | |
| Highland Capital Management, L.P. | § | |
| | § | Case No.:   19−34054−sgj11 |
| Debtor(s) | § | Chapter No.:   11 |
| Highland Capital Management, L.P. | § | |
| Plaintiff(s) | § | Adversary No.:   21−03082−sgj |
| vs. | § | |
| Highland Capital Management Fund Advisors, L.P. | § | Civil Case No.:       Civ. Act. No. 3:22−cv−00789 |
| | § | (Consolidated Under Civ. Act. No. 3:21−cv−00881) |
| Defendant(s) | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| Plaintiff(s) | § | |
| vs. | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | |
| ADVISORS, L.P., | § | |
| Defendant(s) | § | |

## NOTICE OF TRANSMITTAL OF REPORT AND RECOMMENDATION

I am transmitting:

One copy of:  Supplement to the October 12, 2022 Report and Recommendation .

DATED:  1/17/23

FOR THE COURT:
Robert P. Colwell, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 17, 2023**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>**Reorganized Debtor.** | **Case No. 19-34054-sgj11**<br><br>**Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>        Plaintiff.<br><br>v.<br><br>**HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,**<br><br>        Defendant. | **Adversary No. 21-03082-sgj**<br><br>**Civ. Act. No. 3:22-cv-00789**<br><br>**(Consolidated Under Civ. Act. No. 3:21-cv-00881)** |

## SUPPLEMENT TO THE OCTOBER 12, 2022 REPORT AND RECOMMENDATION: REGARDING ATTORNEYS' FEES AND TRANSMITTING PROPOSED FORM OF JUDGMENT

I.      **Introduction and Background**

On October 12, 2022, the bankruptcy clerk transmitted this court's _Report and Recommendation to District Court Regarding Highland Capital Management, L.P.'s Motion for_

*Summary Judgment Against Highland Capital Management Fund Advisors, L.P.* ("R&R MSJ")

[DCT DE # 71][1] for filing in the above-referenced consolidated Civ. Act. No. 3:21-cv-881.  In the

R&R MSJ, this court recommended that the District Court enter summary judgment in favor of

plaintiff, Highland Capital Management, L.P. ("Plaintiff" or "Highland"), and against defendant,

Highland Capital Management Fund Advisors, L.P. ("Defendant" or "HCMFA"), "holding

HCMFA liable for:  (a) breach of contract with respect to the Pre-2019 Notes;[2] and (b) turnover of

all amounts due under the Pre-2019 Notes, pursuant to Bankruptcy Code Section 542, including

the costs of collection and reasonable attorneys' fees as provided for in the Pre-2019 Notes in an

amount to be determined." R&R MSJ, at 49.[3]  In the last paragraph of the R&R MSJ, this court

directed Plaintiff (Highland) "to promptly submit a form of Judgment that calculates proper

amounts due pursuant to this Report and Recommendation, including interest accrued to date (and

continuing to accrue per diem), as well as costs and attorneys' fees incurred." *Id.* at 50. The court

further set forth the procedures for the submission of the proposed form of judgment ("Proposed

Judgment") and this court's transmittal of such to the District Court for its consideration in

connection with the R&R MSJ:

> The costs and attorneys' fees calculation shall be separately filed as a Notice with
> backup documentation attached. HCMFA shall have 21 days after the filing of such
> Notice to file an objection to the reasonableness of the attorneys' fees and costs.
> The bankruptcy court will thereafter determine the reasonableness in Chambers
> (unless the bankruptcy court determines that a hearing is necessary) and will
> promptly submit the form Judgment, along with appropriate attorneys' fees and
> costs amounts inserted into the form Judgment, to the District Court, to consider
> along with this Report and Recommendation. This Report and Recommendation is
> immediately being sent to the District Court.

---

[1] The R&R MSJ was entered separately in the underlying adversary proceeding on October 12, 2022, prior to
transmittal to the District Court. *See* Adv. Pro. 21-3082 [DE #73].

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the R&R MSJ.

[3] Section 6 of each of the Pre-2019 Notes provided for the recovery by Plaintiff of "all actual expenses of collection,
all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof."

*Id.*

On October 18, 2022, the parties filed, in both the adversary proceeding[4] and in the District Court,[5] a stipulation (the "Stipulation") regarding the procedures for objecting to the R&R MSJ in the District Court and for the submission of the proposed form of judgment and attorneys' fees and costs to the bankruptcy court pursuant to the directive in the R&R MSJ.  In the Stipulation, the parties agreed and stipulated to a briefing schedule as follows:[6]

1. On or before November 2, 2022, (a) Plaintiff shall file its Proposed Judgment and Notice; and (b) pursuant to Federal Rule of Bankruptcy Procedure 9033 ("Rule 9033"), Defendant shall file any objections to the R&R (the "Objection");

2. On or before November 23, 2022, (a) Plaintiff shall file any response to any Objection (the "Response"), and (b) Defendant shall file any objections to the Proposed Judgment and/or Notice; [and,]

3. Defendant shall not file a reply to Plaintiff's Response under Rule 9033 or otherwise.

## II.     Proposed Form of Judgment and Notices of Attorneys' Fees and Costs

### A.     *Plaintiff Submits Proposed Form of Judgment and Notices of Attorneys' Fees and Costs to Be Included Therein*

On November 2, 2022, Plaintiff filed its *Notice of Attorneys' Fees Calculation and Backup Documentation* regarding the fees and costs of Pachulski, Stang, Ziehl & Jones, L.L.P. ("PSZJ"),[7] a separate *Notice of Attorneys' Fees Calculation and Backup Documentation of Hayward PLLC*,[8]

---

[4] DE #77.

[5] DCT DE #75.

[6] Stipulation at 3.

[7] DE #79.  Plaintiff attached as "Exhibit 1" to the PSZJ Notice a *Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Proposed Form of Judgment* ("Morris Declaration") regarding the fees and expenses for which Plaintiff seeks recovery under the Proposed Judgment, including Backup Documentation for attorneys' fees charged by PSZJ in this matter attached to the Morris Declaration as **Exhibits A-D**.  Exhibit A contained a summary of the fees being requested, and Exhibits B-D were invoices (the "PSZJ Invoices") that included detailed time records maintained in the ordinary course of business of PSZJ.

[8] DE #80.

(together, the "Notices," and, separately, the "PSZJ Notice" and the "Hayward Notice,"
respectively) and a *Declaration of David Klos in Support of Highland Capital Management, L.P.'s
Proposed Form of Judgment* ("Klos Declaration")[9] in support of the calculation of the amount of
principal, accrued interest, and per diem interest to be included in the Proposed Judgment. Plaintiff
separately uploaded the Proposed Judgment to the bankruptcy court's order processing system in
the adversary proceeding.

> **B.   *Defendant Objects to (1) Recommendation in the R&R MSJ Pending in the
> District Court and (2) Highland's Proposed Judgment Awarding Attorneys' Fees
> and Costs in the Bankruptcy Court***

On November 2, 2022, Defendant filed in the District Court *Highland Capital Management
Fund Advisors, L.P.'s Objection to the Bankruptcy Court's Report and Recommendation to the
District Court Proposing That It Grant Summary Judgment in Favor of the Plaintiff* ("Objection
to R&R MSJ"),[10] and on November 23, 2022, Defendant filed in the bankruptcy court *Defendant's
Objection to Plaintiff's Proposed Form of Judgment Awarding Attorneys' Fees and Costs*
("Objection to Fees"),[11] objecting to the reasonableness of the attorneys' fees identified in the
PSZJ Notice and suggesting that

> [t]he court should reject the proposed award and reduce any award by the amount
> of any fees (1) incurred in other cases, (2) for which Plaintiff fails to clearly indicate
> were incurred in this case, (3) that are excessive for the work performed, (4) for
> which PSZJ exercised no billing judgment, and (5) that exceed customary rates in
> Dallas, Texas.

Objection to Fees, at 2. In its Objection to Fees, the Defendant did not object to the reasonableness
of the attorneys' fees identified in the Hayward Notice.

---

[9] DE #81.

[10] *See* DCT DE #78.

[11] *See* DE #83.

**C.    This Court Recommends That the District Court Overrule Defendant's Objections to PSZJ's Fees**

The bankruptcy court conducted an in-chambers review of the Plaintiff's Notices and Backup Documentation and the Klos Declaration and Defendant's Objection to Fees and, for the reasons set forth below, recommends to the District Court that it overrule Defendant's objections to the reasonableness of PSZJ's fees that Plaintiff seeks to recover in the Proposed Judgment that is attached hereto as **Exhibit A**.

1.    *Law Governing Award of Attorneys' Fees in This Case*

Defendant does not dispute Plaintiff's right to recover its ***reasonable*** attorneys' fees in the Proposed Judgment pursuant to Texas law and the terms of the Pre-2019 Notes.  Under Texas law, "A person may recover reasonable attorney's fees from an individual or organization . . . in addition to the amount of a valid claim and costs, if the claim is for . . . (8) an oral or written contract."[12]  In addition, both Pre-2019 Notes provide for the recovery of reasonable attorneys' fees by Plaintiff.  Specifically, Section 6 of each Note provides:

> **Attorneys' Fees.** If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

Thus, the issue before the court is whether the attorneys' fees Plaintiff seeks to recover in connection with the Proposed Judgment are reasonable under Texas law.[13]  As noted by the Fifth Circuit in *Mathis*, the trial court's discretion in awarding reasonable fees under Texas law

---

[12] Tex. Civ. Prac. & Rem. Code § 38.001(b)(8).

[13] *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."); *see also US Foods, Inc. v. Picasso's Pizza, Inc.*, 2021 WL 9385157 *4 (N.D. Tex., Aug. 26, 2021)("[S]tate law controls the reasonableness of attorney's fees awarded where state law supplies the rule of decision.")(citing *Mathis*).

is "guided by two presumptions."[14]  "First, there is a rebuttable presumption of reasonableness

for fees that are 'usual' or 'customary,'"[15] and, "[s]econd, where the fees are tried to the court

. . . the statute authorizes the judge to take judicial notice of the 'usual and customary fees' and

the contents of the case file."[16]

2.  *Objections ## 1 and 2: Argument That Award Should Be Reduced by the Amount of Fees*
    *Incurred in Other Cases, or for which Highland Fails to Clearly Indicate Were Incurred*
    *in This Case*

Defendant argues that the majority of PSZJ's time entries fail to clearly identify HCMFA as the

particular defendant and that none of them distinguish between this action ("Action"), in which HCMFA is

the sole defendant, and the action against HCMFA that was one of the Five Earlier-Filed Note Actions

against five Note Maker Defendants (the "First HCMFA Note Action").[17]  Thus, Defendant argues that

because "Plaintiff has not clearly shown [in its time entries] that it incurred certain claimed fees while

litigating against Defendant in this case[,]" the court should not award fees contained in those entries.[18]  The

Morris Declaration clearly states that "[PSZJ has] reviewed the attached invoices and redacted all entries that

we concluded were not related to the Action (the "Unrelated Time")" and that "[b]ased on that review, we

believe the attached invoices capture and reflect fees properly charged by [PSZJ] to Highland **with respect**

**to the Action**."[19]  The Morris Declaration also clarifies, "for the avoidance of doubt," with respect to each of

the detailed invoices attached to the PSZJ Notice as Exhibits B through D, that "Highland does not seek to

---

[14] *Mathis*, 302 F.3d at 462.

[15] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 38.003 (Vernon 2002)).  Section 38.003 provides, in pertinent part, "It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable."

[16] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 38.004 (Vernon 2002)).  Section 38.004 provides, in pertinent part, "The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in:   (1) a proceeding before the court; . . . ."

[17] *See* Objection to Fees, at 3, Part II(A).

[18] *Id.*

[19] Morris Declaration, at 3, ¶11 (emphasis added).

recover any amounts concerning any time entry that is redacted" and that "Highland has copied from Exhibit[s B-D] only those time entries for which compensation is sought in connection with the Action and compiled them on the page preceding each invoice in [the relevant exhibit]."[20]  The court believes the Morris Declaration provides sufficient evidence that the PSZJ fees sought to be recovered under, and in connection with, the Proposed Judgment are related to this Action and not another action, and, therefore, this court recommends that the District Court overrule Objections ## 1 and 2 to the reasonableness of the PSZJ fees.

3.  *Objection # 3: Argument That Award Should Be Reduced by the Amount of Fees That Are Excessive for the Work Performed*

In its Objection to Fees, Defendant argues that the court should reduce the award for fees relating to Plaintiff's motion for summary judgment in this Action (defined by Defendant as "HCMFA MSJ"), which Defendant describes as "***substantially similar*** in both substance and form to Plaintiff's motion for summary judgment in the companion adversary proceedings [the Five Earlier-Filed Note Actions]."[21]  Defendant avers, more specifically, that[22]

> the HCMFA MSJ arguments almost identically mirror those of the Notes MSJ arguments and utilize the same appendix.  Because both MSJs utilized the same framework and almost identical legal arguments, Plaintiff's attorneys should not benefit from duplicative billing when the HCMFA MSJ was effectually a "copy-and-paste" version of the Notes MSJ, save two insignificant additional arguments.

Defendant concludes that PSZJ's fees relating to the HCMFA MSJ are "clearly excessive," and that the award should be reduced, presumably by some amount attributable to those fees.  However, Defendant does not identify any specific time entry or fee amount that it believes is "duplicative" and therefore excessive.  This court, having reviewed the detailed invoices submitted by PSZJ, and having issued the R&R MPSJ

---

[20] Morris Declaration, at 2-3, nn. 1-3.

[21] Objection to Fees, at 4, Part II(B).  Defendant defines the motion for summary judgment in the Five Earlier-Filed Note Actions as the "Notes MSJ."

[22] *Id.* (internal footnote omitted).

with respect to the Five Earlier-Filed Note Actions and the R&R MSJ in connection with this Action, finds that, although the HCMFA MSJ in this Action may have contained similar legal arguments and a similar appendix, the legal arguments and appendix were not "almost identical" and that the hours spent by PSZJ relating to the HCMFA MSJ in this Action were both necessary and reasonable. Therefore, this court recommends that the District Court overrule Defendant's Objection #3.

4.  *Objection # 4: Argument that Award Should Be Reduced by 10% to 20% Because PSZJ Did Not Exercise Billing Judgment*

Defendant suggests that the attorneys' fees award in the Proposed Judgment should be reduced by 10% to 20% because "Plaintiff exercised no billing judgment."[23] Defendant cites to only one case out of the Northern District of Texas district court – *Mauricio v. Phillip Galyen, P.C.*,[24] – in support of this objection. In its short, five-sentence objection, Defendant uses four of the sentences to quote from or cite to *Mauricio* for the following propositions: (1) that "[b]illing judgment refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours";[25] (2) that evidence of the exercise of billing judgment will "[i]deally [be] reflected in the fee application, showing not only hours claimed, but hours written off";[26] and, (3) that "[t]he proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment;"[27] and, (4) that an appropriate

---

[23] Objection to Fees, at 4, Part II(C).

[24] 174 F.Supp. 3d 944 (N.D. Tex. 2016). In *Mauricio*, Judge Lindsay adopted the findings and conclusions of Magistrate Judge Ramirez in her report recommending that the district court grant Plaintiffs' application for award of attorney's fees, costs, and expenses after reviewing the record, the report, and conducting a de novo review of each part of the report to which an objection was made (in the district court). *Id.* at 946.

[25] Objection to Fees, at 4 (quoting *Mauricio*, 174 F.Supp. at 950)(citing *Walker v. U.S. Dep't of Hous. and Urban Dev.*, 99 F.3d 761 (5th Cir. 1996)).

[26] Objection to Fees, at 4 (quoting *Mauricio*, 174 F.Supp. at 950 and omitting the citation to the Fifth Circuit case that *Mauricio* quoted: *Alberti v. Kevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990)).

[27] Objection to Fees, at 4 (quoting *Mauricio*, 174 F.Supp. at 950 and omitting the citation to *Walker*, 99 F.3d at 770 from which the entire quote was taken).

reduction "where no billing judgment is exercised" is "in the range of 10% to 20%."[28]   Defendant then

concludes, in one sentence and without citing to any specific time entry or to the PSZJ Notice and Backup

Documentation at all, "Here, Plaintiff exercised no billing judgment, [sic] therefore the Court should reduce

the aggregate claimed amount in any award by 10% to 20%,"[29] implying that *Mauricio* (and the Fifth Circuit

in *Walker*) stand for the proposition that a prevailing party in all fee-shifting cases is always required to

present evidence that it exercised billing judgment in the specific form of a fee application that shows "hours

written off" in addition to the "hours claimed," failing which the court is bound to reduce the fee award by

an appropriate percentage.   As discussed below, neither *Mauricio* nor *Walker* stands for this proposition,

and, more importantly, neither are applicable to the fee award requested in this case.

> a)   *Mauricio* Is Not Applicable to the Award of Attorneys' Fees in This Case

As noted above,[30] Texas law and the terms of the Pre-2019 Notes govern the award of

attorneys' fees in this case, both of which allow for the recovery by Plaintiff of its reasonable

attorneys' fees; thus, Texas law governs whether the amount of fees Plaintiff seeks to recover are

reasonable.  *Mauricio*, the only legal authority cited by Defendant in support of its objection based

on the alleged lack of evidence that PSZJ exercised billing judgment, is a federal district court case

that deals with an award of attorneys' fees under **federal** law (the Fair Labor Standards Act) and

that applies **federal** law in determining the prevailing party's entitlement to an award of attorneys'

fees and the reasonableness of the award.  *Mauricio* primarily cites to and quotes from the Fifth

Circuit opinion in *Walker v. U.S. Dep't of Hous. and Urban Dev.*, 99 F.3d 761 (5th Cir. 1996)

where the Fifth Circuit applied **federal** law in addressing the prevailing party's entitlement to

---

[28] Objection to Fees, at 4-5 (citing *Mauricio*, 174 F.Supp. at 950).

[29] *Id.* at 5.

[30] *See supra* note 13 and accompanying text.

recover reasonable fees under *federal* civil rights law, specifically 42 U.S.C. § 1988(b).[31]  Thus,

the standards applied by the court in *Mauricio* and by the Fifth Circuit in *Walker* with respect to

the attorneys' fees proposed by Plaintiff to be included in the Proposed Judgment are not applicable

to the court's analysis in ***this*** case in which Plaintiff's entitlement to reasonable attorneys' fees in

connection with the Proposed Judgment is governed by ***Texas*** law and the terms of the contracts

at issue – the Pre-2019 Notes.[32]

> b) <u>Under Texas Law Sufficient Evidence Exists to Support a Finding That PSZJ Exercised Billing Judgment</u>

Under Texas law standards regarding the reasonableness of the attorneys' fees in a breach

of contract fee-shifting case, the Morris Declaration and the detailed invoices attached as Backup

Documentation constitute sufficient evidence to support a finding that PSZJ exercised billing

judgment in this case and that PSZJ's fees are reasonable.  There is no requirement under Texas

law that evidence must include written detailed invoices that show hours written off in the exercise

of billing judgment.  Rather, Texas law requires that the evidence simply be sufficient to allow the

trial court to conduct a meaningful review of the hours and rates claimed.

In *El Apple I, Ltd. v. Olivas*, the Texas Supreme Court set forth the evidentiary

requirements for supporting a trial court's award of attorneys' fees in a fee-shifting situation where

the court applied the lodestar method in determining the reasonableness of the attorneys' fees

awarded to plaintiff under a fee-shifting provision of the Texas Commission on Human Rights

---

[31] The Fifth Circuit in *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795 (5th Cir. 2006), ten years after *Walker v. HUD* applied **federal** standards in reviewing an award of attorneys' fees under the same **federal** law at issue in *Mauricio* -- the Fair Labor Standards Act.

[32] *See Mathis*, 302 F.3d at 461-62 (finding Texas law controls the award of attorneys' fees and reasonableness thereof in a breach of contract case under Texas law and looking to Tex. Civ. Prac. & Rem. Code § 38.001(8) (Vernon 2002) for the standard in determining the prevailing party's entitlement to attorneys' fees).

Act.[33]  In support of her fee application, Plaintiff had submitted a fee application with affidavits

of her attorneys estimating the total hours spent by each attorney on the case.[34]  In addition, one

of the attorneys had testified at the hearing on the fee application that he had actually spent more

hours on the case than was stated in the affidavit but was not seeking compensation for that time

because it was duplicative of co-counsel's work.[35]

On appeal the defendant argued that the trial court did not have sufficient evidence to make

a reasonableness determination under the lodestar method applied in the case.  The Texas Supreme

Court first noted that "a party applying for an award of attorney's fees under the lodestar method

bears the burden of documenting the hours expended on the litigation and the value of those

hours."[36]  The defendant argued that a trial court could not calculate the base fee or lodestar without

that information and submitted that "the prevailing party's documentation should preferably be in

the form of contemporaneous time sheets, which evidence the performance of specific tasks such

that the trial court can make a reasoned determination of how much time was reasonably spent

pursuing the litigation."[37]

The court observed that the lodestar method was designed to provide a "relatively objective

measure of attorney's fees" but "has been criticized . . . for providing a financial incentive for

counsel to expend excessive time in unjustified work and for creating a disincentive to early

settlement."[38]  The court stated that "[t]o avoid these pitfalls, a trial court should obtain **sufficient**

---

[33] 370 S.W.3d 757 (Tex. 2012).

[34] *Id.* at 759.

[35] *Id.*

[36] *Id.* at 761 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

[37] *El Apple*, 370 S.W.3d at 761.

[38] *Id.* at 762 (citations omitted).

*information to make a meaningful evaluation of the application for attorneys*" and that "[c]harges for duplicative, excessive, or inadequately documented work should be excluded."[39] Noting that "[a] meaningful review of the hours claimed is particularly important [in fee-shifting cases] because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party," the court quoted from the United States Supreme Court in *Hensley* with respect to the requirement in fee-shifting cases that attorneys exercise billing judgment:[40]

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

That the United States Supreme Court under federal standards or the Texas Supreme Court under state standards requires an attorney in a fee-shifting case to exercise the same billing judgment that the attorney would be ethically bound to exercise in billing his own client is not disputed here. The issue here is the legal sufficiency of evidence that must be available for a court to assess the reasonableness of attorneys' fees and, in particular, whether the attorney exercised billing judgment with respect to the fees requested.

As noted above, in its briefing on the billing judgment issue, Defendant did not cite to any of the evidence that PSZJ submitted (or did not submit) that went to the issue of whether PSZJ had provided legally sufficient evidence that it had exercised billing judgment.  Rather, Defendant simply makes the conclusory statement that "[h]ere, Plaintiff exercised no billing judgment" and

---

[39] *Id.* (emphasis added)(citation omitted).

[40] *Id.* (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (citation omitted)).

"therefore the court should reduce the aggregate claimed amount in any award by 10% to 20%."[41] The Defendant's inartfully drafted, incomplete, and, frankly, illogical argument appears, however, to be that PSZJ did not provide sufficient evidence that it exercised billing judgment in this case because PSZJ's detailed invoices *did not show* that time had been written off due to the exercise of its billing judgment – that an attorney's detailed invoices, in *all* fee-shifting cases, must show evidence in detailed invoices of time written off due to billing judgment to support a trial court's finding that its attorneys' fees are reasonable – and that, if the attorney does not submit such written evidence, the court *must* reduce the fee award by 10% to 20%.

Neither the cases cited by Defendant (which apply federal standards to cases under federal law and are, therefore, inapposite to this case) nor the cases applying Texas standards regarding the entitlement to, and reasonableness of, attorneys' fees (which apply here) have that exacting of an evidentiary standard.

First, the direct quote from *Maurico* regarding evidence of billing judgment is actually a direct quote from the Fifth Circuit *Alberti* case wherein the Fifth Circuit referred to what would be "ideal" evidence to support a finding that the attorney exercised billing judgment: "*Ideally*, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off."[42] The quoted language certainly does not rise to the level of a requirement under federal law (that is not applicable here) that all fee applications must include detailed invoices showing hours billed and hours written off in order to avoid an across-the-board reduction in fees of an appropriate percentage. The Fifth Circuit's pronouncement quoted by *Mauricio* in no way forecloses the

---

[41] Objection to Fees, at 4, Part II(C).

[42] *See* Objection to Fees, at 4 (emphasis added)(quoting *Mauricio*, 174 F.Supp. at 950 (citation to the Fifth Circuit's *Alberti* opinion from which it was quoting omitted)).

possibility that other types of evidence can be sufficient to support a trial court's finding of reasonableness and the exercise of billing judgment in fee-shifting cases. Thus, if PSZJ's detailed invoices did not show evidence of time written off in the exercise of billing judgment, that would not preclude a finding by the court that the evidence that was submitted by PSZJ is legally sufficient to support a finding that PSZJ's fees are reasonable and recoverable in the Proposed Judgment.

Second, under the law that *is* applicable in this case regarding Plaintiff's entitlement to recover PSZJ's attorneys' fees in the Proposed Judgment – Texas law – there is no requirement whatsoever that a trial judge's finding that a party's fees are reasonable and recoverable in a fee-shifting case must be supported by evidence that includes detailed invoices that show time billed *and time written off*. Rather, the Texas Supreme Court in *El Apple* (where the attorneys had not submitted contemporaneous, detailed time records of work performed) sets forth the minimum requirements of evidentiary support under Texas standards of review of the reasonableness of attorneys' fees (including whether the attorneys exercised billing judgment) in contested fee-shifting cases using the lodestar approach:[43]

> [W]hen applying for a fee under the lodestar method, the applicant must provide *sufficient details of the work performed before the court can make a meaningful review of the fee request*. For the purposes of lodestar calculations, *this evidence includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required*.

There is no requirement in *El Apple* that the evidence be in the form of written time records or billing statements and no requirement, if detailed time records are provided, that those records must show hours written off in the exercise of billing judgment (as suggested by Defendant). To

---

[43] *El Apple*, 370 S.W.3d at 764 (emphasis added).

the contrary, the court notes that the evidence could be in the form of the attorney testifying to the

details, but allows that "in all but the simplest cases, the attorney would probably have to refer to

some type of record or documentation to provide this information."[44]  Indeed, a year later, in *City

of Laredo v. Montano*,[45] the Texas Supreme Court rejected the City of Laredo's argument, in

objecting to an award of attorneys' fees to Montano, that *El Apple* required the submission of

documentary evidence of time records and billing statements (which had not been provided by

Montano's attorneys) to support the trial court's award:[46]

> Contrary to the City's argument, *El Apple* does not hold that a lodestar fee can only
> be established through time records or billing statements.  We said instead that an
> attorney could testify to the details of his work, but that "in all but the simplest of
> cases, the attorney would probably have to refer to some type of record or
> documentation to provide this information."   For this reason, we ***encouraged***
> attorneys using the lodestar method to shift their fee to their opponent to keep
> contemporaneous records of their time *as they would for their own client*.

In clarifying what *El Apple* required (or did not require) in terms of evidence, the Texas Supreme

Court recalled its observation in *El Apple* "that testimony in generalities about tasks performed in

a case ***that did not provide enough information for a meaningful review*** of whether the tasks and

hours were reasonable and necessary was an insufficient basis for a lodestar calculation"[47] and that

"hours not properly billed to one's client are also not properly billed to one's adversary under a

fee-shifting statute."[48]

---

[44] *Id.*

[45] 414 S.W.3d 731 (Tex. 2013).

[46] *Id.* at 736 (citing *El Apple*, 370 S.W.3d at 763)(emphasis added)).

[47] *Id.* at 735-736 (citing *id.* at 760)(emphasis added).  The Texas Supreme Court in *Montano* ultimately found that
one attorney's testimonial evidence was too generalized to meet the minimum information requirements set forth in
*El Apple* that would allow the trial court a meaningful review of the reasonableness of hours spent and hourly rates,
whereas a second attorney's testimony did provide sufficient evidence/information to support an award by the trial
court.

[48] *Id.* at 736 (citing *id.* at 762).

Thus, under Texas law, sufficiency of evidence in fee-shifting cases is determined not by the form of the evidence but the substance of the evidence:  whether that substance provides sufficient information for the trial court to make a meaningful review of whether the time spent, and tasks performed, were reasonable and necessary under the lodestar method.  And, the Texas Supreme Court has delineated the minimum substantive information required to be included in such evidence, whether in the form of testimony or documentary evidence of time records and billing statements to "include[ ], at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required."  If the applicant provides this minimum information, "[the] trial court's findings regarding whether prevailing counsel's claimed hours are excessive, redundant, or unreasonable"[49] will be "accord[ed] considerable deference" because "the trial court possesses a superior understanding of the case and the factual matters involved."[50]

Here, PSZJ has provided sufficient evidence under Texas law – including the Morris Declaration and the detailed time records attached thereto as Exhibits B-D as part of the Backup Documentation – to allow the court to make a meaningful review under Texas law of the reasonableness of the PSZJ fees sought to be recovered by Plaintiff in the Proposed Judgment, including whether PSZJ exercised billing judgment in connection with the fees requested in this case.  Specifically, the PSZJ Invoices contain detailed time entries that provide documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required – meeting *El Apple's* "minimum" evidentiary requirement.[51]

---

[49] In other words, whether the attorney exercised billing judgment with respect to the hours included in the invoices submitted in support of its fee application in a fee-shifting situation.

[50] *El Apple*, 370 S.W.3d at 763-64.

[51] *See* Morris Declaration, Ex. B-D [DE # 79].

In addition, PSZJ provided the Morris Declaration in which Mr. Morris declared that he (and others working at his direction) had reviewed the PSZJ Invoices, that the detailed time records contained therein were kept in the ordinary course of business of his firm and that each of the timekeepers recorded billable time in one-tenth of an hour increments and classified their work by task codes "to differentiate between individual tasks conducted for the same client."[52]  Mr. Morris further declared, as noted above, that following its review of the PSZJ Invoices, PSZJ "redacted all entries that we concluded were not related to the Action" and that "***the attached invoices capture and reflect fees properly charged by my Firm to Highland with respect to the Action***"[53] – in other words, PSZJ exercised billing judgment.  Because this court is intimately familiar with the case and the legal, procedural, and factual matters involved, this court finds that the Morris Declaration, including the PSZJ Invoices, provide sufficient evidence for this court to make a determination of whether PSZJ failed to exercise business judgment and improperly charged fees in the PSZJ Invoices to its client that were "unproductive, excessive, or redundant hours" and thus, not ethically chargeable to its client (or, for that reason, recoverable from Defendant in the Proposed Judgment).   In addition, the court notes that Defendant does not point to any evidence, much less any particular time entry in the PSZJ Invoices, in support of its conclusory allegation that PSZJ failed to exercise billing judgment.

Having reviewed the PSZJ Notice, including the Morris Declaration and the detailed time records set forth in the PSZJ Invoices, this court finds PSZJ has produced sufficient evidence under Texas law to support a finding that PSZJ properly exercised billing judgment with respect to the attorneys' fees Plaintiff

---

[52] *Id.* at ¶¶ 5-6.

[53] *Id.* at ¶ 11 (emphasis added).

seeks to recover in the Proposed Judgment and, accordingly, recommends that the District Court overrule this objection.

5. *Objection #5: Argument That PSZJ's Hourly Rates Are Not Reasonable*

Defendant argues that PSZJ's hourly rates are unreasonably high because they exceed the rates charged by local firms for similar services.  Defendant raised this same objection in this court with respect to the fees Plaintiff sought to recover in connection with its proposed judgment in the First HCMFA Note Action.  Ultimately, the bankruptcy court recommended, in its *Supplement to Report and Recommendation Dated July 19, 2022, Transmitting Proposed Forms of Judgment* ("Supplement to R&R MPSJ"),[54] that the District Court overrule HCMFA's objection on this point and enter the form of proposed judgment attached thereto as Exhibit B, because this court had already approved PSZJ's rates in the underlying bankruptcy case, in which the Five Earlier-Filed Notes Actions and this Action are pending, as reasonable under 11 U.S.C. § 330, and under the applicable standard announced by the Fifth Circuit in *Johnson*.[55]  Both the Supplement to R&R MPSJ and the underlying R&R MPSJ in the Five Earlier-Filed Note Actions are still pending in the District Court.  This court recommends that the District Court overrule Defendant's objection to PSZJ's hourly rates in this Action for the same reason – this court has already found them to be reasonable in the underlying bankruptcy case.

In its Objection to Fees, Defendant acknowledges that this court has already recommended to the District Court in the Supplement to R&R MPSJ in the Five Earlier-Filed Note Actions that

---

[54] This supplement was entered on the docket of the First HCMFA Note Action [DE # 186] on November 10, 2022 and transmitted to the District Court [DCT DE # 80] on November 14, 2022.

[55] *See* Bankr. Case No. 19-34054-sgj11, *Fifth and Final Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP* [BC DE #2906], at 37–39 (describing how PSZJ's fees satisfied the *Johnson* factors—*see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *Order Granting Fifth and Final Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP* [BC DE #3055].

it overrule the objection on the same issue and the basis therefor – the court's previous approval of PSZJ's hourly rates in the underlying bankruptcy case[56] – but argues that "[n]owhere in the Court's order on the application, and nowhere in PSZJ's application, did either the Court or PSZJ make a representation as to or provide evidence of the prevailing rate in . . . Dallas, Texas, and therefore PSZJ's rates should be reduced in this case to meet Dallas rates."[57]

First, Defendant assumes, incorrectly, that the ***federal*** standard of review regarding reasonableness of hourly rates in fee-shifting cases – a standard identified by the Supreme Court in *Blum v. Stenson*[58] and reaffirmed in *Perdue v. Kenny A ex rel. Winn*,[59] under which, for an attorney's hourly rate to be reasonable, it must be in line with "the prevailing market rates in the relevant community"[60] – applies in this adversary proceeding.  But, again, Defendant is applying the wrong standard.  As noted above in connection with Defendant's "billing judgment" objection, the standard to be applied in determining the reasonable hourly rate for purposes of the lodestar calculation in this action is the ***state*** law standard – that of ***Texas*** – not federal standards under federal fee-shifting statutes.  This is, at bottom, a suit on a note governed by Texas contract law.  Texas law does not have a requirement that the fee applicant submit evidence that its rates are within the range of rates charged by the relevant legal community.   To the contrary, the Texas legislature has specifically codified a presumption "that the usual and customary attorney's fees

---

[56] This court also noted – as a factor that militated in favor of finding that PSZJ's rates were reasonable hourly rates in this bankruptcy case and related adversary proceedings, especially those related adversary proceedings where Dondero or Dondero-controlled entities were defendants, such as the Five Earlier-Filed Note Actions, including HCMFA, the Defendant in this Action – that Dondero was the very person who hired PSZJ to be Highland's bankruptcy counsel and "agreed, in writing, to the very fee structure and rates" they were complaining about. Supplement to R&R MPSJ at 16.

[57] Objection to Fees, at 6.

[58] 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

[59] 559 U.S. 542, 551, 130 S.Ct. 1662 (2010)(quoting *id.*).

[60] *Id.*

for a claim of the type described in Section 38.001 are reasonable"[61] and that "[t]he court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in:  (1) a proceeding before the court."[62]  Thus, under Texas standards, this court can take judicial notice of the usual and customary rates charged in litigation (in the context of complex chapter 11 cases) and of the hourly rates approved already in the underlying bankruptcy case to assess the reasonableness of PSZJ's hourly rates.[63]

Based on the bankruptcy court's (1) knowledge of the hourly rates approved in cases pending in this district and its extensive experience in approving fees in similar complex chapter 11 litigation (and in this particular bankruptcy case and its many adversary proceedings wherein fee-shifting has been approved), (2) knowledge of the usual and customary rates charged for similar legal services by attorneys with the level of skill, competence, and ability of PSZJ's attorneys, (3) intimate familiarity with the legal, procedural, and factual complexities in this Action, and (4) review of the Morris Declaration and the detailed time entries provided by PSZJ in the PSZJ Invoices, this court finds that the hourly rates charged by PSZJ are reasonable and appropriate to be used in calculating the fee award to be included in the Proposed Judgment.

Though, as noted above, Defendant's arguments based on federal standards in fee-shifting cases do not apply to this adversary proceeding (i.e., a suit based on state law, arising in connection with a bankruptcy case), this court feels compelled to note its disagreement with Defendant's assumption that—if a party is required under federal standards to submit evidence to the court that its attorneys' hourly rates are similar to prevailing rates in the "relevant community"—the relevant

---

[61] Tex. Civ. Prac. & Rem. Code § 38.003 (West 2021).

[62] Tex. Civ. Prac. & Rem. Code § 38.004 (West 2021).

[63] *See supra* notes 14-16 and accompanying text where the Fifth Circuit in *Mathis* applied these evidentiary rules under Texas law in a fee-shifting case that was pending in federal court.

community is limited to the community of practitioners who practice in the Northern District of

Texas, Dallas Division **and** who physically office in the geographic location of Dallas, Texas.  As

noted by the Third Circuit, "The idea that a firm should be restricted to the hourly rate typical in

the locale of the case is unduly parochial in this age of national and regional law firms working on

larger more complex . . . cases of more than local import."[64]  Thus, "[i]n engaging in a market rate

comparison, bankruptcy courts are not circumscribed in their analysis by arbitrary geographic

limitations,[65] but, instead, "[t]he 'community' of professionals to which a bankruptcy court

properly should look for comparison purposes is the community of lawyers capable of performing

'similar work.'"[66]  This approach makes sense because the complex chapter 11 cases in which

PSZJ participates, including this one, "are often more regional or even national than they are local

in scope, so that looking solely to the local community's range of rates would impose an

unnecessarily parochial cap on the case.[67]  The "relevant community" in this Action should be

defined as the community of practitioners who specialize in complex litigation in large chapter 11

bankruptcy cases, frankly, in any district that regularly is the situs for complex business

reorganizations.

　　　　Defendant solely relies on a comparison of PSZJ's rates to those charged by Plaintiff's

local counsel, Hayward, to argue that PSZJ's rates are not in line with the rates charged in the

relevant community.  This comparison is misplaced.  The bankruptcy court observes that large,

national bankruptcy practices like PSZJ's (that do not have Dallas offices—PSZJ does happen to

---

[64] *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995)(quotations and citations omitted).

[65] *In re ASARCO, LLC*, 2011 WL 2975716 *18 (Bankr. S.D. Tex., July 20, 2011).

[66] *Id.* (citing *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994)).

[67] *ASARCO*, 2011 WL 2975716 at *18 (citing *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d 182, 192 (2d Cir. 2008)("The legal communities of today are increasingly interconnected.  To define markets simply by geography is too simplistic.  Sometimes, legal markets may be defined by practice area.").

have a Houston office) regularly serve as lead counsel for debtors and committees in some of the largest and most complex bankruptcy cases in the country, including, specifically, those pending in the Northern District of Texas – such as this one.  A more appropriate comparison of rates (under federal standards, which, again, do not apply in this adversary proceeding) would be to the rates charged and approved by this court of Sidley & Austin LLP ("Sidley"), a firm with a national practice (and that happens to have a Dallas office) who represented the official committee of unsecured creditors in *this* case.[68]  Comparing the rates of some of Sidley's Dallas-based attorneys to those charged by PSZJ attorneys with similar skill, expertise, and experience reveals that Sidley's rates exceeded those of PSZJ.  For example,[69] John Morris, a senior litigation partner at PSZJ who graduated from law school in 1990, charged $1,245 per hour in 2021, while Penny Reid, a Dallas-based Sidley litigation partner and a 1989 law school graduate, charged $1,400 per hour in 2021.  PSZJ charged for its associate, Hayley Winograd, who graduated from law school in 2017, $695 per hour in 2021, while Sidley charged $815 per hour for its Dallas-based associate, Juliana Hoffman (a 2017 restructuring associate).  This bankruptcy court reviews hundreds of fee applications a year and can take judicial notice of the billing rates charged by many Texas firms (or firms with Texas offices) and, unequivocally, many of them charge rates comparable to those of PSZJ.[70]  Thus, even under the federal standard of review (which does not apply here), the court

---

[68] *See Twenty-First Monthly and Final Fee Application of Sidley Austin LLP, Attorneys for the Official Committee of Unsecured Creditors, for Compensation and Reimbursement of Expenses for the Monthly Fee Period from July 1, 2021 Through and Including August 11, 2021 and for the Final Fee Period from October 29, 2019 Through and Including August 11, 2021* [BC DE #2904].

[69] The following rate comparisons were identified by PSZJ in its *Brief in Response to Defendants' Objection to the Bankruptcy Court's Supplement to Report and Recommendation to Award Plaintiff Its Attorneys' Fees and Costs* filed in the District Court on December 12, 2022, in the Five Earlier-Filed Note Actions [DCT DE #95].

[70] By way of example, this bankruptcy court takes judicial notice of the attorney billing rates in the following recent, complex chapter 11 cases filed in the Northern District of Texas:  *Rockall Energy Holdings, LLC*, Case # 22-90000-MXM-11 (Texas-based law firm Vinson & Elkins served as debtor's counsel; DE #729 reflected an average hourly rate for all attorneys during the case of $867.35 per hour, p. 2, and, among others, a "Restructuring & Reorganization" Partner (2008 law graduate) billing at $1,285 per hour and a "Complex Commercial Litigation" Partner (2005 law graduate) billing at $1,155 per hour, p. 53); *Corsicana Bedding, LLC*, Case # 22-90016-ELM-11 (Texas-based Haynes

finds that PSZJ's hourly rates are reasonable for purposes of the lodestar calculation of the fee award.

Accordingly, this court recommends that the District Court overrule Defendant's objection to PSZJ's hourly rate.

## III.    Submission of Proposed Form of Judgment to District Court

Having reviewed and considered the Proposed Judgment, the Notices and Backup Documentation regarding the attorneys' fees and costs to be inserted into the Proposed Judgment, and Defendant's Objection to Fees, and for the reasons set forth herein, this court hereby supplements its R&R MSJ and recommends to the District Court that it, after consideration of the R&R MSJ and this supplemental report and recommendation, enter the Proposed Judgment, which is attached hereto as **Exhibit A**.

### *### End of Supplement to Report and Recommendation ###*

---

and Boone law firm served as debtor's counsel; DE #504 reflected a blended rate for all attorneys of $840.04 per hour, p.3, and the lead partner billing at $1,150 per hour (a 1991 law graduate)); *Northwest Senior Housing Corporation*, Case # 22-30659-MVL-11 (Polsinelli law firm, with a large Dallas office, serves as debtor's counsel; DE # 39 reflects a range of $505-$1,210 per hour for partners and $380-$740 per hour for associates, pp. 6 & 20); *AiBuy Holdco, Inc.*, Case # 22-31737-SGJ-11 (Texas lawyers from law firm Foley & Lardner serve as debtor's counsel; DE #66, p. 6, reflects lead partner (a 1987 law graduate) charges $990 per hour). *See also* D. Knauth & A. Goudsward, *FTX Could Pay Over $2,100 Per Hour for Bankruptcy Lawyers*, https://www.reuters.com/legal/ftx-could-pay-over-2100-per-hour-bankruptcy-lawyers-2022-12-22/ (discussing rates of certain New York lawyers appearing in the Delaware bankruptcy case).  Indeed, other bankruptcy judges in the Northern District of Texas recently have approved PSZJ's rates in complex chapter 11 cases.  For example, in *Rockall Energy Holdings, LLC,* Case # 22-90000-MXM-11, Judge Mullin approved PSZJ's rates as counsel to the Official Committee of Unsecured Creditors with a blended rate for attorneys of $1,198.54 per hour and highest hourly rate of $1,525 per hour [DE ## 722, 827], and Judge Hale, in *Tuesday Morning Corp.*, Case # 20-31476-HDH-11, approved PSZJ's rates as counsel to the Official Committee of Equity Security Holders with a blended hourly rate of $900.33 per hour for attorneys and a rate of $1,245 for the lead restructuring partner [DE ## 2068, 2214].

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

---------------------------------------------------------------

|  |  |
|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Plaintiff, | § |
| | § |
| | §   Adv. Proc. No. 21-03082-sgj |
| vs. | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT FUND | § |
| ADVISORS, L.P., | §   Case No. 3:21-cv-00881-X |
| | § |
| Defendants. | § |
| | § |

---------------------------------------------------------------

## **PROPOSED FORM OF JUDGMENT**

This matter having come before the Court on *Highland Capital Management L.P.'s Motion for Summary Judgment* [Docket No. 45] (the "Motion") filed by Highland Capital Management, L.P. ("Highland" or "Plaintiff"), the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case") and plaintiff in the above-referenced adversary proceeding (the "Action"); and the Court having considered (a) Highland's Motion and all arguments and evidence

**Exhibit A**

admitted into the record in support of the Motion, (b) all responses and objections to the Motion

and all arguments and evidence admitted into the record in support of such responses and

objections, and (c) the arguments presented by counsel during the hearing held on July 27, 2022

on the Motion (the "Hearing"); and for the reasons set forth in the *Report and Recommendation to*

*District Court Regarding Highland Capital Management, L.P.'s Motion for Summary Judgment*

*Against Highland Capital Management Fund Advisors, L.P.* [Docket No. 73] (the "R&R"), filed

by the Court on October 12, 2022; the Court hereby enters the following final judgment (the "Final

Judgment").  **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff

recover the following:

1.       Highland Capital Management Fund Advisors, L.P. ("HCMFA") will owe

Highland **$2,169,270.76** in accrued but unpaid principal and interest due under the 2014 Note[1]

(issued on February 26, 2014) as of October 31, 2022, after application of all payments to

outstanding principal and interest.  As of October 31, 2022, interest will continue to accrue on the

2014 Note at the rate of **$115.54** per day and will increase to **$117.82** per day on **February 26,**

**2023**.

2.       HCMFA will owe Highland **$1,012,449.18** in accrued but unpaid principal and

interest due under the 2016 Note (issued on February 26, 2016) as of October 31, 2022, after

application of all payments to outstanding principal and interest.  As of October 31, 2022, interest

will continue to accrue on the 2016 Note at the rate of **$71.41** per day and will increase to **$73.28**

per day on **February 26, 2023**.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the R&R.

3.      In addition to the forgoing, and pursuant to the terms of each applicable Note, HCMFA shall pay to Highland the amount of **$387,007.90**, which is the total actual expenses of collection, including attorneys' fees and costs, incurred by Highland.

4.      The amounts set forth to be paid in this Final Judgment shall bear interest, pursuant to 28 U.S.C. § 1961, from the date of the entry of this Final Judgment, at a rate of [ ]%. Interest shall be computed daily to the date of payment, except as provided in 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b), and shall be compounded annually.

# # # END OF JUDGMENT # # #